UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------------------x

LEONARD J. BRANDT,

        Plaintiff

V.

HOME DIAGNOSTICS, INC., GEORGE H. HOLLEY,
AND JUDY CHENG SALEM, EXECUTRIX OF THE
ESTATE OF ROBERT J. SALEM,

        Defendants

NO.:301CV1889 (SRU)

APRIL 6, 2005

-------------------------------------------------------------------x

## DEFENDANT SALEM'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56, the

defendant Judy Cheng Salem, as Executrix of the Estate of Mr. Robert J. Salem (hereinafter,

"Salem"), hereby submits this Memorandum of Law in support of Summary Judgment.

Salem submits herewith the Local Rule 56(a)1 Statement, the Motion for Summary

Judgment and supporting evidence in the form of deposition testimony, the Affidavit of

George H. Holley, pleadings and otherwise.[1]

The other defendants to this matter, Home Diagnostics, Inc. ("HDI") and Mr. George

H. Holley ("Holley"), are likewise moving for summary judgment, and defendant Salem

joins the position of these defendants (and incorporates their arguments) through their

motion for summary judgment filed along herewith (collectively, the "Defendants").

---

[1] (The deposition testimony of Plaintiff Leonard Brandt is provided at Exhibit 1.) (The Affidavit of George H. Holley is
provided at Exhibit 2.)

## I.    **PRELIMINARY STATEMENT**

This case arises out of certain consulting services allegedly provided by plaintiff Leonard Brandt ("Plaintiff") to the Defendants in this matter. This case is ripe for summary judgment as to all counts against Salem in his individual capacity, as the late Mr. Bob Salem never gave authority to Mr. Holley – as agent – to bind Salem personally. Given this lack of agency, there can be no contract with Salem personally.

In fact, the Minnesota Federal District Court has already ruled in this case that Holley was ***not*** acting as Salem's agent, and given this clear finding, summary judgment is warranted with respect to Salem personally (the "Minnesota Decision"). (The Minnesota Decision is provided at Exhibit 3.) That is, this Court may rely upon the law of the case doctrine and/or collateral estoppel to dismiss all claims against Salem, as the key issue here is a legal one based on these doctrines.

The Plaintiff vigorously argued the agency relationship between Holley and Salem before the Minnesota District Court in order to establish personal jurisdiction over Salem. Plaintiff put his best foot forward on this argument, as Salem was seeking dismissal of all claims for lack of jurisdiction. That Court ruled that there was no agency relationship, and did so in the face of supporting affidavits, oral argument and even deposition testimony. As such, this issue should not be re-litigated because it was already fully and fairly decided, and there is no new material evidence that would justify reconsideration. While there has been additional evidence since the Minnesota Decision, this deposition testimony and Holley's Affidavit only reinforce the fact that no agency relationship was ever in place.

2

Simply put, there is no way to find Salem liable in his individual capacity without this agency connection, and there is no agency connection.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[2]

### A.    Procedural History

#### 1.    The Minnesota Action

Plaintiff originally commenced this action in Minnesota state court against Defendants HDI, MIT Development Corporation ("MIT")[3] and Mr. George Holley. The Defendants then removed the action to the United States District Court of Minnesota. Plaintiff later amended his complaint to add a claim against Salem personally.

#### 2.    The Transfer

Thereafter, Salem and Holley moved to dismiss the action for lack of personal jurisdiction, and/or to transfer the case to the United States District Court of Connecticut. On September 20, 2001, Judge Richard Kyle granted Salem and Holley's motion to dismiss for lack of personal jurisdiction (the "Minnesota Decision") and also granted the motion to transfer. The case was then transferred to this Court.

#### 3.    The Third Amended Complaint

On February 20, 2002, the Plaintiff filed a Third Amended Complaint against the same Defendants, which complaint is essentially identical to that filed in the Minnesota District Court. (The Third Amended Complaint is provided at Exhibit 4.) In this Third

---

[2] The material facts underlying this Motion are set forth more fully in the Affidavit of George H. Holley provided hereto at Exhibit 2. Further, Salem also files its Local Rule 56(a)1 Statement along herewith.

[3] The company MIT was merged into HDI in October of 1999, and on November 20, 2002, this Court dismissed MIT from the case.

Amended Complaint, Plaintiff brings claims against Salem personally for: (i) Breach of Contract; (ii) Promissory Estoppel; and (iii) Unjust Enrichment. (*See* Thrd. Am. Compl., Exhibit 4.)

### B.    Factual Background

####     1.    The Consulting Work

Plaintiff claims that he negotiated a consulting agreement with Defendants, whereby he would be compensated for providing business and other financial services to MIT and HDI. (*See* Thrd. Am. Compl. ¶¶ 9, 10 and 11, Exhibit 4.) Plaintiff claims he provided these consulting services from 1993 to 1999, and is now asking this Court for exorbitant damages in the form of unpaid incentive compensation. (*See* Thrd. Am. Compl. ¶12, Exhibit 4.)

As a matter of clarity, it is important to understand that Plaintiff is claiming recovery on two separate issues. First, Plaintiff claims that Defendants agreed to pay him $1,000 per/month for basic consulting services (the "Monthly Fee"). (*See* Thrd. Am. Compl. ¶11(a), Exhibit 4 (sub-paragraph setting forth Monthly Fee claim); *See also* Holley Aff. ¶16, Exhibit 2.) As described more fully in the HDI/Holley summary judgment brief, Defendants do not dispute the existence of this Monthly Fee arrangement with regard to MIT (and/or HDI), but Salem was never bound personally for this Monthly Fee.

Second, Plaintiff also claims that a much more substantial contract existed, whereby Plaintiff was to provide investment banking and related services in exchange for: "[i]ncentive compensation equal to…10% of the [increased] value, interest, equity, collections, revenue, and assets above $1,000,000 received from HDI by MIT;…and Messrs. Holley and Salem" (hereinafter, the "10% Incentive Compensation"). (*See* Thrd.

Am. Compl. ¶11(b) (sub-paragraph setting forth 10% Incentive Compensation claim),

Exhibit 4; *See also* Holley Aff. ¶18-19, Exhibit 2.) (The $1 million term shall be referred to

hereinafter as the "Bogey"). Plaintiff claims damages in excess of $10 million on this 10%

Incentive Compensation agreement that never materialized.

Holley has testified that there was no agreement on the 10% Incentive Compensation

ever reached. (Holley Aff. ¶¶ 18, 19 and 34, Exhibit 2.) Further, Holley has also testified

that he was never acting as Salem's agent – with respect to Salem in his individual capacity

– as to the Monthly Fee and/or the 10% Incentive Compensation that never materialized.

(*See* Holley Aff. ¶¶33 and 34, Exhibit 2.) Thus, Salem has no individual liability in this

matter.

With respect to the so-called 10% Incentive Compensation, Plaintiff never generated

***any*** investments and/or financing for HDI (*see* Holley Aff. ¶15 n.3), nor did he provide any

tangible benefits and/or added value to HDI and/or MIT. (*See* Holley Aff. ¶31, Exhibit 2.)

The parties never came to any agreement as to exactly "what" services that Plaintiff would

be providing. (*See* Holley Aff. ¶¶17 and 22, Exhibit 2.) Moreover, Plaintiff would not

agree to limit the duration of the so-called agreement, another key term never finalized.

(*See* Holley Aff. ¶17, Exhibit 2.)

In addition, Salem directs this Court to the HDI/Holley brief in support of summary

judgment filed on said even date, as it provides a more particular and complete background

of the alleged consulting work and relationship of the parties.

2.    The Agency Issue

Plaintiff claims that he negotiated the terms of the so-called agreement with Holley, who was allegedly acting as agent for Salem, MIT and HDI. (*See* Thrd. Am. Compl. ¶10, Exhibit 4.) Accordingly, for Salem to have any liability in this case, Plaintiff must prove that Holley was acting as Salem's agent. This is a burden that Plaintiff cannot meet.

3.    The Minnesota Decision

In the Minnesota Decision, Judge Kyle held in no uncertain terms that "***no*** reasonable jury could infer that Holley acted as Salem's ***agent***." (Emphasis added.) (*See* Minnesota Decision p.13, Exhibit 3.) Judge Kyle underwent a detailed and thoughtful analysis in reaching this conclusion, and it should be treated as the "law of the case".

4.    The Deposition Testimony

The deposition testimony, at the time of and since the Minnesota Decision, also demonstrates that this case is ripe for summary judgment. Plaintiff cannot pinpoint a specific conversation of any kind to show that Holley was acting as Salem's agent, and/or that the so-called 10% Incentive Compensation was acceptable to Mr. Salem personally. (*See* Plaintiff Dep. p.151, Exhibit 1.) The evidence indicates that Plaintiff and Holley did negotiate, but because they could not agree on the terms, never went ahead and put the 10% Incentive Compensation arrangement "in writing" (the way a business person would normally operate). (*See* Plaintiff Dep. p.155, Exhibit 1.)

Plaintiff further concedes that "I cannot recall seeing anything in writing" that would show the agency relationship. (*See* Plaintiff Dep. p.151, Exhibit 1.) When asked what led Plaintiff to believe that Mr. Salem had somehow agreed to the so-called agreement, Plaintiff

6

could only respond that: "I can't explicitly tell you something that was said in a conversation I can't remember so well." (*See* Plaintiff Dep. p.149-150, Exhibit 1.) Mr. Holley's testimony demonstrates that, because there was no meeting of the minds on the terms of compensation and otherwise, that Plaintiff dropped out of the picture after mid 1994. (*See* Holley Aff. ¶26, Exhibit 2.)

Given this gross lack of proof on the agency relationship in particular, Plaintiff cannot withstand this Motion for Summary Judgment.

## III.    LAW AND ARGUMENT

## POINT I.    STANDARD ON SUMMARY JUDGMENT

Summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A moving party is entitled to summary judgment when, after reviewing the evidence in the light most favorable to the non-moving party, the court finds no issue as to any material fact. Ginsberg v. Healey Car & Truck Leasing, Inc., 189 F.3d 268, 270 (2d. Cir. 1999).

Likewise, where the facts and law will reasonably support only one conclusion, summary judgment should be granted. Harbor Tug & Barge Co. v. Papai, 520 U.S. 548, 554 (1997). A plaintiff seeking to defeat summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but...must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). A non-movant's extremely weak or irrelevant evidence is not a sufficient basis to defeat a motion for summary judgment. Applegate v. Top Assocs., 425 F.2d 92, 96 (2d Cir. 1970); *See also* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

The non-moving party must produce evidence in the record and cannot simply rely upon "conclusory statements or on contentions that the affidavits are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); *See also* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion." Anderson, *supra* at 247-48.

## POINT II.    THIS COURT MAY RENDER SUMMARY JUDGMENT UNDER THE "LAW OF THE CASE" DOCTRINE.

This Court may rely upon the "law of the case" doctrine – to prevent the agency issue from being re-litigated – and to render summary judgment in Salem's favor.

On the agency issue, the Minnesota Court held squarely that:

> Even viewing the record in the light most favorable to Brandt, there is *insufficient evidence* to give rise to a reasonable inference that Salem controlled Holley's actions. The fact that Holley consulted with Salem concerning Brandt's proposed compensation does not make him Salem's agent. Brandt also argues that Holley acted to benefit himself and Salem. Brandt has specifically averred, however, only that he provided services to HDI and MIT; Brandt has offered *no* comparable evidence that he provided services to Holley and Salem in their *individual* capacities. (See April 24 Brandt Aff. ¶ 8; June 28 Brandt Aff. ¶ 11.)…The Court concludes that, from the record presently before it, *no reasonable jury* could infer that Holley acted as Salem's *agent*.

(*See* Minnesota Decision p.13, Exhibit 3.) (Emphasis added and in original.) This is the "law of the case".

8

**A.**    ***The "Law of the Case" Should Be Followed Here, As There Is No***
***New Material Evidence, No Change In The Law, And No Error.***

"Ordinarily, previous rulings become the 'law of the case' and, as a prudential

matter, will not be revisited." Royal Ins. Co. v. Zygo Corp., 349 F.Supp.2d 295

(D.Conn.2004).  When a matter has previously been ruled upon interlocutorily, "the court in

a subsequent proceeding in the case may treat that decision as the law of the case, if it is of

the opinion that the issue was correctly decided, in the absence of some new or overriding

circumstance."  Wagner v. Clark Equip. Co., Inc., 259 Conn. 114, 130 n.21 (2002).

The Second Circuit has articulated that: "[u]nder the law of the case doctrine, courts

are understandably ***reluctant*** to reopen a ruling once made, especially when one judge or

court is asked to consider the ruling of a different judge or court.  Lillbask v. CT DOE, 2005

WL 237199 *13 (2d.Cir. 2005) (Conn.) (Citation Omitted.)  This principle has application

here, as Judge Kyle rendered the Minnesota Decision on all the relevant facts and law.

While the rule is at the court's discretion, the major grounds for reconsideration are:

(i) a change in the law;  (ii) the availability of new evidence;  and/or (iii) the need to correct

a clear error or prevent manifest injustice.  Royal, 349 F.Supp.2d at 301.  None of these

grounds are sufficiently present here to upset the Minnesota Decision.

**B.**    ***There Is No Reason To Disturb The Minnesota Decision.***

The Minnesota Decision on agency was clear, well-reasoned and squarely decided in

Salem's favor.  The Minnesota Court made clear that there was no "reasonable" basis to

believe that Holley somehow bound Salem personally.  (*See* Minnesota Decision p. 13,

Exhibit 3, (holding "Brandt has offered ***no*** comparable evidence that he provided services to

9

Holley and Salem in their ***individual*** capacities… The Court concludes that . . . ***no reasonable jury*** could infer that Holley acted as Salem's ***agent***").) (Emphasis added.) This finding is similar to the applicable standard here, as "when reasonable minds could not differ as to the import of the evidence, summary judgment [is] proper." Bryant v. Mafucci, 923 F.2d 979, 982 (2d.Cir.1991).

       1.     There Is No New Evidence That Would Justify Reconsideration.

Judge Kyle analyzed all of the relevant evidence, and his well-reasoned decision concluded that no reasonable jury could infer that Holley acted as Salem's agent. There has been no meaningful change to the essential facts or evidence, and the testimony since the Minnesota Decision only supports the result reached there. (*See* Plaintiff Dep. p.151, Exhibit 1.) The Affidavit of Mr. Holley confirms it. (*See* Holley Aff. ¶ 33, Exhibit 2 ("[P]laintiff cannot pinpoint any letter in which I claimed to speak for Salem, nor could he during his deposition describe any conversation during which I claimed to speak for Salem, because it simply did not happen").)

While Plaintiff may have performed work on behalf of MIT (and/or HDI) for the Monthly Fee only, it was never on behalf of Mr. Salem personally. (*See* Holley Aff. ¶¶ 33, 34 Exhibit 2; *See also* Minnesota Decision p.11-13, Exhibit 3.) There is no shred of evidence (since the Minnesota Decision) that would support this agency relationship, as it "simply did not happen." (Holley Aff. ¶ 33, Exhibit 2.)

       2.     There Is No Change In The Law.

In the Minnesota Decision, the Court opined that plaintiff must demonstrate the elements of agency to the effect that: "(1) Salem manifested an intent that Holley act for

him;  (2) Holley accepted this undertaking;  and (3) an understanding existed between Salem and Holley that Salem controlled Holley's undertakings." (*See* Minnesota Decision p.13, <u>Exhibit 3</u>.)  These elements – that Plaintiff already lost on – are virtually identical under Connecticut law.

The Connecticut Supreme Court has laid out the elements of agency as follows: "(1) a manifestation by the principal that the agent will act for him;  (2) acceptance by the agent of the undertaking;  and (3) an understanding between the parties that the principal will be in control of the undertaking." <u>Gateway Co. v. DiNoia</u>, 232 Conn. 223, 240 (1995) *citing* Restatement (Second), 1 Agency § 1, comment b (1958).  As there is no change in the applicable law that Plaintiff must prove, there is no reason to revisit this issue.

      3.     <u>There Is No Error.</u>

Moreover, Judge Kyle's decision is amply supported by the evidence, and is not clearly erroneous.  The Plaintiff submitted two affidavits with numerous exhibits there. Still, the Court found after viewing all of the evidence in the light most favorable to Plaintiff, that Holley was not Salem's agent.  Thus, the Minnesota Decision on agency should be treated as the "law of the case", and bar any redundant litigation of this dead issue.

Accordingly, this Motion for Summary Judgment should be granted, as there remains no genuine issue of material fact on the agency question.

## POINT III.  THIS COURT MAY ALSO RENDER SUMMARY JUDGMENT UNDER THE DOCTRINE OF COLLATERAL ESTOPPEL.

This Court may also rely upon the doctrine of collateral estoppel to render summary judgment in Salem's favor.

### A.    *Collateral Estoppel Bars Plaintiff's Claims against  Salem.*

The Minnesota Decision – which squarely ruled that Holley was *not* acting as Salem's agent – should operate to bar any re-litigation of the agency issue.

"Issue preclusion, also known as collateral estoppel stands for the notion that a prior judgment should foreclose those parties' successive litigation of an *issue* of *fact* or *law* actually litigated and resolved in a valid court determination essential to the prior judgment, regardless of whether the issue subsequently arises in the same claim or a different one." Serafin v. CT Dept. of Mental Health, 2005 WL 578321 *5 (D.Conn. 2005) *citing* New Hamphshire v. Maine, 532 U.S. 742, 748 (2001).  (Emphasis added.)  "Under Connecticut law, for an issue to be subject to collateral estoppel, (1) it must have been fully and fairly litigated in the first action, (2) it also must have been actually decided and (3) the decision must have been necessary to the judgment.  Id.  *citing* Golino v. New Haven, 950 F.2d 864, 869 (2d.Cir.1991).

The Connecticut Courts have also stated that:

> Collateral estoppel, or issue preclusion, *prohibits* the re-litigation of an *issue* when that issue was actually litigated and necessarily determined in a prior action.... For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment.... Furthermore, to invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding. . .

*See* <u>Virgo v. Lyons</u>, 209 Conn. 497, 501 (1988).[4]  In other words, collateral estoppel

"precludes the re-litigation of a right, question, or fact distinctly put in issue and directly

determined in a prior adjudication." <u>Southern Pacific R.R. v. United States</u>, 168 U.S. 1, 48-

49 (1897).

> 1. The Issue Here Is Identical To The Agency Issue Already Decided In The Minnesota Decision.

Plaintiff blindly alleges that "Holley consistently represented to [plaintiff] that he

acted as the agent for MIT, HDI and Mr. Salem and had the authority to represent and bind

them." (*See* Thrd. Am. Compl. ¶12, <u>Exhibit 4</u>.)  Consequently, for Plaintiff to prove his

claims against Salem, he ***must*** prove that Holley acted as Salem's agent during these

negotiations.

In the Minnesota action, Plaintiff expressly and vigorously argued that Holley acted

as Mr. Salem's agent during the negotiations – seeking to establish Salem's "minimum

contacts" – with the forum state.  The Minnesota Court analyzed Plaintiff's agency claim to

determine whether Holley's Minnesota "contacts" could be imputed to Mr. Salem.  (*See*

Minnesota Decision p.12-13, <u>Exhibit 3</u>.)

Clearly, Plaintiff cannot prevail on his claims against Salem unless Holley was

Salem's agent.  As such, this Court must determine whether Holley acted as Salem's agent.

However, this issue is ***identical*** to that already disposed of in the Minnesota Decision.[5]

---

[4] "An issue is <u>actually litigated</u> if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined ... An issue is <u>necessarily determined</u> if, in the absence of a determination of the issue, the judgment could not have been validly rendered." <u>Lafayette v. General Dynamics Corp.</u>, 255 Conn. 762, 773 (2001) (Emphasis in original.) (Citation omitted.)

[5] In addition, the parties to the Minnesota action are the identical parties before this Court.

Accordingly, the "identical" element of collateral estoppel has been satisfied.

> 2.   The Agency Issue Was Fully And Fairly Litigated In The Minnesota Decision.

"'Finality' in the context [of issue preclusion] may mean *little more* than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." Lummus Co. v. Commonwealth Oil Ref. Co., 297 F.2d 80, 89 (2d Cir. 1961), cert. denied, 368 U.S. 986 (1962). (Emphasis added.) Moreover, numerous other courts have relaxed the "finality" standard for purposes of collateral estoppel. *See*, e.g., In re Brown, 951 F.2d 564, 569 (3d Cir. 1991) ("the effectiveness of issue preclusion, sometimes called collateral estoppel, does not require the entry of a judgment, final in the sense of being appealable."); *See also* Dyndul v. Dyndul, 620 F.2d 409, 412 n.8 (3d Cir. 1980) ("'[f]inality' for purposes of issue preclusion is a more 'pliant' concept than it would be in other contexts').

On this issue, The Restatement has articulated that:

> [F]or purposes of issue preclusion ..., 'final judgment' includes any
> prior adjudication of an issue in another action that is determined
> to be sufficiently firm to be accorded conclusive effect.... [P]reclusion
> should be refused if the decision was avowedly tentative. On the other
> hand, that the parties were fully heard, that the court supported its
> decision with a reasoned opinion, that the decision was subject to appeal
> or was in fact reviewed on appeal, are factors supporting the conclusion
> that the decision is final for the purpose of preclusion.

RESTATEMENT (SECOND) OF JUDGMENTS § 13 cmt. g, illus 3 (1982).

Clearly, the Minnesota Court did not only analyze whether Mr. Salem had sufficient contacts with Minnesota; rather, the Court specifically analyzed whether Holley acted as Salem's agent (so as to impute Holley's Minnesota contacts to Mr. Salem). The Minnesota

Decision – that Holley was not Salem's agent – certainly cannot be characterized as "avowedly tentative". After all, Judge Kyle specifically stated that *no* reasonable jury could infer that Holley acted as Salem's agent. There is nothing tentative about that.

Moreover, the parties were fully heard on the issue – by way of oral argument, deposition testimony, and supporting affidavits. Judge Kyle wrote a well-reasoned and lengthy opinion that was amply supported by the record, and this prior determination on the agency issue is sufficiently final for purposes of issue preclusion.

### 3. The Agency Issue Was "Necessary" To The Minnesota Decision.

The issue of agency was indeed "necessary" to the Court's ruling. The Minnesota Court first engaged in the traditional jurisdictional analysis. (*See* Minnesota Decision p.9-12, Exhibit 3.) However, the Court did not end its analysis there. The Plaintiff argued that Holley's contacts with Minnesota could be imputed to Salem. The Court stated that Plaintiff's argument, to be successful, "require[d] a determination that Holley was Salem's agent." (*See* Minnesota Decision p.12, Exhibit 3.) (Emphasis in original.)

The Minnesota Court reasoned that Plaintiff must demonstrate the elements of agency. (*See* Minnesota Decision p.13, Exhibit 3.) As described above, these elements are virtually identical under Connecticut law. *See* Gateway Co. v. DiNoia, 232 Conn. 223, 240 (1995) *citing* Restatement (Second), 1 Agency § 1, comment b (1958).

Thus, for Plaintiff to succeed on any claims, he has to once again prove the same elements that he already lost on, and there is no material evidence whatsoever that would justify giving Plaintiff another chance at this proof.

In the opposition brief, Plaintiff submitted affidavits along with numerous other exhibits. The Court analyzed all of Plaintiff's evidence and found that Holley was in no way Mr. Salem's agent. This was not simply an ancillary argument set forth by the Plaintiff, which the Court brushed off. Rather, had the Court found an agency relationship, there would have been a finding of sufficient jurisdiction. However, the evidence could not establish any agency relationship.

As the agency issue was fully litigated, actually decided, and necessary to the Minnesota Decision, the elements of collateral estoppel are satisfied here.

Accordingly, this Motion for Summary Judgment should be granted, as there remains no genuine issue of material fact on the agency question.

**POINT IV.    GIVEN THE ABSENCE OF ANY AGENCY RELATIONSHIP, THE CLAIMS AGAINST SALEM PERSONALLY MUST FAIL.**

A.    ***The Breach Of Contract Claim Must Fail.***

Without any agency connection, there can be no contract as between Plaintiff and Salem.[6]

Under Connecticut law, "[t]o constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an ***identical*** understanding by the parties...If the minds of the parties have not truly met, no enforceable contract exists." Geary v. Wentworth Laboratories, 60 Conn. App. 622, 627 (2000). (Emphasis added.) If any essential matters are left open for further consideration, the

---

[6] Importantly, Plaintiff's evidence on agency should be inadmissible under the Federal Rules of Evidence. *See* FRE § 801(2)(D). Thus, Plaintiff cannot prove the Contract claim. The rationale being, that if the Minnesota Court already determined that no agency relationship existed, then Plaintiff cannot make use of the hearsay exception at FRE §803(2)(D) – as an adoptive party statement/admission through Mr. Holley – because Holley was not Salem's agent.

contract is not complete. Id. Here, the most essential terms of the Contract were left wide open and never agreed upon. (*See* Holley Aff. ¶17 (scope of services never defined) and ¶¶ 19 and 20 (amount, "Bogey" and/or method for compensation never defined), Exhibit 2.)

The Plaintiff here has the burden of proving a ***meeting of the minds*** occurred in respect to his version of the claimed contract. Thames River Recycling Inc. v. Gallo, 50 Conn. App. 767, 778-79. Without a mutual assent or a meeting of the minds, there cannot be a valid contract. Herbert S. Newman & Partners v. CFC Construction Ltd. Partnership, 236 Conn. 750, 764 (1996). In order to form a valid and enforceable contract, the parties must have a mutual understanding concerning terms that are definite and certain. Wilson Building & Design Assoc. v. Vanderkerckhove, 2002 WL 237038, *3 (Jan. 25, 2002).

Clearly, there must be a "meeting of the minds" to form a contract. However, the evidence shows that there was ***no*** meeting of the minds as between Plaintiff and Mr. Salem. (*See* Plaintiff Dep. p.149, Exhibit 1.) Second, the Minnesota Decision and subsequent evidence show that Holley was not acting as agent for Mr. Salem personally. (*See* Holley Aff. ¶33, Exhibit 2.) If there was agency connection with Holley, there simply cannot be a "meeting of the minds" as between Plaintiff and Salem personally.

Accordingly, summary judgment should enter in favor of Salem on Plaintiff's contract claim.

### B.  *The Promissory Estoppel Claim Must Fail.*

The Plaintiff has also brought a claim against Salem personally for promissory estoppel, and this claim fails for the same reasons as described above. (*See* Thrd. Am.

Compl. ¶¶21-26, <u>Exhibit 4</u>.)  To prove a claim for promissory estoppel, the Plaintiff must

show:

> (1) that Salem made a "clear and definite promise";
>
> (2) that Plaintiff "reasonably relied" on such promise;
>
> (3) that the promise "induced the action", and that action was actually taken
> by Plaintiff;  and
>
> (4) that injustice can only be avoided by enforcement of the promise.

<u>Margaitis v. Deacon</u>, 2005 WL 704416 *2 (Bozzuto, J.) (Conn.Super.2005);  <u>Wellington</u>

<u>Systems, Inc v. Redding Group, Inc.</u>, 49 Conn. App. 152 (1998).[7]

"A fundamental element of promissory estoppel...is the existence of a ***clear*** and

***definite*** promise which a promisor could have reasonably expected to induce reliance.

<u>Stewart v. Cendant Mobility Serv., Corp.</u>, 267 Conn. 96, 104-5 (2003).  Importantly, and

weighing heavily against Plaintiff's claim here, "the promise must reflect a present intent to

commit as distinguished from a mere statement of intent to contract in the future." <u>Id.</u>  "The

requirements of clarity and definiteness are the determinative factors" here.  <u>Id.</u>

In this case, Salem had very few direct communications with Plaintiff, and thus, he

made no direct, let alone any clear and definite, promise to Plaintiff.  (*See* Plaintiff Dep.

p.149, <u>Exhibit 1</u>.)  Further, Salem never authorized Holley to bind Salem personally in any

way, and thus, Salem made no promise to Plaintiff through Holley.  (*See* Holley Aff.¶33,

---

[7] "Promissory Estoppel serves as a consideration substitute to allow enforcement of contracts whereby one party has detrimentally relied on an express or implied promise even though traditional bargained for legal detriment is not present. Promissory Estoppel, therefore, is not a separate cause of action available to plaintiffs, but rather serves to allow enforcement of an otherwise validly formed contractual commitment that lacks traditional consideration." <u>Pavliscak v. Bridgeport Hosp.</u>, 48 Conn. App. 580, 592 (1998).

Exhibit 2.) As such, Salem made no promise with respect to the 10% Incentive Compensation (or otherwise).

Accordingly, summary judgment should enter in favor of Salem on Plaintiff's promissory estoppel claim.

### C.   *The Unjust Enrichment Claim Must Fail.*

The Plaintiff has also brought a claim against Salem personally for unjust enrichment, and this claim fails for the same reasons as described above. (*See* Thrd. Am. Compl. ¶¶27-29, Exhibit 4.) In order to prove unjust enrichment, the Plaintiff must show:

> (1) that Salem received a benefit;
>
> (2) that Salem unjustly did not pay the Plaintiff for the benefit;  and
>
> (3) that the failure of payment was to Plaintiff's benefit.

*See* Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Company, 231 Conn. 276 (1994). The basis for recovery under the doctrine of unjust enrichment is that, in a given situation, it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of others. Id.

First, it is important to understand that Plaintiff was paid $1000 per month under the Monthly Fee arrangement (for the months he issued invoices and/or actually did work), and this bellies Plaintiff's claim for unjust enrichment (on the 10% Incentive Compensation claim or otherwise). The Defendants do not dispute the Monthly Fee arrangement to the extent it may have bound MIT (and/or HDI), but it was never meant to bind Salem personally. (*See* Holley Aff. ¶33, Exhibit 2;  Plaintiff Dep. p.149, Exhibit 1.)

Second, any work that Plaintiff did do was never meant to benefit Salem directly and/or personally, as Salem gave no authority to Holley to bind Salem personally.  (Plaintiff Dep. p.149, <u>Exhibit 1</u>;  *See* Holley Aff. ¶33, <u>Exhibit 2</u>.)  Clearly, there was no unjust enrichment to Salem personally; there was no enrichment at all.

Accordingly, summary judgment should enter in favor of Salem on Plaintiff's unjust enrichment claim.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Salem respectfully requests that this Motion for Summary Judgment be granted.

THE DEFENDANT
JUDY CHENG SALEM, EXECUTRIX
OF THE ESTATE OF ROBERT J.
SALEM

By_____
    Richard A. Roberts
    Fed Bar no ct 07665
    Thomas J. Lengyel
    Fed Bar no ct 21488
    NUZZO & ROBERTS, L.L.C.
    One Town Center
    P.O. Box 747
    Cheshire, Connecticut 06410
    (203) 250-2000
    (203) 250-3131 fax

## **CERTIFICATION**

This is to certify that on April 6, 2005, a true copy of the foregoing was mailed via first class, postage prepaid, mail to:

Edward W. Dunham, Esq.
Wiggin & Dana LLP
One Century Tower
New Haven, Connecticut 06508-1832

Paul M. Brown, Esq.
Satterlee, Stephens, Burke & Burke
230 Park Avenue
New York, NY 10169

Honorable Stefan R. Underhill (courtesy copy – hand delivery)
United States District Court
915 Lafayette Blvd
Bridgeport, CT 06604

_____
Richard A. Roberts

\\fp\nuzzo\WP\419021\001\sj memo law 4 6 05.doc