**SATTERLEE STEPHENS BURKE & BURKE LLP**
230 PARK AVENUE
NEW YORK, NY 10169-0079
(212) 818-9200
E-Mail: pbrown@ssbb.com
Direct Dial: (212) 404-8786

47 MAPLE STREET
SUMMIT, NJ 07901
(908) 277-2221

FAX (212) 818-9606, 9607
www.ssbb.com

FILED
2005 JUL 19 A 9: 27
U.S. DISTRICT COURT
BRIDGEPORT, CT

June 30, 2005

**BY FEDERAL EXPRESS**

Honorable Stefan R. Underhill
United States District Judge
915 Lafayette Boulevard
Bridgeport, Connecticut 06604

      Re: Brandt v. Home Diagnostics, Inc., et al. - Civil Action No. 3:01-1889 (SRU)

Dear Judge Underhill:

      We represent defendants Home Diagnostics, Inc. ("HDI") and George Holley ("Holley") in the above matter and write to request a telephone conference with the Court to discuss a discovery dispute that the parties have been unable to resolve concerning two documents that plaintiff refuses to disclose under an erroneous claim of attorney-client privilege. Resolution of this issue prior to a ruling on the pending summary judgment motions is necessary so that the Court will have before it important evidence concerning the existence or non-existence of plaintiff's alleged agreement. Plaintiff should not be permitted to withhold these documents because they were never privileged with respect to defendants and, even if they were, there has been both a voluntary waiver and an "at issue" waiver of any privilege.

      As the Court is aware, plaintiff's claims are premised entirely upon his assertion that a March 2, 1994 fax (the "Fax" – attached hereto as Exhibit A), and various unspecified conversations that he had with Holley subsequent to the Fax, form the basis of a binding agreement whereby he is entitled to over $10 million in damages for his "consulting services." Defendants have denied plaintiff's claim, and have moved for summary judgment on the grounds that, *inter alia*, as a matter of law no agreement of the kind was ever entered into by the parties.

      Plaintiff relies upon the Fax as documentary evidence of the alleged agreement, and testified that the Fax was the last written document that reflected the terms of this alleged agreement.[1] Yet, <u>two months after the Fax</u>, plaintiff sought out a large Minnesota law firm to draft an agreement, which resulted in the creation of a <u>draft</u> letter agreement, dated "May __, 1994." (A copy of the May __, 1994 draft is attached hereto as Exhibit B). This non-finalized May __, 1994 draft is clear evidence that the parties never entered into an agreement with terms as alleged by plaintiff. Indeed, this draft, which defendants possessed and produced in the litigation, was prepared by Kris Sharpe, an attorney from the law firm of Faegre & Benson, who plaintiff testified he had asked to represent <u>both</u> he and defendants.[2]

---

[1] See Plaintiff's Answers to Defendants' First Set of Interrogatories, p. 5; Compl., ¶ 12(f); Brandt Dep., p. 286 – p. 290, line 7; p. 426, lines 2 – 5.

[2] See Brandt Dep., pp. 231-33; 240-42; 781.

612160_3

SATTERLEE STEPHENS BURKE & BURKE LLP
Page 2

Defendants seek the Court's intervention because plaintiff unjustifiably refuses to produce two other documents from Mr. Sharpe's files that – like the May __, 1994 draft – post-date the Fax and are probative of whether the parties entered into an agreement, as plaintiff claims, or whether there was no such an agreement, as defendants claim. (Attached hereto as Exhibit C is a letter from plaintiff's counsel describing the two improperly withheld documents). Plaintiff should not be permitted to withhold these documents given that: (1) they were never privileged with respect to defendants, and (2) even if plaintiff maintains that they were privileged, there has been both a voluntary subject matter waiver and an "at issue" waiver of any such privilege concerning these documents.

Specifically, plaintiff cannot claim privilege over these documents because he testified that he intended Mr. Sharpe to represent both he and defendants, and to invoke the attorney-client privilege "a party must demonstrate that there was: (1) a communication between client and counsel, which (2) <u>was intended to be</u> and was in fact kept <u>confidential</u>, and (3) made for the purpose of obtaining or providing legal advice." <u>United States v. Construction Prods. Research, Inc.</u>, 73 F.3d 464, 473 (2d Cir. 1996) (emphasis added). Since it was plaintiff's intent that Mr. Sharpe would represent both he and defendants in the task of preparing an agreement, plaintiff cannot assert privilege. Indeed, plaintiff's intent to include defendants in communications with Mr. Sharpe is reflected in the May __, 1994 draft, wherein plaintiff indicates to Mr. Sharpe that "MIT" (the company 100% owned by Holley and Salem) was to pay Faegre & Benson's fees – not plaintiff. <u>See</u> Ex. B, HDI 100086.

In addition, plaintiff clearly did not intend his communications with Mr. Sharpe to be privileged as to defendants given that plaintiff sent the May __, 1994 draft (including Mr. Sharpe's typewritten questions and plaintiff's handwritten responses) to defendants. <u>See</u> Ex. B. Because plaintiff did not keep the May __, 1994 draft confidential, it is well-settled that he has waived any privilege with respect to the other two written communications with Mr. Sharpe, since, by plaintiff's own description, these communications address the same alleged agreement.[3] <u>See, e.g.</u>, <u>Long-Term Capital Holdings v. U.S.</u>, 2003 WL 1548770, at *7 (D. Conn. Feb. 14, 2003) ("voluntary disclosure of otherwise privileged material will likely lead to compelled disclosure of the remainder") (citing <u>In re Steinhardt Partners</u>, 9 F.3d 230, 235 (2d Cir.1993)).

Moreover, plaintiff has waived any privilege with respect to these two Faegre & Benson documents given that he has placed at issue the very substance of those documents – i.e., whether or not the parties reached an agreement. <u>See</u> <u>Hutchinson v. Farm Family Cas. Ins. Co.</u>, 273 Conn. 33, 39, 867 A.2d 1, 5 (Conn. 2005) ("the attorney-client privilege implicitly is waived when the holder of the privilege has placed the privileged communications in issue."); <u>United States v. Bilzerian</u>, 926 F.2d 1285, 1292 (2d Cir.), <u>cert. denied</u>, 112 S. Ct. 63 (1991). Indeed, courts have consistently held that the attorney-client privilege is waived where the client institutes a lawsuit and places at issue his state of mind, knowledge or intent (e.g., whether there was a meeting of the minds) for which the attorney-client communications may be exceptionally probative. <u>See, e.g.</u>, <u>Commodities Futures Trading v. Richard</u>, 1996 WL 308286 (N.D. Ill. 1996) (finding waiver of the attorney-client privilege concerning communications and drafts of a

---

[3] The first document is described as "[a] May 6, 1994 letter from Kris Sharpe to Len Brandt regarding the consulting agreement." The second document being withheld is described as "Mr. Sharpe's handwritten notes of a conversation with Mr. Brandt regarding the consulting agreement." <u>See</u> Ex. C.

612160_3

SATTERLEE STEPHENS BURKE & BURKE LLP
Page 3

settlement agreement where an issue was whether or not the settlement agreement included indemnification for a $1.5 million payment since "it would be improper and unjust to assert the attorney-client privilege to bar discovery of either Richards or his attorneys' intent in negotiating the agreement"); Synalloy Corp. v. Gray, 142 F.R.D. 266, 269 (D. Del. 1992) ("[B]y claiming 'rescission' of the Agreement due to 'no meeting of the minds,' Chariot Group waived its right to prevent disclosure of communications which might show the parties intent in entering the Agreement.").

While this Court has stated that "[f]airness does not require that simply because a party places its motivation at issue, the party is required to disclose all communications with counsel that may bear on that motivation. . . . the rule is that a party may not attempt to demonstrate intent (or any fact, for that matter) by selectively revealing communications with counsel or by making assertions that can only be confirmed by reviewing privileged communications." TIFD III-E Inc. v. U.S., 223 F.R.D. 47, 49 (D. Conn. 2004) (Underhill, J.). Here, plaintiff specifically asserts (and defendants deny) that the parties had an agreement and that there was a meeting of the minds as to its terms. Moreover, plaintiff has selectively chosen to reveal his communications with Mr. Sharpe as contained in the May __, 1994 draft (see Ex. B), yet he refuses to disclose two related communications. Since plaintiff has placed his intent "at issue" and these documents would help expose plaintiff's intent "regarding the consulting agreement" (see Ex. C), they should be disclosed. Synalloy Corp; Richard; supra. Surely, plaintiff cannot expect to bring a $10 million claim against defendants on the basis of an alleged agreement and then refuse to produce documents that discuss that supposed agreement. For all of the foregoing reasons, defendants respectfully request that the Court compel production of these documents.[4]

Although defendants attempted to resolve this issue with plaintiff prior to plaintiff's submission of his opposition papers, plaintiff avoided the issue until he finally stated last week that he would not produce the documents. At plaintiff's request, defendants have agreed to postpone any conference with the Court on this issue until after plaintiff has submitted his opposition papers, but prior to the deadline for defendants to submit their reply briefing.[5] The briefing schedule on the two pending summary judgment motions that the parties recently submitted to the Court for consideration would require plaintiff's opposition to be filed and served by July 1, 2005, and defendants' reply to be filed and served by July 29, 2005. Accordingly, we respectfully request that the Court set a time next week for a telephone conference with the parties to resolve this issue.

Respectfully submitted,

Paul M. Brown (PB 8135)

---

[4] Defendants expressly addressed this issue in their summary judgment motion and reserved the right to introduce these documents in their reply if necessary. See Defs.' Mem. at 9 n. 5.

[5] Plaintiff's counsel indicated that they would like to submit an affidavit by plaintiff to address the issue of his intent concerning Mr. Sharpe's representation of the parties; however, based upon the subject matter and "at issue" waivers discussed above, defendants believe that any such submission would be rendered moot.

612160_3

SATTERLEE STEPHENS BURKE & BURKE LLP
Page 4

Attachments

cc:    Edward W. Dunham, Esq. (by facsimile)
       Jonathan Freiman, Esq. (by facsimile)
       Richard Roberts, Esq. (by facsimile)

612160_3