Wiggin and Dana LLP
One Century Tower
P.O. Box 1832
New Haven, Connecticut
06508-1832
www.wiggin.com

Jonathan M. Freiman
203.498.4584
203.782.2889 fax
jfreiman@wiggin.com

FILED

2005 JUL 19 A 9: 27

U.S. DISTRICT COURT
BRIDGEPORT, CT

**WIGGIN AND DANA**

*Counsellors at Law*

July 15, 2005

**VIA MESSENGER**

Honorable Stefan R. Underhill
United States District Judge
915 Lafayette Boulevard
Bridgeport, Connecticut 06604

Re:   *Brandt v. Home Diagnostics, Inc. et al*, C.A. 3:01-1889 (SRU)

Dear Judge Underhill:

I write in response to Paul M. Brown's letter of June 30, 2005 in the above-referenced case.

It is my understanding that the Court has invited the parties to resolve discovery disputes through telephone conferences. Mr. Brown, however, chose to use his letter not merely to request a conference, but to brief issues involved in the dispute and to request an order that Mr. Brandt produce documents that he believes protected by the attorney-client privilege. Mr. Brown's letter thus appears not to conform to the Federal Rules of Civil Procedure, which provide that "[a]n application to the court for an order shall be made by motion." Fed. R. Civ. Pro. 7(b); *see also* D. Conn. Chambers Practices (Underhill, J.) at 70 ("Unless counsel are requested or granted permission to file a letter brief, briefs should follow the form required by Local Rule.").

In order to assure compliance with the Federal Rules and the Court's stated preferences, we would ordinarily await permission from the Court before setting forth Mr. Brandt's responsive arguments in a letter. However, we do not wish to prolong unnecessarily the resolution of this discovery dispute. Accordingly, we set forth here our central arguments and stand ready to brief the issue more formally if Your Honor so directs.

As a preliminary matter, I should correct one misstatement in Mr. Brown's letter. The assertion that "plaintiff avoided the issue until he finally stated last week that he would not produce the documents" is incorrect. More than four months ago, this firm informed Mr. Brown and his local co-counsel, Richard Roberts, that we would "not be producing the documents" requested because "the privilege applies to these two documents and . . . Mr. Brandt has never waived the privilege." *See* E-mail of E. Dunham to P. Brown and R. Roberts (Feb. 22, 2005) (attached as Exh. A). Accordingly, the delay in raising this matter with the Court is of defendants' making.

*New Haven   Stamford   New York   Hartford   Philadelphia*

**WIGGIN AND DANA**

*Counsellors at Law*

*Defendants' assertions.* Defendants ask the Court to order Mr. Brandt to turn over to them a May 6, 1994 letter from (attorney) Kris Sharpe to (client) Mr. Brandt and Mr. Sharpe's handwritten notes of a conversation with Mr. Brandt regarding the consulting agreement at issue in this case. Defendants claim that the two documents were never privileged and, in the alternative, that any privilege has been waived.[1]

*Applicable law.* Rule 501 of the Federal Rules of Evidence establishes that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness [or other] person . . . shall be determined in accordance with State law."[2] Defendants concede that they seek access to the two documents "with respect to an element of a claim or defense as to which State law supplies the rule of decision," as they assert that the documents will prove "probative of whether the parties entered into an agreement." As Connecticut law supplies the rule of decision for the underlying dispute (which defendants acknowledge through the citations in their briefs on the pending motion for summary judgment), Connecticut law also supplies the relevant law for attorney-client privilege.

*Existence of the privilege.* Connecticut law has long made clear that "[c]ommunications between client and attorney are privileged when made in confidence for the purpose of seeking legal advice." *Gould, Larson, Bennet, Wells and McDonnel, P.C. v. Panico*, 273 Conn. 315, 321 (2005) (*citing Doyle v. Reeves*, 112 Conn. 521, 523 (1931)). Defendants claim that because Mr. Brandt hoped that Mr. Sharpe would represent both him and defendants while drafting a formal written contract, Mr. Brandt had no expectation of confidentiality and his communications with Mr. Sharpe were therefore not privileged. That is not correct. Submitted with this letter is an affidavit from Mr. Brandt, which makes clear that, though he had hoped that Mr. Sharpe would represent both sides, Mr. Sharpe refused. Exh. B ¶¶ 7-8. Messrs. Brandt and Sharpe then proceeded with the understanding that Mr. Sharpe was representing only Mr. Brandt. Exh. B ¶¶ 9-10; *see also* Exh. C (L. Brandt depo. tr. at 240-

---

[1] Mr. Brown also uses the letter to repeat defendants' summary judgment arguments. Having already briefed those issues in our opposition to defendants' motion for summary judgment, we will not burden the Court with repetition.

[2] This direction to apply the applicable state law of privilege in diversity cases stands in contrast to the rule governing federal question cases (including federal criminal cases), where privilege questions are determined in accord with federal common law, i.e., "by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501.

**WIGGIN AND DANA**

*Counsellors at Law*

41).[3] The later communications between Messrs. Sharpe and Brandt were thus clearly "made in confidence for the purpose of seeking legal advice." *Panico*, 273 Conn. at 321.[4]

Defendants also assert that because Mr. Brandt later sent the draft contract to Mr. Holley, he could not have intended for his communications with Mr. Sharpe to be confidential. That makes no sense. In May 1994, Mr. Brandt and defendants shared a cooperative and amicable relationship, and Mr. Brandt felt comfortable sharing with Mr. Holley the draft formal contract prepared by his attorney. That does not mean that he felt comfortable sharing his attorney's private letters (such as the May 6, 1994 cover letter) or notes from attorney-client conversations – and it certainly does not mean that he had no expectation of confidentiality. Mr. Brandt intended to expedite the potential completion of a formal contract memorializing their existing agreement by sharing a draft of it with defendants, but he did not intend to make his communications with Mr. Sharpe non-confidential. Any contrary rule would lead parties to a contract to reduce cooperation. In any event, Mr. Brandt clearly regarded his one-to-one communications with Mr. Sharpe as confidential efforts to garner legal advice. Exh. A ¶ 10-16. Privilege attached.

*No waiver.* Mr. Brown asserted waiver claims chiefly in the context of federal common law doctrines and precedents, somewhat confusing the inquiry. Defendants' position boils down to their belief that Mr. Brandt waived his attorney-client privilege with Mr. Sharpe by doing two things: sending the draft formal contract prepared by Mr. Sharpe to Mr. Holley, and bringing suit for a breach of his agreement with defendants. Neither of these commonplace acts waived the privilege.

The Connecticut Supreme Court has clearly defined the conditions for a finding of an implied waiver of attorney-client privilege. An implied waiver occurs "when a party specifically pleads reliance on an attorney's advice as an element of a claim or defense, voluntarily testifies regarding portions of the attorney-client communication, or specifically places at issue, in some other manner, the attorney-client relationship." *Metropolitan Life. Ins. Co. v. Aetna Cas. and Sur. Co.*, 249 Conn. 36, 52-53 (1999). "In those instances," the court noted, "the party has waived the right to confidentiality by placing the content of the attorney's advice directly at issue because the issue cannot be determined without an examination of that advice." *Id.* at 53. Thus, a party is left with two choices when "the information is actually required for a truthful resolution of the issue . . . which the party has raised": it "must either waive the attorney-client privilege as to that information or it should

---

[3] It is axiomatic that the client is the person for whom services were rendered and to whom ethical obligations are due, not the anticipated payer of the legal bills.

[4] Mr. Brown cites various decisions interpreting the federal common law of evidence, which is not applicable here.

**WIGGIN AND DANA**

*Counsellors at Law*

be prevented from using the privileged information to establish the elements of the case." *Id.* (quotation omitted).[5]

None of the conditions for implied waiver is present here. Mr. Brandt does not plead reliance on Mr. Sharpe's advice as an element of any of his claims. He has not testified to or otherwise introduced to this Court any portions of the March 6, 1994 letter or Mr. Sharpe's handwritten notes. Nor has he "place[d] at issue, in some other manner, the attorney-client relationship." *Id.* In short, "the privileged documents are not at issue because the plaintiff is not relying on the privileged communications to prove" his case. *Id.* at 54-55.

Mr. Brandt claims that an agreement between the parties was reached in March 1994, when he and Mr. Holley spoke following the exchange of faxed signatures on the 3/2/94 compensation letter. He has never claimed that the May 1994 effort to memorialize the existing agreement created the parties' agreement, let alone put at issue his attorney's notes or letter to him of the same time. To be sure, the defendants are curious about what the documents contain. But a felt "need" for privileged documents does not permit destruction of the privilege. *Hutchinson v. Farm Family Cas. Ins. Co.*, 273 Conn. 33, 44 (2005) ("[T]his court has consistently held that a party's need – even if compelling – cannot destroy the attorney-client privilege.").

A client who engages an attorney to draft a formal written contract does not waive a privilege described as "a mainstay of our system of justice," *Panico*, 273 Conn. at 322, merely by forwarding a draft contract to the other parties to an agreement for further discussion. Unsurprisingly, defendants cite no case suggesting such a radical proposition.[6]

Nor does a plaintiff suing for breach of contract waive the attorney-client privilege merely because contract law requires proof of a meeting of the minds. *Contra* P. Brown letter at 3 ("plaintiff specifically asserts . . . that there was a meeting of the minds" and so has "placed his intent 'at issue'" necessitating the release of "documents [that] would help expose plaintiff's intent"). If simply putting meeting of the minds at issue forfeited the attorney-client privilege, then most contract plaintiffs would find the privilege worthless. *Cf. TIFD*

---

[5] Mr. Brown quotes *Hutchinson v. Farm Family Cas. Ins. Co.*, 273 Conn. 33, 39 (2005) ("the attorney-client privilege implicitly is waived when the holder of the privilege has placed the privileged communications in issue"), but misleadingly fails to mention that *Hutchinson* was doing no more than reiterating *Metropolitan Life*, which set forth the definition of "at issue" quoted above.

[6] Mr. Brown seeks to buttress his argument by citing a sentence in *Long-Term Capital Holdings v. United States*, 2003 WL 1548770 (D. Conn. Feb. 14, 2003). The case is inapposite. First, it is a federal magistrate's decision in a tax case applying the federal common law of privilege, not a diversity case applying Connecticut law. Second, it does not concern anything remotely resembling a party who forwarded a draft contract for further discussion with the other parties to a contract.

Page 5

**WIGGIN AND DANA**

*Counsellors at Law*

*III-E, Inc. v. United States*, 223 F.R.D. 47 (D. Conn. 2004) ("If simply placing intent at issue forfeited the attorney-client privilege, most criminal defendants would find the privilege worthless. That, however, is not the law.").

Mr. Brandt never waived his attorney-client privilege, and the documents should not be produced.

Respectfully,

*[signature]*

Jonathan M. Freiman

   cc:    Edward Wood Dunham
            Paul M. Brown
            Richard Roberts