UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

— — — — — — — — — — — — — — — — — — — — — — — — — — x

LEONARD BRANDT,                                     :

        Plaintiff,                          : Civil Action No.:
                                   3:01-1889 (SRU)
            - against -                     :

HOME DIAGNOSTICS, INC., GEORGE H. HOLLEY,   :
AND JUDY CHENG SALEM, EXECUTRIX OF THE
ESTATE OF ROBERT J. SALEM,                          : October 7, 2005

        Defendants.                         :

— — — — — — — — — — — — — — — — — — — — — — — — — — x

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT
## OF THEIR MOTIONS FOR SUMMARY JUDGMENT

Paul M. Brown (bar no. CT 23232)
SATTERLEE STEPHENS BURKE & BURKE LLP
230 Park Avenue
New York, New York 10169
Telephone: (212) 818-9200
*Attorneys for Defendants HDI and
George Holley*

    - and -

Richard A. Roberts (bar no. CT 07665)
Thomas J. Lengyel (bar no. CT 21488)
NUZZO & ROBERTS LLC
One Town Center, P.O. Box 747
Cheshire, Connecticut 06410
Telephone: (203) 250-2000
*Attorneys for the Defendant Estate of
Robert Salem*

Defendants Home Diagnostics, Inc. ("HDI"), George Holley ("Holley") and the Estate of Robert J. Salem ("Salem") (collectively, "Defendants") jointly submit this Reply Brief in support of summary judgment on all of plaintiff Leonard Brandt's ("Brandt's") claims.[1]

## PRELIMINARY STATEMENT

Brandt's mischaracterization of the evidence in this case, particularly his own testimony, in order to create the impression of disputed issues of material fact which do not otherwise exist, cannot serve to prevent summary judgment in this case. Brandt either contradicts himself or fails to provide any evidence that would be admissible at trial to prove necessary elements of his contract claim, such as (i) the alleged parties to, and beneficiaries of, the "contract," (ii) the time of its formation, (iii) its alleged acceptance by Defendants, and (iv) essential contract terms, including duration and the scope of services. Indeed, Brandt astonishingly claims that he is entitled to over $10 million in "incentive compensation" based upon "10% of the value, interest, equity, collections, revenue and assets above $1,000,000 received from HDI by MIT..." (Compl., ¶ 13[b]); yet, the quoted incentive compensation term *does not appear in a single document*, and the allegedly binding March 2, 1994 letter ("March 2nd Letter") *contains a different* compensation term. Holley Aff., Ex. G.

Brandt's opposition brief does not salvage his defective contract claim. But for Brandt's bald assertions that the parties' minds had met and that "their discussions resulted in *an agreement on the approach*," he ignores Defendants' arguments on contract formation. Pl. Mem., 24-26. And, what Brandt mischaracterizes as a few "missing terms" that the jury can readily ascertain (Pl. Mem., 29), are incurable flaws concerning the parties' non-existent meeting

---

[1] Brandt's counsel has consented to Defendants' joint filing of this 20-page brief in response to Brandt's Memorandum of Law in Opposition ("Pl. Mem."). Salem's initial Memorandum will be cited to as "Salem Mem." while HDI's and Holley's initial Memorandum will be cited to as "HDI Mem."

1

of the minds, the need for future approvals and ambiguous or non-existent essential terms.[2] Connecticut courts routinely dismiss contract claims where, as here, plaintiff's testimony and documentary "evidence" cannot establish a "meeting of the minds" on essential contract terms.

In any event, Brandt is not entitled to any pre-judgment interest on his contract claim. There is no "sum certain" for purposes of §37-3a. Moreover, Brandt's claims for unjust enrichment, promissory estoppel and fraud should be dismissed on summary judgment given that these claims are legally deficient in light of the undisputed facts developed through discovery.

Summary judgment should also be granted in favor of Salem given that Holley was not his agent. Brandt admits that he never had a conversation with Salem about the March 2nd Letter and that Holley never expressly told Brandt that he was Salem's agent. Indeed, Holley has sworn that he did not act as Salem's agent. Moreover, the Minnesota District Court ruled, on a full record after discovery, that there was no agency relationship between Holley and Salem.

## ARGUMENT

## I.    NO REASONABLE JUROR COULD FIND THAT THERE WAS A MEETING OF THE MINDS AND THE ALLEGED AGREEMENT LACKS ESSENTIAL TERMS

Brandt's contract claim should be dismissed as to all Defendants given that (i) no reasonable juror could find there was a meeting of the minds between the alleged parties to the agreement; and (ii) the so-called agreement itself lacks essential terms to be enforceable under Connecticut law. HDI Mem., 13-20; Salem Mem., 16-17. Whether there is sufficient evidence upon which a reasonable fact-finder could decide the issue of contract formation or whether essential terms are included in a contract are matters of law for the court. *See, e.g., Adair v. Pfizer, Inc.*, 245 F. Supp. 2d 437, 441-43 (D. Conn. 2003) (Underhill, J.).

---

[2]   Indeed, Brandt engaged legal counsel to try to create a formal, written contract for the parties, and the resulting draft letter agreement, dated "May __, 1994," contains 19 bracketed items upon which the parties *never agreed*, including a definition of services to be provided, the parties to the agreement, a term of duration and the incentive fee. *See* Holley Aff., Ex. H.

## A.    There Was No Meeting of the Minds Between Brandt and Defendants

For there to be a "meeting of the minds," Connecticut law requires that an offer and acceptance be "based on an identical understanding by the parties." *See Geary v. Wentworth Labs.*, 60 Conn. App. 622, 627 (2000); *L & R Realty v. Connecticut Nat'l Bank*, 53 Conn. App. 524, 534-35 (1999).   Here, there is no evidence upon which a reasonable juror could find that there was a meeting of the minds between Brandt and the Defendants.   Brandt contradicts himself or fails to provide any evidence that would be admissible at trial on the issues of: (i) who the alleged parties to, and beneficiaries of, the "contract" were; (ii) when the contract was formed; (iii) whether the contract was unequivocally accepted; (iv) what contractual services were to be performed or provided; and (v) what were the basic terms of the agreement.

### 1.    Brandt changes his story concerning the identity of the parties.

It is well-settled that, "[t]o form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that *are definite and certain between the parties ....*" *Geary*, 60 Conn. App. at 627 (emphasis added).   "Plainly, the identity of the contracting parties is a material term in any contract, especially when they commit themselves to future performances on each other's behalf." *Building Traditions, LLC v. Panek*, 2005 WL 1023148, at *12 (Conn. Super. 2005).   Brandt has vastly changed his story with respect to the alleged counterparties to the contract *and* the purported beneficiaries of the "services" that he was to provide.[3]   HDI Mem., 4-5, 16.   Accordingly, there could not have been a meeting of the minds among the named Defendants with whom he allegedly contracted.[4]   *See Geary, supra.*

---

[3]   It is also unimaginable that someone seeking $10 million in incentive compensation cannot specify what exactly he was supposed to do for this money.   Tellingly, it is not spelled out in the Complaint, the March 2nd Letter, or the "May __, 1994" draft.   Arg. I.A.4; Brown Aff., Ex. A; Holley Aff., Exhs. G & H.

[4]   Other than to clarify that he "does not claim that the agreement was formed with HDI" (Pl. Mem., 25 n.17), Brandt does not address Defendants' points concerning his constantly changing, yet irreconcilable, stories as to the identities of the alleged counterparties to his "contract." Pl. Mem., 24-26.

Indeed, throughout the course of the Minnesota action and this action, Brandt has inconsistently stated that the "agreement" was entered into by him, on the one hand, and various combinations of HDI, MIT, ASC, Inc. ("ASC"), Holley and Salem, on the other. Moreover, Brandt has inconsistently claimed that the agreement was for services to be provided to (i) MIT and HDI, (ii) MIT only, (iii) HDI only, (iv) MIT, HDI, Holley and Salem, and (v) MIT, Holley and Salem. For instance, in his May 1, 2001 affidavit submitted to the Minnesota Court, Brandt claimed that, on March 2, 1994, "an agreement was reached with Mr. Holley, Robert Salem, MIT and HDI to compensate me [Brandt] for my services *on behalf of MIT and HDI.*[5] *See* Lengyel Aff., Ex. A, ¶ 7 (the May 1, 2001 Affidavit of Leonard Brandt) (emphasis added). Then, approximately two months later, Brandt claimed that, on March 2, 1994, "an agreement was reached with Mr. Holley, Robert Salem, MIT and HDI to compensate me [Brandt] for my services *on behalf of such defendants [Holley, Salem, MIT and HDI].*" Lengyel Aff., Ex. B, ¶ 10 (the June 28, 2001 Affidavit of Leonard Brandt) (emphasis added).

Yet, the "May __, 1994" letter agreement that Brandt asked Faegre & Benson to draft and then forwarded to Defendants (a draft that post-dates by two months the allegedly binding March 2nd Letter), was to be executed by MIT, ASC, Holley and Salem (Holley Aff., Ex. H [HDI 100085-86]), for services that Brandt would render *to MIT only* "[i]in accordance with [their] discussions over the past several months." *Id.* (HDI 100084). However, in Brandt's November 10, 1993 letter to Holley – which purportedly "summarizes the arrangement between myself [Brandt] and MIT and HDI" – Brandt contended "that there are really two agreements here. One with MIT and one with HDI." Holley Aff., Ex. C (HDI 100079). But, in the allegedly

---

[5] As addressed more fully in Arg. I.A.2, *infra*, Brandt has also changed his story with respect to the time of formation, most recently claiming that the agreement was formed subsequent to March 2, 1994 during "telephone conversations between Holley and Brandt." Pl. Mem., 25 n.18.

binding March 2nd Letter from Brandt to Holley, Brandt claims to have had an "understanding ... with MIT and its subsidiary ASC and Bob Salem and [Holley]." Holley Aff., Ex. G.

In the amended Complaint (the operative document upon which a jury could assess liability), Brandt again changed his story. He claimed that "Mr. Holley, Mr. Salem, MIT, and HDI promised and agreed" to pay Brandt for his services, but did not indicate for which entity(ies) or person(s), contractually, those services were to be provided. *See* Brown Aff., Ex. A (Compl. ¶¶ 12(f), 13). At deposition, however, Brandt's story changed again in that he claimed only to have had an agreement with Holley, Salem and MIT. Brown Aff., Ex B (Brandt Tr. 433:9 – 435:5). Brandt's opposition brief now, indeed, confirms that *he no longer claims to have had an agreement with HDI. See* Pl. Mem., 24 n.17. Yet, Brandt's breach of contract is asserted against all Defendants. Compl., ¶¶ 18-22.

Since an essential component of contract formation is that "the terms that are definite and certain *between the parties*," and Brandt contradicts himself no fewer than five times regarding the alleged parties to, and beneficiaries of, the agreement, his contract claim is defective and should be dismissed.[6] *Geary*, 60 Conn. App. at 627.

## 2. Brandt changes his story concerning the time of contract formation.

"[D]efiniteness as to material matters is of the very essence in contract law." *Ohanian v. Avis Rent A Car Sys., Inc.*, 779 F.2d 101, 109 (2d Cir. 1985). "Where the essential terms of an agreement are either unclear or omitted, the contract must fail because judicial interpretation of the contract is not possible." *CLT Telecom. Corp.*, 1999 WL 200700, at *5. Here, Brandt's contract claim must fail because he has unabashedly changed his story concerning

---

[6]  Similar to the Second Circuit's rule that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony," Brandt cannot use his own deposition testimony to contradict his Complaint. *Cf. CLT Telecom. Corp. v. Colonial Tech. Corp.*, 1999 WL 200700, at *5 n.2 (D. Conn. Mar. 21, 1999), *quoting Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

the alleged moment of contract formation, and thus, there could not have been a meeting of the minds as alleged in his Complaint. *See Myers v. Bunker Ramo Corp.*, 1992 WL 88166, at *3 (D. Conn., Jan. 21, 1992) (summary judgment granted where plaintiff's own testimony revealed that there had not been an offer during the golfing event alleged to be the time of contract formation); *cf. CLT Telecom. Corp.*, 1999 WL 200700, at *5 (summary judgment warranted where plaintiff's affidavit and contradictory testimony regarding certain telephone conversations did not establish an offer on the alleged date of formation).

Here, two prior affidavits by Brandt, his interrogatory responses and the Third Amended Complaint state that the *actual, final agreement* was formed on March 2, 1994 when Holley faxed his limited, handwritten counter-offer to Brandt on the letter of said even date.[7] Brown Aff., Exhs. A & C; Roberts Aff., Exhs. A & B.   Yet, at his deposition and in his opposition brief, Brandt now claims that the agreement was formed after March 2, 1994, during "telephone conversations between Holley and Brandt." Pl. Mem., 25; Brown Aff., Ex. B (Brandt Tr. 287-89).  Given Brandt's contradictory accounts as to the date of formation, no reasonable juror could find that there was a meeting of the minds on March 2, 1994 as alleged in the Complaint, or at anytime thereafter; thus summary judgment should be granted. *Myers, supra.*

### 3.   There was no unequivocal acceptance by Defendants.

In addition to fatal defects regarding the alleged parties to the agreement and the time of its formation (Args. I.A.1 & I.A.2, *supra*), Brandt completely fails to address

---

[7]   To be certain, Brandt *never said anything* prior to his December, 2003 deposition concerning subsequent telephone conversations with Holley that constituted a basis for his alleged agreement. Indeed, in Brandt's September, 2002 response to the interrogatory question, "Please specify the precise date(s) upon which you contend the alleged agreement(s) was (were) created, and the precise facts, including but not limited to document(s), words or actions, which you contend formed the basis for the formation of, caused the formation of, or resulted in the formation of the alleged agreement(s)," Brandt stated that "[o]n March 2, 1994 . . . Mr. Holley . . . faxed [the March 2nd Letter] back to Mr. Brandt at his Minnesota address *confirming his agreement. At this time, an agreement was reached . . . .*" *See* Brown Aff., Ex. C (Interrogatory Question & Response No. 2) (emphasis added).

Defendants' argument that there was no "unequivocal acceptance" by Holley or the other Defendants.[8] *Compare* Pl. Mem., 24-25 *to* HDI Mem., 16. First, "[t]o constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on *an identical understanding* by the parties." *Geary*, 60 Conn. App. at 627 (emphasis added); *see also Bridgeport Pipe*, 159 Conn. at 249. But, it was impossible for the named defendants (Holley, Salem and HDI) to have had the "identical understanding" as Brandt given that:

> (1) The alleged "incentive compensation" term as set forth in the Complaint contains a different compensation term than the one contained in the allegedly binding March 2nd Letter (Compare Compl., ¶ 13 *to* Holley Aff., Ex. G);[9]
>
> (2) Brandt himself was still planning "to construct a more complete definition of [the parties'] understanding" after the March 2nd Letter (Holley Aff., Ex. G);
>
> (3) the alleged agreement included terms allegedly discussed in "a conversation, the notes, the questions that he [Holley] made, the response and the understanding reached which [Brandt didn't] know happened later on March 2 or on March 3;" Brown Aff., Ex. B (Brandt Tr. 289:2-6); *accord* Pl. Mem. at 25;
>
> (4) Brandt himself cannot recall if every open question was discussed and agreed upon during the telephone conversation that he had with Holley subsequent to March 2nd or 3rd. Brown Aff., Ex. B (Brandt Tr. 289:13-24); Brandt also believed that some items that were not worked out, but he had "faith" that if they were considered, they could be worked out. (Brandt Tr. 415:14 - 416:23); and
>
> (5) Brandt never had a conversation with Salem about the alleged agreement; Holley never expressly told Brandt that he was Salem's agent; and Holley swore that he did not act as Salem's agent. (Brandt Tr. 150:8-152:21); Holley Aff., ¶ 33.

*See also* HDI Mem., 5, 16-17, 21-22; Salem Mem., 17. Indeed, Brandt's only support for his belief that there was a meeting of the minds is his own self-serving deposition testimony in

---

[8] Rather than address Defendants' arguments concerning the requirement of "unequivocal acceptance," Brandt oddly discusses the March 2nd Letter's lack of an integration clause, which Brandt contends permits an agreement to be formed over time through a series of conversations, notes, questions and responses. Pl. Mem., 24-25. Brandt's argument, however, completely misses the point. Even if a set of terms need not be agreed upon simultaneously, they still must be agreed upon. *Adair*, 245 F. Supp. 2d at 441; *Bridgeport Pipe Eng. Co. v. De Matteo Constr. Co.*, 159 Conn. 242, 249 (1970). Brandt has produced no documentary evidence and has elicited no testimony from Defendants that could prove at trial that Defendants "unequivocally" agreed to Brandt's alleged terms, and thus, his contract claim should be dismissed.

[9] Brandt has admitted that Section 13(b) of the Complaint setting forth his compensation claim is inconsistent with the March 2nd Letter that is the supposed basis for his compensation. Lengyel Aff., Ex. C (Brandt Tr. 211:15 - 212:13).

which he stated that "George [Holley] now felt we had reached agreement" and that he, Brandt, recalled no "further conversation" on compensation. Pl. Mem., 25-26.

Brandt cannot avoid summary judgment on these points by mischaracterizing the evidence, particularly his own testimony, in order to create the impression of a disputed issue of fact that does not otherwise exist. *See, e.g., Myers*, 1992 WL 88166, at *3 & n.33 (plaintiff's "interpretation" of defendant's statements concerning a job offer upon retirement did not create material issues of fact as to whether there was, in fact, a job offer since plaintiff did not testify as to any actual statements by defendant evidencing a job offer; thus, summary judgment was proper on plaintiff's breach of contract claim). Based on the foregoing, there was no acceptance by Defendants. At best, there was an unenforceable agreement to agree. *See* HDI Mem.,19-20.[10]

Second, Brandt completely fails to address Defendants' argument that a counter-offer cannot constitute acceptance as a matter of law. *Compare* Pl.'s Mem., 24-25 *to* HDI Mem., 16; *see also Lyon v. Adgraphics, Inc.*, 14 Conn. App. 252, 254-55 (1988) (a counter-offer cannot constitute acceptance but rather creates a power of acceptance in the offeree if accepted under the offeror's terms and conditions). Since Brandt now concedes in his opposition brief that "[he] knew that Holley's handwritten comments represented a counter-proposal" with respect to measuring a crucial component of Brandt's compensation (Pl. Mem., 25), Holley's notes cannot constitute Holley's acceptance. *Lyon*, 14 Conn. App. at 254-55. Moreover, Brandt offers no testimony that he *specifically accepted* Holley's terms.[11]    Thus, the March 2nd Letter and

---

[10]  Also, while Brandt claims that his "contract cause of action arises out of an agreement formed from a series of conversations and letters" in March, 1994 (Pl. Mem., 24), his contract claim impermissibly covers his services from 1993 to 1999 – periods prior to the alleged formation of the agreement in 1994. Brown Aff., Ex. A (Compl. ¶¶ 14, 15, 18).

[11]  Brandt's citation to page 289 of his own deposition testimony that the "agreement was formed through 'a conversation, the notes, the questions that he [Holley] made, the responses and the understanding reached'" utterly lacks any specificity which could support his acceptance of Holley's limited counter-proposal. *See* Pl. Mem., 25.

624383_5

Holley's handwritten comments did not legally constitute Holley's acceptance or Brandt's acceptance of Holley's limited counter-offer. *See Lyon, supra.*

### 4.    There was no certainty as to what services Brandt was to perform.

Although Brandt glibly states that "[s]pace does not permit anything approaching a full accounting of Brandt's contributions over the years to Holley, Salem, MIT and ASC" and that his "duties were sufficiently clear" (Pl. Mem., 18, 27), tellingly, his opposition brief fails to provide a single *legal connection* between his "contributions over the years" and any agreement reached with Defendants on March 2, 1994.[12]  Neither his Complaint nor the March 2nd Letter detail what services Brandt was to provide for the incentive compensation.[13]  *See* Brown Aff., Ex. A; Holley Aff., Ex. H.  Even the "May __, 1994" draft agreement by his counsel states that it is "to formalize our verbal understandings with regard to certain services you would render;" yet, when Brandt was asked, "Want more definition of services to be rendered?," Brandt revealingly responded, "No more definition necessary."  Holley Aff., Ex. G.  But, Brandt now contends that his "duties [were] outlined in conversations, not [the] 3/2/94 compensation letter."  Pl. Mem., 27.

Given that there is no evidence that Brandt's alleged contractual duties were set forth on March 2, 1994, and that Connecticut law requires an "identical understanding" of terms by the parties for there to be a meeting of the minds sufficient to constitute formation (*Geary*, 60 Conn. App. at 627; *Bridgeport Pipe*, 159 Conn. at 249), Brandt's contract claim should be

---

[12]  No mention of the services to be provided was made in either the November 10, 1993 letter or the March 2nd Letter. Holley Aff., Exhs. C & G.  Indeed, even as of the writing of this brief, Defendants still do not know what services Brandt was to perform.

[13]  Holley and Salem have consistently maintained that the *only way that Brandt would receive incentive compensation* was for raising equity capital for HDI (which Brandt never did). Holley Aff., ¶¶ 17-20. Brandt has never, to this day, stated what he was supposed to do for the fee he seeks.

dismissed since no "identical understanding" of the services to be provided could have existed between the parties on March 2, 1994.[14]

### B.    The So-Called Agreement Fails For Lack of Essential Terms.

Brandt incorrectly asserts that "Defendants' argument that the agreement lacks essential terms lacks not just factual support, but legal support as well." Pl. Mem., 28.  As a purported consulting agreement, however, Connecticut law deems "duration, compensation and the employee's duties" to be "[e]ssential or material terms." *Adair*, 245 F. Supp. 2d at 441 & n.1 (finding an independent contractor or consultant agreement to require "the same essential or material terms that would be found in a valid employment contract"); *see also Grossman v. Computer Curriculum Corp.*, 131 F. Supp. 2d 299, 308 (D. Conn. 2000).  "If essential terms of an agreement are omitted or are phrased in too indefinite a manner, no legally enforceable contract will result." *Brookhaven Hous. Coalition v. Solomon*, 583 F.2d 584, 593 (2d Cir. 1978) (*citing Ginsberg Machine Co. v. J. & H. Label Processing Corp.*, 341 F.2d 825 (2d Cir. 1965)). Here, the duration and "employee's duties" terms were omitted and the compensation term was "phrased in too indefinite a manner;" accordingly, Brandt's contract claim is not legally enforceable.[15]  *Brookhaven*, 583 F.2d at 593; *see also CLT Telecom. Corp.*, 1999 WL 200700, at

---

[14]  Brandt completely ignores the requirement that a contract "must be definite and certain as to its terms and requirements" at the time of formation to be enforceable. *Dunham v. Dunham*, 204 Conn. 303, 313 (1987), *overruled on other grounds by Santopietro v. New Haven*, 239 Conn. 207 (1996). Yet, he clearly maintains that "Holley and Brandt agreed to those duties *during several conversations from late 1993 through early 1994*." Pl. Mem., 27 (emphasis added). Again, this period is prior to the alleged formation in March, 1994.

[15]  Glossing over these fatal shortcomings, Brandt skips ahead and cites cases such as *Willow Funding, Presidential Capital* and *Nora Beverages* for the proposition that an agreement will not be rejected if some terms are missing but can be readily ascertained. Pl. Mem., 29.  Yet, none of the aforementioned cases permitted contract claims to proceed where, as here, there was a dispute as to whether or not there was a meeting of the minds in the first place. *See; Presidential Capital*, 231 Conn. 500 (1994); *Willow Funding*, 63 Conn. App. 832, 844 (2001); *Nora Beverages*, 164 F.3d 736, 749 (2d Cir. 1998); Arg. I.A, *supra*. Indeed, in *Presidential Capital*, there was no dispute between the parties that an agreement had been formed. *Presidential Capital*, 231 Conn. at 503. And with respect to *Nora Beverages*, Brandt's counsel must only have read part of the case. The Second Circuit dismissed one of plaintiff's contract claims on summary judgment concerning an alleged 12-oz bottle supply contract where, as here, there

*5 (granting summary judgment on contract claim where no express understanding was reached on an alleged management contract's duration or the management services to be provided).

### 1.    The agreement's duration is nowhere defined.

It is undisputed that the allegedly controlling March 2nd Letter contains no term of duration. Holley Aff., Ex. G; Pl. Mem., 26. While Brandt now claims that "[t]he agreement's duration was marked by events, not years" (Pl. Mem., 26), the alleged events that "marked" its duration are also nowhere mentioned or defined the March 2nd Letter. Holley Aff., Ex. G. Brandt similarly neglected to mention any alleged event-driven mileposts in his Complaint. Moreover, Brandt's counsel's present contention that the agreement *would terminate* if HDI obtained "an active outside board" or if there was a "turn-around and potential liquidation of the business" (Pl. Mem., 26), is not only false because it mischaracterizes Brandt's testimony,[16] but it is belied by his claim that he would still be entitled to 10% of certain transactions *even if they occurred today*. Brown Aff., Ex. B (Brandt Tr. 503:17 – 506:9).[17]

### 2.    Brandt's duties are nowhere defined.

It is undisputed that the allegedly controlling March 2nd Letter contains no recitation of Brandt's duties. Holley Aff., Ex. G; Pl. Mem. at 27. While Brandt claims that he had many duties, the ones he cites were allegedly agreed to "during several conversations from late 1993 through early 1994 (Pl. Mem., 27), and thus, pre-date the parties' alleged agreement.

---

was no evidence from which a reasonable juror could infer the formation of an agreement between the parties and where the alleged contract lacked essential terms. *Nora Beverages*, 164 F.3d at 749-50.

[16]    Brandt only stated that he "should be responsive" to HDI not having an active outside board and limited senior management experience – *not* that the agreement would terminate if HDI obtained those things in his opinion. *See* Brown Aff. Ex. B (Brandt Tr. 192:12-18).

[17]    Brandt's argument that the parties agreed to a term of unlimited duration in the March 2nd Letter because it made no mention of term, whereas an earlier January 18, 1994 letter had mentioned five years (Pl. Mem., 27 n.19), is also fallacious and should not be countenanced given that: (i) a lack of evidence is not evidence of a lack; (ii) Brandt wrote in the March 2nd Letter that he "plan[ned] to construct a more complete definition of our understanding" (Holley Aff., Ex. G); and (iii) Holley testified that they never could agree upon a term. Holley Aff., ¶ 24. Most tellingly, Brandt's Minnesota lawyers prepared the "May __ 94" draft that asks, what is the term? Holley Aff., Ex. H.

### 3.    The compensation term is incomprehensible.

The compensation term is phrased in too indefinite a manner to be enforceable. HDI Mem., 21-22. Even Brandt contradicts himself as to the contents of this allegedly agreed upon term. *Compare* Compl., ¶ 13 *to* Holley Aff., Ex. G (compensation term contained in the March 2nd Letter). While Brandt states that a jury "will simply have to listen to Len Brandt's testimony, listen to Defendants' testimony, and then . . . decide what it believes" (Pl. Mem., 28), no reasonable juror could find that the compensation term is sufficiently definite. Brandt cannot avoid summary judgment on his contract claim by contradicting himself and then asking the jury to decide whether they believe Brandt's compensation story, version No. 1 (the March 2nd Letter), or Brandt's compensation story, version No. 2 (paragraph 13 of the Complaint).

## II.    THE PRE-JUDGMENT INTEREST CLAIM MUST FAIL

Connecticut requires that two elements be met: (1) the claim must be for a sum certain or *liquidated* sum; and (2) it must be for money wrongfully withheld.[18] *Ceci Bros., Inc. v. Five Twenty-One Corp.*, 81 Conn. App. 419 (2004); Pl. Mem., 38. Here, Brandt's incentive compensation claim is not for a sum certain. Brandt defines a liquidated sum as one that "is susceptible of being made certain in amount by mathematical calculations from factors which are or ought to be in the possession or knowledge of the party to be charged." Pl. Mem., 38-39.

### A.    This Case Does Not Involve a Sum Certain or Liquidated Debt

Brandt misrepresents Defendants' arguments when he states that Defendants believe that he "must establish 'precisely how much money he is allegedly owed' before trial in order to avail himself of §37-3a." Pl. Mem., 39. Rather, Defendants argued that there could be no liquidated sum where: (i) the parties themselves never agreed to key compensation terms,

---

[18] The issue of whether the amount is "liquidated" is a question of law. *Pilato v. Kapur*, 22 Conn. App. 282, 283 (1990); Pl. Mem., 38-41.

such as the "bogey;" (ii) Brandt has never provided a sum certain for his damages after 11 years despite Defendants' request for a revised interrogatory response; and (iii) the compensation term on which Brandt relies in the March 2nd Letter is different than the one that appears in his Complaint. *See* HDI Mem., 29-30. Tellingly, Brandt does not rebut any of these arguments in his opposition papers. *See* Pl. Mem., 38-41. He does not claim that the parties agreed to the bogey; he has not provided, and does not claim to have provided, a revised damages interrogatory; and he *concedes* that the alleged compensation term set forth in Section 13(b) of the Complaint is inconsistent with the term set forth in the March 2nd Letter. *See* n. 9, *supra*.

Indeed, Brandt's inherently contradictory compensation claim is defined in his Complaint as "ten percent *(10%) of the value, interest, equity, collections, revenue and assets* above $1,000,000 received from HDI by MIT; its affiliate company, Applied Sciences Corp. ('ASC'); and Messrs. Holley and Salem;" whereas it is defined in the March 2nd Letter as "compensation equal to *10% of any assets* received above $1,000,000 by the collective group of MIT, ASC, Bob Salem and yourself." *Compare* Brown Aff., Ex. A (Compl., ¶ 13(b)) *to* Holley Aff., Exh. G (emphases added). Thus, it is impossible to calculate the 10% compensation claim given that one could use "10% of any assets" or some other number based upon 10% of "value" and/or "interest" and/or "equity" and/or "collections" and/or "revenues" and/or "assets," depending upon which version of Brandt's compensation story one relies. Since Brandt's alleged contract compensation is not "susceptible of being made certain," *Costello*, 193 Conn. at 165, Brandt cannot even meet the *Costello* standard upon which he relies.

In addition, under Connecticut law, "[a] plaintiff's burden of demonstrating that the retention of money is wrongful requires more than demonstrating that the opposing party detained money when it should not have done so." *Smithfield Associates, LLC v. Tolland Bank*,

86 Conn. App. 14, 26 (2004). Where there is uncertainty as to the amount, as here, Connecticut courts will not find a wrongful retention of funds:

> The parties' relationship was of a nebulous nature stemming from the *absence* of a *written agreement* setting forth plaintiff's right to *compensation*. It was *unclear* as to what *amounts* the parties agreed to allow plaintiff for his services. Under the circumstances, the defendant cannot be said to have wrongfully detained plaintiff's funds. While an *implied contract* was found to exist, the amount owing under the contract was not a liquidated sum. *On three occasions the plaintiff cited to differing amounts allegedly due* under the unwritten agreement. Although not a controlling factor, the fact that the amount of compensation owed plaintiff *could not be reasonably ascertained by the defendant at the time the money was payable under the implied contract* is a further indication that defendant did not wrongfully detain funds…

*Brandewiede v. Emery Worldwide*, 890 F. Supp. 79, 83 (D. Conn. 1994) (emphasis added).

**B.    § 37-3a Interest Must Be Calculated on a "Simple Interest" Basis**

Brandt devotes but a single footnote to his flawed argument that "compound" interest should apply. Pl. Mem., 41 n.33. Yet, the very case upon which Brandt relies, *Loomis*, sets forth Connecticut's well-established rule that: "[i]nterest … in the absence of agreement … is *simple* interest." *Loomis and Loomis, Inc. v. Stecker and Colavecchio Architects, Inc.*, 6 Conn. App. 88, 94 (1986).[19] Since Brandt is not alleging that there was any agreement (or contractual term) regarding interest – compound or otherwise – the law is clear that "simple" interest must apply. *See Loomis, supra; see also Solar Kinetics Corp. v. Ryerson & Son, Inc.*, 488 F. Supp. 1237 (D. Conn. 1980) (under §37-3a, the method of calculation is "simple interest").

---

[19]  Further, Brandt cites to *Kuss v. Kuss* for the proposition that the determination of simple *versus* compound interest is somehow a matter of discretion, but, that is not what *Kuss* holds. *See* Pl. Mem., 41, n.33, *citing Kuss v. Kuss*, 2000 WL 117091 *2 (Conn. Super. 2000). In fact, the request for compound interest was denied in *Kuss. Id.*

14

**III.    SUMMARY JUDGMENT ON BRANDT'S UNJUST ENRICHEMENT AND PROMISSORY ESTOPPEL CLAIMS IS WARRANTED**

As stated by Defendants, Brandt's unjust enrichment claim must fail given that he and Holley already had an agreement, prior to March, 1994, to pay Brandt a $1,000 per month consulting fee for those months that Brandt submitted an invoice. HDI Mem., 23; Holley Aff., ¶ 28. Brandt does not rebut the argument that unjust enrichment is a quasi-contractual doctrine that applies only in the absence of an enforceable contract, *ESI, Inc. v. Coastal Power Production Co.*, 995 F. Supp. 419 (S.D.N.Y. 1998), and since he was already being paid for his general "services," he cannot now claim unjust enrichment.

In addition, Brandt's promissory estoppel claim must fail. The Connecticut Supreme Court has established that:

> . . . any challenged representations concerning future employment must be sufficiently promissory or definite to support contractual liability – i.e., they must contain "the material terms *that would be essential to an employment contract*, such as terms regarding the duration and condition of the plaintiff's employment, and [his] salary and fringe benefits."

*Grossman*, 131 F. Supp. 2d at 309 (*quoting D'Ulisse-Cupo v. Board of Directors of Notre Dame*, 202 Conn. 206 (1987)) (emphasis added). As demonstrated in Argument I, *supra*, Defendants made no representations concerning Brandt's future employment which contained essential and material terms; accordingly, Brandt's promissory estoppel claim must fail. *Grossman, supra.*

**IV.    BRANDT'S FRAUD CLAIM AGAINST HOLLEY SHOULD BE DISMISSED**

Brandt's fraud claim should be dismissed. Brandt cannot make out the basic elements of any supposed fraud pertaining to Holley's alleged misrepresentations that he was acting as Salem's agent and that Salem approved Brandt's alleged agreement. Compl., ¶ 34. Not only does Brandt fail to set forth how he acted upon Holley's alleged misrepresentations to his detriment, which Brandt is required to do (HDI Mem., 24), but Brandt patently misrepresents the

record in an attempt to avoid summary judgment on this claim. Specifically, Brandt now claims, for the first time, that "Holley said he was Salem's agent." Pl. Mem., 35. Yet, Holley said no such thing, and Brandt, at deposition, conceded that Holley never spoke or wrote those words. Brown Aff., Ex. B (Brandt Tr. 152:17-25; 153:24 - 154:10).

Rather, it was only Brandt's *impression* that Holley was acting as Salem's agent since Brandt testified that he "can't tell you exactly what [Holley] said." *Id.*, Brandt Tr. 154:9-10. Similarly, it was only Brandt's "*impression* that [Salem] was on board with the agreement." *Id.*, Brandt Tr. 151:12-16. As Brandt agrees, fraud requires proof by clear and convincing evidence (Pl. Mem., 36); however, mere "impressions" of words, such as agent (which have clear, legal import) are insufficient as a matter of law to avoid summary judgment. *See Myers*, 1992 WL 88166, at \*3 & n.33 ("interpretation" of defendant's statements concerning an "offer" in order to "create the impression of a disputed issue of fact that does not otherwise exist will not operate to avoid summary judgment").

## V.    SUMMARY JUDGMENT IS WARRANTED ON THE AGENCY ISSUE

Although agency is normally a question of fact, it is a question of law where "no reasonable juror could find actual or implied agency in these circumstances." *Hallas v. Boehmke and Dobosz, Inc.*, 239 Conn. 658, 673 (1997), *citing Russo v. McAviney*, 96 Conn. 21, 24 (1921).

### A.    The Law of The Case Doctrine Justifies Dismissal Here

"Ordinarily, previous rulings become the 'law of the case' and, as a prudential matter, will not be revisited." *Royal Ins. Co. v. Zygo Corp.*, 349 F.Supp.2d 295 (D. Conn. 2004). In his opposition brief, Brandt recognizes that the Minnesota District Court already ruled that: "no reasonable jury could infer that Holley acted as Salem's agent." *See* Pl. Mem., 54, *citing* Minnesota Decision ("Decision"), p.13 (Salem Mem., Ex. 3). Brandt then tries to evade this well-reasoned law of the case by claiming that "discovery [since the Minnesota Decision] has

produced thousands of new pages of deposition testimony and hundreds of new documents." Pl. Mem., 54. While there has been extensive discovery since the Decision, there has been no meaningful change to the relevant evidence on agency. The amount of discovery is not the issue.

The Second Circuit has articulated that: "[u]nder the law of the case doctrine, courts are understandably *reluctant* to reopen a ruling once made, especially when one judge or court is asked to consider the ruling of a different judge or court. *Lillbask v. CT DOE*, 2005 WL 237199, at *13 (2d. Cir. 2005) (Conn.) (emphasis added). This principle applies here, as Judge Kyle rendered the Minnesota Decision on the relevant facts and law. Judge Kyle made clear that there was no "reasonable" basis to believe that Holley somehow bound Salem personally. *See* Decision p.13, Salem Mem., Ex. 3 (holding that "Brandt has specifically averred…only that he provided services to HDI and MIT; Brandt has offered *no* comparable evidence that he provided services to Holley and Salem in their *individual* capacities…The corporations are separate legal entities, and Brandt has not asked this Court to … pierce the corporate veil").[20]

Indeed, Brandt vigorously argued the agency relationship before the Minnesota Court. He was forced to put his best foot forward on this argument, as Salem was seeking dismissal for lack of jurisdiction and argued that there was no agency. Brandt cannot now re-write history. The Minnesota Court ruled in the face of supporting affidavits, oral argument and even deposition testimony. The issues of personal jurisdiction and agency should not be re-litigated, as they were fully and fairly decided; there is no new meaningful evidence that would justify reconsideration. *See Royal*, 349 F. Supp. 2d at 301. Brandt's deposition testimony (since the Decision) only further demonstrates the lack of agency.

---

[20]    The Minnesota Court observed that "Brandt stopped providing services to HDI and MIT in 1997 following several contentious meetings in Connecticut…which they disputed the scope and nature of the compensation Brandt was to receive. (Holley Dep. 93-94)." (*See* Decision p.7, Salem Mem., Ex. 3). There was no contract here, and certainly not against Salem personally.

**B.**    **"Issue Preclusion" is a Flexible Doctrine That Applies Here**

This Court may also rely on "issue preclusion." Although Brandt claims that issue preclusion does not apply because this is not a "subsequent case" with respect to Salem (Pl. Mem., 53), the Minnesota court dismissed all claims against Salem and Brandt brought a new action against Salem here. *See* Decision, p.2 (Salem Mem., Ex 3). Indeed:

> The case law reveals widespread agreement among courts in this [2[nd]] Circuit that *finality for purposes of collateral estoppel is not the same as finality for purposes of appeal.* Indeed, there are no particularly strict requirements for a finding of finality under the doctrine of collateral estoppel. Courts must simply use their discretion in determining what constitutes a 'final judgment,' and that determination may be based on 'little more than that the litigation of a particular issue has reached such a stage that a court sees *no good reason* for permitting it to be litigated again'…The Second Circuit has continually followed this flexible approach.

*See Oneida Tribe v. AGB Properties, Inc.*, 2002 WL 31005165 (N.D.N.Y. 2002) *citing Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir. 1961) (Friendly, J.) (emph. added).

Moreover, the issue of agency was squarely decided on the merits. The Minnesota Court stated that "Plaintiff must make a prima facie showing that a principal-agent relationship existed," and that his argument, to be successful, "require[d] a determination that Holley was Salem's *agent*." *See* Decision, p.12 (Salem Mem., Ex. 3). The Minnesota court found that "no reasonable jury could infer that Holley acted as Salem's agent." *Id.*, p.13.

**C.**    **There Is No New Evidence of Agency To Bind Salem Personally**

Without agency, there can be no contract between Brandt and Salem personally. Since the Minnesota Decision, there is no new evidence proving agency. While Brandt tries to rely on inadmissible hearsay evidence, on "summary judgment, a district court may rely only on material that would be admissible at trial." *Rubens v. Mason*, 387 F.3d 183, 189 (2004).

Brandt primarily relies on the hearsay statements of Holley (i.e., the "purported agent") to establish agency against Salem. Pl. Mem., 44-52. This is improper, as the hearsay

statements themselves cannot be "the" agency foundation. Indeed, "[i]n order to introduce evidence of an out-of-court statement as non-hearsay under Rule 801(d)(2)(D), a party must [first] lay a sufficient foundation" of the agency relationship. *Marcic v. Reinauer Transp. Cos.,* 397 F.3d 120, 128-29 (2d Cir. 2005). *See also Homes, Inc. v. Epperson,* 344 F. Supp. 2d 875, 884 (2004) (requirement to first lay foundation of agency before invoking FRE §801(d)(2)(C)). However, "[i]t is hornbook law that an agency cannot be proven solely by the unsupported out-of-court statements of the claimed agent .... An agency relationship must be shown to exist by independent evidence before out-of-court statements by a purported agent can be deemed admissions by a party-opponent." *Gomez v. Rivera Rodriguez,* 344 F.3d 103, 116 (1st Cir. 2003).

To be clear, Brandt's own deposition testimony – as to what Holley supposedly told him (i.e., hearsay) – cannot be used here. *See, e.g.,* Pl. Mem., 51 (Brandt's testimony that he "had come to understand" from negotiations with, and statements by, Holley, that "Salem was involved", is inadmissible hearsay). To the extent that Brandt seeks to rely on excerpts from Holley's deposition – as to what Salem supposedly said (i.e., hearsay) – this is also hearsay that cannot be used to establish the agency foundation. Moreover, the fact that Holley and Salem "communicated regularly," or exchanged documents, does not show that Holley had the requisite authority to bind Salem personally. Pl. Mem., 44, 46. The very testimony that Brandt cites (Pl. Mem., 45-46), shows only that this communication was "on behalf of the company." Brandt cannot pinpoint any conversation to show that Holley was acting as Salem's agent (Brown Aff., Ex. A, Brandt Tr. 151), and he could only respond that: "I can't explicitly tell you something that was said in a conversation I can't remember so well." Brandt Tr. 149-150. Brandt then admits: "I can't tell you...what he said or why I had exactly that impression..." *Id.* Brandt

further reveals that "I cannot recall seeing anything in writing" that would show the agency relationship. Brandt Tr. 152.[21] His nebulous "impression" cannot defeat summary judgment.

Further, the notion that the parties did not differentiate between HDI and MIT in negotiations does not mean that Salem was ever bound personally. Pl. Mem., 45 n.35. The argument – that there was also no distinction between "what was MIT and what was [Salem]" – comes from Plaintiff's own self serving deposition and embraces inadmissible hearsay as to what Holley told him. Pl. Mem., 45. The fact that Holley was looking to get a "response" from Salem (Pl. Mem., 47), means only that (as it related to the company negotiations); it does not bind Salem personally, especially given Salem never responded. Plaintiff then mis-states that "Holley had told [Plaintiff] that Salem 'would be passive' and would 'kind of go along with [Holley].'" Pl. Mem., 52 (citing Brandt Tr. 145-46). This is not what Brandt's transcript says (see id.); it only shows that this was Plaintiff's "expectation", not what Holley actually "told" him. In any event, Brandt's self-serving recollection of what Holley may have said (i.e., hearsay) cannot be used as "the" agency foundation for admission of this hearsay.

While Brandt may have performed work on behalf of HDI (and/or MIT) for the monthly fee only, it was never on behalf of Salem personally. (See Holley Aff. ¶¶ 33, 34; Decision p.11-13). There is no relevant evidence (since the Decision) that would support this agency relationship, as it "simply did not happen." [22] Holley Aff., ¶ 33.

### CONCLUSION

All of Brandt's claims should be dismissed with prejudice.

---

[21] See also Holley Aff. ¶ 33 ("[P]laintiff cannot pinpoint any letter in which I claimed to speak for Salem, nor could he during his deposition describe any conversation during which I claimed to speak for Salem, because it simply did not happen").

[22] Brandt makes one final attempt to bind Salem personally through the doctrine of "equitable ratification," relying on the May 21, 1997 letter from Salem. Pl. Mem., 55. First, this document was meant for settlement purposes only (and Defendants object to its admission or use in any context). In any event, this letter hurts Brandt's position by showing: (i) that the so-called larger contract was never agreed to; (ii) that the compensation term was never agreed to; and (iii) it would only pertain to MIT and HDI.

624383_5

DATED:  October 7, 2005

Respectfully,

SATTERLEE STEPHENS BURKE & BURKE LLP

By:_____
       Paul M. Brown (CT 23232)
230 Park Avenue
New York, New York 10169
(212) 818-9200
*Attorneys for Defendants HDI and George Holley*

- and -

NUZZO & ROBERTS LLC

By:_____
      Richard A. Roberts (CT 07665)
      Thomas J. Lengyel (CT 21488)
One Town Center, P.O. Box 747
Cheshire, Connecticut 06410
Telephone: (203) 250-2000
*Attorneys for the Defendant Estate of Robert Salem*

## CERTIFICATION

    This is to certify that on October 7, 2005, a true copy of the foregoing Motion was mailed via first class, postage prepaid, mail (and *via Fax*) to:

Edward W. Dunham, Esq.
Wiggin & Dana LLP
One Century Tower
New Haven, Connecticut 06508-1832

Paul M. Brown, Esq.
Satterlee, Stephens, Burke & Burke
230 Park Avenue
New York, NY 10169

_____
Thomas J. Lengyel

21