SATTERLEE STEPHENS BURKE & BURKE LLP

230 PARK AVENUE
NEW YORK, NY 10169-0079
(212) 818-9200
E-Mail: pbrown@ssbb.com
Direct Dial: (212) 404-8786

47 MAPLE STREET
SUMMIT, NJ 07901
(908) 277-2221

FAX (212) 818-9606, 9607
www.ssbb.com

April 10, 2006

**BY FEDERAL EXPRESS**

Honorable Stefan R. Underhill
United States District Judge
915 Lafayette Boulevard
Bridgeport, Connecticut 06604

Re: Brandt v. Home Diagnostics, Inc., et al. - Civil Action No. 3:01-1889 (SRU)

Dear Judge Underhill:

        We represent defendants Home Diagnostics, Inc. ("HDI") and George Holley ("Holley"), the remaining defendants in this action, and write to request a telephone conference with the Court to resolve a pre-trial discovery dispute that the parties have been unable to resolve concerning plaintiff's duty to update and revise his alleged damages pursuant to FRCP 26(e).[1] On several prior occasions, defendants have requested that plaintiff provide a clear statement of his alleged damages for breach of contract and unjust enrichment/quantum meruit, as well as his alleged attorney's fees, but plaintiff has failed to do so. Since the parties are preparing for trial (indeed, the parties' Joint Pre-Trial Memorandum is due April 28, 2006), we believe that defendants are entitled to learn – rather than guess – the amount of actual, total damages for each claim and the mathematical basis for it.[2]

        An up-to-date damages calculation is clearly necessary and required. First, plaintiff's contractual "success fee" damage amount must be recalculated given that it is purportedly equal to "ten percent (10%) of the value, interest, equity, collections, revenue and assets above $1,000,000 received from HDI by MIT; its affiliate company, Applied Sciences Corp. ('ASC'); and Messrs. Holley and Salem." Am. Compl. ¶ 13(b). Since the Salem Estate and all of the claims against it have been dismissed from the case, the 10% success fee can no longer be calculated upon the value, equity, etc. "received . . . by Salem" and must be revised. Plaintiff, however, refuses to do so.

        Moreover, we respectfully request that the Court ask plaintiff to identify, specifically, the actual amounts of "value," "interest," "equity," "collections," "revenue" and "assets" that he is purportedly owed so that the parties are not litigating over a moving target.

---

[1] Most recently, defendants raised this issue by letter dated March 17, 2006. Attached hereto as Exhibit A are letters by defendants, dated March 17 and March 23, and two letters by plaintiff, dated March 21 and April 3.

[2] Defendants reserve the right to move appropriately *in limine* on any damages or other issue.

647555_4

SATTERLEE STEPHENS BURKE & BURKE LLP
Page 2

While plaintiff has listed some "equity" (shares of stock and options) and some "assets" (cash), in his prior discovery responses, plaintiff utterly fails to address the "value," "interest," "collections" and "revenue" received.

Second, plaintiff's unjust enrichment/quantum meruit claim (which, Your Honor stated may apply if plaintiff's contract claim fails) must be clarified given counsel's novel contention that "Mr. Brandt's equitable claims of promissory estoppel and unjust enrichment seek the same damages as his contract claim." See Freiman letter of April 3, 2006. Since plaintiff is claiming something other than "$103,000, plus interest based upon 54 months of consulting fees minus $5,000 already paid" as stated in earlier discovery responses, defendants are entitled to know the exact value of Mr. Brandt's alleged services.

While Mr. Brandt has put forth two experts, Michael Holt and Richard Wirth, allegedly devoted to establishing standards of compensation for plaintiff as a "venture capitalist" and a "turnaround specialist," neither expert has offered any final, specific number comprising the reasonable value of plaintiff's services. Thus, Mr. Brandt has failed to disclose what value either expert places on his alleged contributions. This is highly unfair and contrary to the FRCP. Moreover, neither plaintiff's Amended Answers to Certain Interrogatories, dated July 1, 2005, nor plaintiff's Amended Answers to Interrogatories, dated September 6, 2002, set forth calculations pursuant to the expert reports or even attempt to explain how the same damages are claimed for both contractual and equitable claims.[3] Clearly, plaintiff should not be permitted to proffer several experts who have, at present, failed to set forth a final damage calculation so that, as plaintiff hopes, "the jury, if it so chooses, may make alternate calculations on the equitable relief claims." See Freiman letter of April 3, 2006. Again, defendants seek some definiteness at this stage of the litigation.

Third, we seek the Court's intervention concerning plaintiff's newly-minted, belated and unjustified request for punitive damages – raised for the first time in an amended interrogatory response, dated July 1, 2005 – well-after the completion of discovery and after defendants had moved for summary judgment. Nowhere in the Amended Complaint or Prayer for Relief is the word "punitive damages" even mentioned. In addition, the only claim where courts have even considered punitive damages when requested (the fraud claim) has been dismissed here. Plaintiff's counsels' assertion that punitive damages are covered by the general *ad damnum* request for "such other and further relief as the Court deems just and appropriate" should be rejected outright. See Freiman letter of April 3, 2006.

Finally, Mr. Brandt's damages calculation should be limited so as to delete his indefensible prayer for legal fees. Despite defendants' prior demands, no supporting documentation (i.e., attorney invoices) has ever been produced during discovery and, as the Court is well-aware, attorney's fees are not recoverable in contract actions at common law absent an express provision to the contrary. Although plaintiff's counsel now belatedly claims that attorney's fees are recoverable under Connecticut Wage Statute, Section 31-72 (see Freiman letter of March 21, 2006), no cause of action was ever styled as a "Civil Action To Collect Wage

---

[3] Defendants first learned of plaintiff's Amended Answers to Certain Interrogatories, dated July 1, 2005, from counsel's letter, dated March 21, 2006. Regardless, these Amended Answers do not remedy the deficiencies in plaintiff's damages recitation.

647555_4

SATTERLEE STEPHENS BURKE & BURKE LLP

Page 3

Claim" under § 31-72. Indeed, the term "wages" has never been used in this case by plaintiff or anyone else and, if plaintiff had ever raised C.G.S.A. § 31-72 prior to the filing of defendants' motion for summary judgment in April, 2005, defendants would have moved to dismiss the claim. Plaintiff's new-found theory of attorney's fees is simply another example of the impermissibly amorphous nature of all of plaintiff's claims.

Based upon the foregoing, we respectfully request that the Court set a time this week for a telephone conference with the parties to resolve these damage issues.

Respectfully submitted,

Paul M. Brown (PB 8135)

Enclosures

cc:  Edward W. Dunham, Esq.
     Jonathan Freiman, Esq.
     Richard Roberts, Esq. (via facsimile)

647555_4

Exhibit A

**SATTERLEE STEPHENS BURKE & BURKE LLP**

230 PARK AVENUE
NEW YORK, NY 10169-0079
(212) 818-9200

47 MAPLE STREET
SUMMIT, NJ 07901
(908) 277-2221

FAX (212) 818-9606, 9607
www.ssbb.com

Direct Phone Number: (212) 404-8786
E-mail: pbrown@ssbb.com

March 17, 2006

Via Facsimile and U.S. Mail

Edward W. Dunham, Esq.
Jonathan M. Freiman, Esq.
Wiggin & Dana LLP
One Century Tower, P.O. Box 1832
New Haven, CT 06508-1832

   Re: *Brandt v. Home Diagnostics, Inc., et al.* - Civil Action No. 3:01-1889 (SRU)

Dear Ed and Jonathan:

   Please treat this letter as a formal demand pursuant to the Federal Rules of Civil Procedure, including FRCP 26(e) that you provide to the defendants a current, clear calculation of asserted damages both under the so-called ten percent (10%) "contract" claim as well as under the quantum meruit claim being asserted by plaintiff.

   Not only is there a continuing duty on the part of plaintiff to update and revise answers to interrogatories but, in addition, we have made a number of demands both oral and written (as well as during the course of Brandt's deposition) that we be provided with a final form of damage calculation. I realize that some time ago it was asserted that final calculations were not then possible because you allegedly had not received all of the pertinent information from the defendants. Presumably, you now have it all.

   An up to date damage calculation is clearly necessary and required. In the first place, with respect to the "contract" success fee claim, the Salem Estate and all of the claims against it have been dismissed from the case. Since a number of plaintiff's claims were based upon receipt of cash or securities or other items of "value" by Salem, those claims are no longer viable.

   Secondly, the interest calculations proffered by plaintiff are based upon compound rates of interest whereas Judge Underhill recently ruled that the statute only permits the application of "simple" interest. In addition, we are entitled to a clear and concise statement of the damages claimed for the unjust enrichment/quantum meruit claim which Judge Underhill indicated may apply in the event that the ten percent (10%) "contract" claim fails. We need to know what quantum meruit damages are being claimed and how they are calculated. This is particularly important since you have engaged no less than three expert witnesses as support for

644514_1

a quantum meruit claim, and we are at a total loss as to precisely what actual damages are being sought.

Please provide the updated response no later than April 14, inasmuch as the Pre-trial Order is due April 28 and the updated damages claim need to be included therein and reviewed by us before such time.

Finally, I note that the *ad damnum* incorporates a claim for counsel fees. I once asked for backup invoices and other data relating to plaintiff's legal fees, or, failing that, the claim be withdrawn. I have received no backup in terms of copies of invoices for fees and disbursements. Irrespective, it is clear that there is no legal basis for plaintiff to seek and recover legal fees in this contract/unjust enrichment action. Please therefore confirm to us that that claim will be withdrawn as we have no desire to make and *in limine* motion on this issue.

Sincerely yours,

Paul M. Brown

cc: Richard A. Roberts, Esq. ( *via email rroberts@nuzzo-roberts.com*)
Aaron M. Zeisler, Esq.

644514_1

Wiggin and Dana       Jonathan M. Freiman
One Century Tower    203.498.4584
P.O. Box 1832        203.782.2889 fax
New Haven, Connecticut   jfreiman@wiggin.com
06508-1832
www.wiggin.com

**WIGGIN AND DANA**

*Counsellors at Law*

VIA FAX AND U.S. MAIL

March 21, 2006

Paul M. Brown, Esq.
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, New York 10169

Dear Paul:

In response to your letter of March 17, 2006, I have attached a copy of Mr. Brandt's "Amended Answers to Certain Interrogatories," dated July 1, 2005, which we sent on that date. As you will see, the answers calculate asserted damages, and make clear that the calculation relies on the expert testimony of John Wills. The calculation applies equally to both contractual and equitable claims.

We do not believe that the grant of summary judgment in favor of the Salem Estate (but not the other defendants) alters the damage calculation. Nor do we agree that, as you assert, the court ruled that compound interest would not be available: Judge Underhill said he was inclined to instruct the jury that simple interest was available, but that he would not yet adjudicate the matter, as it was an issue relevant to jury instruction, not summary judgment. (Moreover, we do not believe that calculation of simple interest would require expert testimony, even if Judge Underhill later were to determine that simple but not compound interest is available.) Finally, you will note that the July 1, 2005 amended interrogatory answers explain the legal mechanism by which the jury could award attorney's fees.

As such, there is no need for Mr. Brandt to amend further his amended interrogatory answers of July 1, 2005, and he continues to stand by them.

Sincerely,

Jonathan M. Freiman

cc:  Richard A. Roberts, Esq.
     Aaron M. Zeisler, Esq. ✓
     Edward W. Dunham, Esq.

\16273\1\583951.1

*New Haven   Stamford   New York   Hartford   Philadelphia*

RETURN TO:
K. Schotz
WIGGIN & DANA
P. O. BOX 1832
NEW HAVEN, CT 06508-1832

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| LEONARD BRANDT, ) <br> ) <br>     Plaintiff, ) <br> v. ) <br> ) <br> MIT DEVELOPMENT CORP., HOME ) <br> DIAGNOSTICS, INC. GEORGE H. ) <br> HOLLEY, AND JUDY CHENG SALEM, ) <br> EXECUTRIX OF THE ESTATE OF ) <br> ROBERT J. SALEM ) <br> ) <br>     Defendants. ) | Civil Action <br> Docket No. 3:01 CV 1889 (SRU) <br><br><br><br><br><br><br> July 1, 2005 |

## PLAINTIFF'S AMENDED ANSWERS TO CERTAIN INTERROGATORIES

Plaintiff hereby amends his September 6, 2002, answers to two of Defendants' First Set of Interrogatories:

**INTERROGATORY NO. 10:** Please state the precise amount of damages sought in the Complaint, set forth all components of said damages and the amount of each component, explain the manner in which each such amount was calculated, and identify each and every document upon which you relied to calculate your answer to this interrogatory.

**RESPONSE:** On Count One, for breach of contract, Plaintiff seeks damages in the amount of $10,475,306.00, pursuant to the Supplemental Expert Report of John W. Wills, CPA, dated September 21, 2004 ("Wills Supplemental Report"), a copy of which is attached hereto as Exhibit A. (The Wills Supplemental Report in turn reference the Expert Report of John. W. Wills, CPA, dated June 15, 2004, a copy of which is attached as Exhibit B.) On Count Two, for

estoppel, Plaintiff seeks relief in the amount of $10,475,306.00, pursuant to the Wills Supplemental Report. On Count Three, for unjust enrichment, Plaintiff likewise seeks relief in the amount of $10,475,306.00, pursuant to the Wills Supplemental Report. On Count Four, for fraud in the inducement, Plaintiff seeks damages in the amount of $10,475,306.00, pursuant to the Wills Supplemental Report.

In addition, Plaintiff reserves the right to seek, pursuant to the Prayer for Relief, attorney's fees, costs, disbursements, and punitive damages, the latter of which is a form of "other and further relief" that the Court may find "just and appropriate" under the Connecticut Wage Statute, Conn. Gen'l Stats. §§ 31-71 & 31-72, which permits a doubling of monetary relief to a prevailing party.

In sum, Plaintiff reserves the right to seek relief in the amount of $20,950,612.00 (i.e., 2 x $10,475,306.00), plus attorney's fees, costs and disbursements.


**INTERROGATORY NO. 11**: Please identify each and every person, business or other entity with which you consulted to calculate your answer to Interrogatory No. 10 above.

**RESPONSE**: John W. Wills, CPA, of Dispute Analytics, LLC, whose reports are attached as Exhibits A & B to this pleading.

2

PLAINTIFF
LEONARD BRANDT

By: _____
Edward Wood Dunham (ct05429)
Jonathan M. Freiman (ct24248)
WIGGIN AND DANA LLP
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832
(203) 498-4400
(203) 782-2889 fax
edunham@wiggin.com
jfreiman@wiggin.com

His Attorneys

## SATTERLEE STEPHENS BURKE & BURKE LLP
230 PARK AVENUE
NEW YORK, NY 10169-0079
(212) 818-9200

47 MAPLE STREET
SUMMIT, NJ 07901
(908) 277-2221

FAX (212) 818-9606, 9607
www.ssbb.com

E-Mail: pbrown@ssbb.com
Direct Dial: (212) 404-8786

March 23, 2006

**BY FACSIMILE (203-782-2889) & U.S. MAIL**

Jonathan M. Freiman, Esq.
Wiggin & Dana LLP
One Century Tower
P.O. Box 1852
New Haven, CT  06508

    Re:    Brandt v. MIT *et al.*
              Docket No. 3:01 CV 1889 (SRU)

Dear Jonathan:

       This is in response to your fax dated March 21.  I take strong issue with the assertions in your letter, as follows:

       1.    The claims against the Salem Estate have been dismissed, including a variety of claims seeking "contract" 10% damages based upon employment income and distributions of profits that he received with MIT and compensation he received as an employee under an Employment Agreement with HDI.  Fifty percent of plaintiff's claims also assert a 10% right to the consideration the late Mr. Salem received when MIT was acquired by HDI.  Contrary to your contention it is almost axiomatic that the dismissal of the claims against the Salem Estate has a major effect on the quantum of plaintiff's damages, and we expect the plaintiff to do those recalculations.

644959_1

2. The Court stated in the most unmistakable terms that the Connecticut interest statute did not provide for compound interest, but rather only for simple interest. It is not a matter subject to debate, and we are entitled to a clear statement of your damage claims, which would include a recalculation of the interest as presently calculated on a grossly inflated compound basis.

3. I do not believe expert testimony is required to simply calculate interest.

4. You have engaged at least two expert witnesses devoted to establishing evidentiary standards of compensation for plaintiff as a "venture capitalist" or a "turnaround specialist." Neither, however, offered specific amounts of claimed damage on the *quantum meruit* or "unjust enrichment" claim. The "fraud" claim has now been dismissed. There is nothing in the so-called "Wills Supplemental Report" (which simply performs arithmetic calculations) which in any way talks about damages for unjust enrichment or *quantum meruit*. Defendants are entitled to know whether the experts are going to attempt to value Mr. Brandt's services and, if so, in what amount; otherwise, it is hard to see the relevance of their testimony. Defendants cannot be placed in a guessing game, but are entitled to a clear statement of alternate measures of damages, and I respectfully suggest that your revised interrogatory answers, amended as of September 6, 2002, in no way set forth calculations pursuant to the expert reports or even attempt to explain how the same damages are claimed for ". . . both contractual and equitable claims."

644959_1

Jonathan M. Freiman, Esq.
March 22, 2006
Page 2

     5.     Finally, the damage claim must be amended to delete what is clearly now a frivolous claim for legal fees. Plaintiff is not entitled to recover legal fees under common law claims; despite prior demands, no supporting documentation (i.e., attorney invoices) has ever been given during discovery for those claims which are now waived; and the Connecticut Wage Statute is completely inapplicable to the facts in this case, and you know it. Not only is it clear from the tenor of the statute that plaintiff is not covered by it, but your client never received or ever claimed "wages". This is not a "Civil Action To Collect Wage Claim" under section 31-72. It was never so styled in any complaint I have ever seen in this case, nor has any cause of action been asserted for recovery of wages, and indeed the term "wages" has never been used in this case by plaintiff or anyone else. Without beating a dead horse, there are certainly enough differences in this case without absurdly attempting to liken Mr. Brandt to a "wage earner" under Connecticut law.

     We truly want to avoid bringing this matter to the attention of the Court, and we think this is a discovery matter involving plaintiff's continuing obligations to update sworn interrogatory answers under the FRCP. We do not believe this should be the subject of an *in limine* motion, and therefore I will contact you shortly in the hope that we can resolve this situation without Court intervention.

                                                         Sincerely,

                                                           Paul M. Brown

PMB:paf

644959_1

SATTERLEE STEPHENS BURKE & BURKE LLP

Jonathan M. Freiman, Esq.
March 22, 2006
Page 2

cc:    Edward W. Dunham, Esq.
       Wiggin & Dana LLP
       (by fax: 203-782-2889)

       Richard A. Roberts, Esq.
       Nuzzo & Roberts
       (by fax: 203-250-3131 )

       Aaron Zeisler, Esq.
       Satterlee Stephens Burke & Burke LLP

Case 3:01-cv-01889-SRU    Document 139    Filed 04/27/2006    Page 14 of 18

644959_1

Wiggin and Dana LLP   203.498.4400
One Century Tower     203.782.2889 fax
P.O. Box 1832         www.wiggin.com
New Haven, Connecticut
06508-1832

**WIGGIN AND DANA**
*Counsellors at Law*

## Telefax Transmittal

Date:
April 3, 2006

To / Company / Telefax:

Paul M. Brown, Esq. / Satterlee, Stephens, Burke & Burke / 212-818-9606

From:
Jonathan M. Freiman

Telephone / Email:
203.498.4484 / jfreiman@wiggin.com

Client / matter code:
16273 / 1

Please copy:    AARON M. ZEISLER, ESQ.

We will copy:

Special Instructions

This message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure. If the reader of this message is not the intended recipient or an employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error please notify us immediately by telephone and return the original message to us by mail. Thank you.

*3* page(s) following this page

Wiggin and Dana LLP    Jonathan M. Freiman
One Century Tower    203.498.4584
P.O. Box 1832    203.782.2889 fax
New Haven, Connecticut    jfreiman@wiggin.com
06508-1832
www.wiggin.com

**WIGGIN AND DANA**

*Counsellors at Law*

VIA FAX & U.S. MAIL

April 3, 2006

Paul M. Brown, Esq.
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, New York 10169

Re:   Brandt v. MIT

Dear Paul:

I write in response to your March 23 fax, taking your points in order below.

I reiterate that the dismissal of the Salem Estate does not affect the overall damage claim. By thinking that it should, you confuse two things: (a) the parties responsible under the contract and equitable agreement, and (b) the factors by which compensation is determined. Judge Underhill ruled that Robert Salem did not enter into a contract or equitable agreement with Len Brandt. That does not mean that George Holley, MIT and ASC did not enter into a contract or equitable agreement with Len Brandt by which they agreed to pay Mr. Brandt "10% of any assets received above $1,000,000 by the collective group of MIT, ASC, Bob Salem and [George Holley]." That the Salem Estate has been ruled not responsible under the deal does not mean that George Holley, on behalf of himself, MIT and ASC, did not agree to or promise compensation pegged in part to assets received by Salem.

My recollection of the summary judgment proceedings is that Judge Underhill declined then to rule whether simple or compound interest would be available, though he indicated that, absent additional briefing, he would later rule that simple (not compound) interest is available. Since the judge has not ruled, the federal rules place Mr. Brandt under no obligation to recalculate interest. (Of course my recollection could be wrong, and I encourage you to correct my memory with a citation to the transcript.) Nevertheless, as a matter of professional courtesy, and without waiving our right to argue for the application of compound interest, we have produced an alternative interest calculation derived from the Supplemental Expert Report of John Wills, based on the applicability of simple interest through June 30, 2006 (an arbitrary date set as a plausible judgment date). A spreadsheet showing the calculations is attached. You will note that the under this alternative calculation, the damage claim including interest (but excluding punitive damages, attorneys' fees and costs) is $11,005,741.23. The number is higher than Wills' own calculation (which was based on compound interest) due to the additional passage of time. Naturally, we reserve the right to have a witness explain the calculation of interest at trial.

Paul M. Brown, Esq.
April 3, 2006
Page 2

**WIGGIN AND DANA**

*Counsellors at Law*

Mr. Brandt's equitable claims of promissory estoppel and unjust enrichment seek the same damages as his contract claim. Thus, if the jury does not find a legal contract for "10% of any assets received above $1,000,000 by the collective group of MIT, ASC, Bob Salem and [George Holley]," it can nevertheless find an equitable agreement or promise containing that same term. Similarly, Mr. Brandt believes that Mr. Holley, MIT and ASC were unjustly enriched by that same amount. The Supplemental Expert Report of John Wills calculates the figures represented by the quotation above, and is thus applicable to both legal and equitable claims. In addition, we expect to present testimony from two other expert witnesses, R. Michael Holt and Richard Wirth, on the subjects of executive compensation, venture capital compensation and compensation for contractors involved in turnaround efforts, so that the jury, if it so chooses, may make alternate calculations on the equitable relief claims.

Fifth and finally, your characterization of the claim for legal fees and punitive damages under the Connecticut Wage Statute as "frivolous" is mistaken. While it is not clear from the letter, you seem to draw your conclusion from your intuition regarding the meaning of the word "wage." Before Mr. Brandt invoked the statute in his answer to your clients' interrogatories, we investigated the text, structure, history and case law of the statute, which we continue to believe protects consultants like Mr. Brandt. Moreover, Mr. Brandt's amended answer to interrogatory #10 informed the defendants that the operative complaint specifically seeks attorneys' fees and permits the award of punitive damages as a form of "other and further relief" that the Court may find "just and appropriate."

Sincerely,

Jonathan M. Freiman

cc:   Edward W. Dunham, Wiggin and Dana LLP
      Aaron Zeisler, Satterlee Stephens Burke & Burke LLP

\16273\1\585952.1

Brandt Simple Interest Calculation - Derived From Wills Supplemental Expert Report

| A<br>Type of Payment | B<br>Source of Information | C<br>Date of Payment | D<br>Brandt's Share | E<br>End Date | F<br>Days from Payment | G<br>Interest Rate | H<br>Rate Per Day | I<br>Total Interest | J<br>Interest Plus Share |
|---|---|---|---|---|---|---|---|---|---|
| Owners Compensation | Schedule A | 9/30/1996 | $ 19,800.00 | 6/30/2006 | 3560 | 10.00% | 0.027397% | $ 19,311.78 | $ 39,111.78 |
| Owners Compensation | Schedule A | 9/30/1997 | $ 214,800.00 | 6/30/2006 | 3195 | 10.00% | 0.027397% | $ 188,023.58 | $ 402,823.58 |
| Owners Compensation | Schedule A | 9/30/1998 | $ 519,532.00 | 6/30/2006 | 2830 | 10.00% | 0.027397% | $ 402,815.22 | $ 922,347.22 |
| Owners Compensation | Schedule A | 9/30/1999 | $ 218,960.00 | 6/30/2006 | 2465 | 10.00% | 0.027397% | $ 147,872.99 | $ 366,832.99 |
| Mr. Salem Employment Agreement | Supplemental - A-1 Support | 11/1/1999 | $ 4,167.00 | 6/30/2006 | 2433 | 10.00% | 0.027397% | $ 2,777.62 | $ 6,944.62 |
| Mr. Salem Employment Agreement | Supplemental - A-1 Support | 12/1/1999 | $ 4,167.00 | 6/30/2006 | 2403 | 10.00% | 0.027397% | $ 2,743.37 | $ 6,910.37 |
| Mr. Salem Employment Agreement | Supplemental - A-1 Support | 12/1/1999 | $ 241,667.00 | 6/30/2006 | 2403 | 10.00% | 0.027397% | $ 159,102.96 | $ 400,769.96 |
| Holley Consulting Agreement - 11/12/1999 | Supplemental - A-1 Support | 11/1/1999 | $ 4,167.00 | 6/30/2006 | 2433 | 10.00% | 0.027397% | $ 2,777.62 | $ 6,944.62 |
| Holley Consulting Agreement - 11/12/1999 | Supplemental - A-1 Support | 12/1/1999 | $ 4,167.00 | 6/30/2006 | 2403 | 10.00% | 0.027397% | $ 2,743.37 | $ 6,910.37 |
| Holley Consulting Agreement - 11/12/1999 | Supplemental - A-1 Support | 1/1/2000 | $ 4,167.00 | 6/30/2006 | 2372 | 10.00% | 0.027397% | $ 2,707.98 | $ 6,874.98 |
| Holley Consulting Agreement - 11/12/1999 | Supplemental - A-1 Support | 2/1/2000 | $ 4,167.00 | 6/30/2006 | 2341 | 10.00% | 0.027397% | $ 2,672.59 | $ 6,839.59 |
| Holley Consulting Agreement - 11/12/1999 | Supplemental - A-1 Support | 3/1/2000 | $ 4,167.00 | 6/30/2006 | 2312 | 10.00% | 0.027397% | $ 2,639.48 | $ 6,806.48 |
| Holley Consulting Agreement - 11/12/1999 | Supplemental - A-1 Support | 4/1/2000 | $ 4,167.00 | 6/30/2006 | 2281 | 10.00% | 0.027397% | $ 2,604.09 | $ 6,771.09 |
| Holley Consulting Agreement - 11/12/1999 | Supplemental - A-1 Support | 5/1/2000 | $ 4,167.00 | 6/30/2006 | 2251 | 10.00% | 0.027397% | $ 2,569.84 | $ 6,736.84 |
| Holley Consulting Agreement - 11/12/1999 | Supplemental - A-1 Support | 6/1/2000 | $ 4,167.00 | 6/30/2006 | 2220 | 10.00% | 0.027397% | $ 2,534.45 | $ 6,701.45 |
| Holley Consulting Agreement - 11/12/1999 | Supplemental - A-1 Support | 7/1/2000 | $ 4,167.00 | 6/30/2006 | 2190 | 10.00% | 0.027397% | $ 2,500.20 | $ 6,667.20 |
| Holley Consulting Agreement - 11/12/1999 | Supplemental - A-1 Support | 8/1/2000 | $ 4,167.00 | 6/30/2006 | 2159 | 10.00% | 0.027397% | $ 2,464.81 | $ 6,631.81 |
| Holley Consulting Agreement - 11/12/1999 | Supplemental - A-1 Support | 9/1/2000 | $ 4,167.00 | 6/30/2006 | 2128 | 10.00% | 0.027397% | $ 2,429.42 | $ 6,596.42 |
| Holley Consulting Agreement - 11/12/1999 | Supplemental - A-1 Support | 10/1/2000 | $ 4,167.00 | 6/30/2006 | 2098 | 10.00% | 0.027397% | $ 2,395.17 | $ 6,562.17 |
| Holley Consulting Agreement - 11/12/1999 | Supplemental - A-1 Support | 11/1/2000 | $ 4,167.00 | 6/30/2006 | 2067 | 10.00% | 0.027397% | $ 2,359.78 | $ 6,526.78 |
| Holley Consulting Agreement - 11/12/1999 | Supplemental - A-1 Support | 12/1/2000 | $ 4,167.00 | 6/30/2006 | 2037 | 10.00% | 0.027397% | $ 2,325.53 | $ 6,492.53 |
| Holley Consulting Agreement - 11/12/1999 | Supplemental - A-1 Support | 1/1/2001 | $ 4,167.00 | 6/30/2006 | 2006 | 10.00% | 0.027397% | $ 2,290.14 | $ 6,457.14 |
| Holley Consulting Agreement - 11/12/1999 | Supplemental - A-1 Support | 1/1/2002 | $ 3,200.00 | 5/30/2006 | 1641 | 10.00% | 0.027397% | $ 1,438.68 | $ 4,638.68 |
| Holley Consulting Agreement + ECI | Supplemental - A-1 Support | 2/1/2002 | $ 3,200.00 | 5/30/2006 | 1610 | 10.00% | 0.027397% | $ 1,411.51 | $ 4,611.51 |
| Holley Consulting Agreement + ECI | Supplemental - A-1 Support | 3/1/2002 | $ 33,474.00 | 5/30/2006 | 1582 | 10.00% | 0.027397% | $ 14,508.46 | $ 47,982.46 |
| Holley Consulting Agreement + ECI | Supplemental - A-1 Support | 4/1/2002 | $ 3,200.00 | 6/30/2006 | 1551 | 10.00% | 0.027397% | $ 1,359.78 | $ 4,559.78 |
| Holley Consulting Agreement + ECI | Supplemental - A-1 Support | 5/1/2002 | $ 650.00 | 6/30/2006 | 1521 | 10.00% | 0.027397% | $ 270.86 | $ 920.86 |
| ECI Project Development Agreement | Supplemental - A-1 Support | 6/1/2002 | $ 20,832.00 | 6/30/2006 | 1490 | 10.00% | 0.027397% | $ 8,504.02 | $ 29,336.02 |
| ECI Project Development Agreement | Supplemental - A-1 Support | 7/1/2002 | $ 650.00 | 6/30/2006 | 1460 | 10.00% | 0.027397% | $ 260.00 | $ 910.00 |
| ECI Project Development Agreement | Supplemental - A-1 Support | 8/1/2002 | $ 650.00 | 6/30/2006 | 1429 | 10.00% | 0.027397% | $ 254.48 | $ 904.48 |
| ECI Project Development Agreement | Supplemental - A-1 Support | 9/1/2002 | $ 20,832.22 | 6/30/2006 | 1398 | 10.00% | 0.027397% | $ 7,978.04 | $ 53,810.64 |
| ECI Project Development Agreement | Supplemental - A-1 Support | 10/1/2002 | $ 650.00 | 6/30/2006 | 1368 | 10.00% | 0.027397% | $ 243.62 | $ 893.62 |
| ECI Project Development Agreement | Supplemental - A-1 Support | 11/1/2002 | $ 650.00 | 6/30/2006 | 1337 | 10.00% | 0.027397% | $ 238.10 | $ 888.10 |
| ECI Project Development Agreement | Supplemental - A-1 Support | 12/1/2002 | $ 41,232.00 | 6/30/2006 | 1307 | 10.00% | 0.027397% | $ 14,764.44 | $ 55,996.44 |
| Holley Consulting Agreement + ECI | Supplemental - A-1 Support | 1/1/2003 | $ 650.00 | 6/30/2006 | 1276 | 10.00% | 0.027397% | $ 227.23 | $ 877.23 |
| ECI Project Development Agreement | Supplemental - A-1 Support | 2/1/2003 | $ 650.00 | 6/30/2006 | 1245 | 10.00% | 0.027397% | $ 221.71 | $ 871.71 |
| ECI Project Development Agreement | Supplemental - A-1 Support | 3/1/2003 | $ 15,066.00 | 6/30/2006 | 1217 | 10.00% | 0.027397% | $ 5,023.38 | $ 20,089.38 |
| ECI Project Development Agreement | Supplemental - A-1 Support | 4/1/2003 | $ 650.00 | 6/30/2006 | 1186 | 10.00% | 0.027397% | $ 211.21 | $ 861.21 |
| ECI Project Development Agreement | Supplemental - A-1 Support | 5/1/2003 | $ 650.00 | 6/30/2006 | 1156 | 10.00% | 0.027397% | $ 205.66 | $ 855.66 |
| ECI Project Development Agreement | Supplemental - A-1 Support | 6/1/2003 | $ 13,624.00 | 6/30/2006 | 1125 | 10.00% | 0.027397% | $ 4,199.18 | $ 17,823.18 |
| ECI Project Development Agreement | Supplemental - A-1 Support | 7/1/2003 | $ 650.00 | 6/30/2006 | 1095 | 10.00% | 0.027397% | $ 195.00 | $ 845.00 |
| ECI Project Development Agreement | Supplemental - A-1 Support | 8/1/2003 | $ 650.00 | 6/30/2006 | 1064 | 10.00% | 0.027397% | $ 189.48 | $ 839.48 |
| ECI Project Development Agreement | Supplemental - A-1 Support | 9/1/2003 | $ 13,624.00 | 6/30/2006 | 1033 | 10.00% | 0.027397% | $ 3,855.78 | $ 17,479.78 |
| ECI Project Development Agreement | Supplemental - A-1 Support | 10/1/2003 | $ 650.00 | 6/30/2006 | 1003 | 10.00% | 0.027397% | $ 178.62 | $ 828.62 |
| ECI Project Development Agreement | Supplemental - A-1 Support | 11/1/2003 | $ 650.00 | 6/30/2006 | 972 | 10.00% | 0.027397% | $ 173.10 | $ 823.10 |
| ECI Project Development Agreement | Supplemental - A-1 Support | 12/1/2003 | $ 13,624.00 | 6/30/2006 | 942 | 10.00% | 0.027397% | $ 3,516.11 | $ 17,140.11 |
| Value Based Compensation from Sale of MIT | Schedule B | 11/12/1999 | $ 2,921,835.00 | 6/30/2006 | 2422 | 10.00% | 0.027397% | $ 1,938,817.84 | $ 4,860,652.84 |
| Value Based Compensation from Earnout Provision | Schedule C | 11/12/1999 | $ 2,187,500.00 | 6/30/2006 | 2422 | 10.00% | 0.027397% | $ 1,451,541.10 | $ 3,639,041.10 |
| | | | $ 6,595,291.00 | | | | | $ 4,420,450.23 | $ 11,035,741.23 |

Column F = days between date of payment and end date
Column H = Interest Rate divided by 365 days
Column I = Column D (Brandt's share) * Column F (days from payment) * Column H (daily interest rate)