UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

————————————————————————x

LEONARD BRANDT,                              :

      Plaintiff,                             :     Civil Action No.:
                                             :     3:01-1889 (SRU)
     - against -                            :

HOME DIAGNOSTICS, INC., GEORGE H. HOLLEY,    :
AND JUDY CHENG SALEM, EXECUTRIX OF THE       :
ESTATE OF ROBERT J. SALEM,                   :

      Defendants.                            :     May 15, 2006

————————————————————————x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT HOME DIAGNOSTICS, INC.'S AND GEORGE H. HOLLEY'S MOTION *IN LIMINE* TO EXCLUDE THE EXPERT TESTIMONY OF RICHARD WIRTH AND R. MICHAEL HOLT ENTIRELY AND TO LIMIT THE TESTIMONY OF JOHN WILLS TO BREACH OF CONTRACT DAMAGES ONLY

Paul M. Brown (CT 23232)
Aaron M. Zeisler (*pro hac vice*)
SATTERLEE STEPHENS BURKE &
   BURKE LLP
230 Park Avenue
New York, New York 10169
Telephone: (212) 818-9200

*Attorneys for Defendants George H. Holley
and Home Diagnostics, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................. 1

RELEVANT FACTS ......................................................................................... 3

ARGUMENT .................................................................................................. 3

    A.    Holt's Testimony Regarding "Venture Capitalists" Should Be Excluded Because It Is Speculative And Has No Valid Connection To Brandt's Provision Of Business Consulting Services Here ....................................... 6

    B.    Wirth's Testimony As A "Turn-Around Specialist" Should Be Excluded Because It Is Speculative And Has No Valid Connection To Brandt's Provision Of Business Consulting Services Here ....................................... 9

    C.    Wirth's And Holt's Testimony Should Be Excluded Because Plaintiff Has Now Conceded Several Times That Their Testimony Was Not Relied Upon To Calculate Any of Plaintiff's Alleged Damages .............................. 14

    D.    Any Proposed Testimony By Wills Concerning Brandt's Alleged Estoppel And Unjust Enrichment Damages Should Be Excluded Because Wills Never Analyzed Those Issues And, Indeed, Testified That He Had No Opinion As To The Fair Value Of Brandt's Services ..................................... 15

CONCLUSION ............................................................................................... 18

## TABLE OF AUTHORITIES

**Page**

**CASES**

In re Air Disaster at Lockerbie Scotland,
    37 F.3d 804 (2d Cir. 1994)...................................................................5

Amorgianos v. National R.R. Passenger Corp.,
    303 F.3d 256 (2d Cir. 2002)...........................................................9, 15, 17

Boucher v. U.S. Suzuki Motor Corp.,
    73 F.3d 18 (2d Cir. 1996).........................................................4, 5, 6, 8, 9, 13

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
    113 S. Ct. 2786, 509 U.S. 579 (1993).......................................4, 5, 9, 15

Kumho Tire Co., Ltd. v. Carmichael,
    119 S. Ct. 1167, 526 U.S. 137 (1999)........................................................4, 13

Mancuso v. Consolidated Edison Co.,
    967 F. Supp. 1437 (S.D.N.Y. 1997)...........................................................5

In re Paoli R.R. Yard PCB Litigation,
    35 F.3d 717 (3d Cir. 1994)...........................................................................5

Perkins v. Origin Medsystems, Inc.,
    299 F. Supp. 2d 45 (D. Conn. 2004)........................................................4, 5, 15

Shatkin v. McDonnell Douglass Corp.,
    727 F.2d 202 (2d Cir. 1984)...........................................................4, 5, 6, 9, 12, 13

U.S. v. Rincon,
    28 F.3d 921 (9th Cir. 1994) ........................................................................4

**STATUTES**

Fed. R. Evid. 104(a).............................................................................................5, 15

Fed. R. Evid. 403 .................................................................................................3, 4

Fed. R. Evid. 702(3)..............................................................................................passim

652264_4

**MISCELLANEOUS**

Wright & Gold, <u>Federal Practice and Procedure</u>, § 6263 ..............................................................4

Defendants Home Diagnostics, Inc. and George H. Holley ("Defendants"), by their attorneys Satterlee Stephens Burke & Burke LLP, respectfully submit this memorandum of law and the accompanying declaration of Paul M. Brown, executed on May 15, 2006 ("Brown Decl."), in support of their motion *in limine*: (i) to preclude Plaintiff Leonard Brandt ("Brandt") from offering any expert testimony from R. Michael Holt ("Holt") or Richard Wirth ("Wirth"); and (ii) to limit any expert testimony from John Wills ("Wills") to the topic of Brandt's alleged contract damages.

## PRELIMINARY STATEMENT

The expert testimony of Holt and Wirth should be precluded, and the testimony of Wills should be limited, pursuant to Federal Rules of Evidence 104(a), 403 and 702, because their testimony is speculative, irrelevant and severely more prejudicial than probative. Holt's proposed expert testimony concerning "venture capitalists" and the ranges of compensation for partners at venture capitalist firms is unrealistic and speculative as it is proposed to be applied to plaintiff's action. Holt's expert reports lack any analysis of Brandt's role with Defendants in this case, and Holt's conclusion that "Brandt functioned at least at the Partner level and probably at the Senior Partner level" of a venture capital firm (while allegedly performing consulting services for Defendants) is based on a single telephone conference with Brandt. Indeed, Holt conceded that he had no opinion as to the value of the work that Brandt actually did for Defendants from 1993 to 1997. Holt's complete failure to analyze Brandt's actual role or the facts of this lawsuit hardly satisfies Federal Rule of Evidence 702's requirement that "the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702(3).

Wirth, a self-described "turnaround specialist," has offered to testify about Brandt's compensation in terms of Brandt being akin to a turnaround specialist. Yet, Wirth's testimony is wholly conclusory and impermissibly based upon anecdote rather than the facts of

this case. Not only is it undisputed that MIT was never in Chapter 7 or Chapter 11 bankruptcy, but Wirth's expert report fails to offer actual analysis as to how Brandt's alleged work for Defendants was in "turnaround" work or crisis management. Moreover, Wirth's expert conclusion is belied by his own deposition testimony, in which he admits that Brandt has "zero experience" in the area of turnaround work and "nothing in his background as a turnaround specialist." Thus, Wirth's testimony concerning a turnaround specialist's role and Brandt's role is hopelessly speculative, unsupported by the record and little more than an impermissible "apples and oranges" comparison meant to mislead the jury.

A separate and independent ground for the exclusion of both Holt's and Wirth's testimony is that Brandt himself has conceded that their testimony is irrelevant and unnecessary to any calculation of his damages. Specifically, in response to Defendants' Interrogatory Nos. 10 and 11, which asked Brandt to explain in detail (i) the precise amount of damages alleged in the Complaint, (ii) the manner in which each was calculated, (iii) each and every document upon which Brandt relied to calculate his damages and (iv) the persons that Brandt consulted, Brandt responded that Wills and the Wills Supplemental Report – not any information by Wirth or Holt – supplied the sole basis upon which to calculate his damages for all three causes of action remaining in this lawsuit.[1]  Indeed, the Wills Supplemental Report does not rely upon or even mention Wirth or Holt. Thus, by plaintiff's own interrogatory responses, it is clear that Wirth's and Holt's testimony is entirely superfluous.

Finally, the testimony of Wills, an accountant, should be limited to Brandt's breach of contract claim. Wills provides no analysis of Brandt's second and third counts for estoppel and unjust enrichment; rather, it is Brandt and his counsel who baldly assert that the

---

[1]  The remaining causes of action are Count I (breach of contract), Count II (promissory estoppel) and Count III (unjust enrichment/quantum meruit).

damages for those counts are "the same" as the breach of contract claim. Indeed, Wills testified at deposition that he was certainly not expressing an opinion as to whether or not Wills's approximately $10 million contract damages estimate is fair compensation for what Brandt did. This Court has held that an expert's testimony is inadmissible if "'there is simply too great an analytical gap between the data and the opinion proffered,' such that the opinion is 'connected to the existing data only be the *ipse dixit* of the expert,'" and here, it is the *ipse dixit* of Brandt himself. For these reasons and the reasons set forth herein, Defendants respectfully request that the expert testimony of Holt and Wirth be excluded and that any testimony by Wills be limited to Brandt's alleged breach of contract damages.

## RELEVANT FACTS

The facts relevant to this motion are set forth in the Declaration of Paul M. Brown, dated May 15, 2006, and exhibits annexed thereto.

## ARGUMENT

Brandt should be precluded from introducing "expert" testimony of Wirth, Holt and Wills in light of Federal Rules of Evidence 104(a), 403 and 702. In relevant part, Rule 702 provides that:

> a witness qualified as an expert by knowledge, skill, experience training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Rule 403, in turn, provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed. R. Evid. 403. Read in conjunction, proposed expert testimony that is "speculative or conjectural" or so unrealistic as to be an

"apples and oranges comparison" (i.e. a bankruptcy "turnaround specialist" testifying about compensation on behalf of a plaintiff who concededly had zero turnaround experience and who performed no turnaround work) should be excluded because such testimony would confuse the issues or mislead the jury about the nature of the case and plaintiff's potential damages. Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996). It is well-settled that proffered experts who are allowed to make "apples to oranges" comparisons should be prevented from testifying before a jury. See id. (expert testimony should be excluded if it is "in essence an 'apples and oranges' comparison"); Shatkin v. McDonnell Douglass Corp., 727 F.2d 202, 208 (2d Cir. 1984) ("an 'apples and oranges' comparison simply cannot withstand scrutiny"); Perkins v. Origin Medsystems, Inc., 299 F. Supp. 2d 45, 54 (D. Conn. 2004) (Underhill, J) (same).

Indeed, "[t]he Courts have long held the expert testimony offered under Rule 702 must be relevant under Rule 401 and subject to exclusion under Rule 403. See, e.g., Daubert v. Merrell Dow Pharmaceuticals, Inc., 113s. ct. 2786, 2798, 509U.S. 579, 595 (1993) (expert witness testimony is subject to exclusion under Rule 403); U.S. v. Rincon, 28 F.3d 921, 925 (9th Cir. 1994) ("Daubert in no way altered the discretion under Rule 403 that resides with the district court judge to determine whether such evidence is properly admitted"). Similarly, expert testimony might be said to "assist the trier of fact to determine a fact in issue" only if its probative value outweighs the dangers of "unfair prejudice, confusion of the issues, or misleading the jury" identified by Rule 403. Wright & Gold, Federal Practice and Procedure, § 6263, p. 194 (1997). While Rule 403 favors admissibility, giving courts discretion to exclude only where probative value is "substantially" outweighed by competing dangers, Rule 702, in contrast, requires exclusion of expert testimony unless, after weighing costs and benefits, the Court concludes that expert testimony on balance will help the trier of fact to accurately "determine a fact in issue." Id.; Kumho Tire Co., Ltd. v. Carmichael, 119 S. Ct. 1167, 1175, 526

4

U.S. 137, 149, 143 L.E.2d 238 (1999) ("We conclude that Daubert's general principals apply to expert matters described in Rule 702. The Rule . . . 'requires a valid . . . connection to the pertinent inquiry as a precondition to admissibility'").

Finally, it is clear that admissibility issues concerning expert testimony must first be resolved by the Court under Rule 104(a). Daubert, 509 U.S. at 591; In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 743 n.9 (3d Cir. 1994) ("By holding that the admissibility of scientific testimony is governed by Rule 104(a), Daubert clearly holds that the party seeking admissibility must make out more than a prima facie case of reliability"). "The trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to [matters] that will assist the trier of fact." Daubert, 509 U.S. at 592. Expert testimony does not "assist" if it is "speculative or conjectural," unrelated to facts at issue or based on factual assumptions that are not supported by the evidence. See, e.g., Shatkin, 727 F.2d at 207-08 (in action for a wrongful death, plaintiff's economist made factual assumptions in calculating income that were not supported by the record and riddled with errors); see also Boucher, 73 F.3d at 21; In re Air Disaster at Lockerbie Scotland, 37 F.3d 804, 824 (2d Cir. 1994); Mancuso v. Consolidated Edison Co., 967 F. Supp. 1437, 1441 (S.D.N.Y. 1997) (addressing Second Circuit guidelines for expert testimony). As stated by this Court in Perkins:

> an expert's testimony must be held inadmissible if "there is simply too great an analytical gap between the data and the opinion proffered," such that the opinion is "connected to the existing data only be the ipse dixit of the expert."

Perkins, 299 F. Supp. 2d at 54. This pronouncement is particularly salient with respect to the proposed expert testimony of Holt and Wirth, as addressed in Points A and B, infra.

5

**A.     Holt's Testimony Regarding "Venture Capitalists" Should Be Excluded Because It Is Speculative And Has No Valid Connection To Brandt's Provision Of Business Consulting Services Here**

Holt's proposed expert testimony should be excluded as speculative, entirely unrelated to facts at issue and based upon "apples and oranges" comparisons that are not supported by the evidence. Boucher, 73 F.3d at 21; Shatkin, 727 F.2d at 207-08. Holt's expert analysis amounts to nothing more than an annual survey of what full-time partners and officers of top-tier venture capital firms earn through salaries, bonuses and so-called "carried interests," which are the profits made from the deals that the venture capitalists have funded. The problem with such analysis as applied to this case is, *inter alia*: (i) Brandt was not a venture capitalist between 1993 and 1999 and did not invest in MIT or HDI; (ii) Brandt was not employed as a venture capitalist at a large, top-tier venture capitalist company while "consulting" for Defendants (rather, he was self-employed, part-time); and (iii) venture capitalists' carried interests and the bulk of their income come from a combination of the frequently numerous deals of their venture capital firms, and accordingly, "carried interests" have nothing to do with Brandt or his work for Defendants as a part-time, independent consultant.

It is undisputed that Brandt was not acting as a venture capitalist for the Defendants. Brandt did not invest any money in HDI or MIT, and he did not produce or raise any money for HDI or MIT. Brown Decl., Exh. L (Wirth Tr. 64:4-8 & 246:1-11).[2] And, just one week after Holt issued his revised expert report (Brown Decl., Exh. H), Holt testified at his deposition that he did not know anything about HDI or what Brandt had done for Defendants:

> Q:   Did you discuss with Mr. Brandt or with Mr. Dunham your reviews of Mr. Brandt's entitlement in this matter to compensation?
>
> A:   No, I mean, Jack [Dunham] explained a little bit to me that there is two parts to this case and I am only in one little segment of it. And that's

---

[2] Brandt never told Holt that he invested or raised money for defendants. Id., Exh. K (Holt Tr. 103:13-21).

basically <u>if he had been a venture capitalist</u> during that period, 1993 to 1997, how much money would he have made, okay, and that's what I came up with.

And, I learned more yesterday about the case than I knew before. <u>I mean, I didn't know what Len [Brandt] was doing.</u> I just knew he had been a venture capitalist. . . .

* * *

A:    . . . And, I don't know the size of the business. <u>I don't know anything about the business.</u>

Q:    What business was that, if you know?

A:    I actually don't. I think Jack [Dunham] mention letters, HDI or I don't even remember what they were but something like that.

Brown Decl., Exh. K (Holt Tr. 27:19- 28:7;  29:3-9) (emphasis added). As demonstrated by this testimony, Holt's flawed and speculative analysis flows from the untenable assumption "<u>if [Brandt] had been a venture capitalist</u> during that period, 1993 to 1997" – Brandt, however, was not.[3]

Moreover, Holt's entire expert "analysis" as applied to the facts of this case arises from a <u>single conference call</u> that he had with Brandt. As stated in Holt's revised expert report:

As part of our due diligence, we held a conference call with Mr. Len Brandt. Based on this conversation, we believe that Mr. Brandt functioned at least at the Partner level and probably at the Senior Partner level. Since our 6/15/04 report, we have additional information from Norwest that confirms he would have been considered a Senior Partner for purposes of our survey . . .

Brown Decl., Exh. H (p. 3).

Putting aside the fact that Brandt left Norwest in 1990 – years before his alleged 1994 agreement with Defendants (thereby making Holt's analogy to Brandt acting as a "Senior

---

[3] It should also be noted that Brandt had told Holt "nothing, zero" about the business of MIT or HDI. <u>Id.</u> (Holt Tr. 103:10-12).

7

Partner level" venture capitalist outlandish) – Holt's report simply contains <u>no</u> <u>other</u> <u>discussion</u> <u>or</u> <u>analysis</u> of Brandt's alleged work or role with Defendants. <u>Id.</u> Indeed, Holt only mentions Brandt in two paragraphs of his seven-page expert report, while devoting the entirety to his survey of venture capitalist compensation of major firms and Holt's own credentials. <u>Compare</u> <u>id.</u> (p. 3, para. 1-2) <u>to</u> the text of Holt's entire report.

Holt's analysis also must be rejected because it is not applied "reliably to the facts of the case." Fed. R. Evid. 702. Holt's venture capitalist compensation charts (Brown Decl., Exh. H [p. 4]) are based upon compensation for full-time venture capital partners at top-tier venture capital firms. <u>Id.</u>, Exh. K (Holt Tr. 127:7- 128:21). This, however, is vastly different from Brandt who was "consulting" to Defendants part-time (only certain hours and certain days per year), and who was not even an owner/partner of HDI or MIT, much less the owner/partner of a top-tier venture capital firm.[4] For this reason alone the testimony should be excluded as inherently speculative and unreliable. <u>See</u>, <u>e.g.</u>, <u>Boucher</u>, 73 F.3d at 22 (district court abused its discretion in permitting expert testimony based upon the unrealistic and speculative assumption that plaintiff would have been employed on a permanent, full-time basis).

Yet, without knowing anything about HDI, MIT or Brandt's actual role, Holt readily concluded that "[b]ased on this conversation, we believe that Mr. Brandt functioned at least at the Partner level and probably at the Senior Partner level." Brown Decl., Exh. H (p. 3). Worse yet, Holt conceded that he had <u>no opinion as to the value of the work that Brandt actually</u> <u>did</u> for Defendants from 1993 to 1997 (Exh. K [Holt Tr. 160:4-9]) – a potentially important damages issue in this case if Brandt were to succeed in proving Defendants' liability. The foregoing hardly satisfies Rule 702's requirement that "the witness has applied the principles and

---

[4] Indeed, Holt conceded at deposition that he did not even know what Brandt's compensation was at any time Brandt worked at Norwest. Brown Decl., Exh. K (Holt Tr. 142:21- 143:4). Holt also did not know what senior

652264_4

methods reliably to the facts of the case." Fed. R. Evid. 702(3). Again, Brandt was not acting in a venture capitalist role for Defendants, and thus, Holt's analysis is just an impermissible "apples and oranges" comparison.

Because Holt's proposed expert testimony lacks any analysis of Brandt's role in this case, Holt's conclusion that "Brandt functioned at least at the Partner level and probably at the Senior Partner level" (Brown Decl., Exh. H [p. 3]) is both irrelevant and indefensible. Amorgianos v. National R.R. Passenger Corp., 303 F.3d 256, 266 (2d Cir. 2002) ("when an expert opinion is based upon data, a methodology, or studies that are simply inadequate to support the conclusions reached, Daubert and Rule 702 mandate the exclusion of that unreliable opinion testimony."). Accordingly, Holt's use of compensation tables for Senior Partner level venture capitalists is speculative, unsupported by the record and little more than an impermissible "apples and oranges" comparison meant to mislead the jury. Boucher, 73 F.3d at 21; Shatkin, 727 F.2d at 207-08. For these reasons and the reasons set forth in Point C, infra, it is respectfully submitted that the Court use its "gatekeeper" function to exclude any testimony by Holt.

**B.      Wirth's Testimony As A "Turn-Around Specialist" Should Be Excluded Because It Is Speculative And Has No Valid Connection To Brandt's Provision Of Business Consulting Services Here**

Wirth's testimony should also be excluded because it too remote and too prejudicial, and is based upon "apples and oranges" comparisons that are not supported by the evidence. Boucher, 73 F.3d at 21; Shatkin, 727 F.2d at 207-08. Specifically, the Court should exercise its "gatekeeper" role to prevent Wirth from testifying here because Wirth does not purport to give specific views on Brandt's actual damages. Indeed, Wirth concedes that he was

---

partners or partners earned at Norwest from 1990 to 1997. Id. (Holt Tr. 154:18-24).

not sure (and could not tell from the record) what exactly Brandt did or how many hours, or weeks, or months that Brandt spent doing it. And, as part of Wirth's analysis, he never attempted to reconstruct Brandt's hours. Thus, while Wirth states that a turn-around specialist might earn $200 to $300 per hour (Brown Decl., Exh. I [p. 3]), he cannot possibly offer an expert opinion as to the reasonable value of Brandt's services because Wirth does not know, among other things, how much time Brandt spent providing those services. Accordingly, Wirth's proposed testimony amounts to little more than speculation.

Wirth's testimony is speculative and inapplicable for several additional reasons. First, his expert report fails to offer actual analysis as to how Brandt's alleged work for Defendants was crisis management or "turn-around" work. See id. Wirth simply concludes that "[t]he services performed by the Plaintiff are similar to those that would have been performed by a turnaround professional or chief restructuring officer in a similar situation" (id., p. 2), without citing to a single document or excerpt of testimony.[5] That conclusion, however, is belied by Wirth's own deposition testimony in which he admits that Mr. Brandt has "zero experience" in the area of turnaround work and "nothing in his background as a turnaround specialist."

> Q:    And what experience did you learn either from him or counsel or reading the thousands of pages about this file, the testimony, the depositions that when on and on, as to his background as a turnaround specialist?
>
> A:    I have seen nothing as to his background as a turnaround specialist.
>
> Q:    As far as you know, he had zero experience in that area, correct?
>
> A:    That would be fair.

Brown Decl., Exh. L (Wirth Tr. 91:21- 92:5). Wirth also clearly testified that Brandt did not

---

[5] Rather, Wirth "spoke with the Plaintiff via telephone" and claims, in broad-brush fashion, that he had "reviewed all of the documents produced by both sides including the depositions given my [sic] Mr. Brandt, the Plaintiff and Mr. Holley one of the Defendants." Id., p. 2.

play the role of a "CRO" or chief restructuring officer. Id. (Wirth Tr. 124:5-11). In fact, given the nature of Brandt's alleged work with HDI and MIT, Wirth advised Brandt and his attorneys that "perhaps it would be beneficial to contact a venture capitalist who has had a deal go bad or a boutique investment banker" to provide relevant expert testimony. See Brown Decl., Exh. O.

Second, Wirth admitted at his deposition that he was not sure if a formal written agreement had ever been entered into between Brandt and the other defendants and that Wirth had difficultly understanding Brandt's role. Brown Decl., Exh. L (Wirth Tr. 54:24 – 55:16). Indeed, Wirth acknowledged that all specificity with respect to Brandt's role "was lacking and that is why [Wirth] spent so much time looking at the files, to try to determine the kind of activities that Mr. Brandt was performing." Id. (Wirth Tr. 55:23-25). Although Wirth attempted to couch Brandt's role as "a sounding board" to George Holley as turn-around specialist role, Wirth was forced to concede that normal business consultants regularly act as a sounding board and advise companies on their problems. Id. (Wirth Tr. 68:20- 69:2). Similarly, when Wirth attempted to portray Brandt as someone who differed from a "traditional management consultant" because Brandt could counsel a CEO (presumably Holley), when the CEO says "I've got a payroll due Friday, it's a quarter of a million dollars and I've only got $50,000 in the bank" – Wirth conceded that he did not know if any such cash crisis had actually occurred with Defendants. Id. (Wirth Tr. 69:3-17).

Furthermore, with respect to Brandt's alleged incentive compensation, Wirth conceded that he had never personally experienced the type of 10% incentive compensation that Brandt now claims in this lawsuit; rather, Wirth's conclusions were based upon anecdotal evidence. Id. (Wirth Tr. 34:9 – 35:15). He also has acknowledged that the documents he reviewed indicated that Brandt never produced or raised any money for the company. Id. (Wirth Tr. 64:4-8; 246:1-11). Wirth also admitted that: (i) he did not know how much time Brandt spent

11

in any one month "consulting" for Defendants (Wirth Tr. 70:20-23); (ii) he could not testify as to how many hours Brandt worked or that he should get X dollars an hour times those hours worked (Wirth Tr. 72:6-12); and (iii) that he was not going to offer "testimony . . . as to the monthly value of [Brandt's] services." Wirth Tr. 73:8-10. Given these glaring deficiencies in understanding Brandt's actual role or alleged compensation agreement, Wirth should be prevented from testifying so that the jury is not biased or misled by Wirth's shaky and unsupported conclusions. Shatkin, 727 F.2d at 207-08.

Moreover, Wirth's testimony is conjectural because he provides in conclusory fashion only (again, without citing a single document or piece of testimony) that Brandt's "consulting arrangement and related compensation" was "not inconsistent with the range of arrangements Wirth has experienced or seen in the turnaround and restructuring industry." Brown Decl., Exh. I (p. 2). Revealingly, Wirth fails to set forth anywhere in his report what Brandt's "consulting arrangement and related compensation" actually was. What obviously happened here is that Wirth told Brandt's counsel that Brandt did not fall into the framework of a turnaround specialist (Brown Decl., Exh. O, para. 2), and that Wirth proceeded to testify as best he could. However, Wirth's conclusion that Brandt's compensation was "<u>not</u> <u>inconsistent</u> with the range of arrangements Wirth has experienced or seen in the turnaround and restructuring industry" (<u>Id.</u>, p. 2, emphasis added), <u>is flatly contradicted by Wirth's own deposition testimony</u> in which he admitted that Brandt's "arrangement and compensation" was <u>not consistent</u> with the ones Wirth has experienced and seen.[6] Brown Decl., Exh. L (Wirth Tr. 255:5-17). Regardless, even Wirth's conclusion that Brandt's compensation was "not inconsistent with the range of

---

[6] Thus, it is unsurprising that Wirth does not provide any evidence or analysis in his report to establish "the range of arrangements Wirth has experienced or seen" in the turnaround industry. Brown Decl., Exh. I (p. 2). In this regard, Wirth's conclusory statements do not meet Rule 702's requirement that "the testimony [be] based upon sufficient facts or data." Fed. R. Evid. 702.

arrangements Wirth has experienced" is so vague and fuzzy as to be unhelpful as expert testimony in this case.[7]

Wirth's conclusions are hardly the type of "independent" expert analysis required by Rule 702 and Kumho Tire, in which it is required that the "witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Wirth's conclusory statements about a turnaround specialist's role and Brandt's role are speculative, unsupported by the record and little more than impermissible "apples and oranges" comparisons meant to mislead the jury. Boucher, 73 F.3d at 21; Shatkin, 727 F.2d at 208. At a minimum, Rule 702 and the U.S. Supreme Court require that there be "a valid . . . connection to the pertinent inquiry as a precondition to admissibility." Kumho Tire, 526 U.S. at 149. Here, that is not the case, and thus, exclusion of Wirth's testimony is warranted.

---

[7] Moreover, Wirth's conclusions merely mimic the conclusions that Brandt's attorneys "suggested" that Wirth reach just two weeks prior to the issuance of his report. Specifically, by email dated June 1, 2004, Brandt's attorney told Wirth how he "envision[ed] the opinion." Brown Decl., Exh. N. Specifically, Wirth was told that his opinion would have two components:

> (1) That the arrangement agreed upon by Len and George Holley was not inconsistent with the types of arrangements you have seen in the turnaround/restructuring industry for the kinds of work Len performed . . . that it was within the range of deals you have seen and therefore not atypical or extraordinary]; and
> (2) That, independent of the 10% equity component of the agreement, the monthly compensation Len agreed to was grossly below what a person in his position doing the kinds of things he did would be paid at the time. . . .

Id. (emphasis added). Amazingly, the conclusions in Wirth's June 15, 2005 expert report say almost exactly what Brandt's attorneys suggested:

> 2. The consulting arrangement and related compensation agreed upon by the Plaintiff and the Defendants was not inconsistent with the range of arrangements Wirth has experienced or seen in the turnaround and restructuring industry for the kind of work the Plaintiff performed.
> 3. The monthly compensation agreed between the Plaintiff and the Defendants was unusual in that the monthly rate was low . . .

Compare Exh. I (p. 2) to Exh. N (emphasis added to both).

For these reasons and the reasons set forth in Point C, below, it is respectfully submitted that the Court use its "gatekeeper" function to exclude any testimony by Wirth.

**C.      Wirth's And Holt's Testimony Should Be Excluded Because Plaintiff Has Now Conceded Several Times That Their Testimony Was Not Relied Upon To Calculate Any of Plaintiff's Alleged Damages**

This Court should exclude the testimony of Wirth and Holt on the independent ground that Brandt has conceded that their testimony was not relied upon (and is therefore unnecessary) to calculate his alleged damages. First, in response to Defendants' Interrogatory asking Brandt to set forth the entire basis for his alleged damages and all documents upon which he relied to calculate his damages, Brandt only cited to the expert report of Wills, the CPA, as the basis for calculating his damages.[8] See Brown Decl., Exh. B (Response No. 10). Moreover, when asked to "identify each and every person, business or other entity with which you consulted to calculate your answer to Interrogatory No. 10 above," Brandt's sole response was: "John W. Wills, CPA, of Dispute Analytics, LLC, whose reports are attached as Exhibits A & B to this pleading." Id. (Response No. 11). Yet, even the Wills Supplemental Report – like plaintiff's interrogatory response – does not rely upon or mention Wirth or Holt or their respective reports. Brown Decl., Exh. F. Thus, Brandt's response makes it abundantly clear that Wills and his reports supply the sole basis upon which to calculate Brandt's alleged damages for Count I (breach of contract), Count II (estoppel) and Count III (unjust enrichment/quantum meruit) – the only three causes of action remaining in this lawsuit.[9] Id., Exh. B (Nos. 10 & 11).

---

[8] Specifically, Interrogatory No. 10 asked plaintiff to "state the precise amount of damages sought in the Complaint, set forth all components of said damages and the amount of each component, explain the manner in which each such amount was calculated, and identify each and every such document upon which you relied to calculate your answer to this interrogatory." Brown Decl., Exh. B.

[9] Brandt's Amended Answers To Certain Interrogatories are dated July 1, 2005 (Brown Decl., Exh. B), over eight months after the date of Holt's revised expert report and almost one year after the date of Wirth's expert report. Accordingly, Brandt's response could have included Holt and Wirth if, contrary to fact, they were necessary to Brandt's various damages claims.

Moreover, Brandt's counsel has confirmed as recently as March 21, 2006 that the damages alleged for both the contractual and equitable claims, and the calculation thereof, "relies on the expert testimony of John Wills." Id., Exh. C. Indeed, plaintiff's counsel enclosed a copy of the above-quoted amended interrogatory response and stated that "there is no need for Mr. Brandt to amend further his amended interrogatory answers of July 1, 2005, and he continues to stand by them." Id.

In light of the foregoing, it would simply strain credulity for Brandt to assert now that the testimony of Wirth or Holt is necessary for the jury to hear – especially when their testimony and related reports are indisputably not being relied upon for the calculation of Brandt's alleged damages. Thus, their testimony should be excluded, as it will not assist the trier of fact. Fed. R. Evid. 104(a); Daubert, 509 U.S. at 592.

**D.     Any Proposed Testimony By Wills Concerning Brandt's Alleged Estoppel And Unjust Enrichment Damages Should Be Excluded Because Wills Never Analyzed Those Issues And, Indeed, Testified That He Had No Opinion As To The Fair Value Of Brandt's Services**

Here, because there is a complete "analytical gap" between Wills's expert reports and the amount of Brandt's alleged estoppel and unjust enrichment damages, any testimony by Wills as to these damages is "connected to the existing data only be the ipse dixit" of Brandt's counsel, and therefore must be excluded. Perkins, 299 F. Supp. 2d at 54; see also Amorgianos, 303 F.3d at 266. Even the most cursory review of Wills's expert report and supplemental expert report reveals that Wills never analyzed Brandt's estoppel and unjust enrichment damages – only his alleged contract damages. See Brown Decl., Exhs. E & F. Indeed, the introduction and summary of expert opinions contained in Wills's first report confirm that Wills only analyzed Brandt's alleged contract damages and its two purported components: "monthly compensation and value-based compensation on assets received above $1,000,000 by the collective group of

15

MIT, ASC, George Holley, and Robert Salem." Brown Decl., Exh. E (p. 1 n. 2 & p. 2). Specifically, Wills calculated Brandt's contract damages to be "a range with a present value between $10,302.81 and $10,475,306 as of 9/30/2004." Id., Exh. F (p. 2 & Schedule D).

While Defendants vehemently oppose Wills' methodology, assumptions and calculations of Brandt's purported contract damages (and will attack them at trial), Defendants respectfully request that the Court exclude any proposed Wills testimony on damages for estoppel or unjust enrichment. In short, if not for the *ipse dixit* of Brandt and his counsel, there is no connection between Wills's $10,475,306 contract damages calculation and any estoppel or unjust enrichment damages. Only Brandt's amended answers to interrogatories, dated July 1, 2005, and a single April 3, 2006 letter by counsel, assert that the $10,475,306 Wills estimate (or slightly revised amount) applies to Brandt's estoppel and unjust enrichment claims. See Brown Decl., Exh. B ("On Count Two, for estoppel, Plaintiff seeks relief in the amount of $10,475,306.00, pursuant to the Wills Supplemental Report. On Count Three, for unjust enrichment, Plaintiff likewise seeks relief in the amount of $10,475,306.00, pursuant to the Wills Supplemental Report."); see also Exh. D, p. 2 ("Mr. Brandt's equitable claims of promissory estoppel and unjust enrichment seek the same damages as his contract claim."). Just because "Mr. Brandt believes that Mr. Holley, MIT and ASC were unjustly enriched by that same amount" (Exh. D, p. 2), does not make it so.

Indeed, Wills testified at deposition that he was certainly not expressing an opinion as to whether or not $10 million is fair compensation for what Brandt did.

> Q:    Do you know whether or not [Brandt] consulted once a week or once a month or once a year?
>
> A:    I don't know the specificity with which he consulted, no.
>
> Q:    You are certainly not expressing an opinion as to whether or not $10 million is fair compensation for what he did, you have no idea. Right?

A:    I am not offering an opinion on that no.

Brown Exh. J (Wills Tr. 102:20- 103:7); see also (Wills Tr. 160:11-25).  As Wills conceded at

deposition, he is not a management consultant (Exh. J, Wills Tr. 103:25- 104:3), and has no

particular expertise, experience, education, or background in the area of HDI's business –

glucose monitoring systems.

Moreover, it would be improper to allow Wills to testify that the approximately

$10 million in alleged contract damages is a proxy for quantum meruit – or the fair and

reasonable value of Brandt's services – because Brandt's alleged agreement is in no way a

standard agreement.  This is not an instance where funds were raised and one could apply the

"Lehman" formula or some standard, accepted commission.

Given that Wills never analyzed Brandt's alleged estoppel and unjust enrichment

damages, and that, to the contrary, Wills testified that he was certainly not expressing an opinion

as to whether or not $10 million is fair compensation for what Brandt did, this Court should

preclude Brandt from offering Wills's expert reports or testimony on the issue of alleged

estoppel and unjust enrichment damages.  See Amorgianos, 303 F.3d at 266, 270; Fed. R. Evid.

702.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' motion *in limine*

(i) to preclude Brandt from offering any expert testimony from Holt or Wirth, and (ii) to limit

any expert testimony from Wills to the topic of Brandt's alleged contract damages.

Dated: New York, New York
         May 15, 2006

SATTERLEE STEPHENS BURKE & BURKE LLP

By: _____
         Paul M. Brown (CT 23232)
         Aaron M. Zeisler (*pro hac vice*)
         *Attorneys for Defendants Home Diagnostics, Inc.*
         *and George H. Holley*
         230 Park Avenue
         New York, New York 10169
         (212) 818-9200
         (203) 818-9606 fax

                        -and-

NUZZO & ROBERTS, L.L.C.
Richard A. Roberts (CT 07665)
Thomas J. Lengyel (CT 21488)
One Town Center
P.O. Box 747
Cheshire, Connecticut 06410
(203) 250-2000
(203) 250-3131 fax

652264_4

## **CERTIFICATION**

This is to certify that on May 15, 2006, a true copy of the foregoing Memorandum was mailed via first class, postage prepaid, to:

>Edward W. Dunham, Esq.
>Jonathan Freiman, Esq,
>Wiggin & Dana LLP
>One Century Tower
>New Haven, Connecticut  06508-1832

_____
Aaron M. Zeisler

19