UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

LEONARD BRANDT,

Plaintiff,

vs.

HOME DIAGNOSTICS, INC., GEORGE H. HOLLEY, and JUDY CHENG SALEM, EXECUTRIX OF THE ESTATE OF ROBERT J. SALEM

Defendants.

Civil Action No.: 3:01CV1889 (SRU)

DECEMBER 10, 2002

## AMENDED COMPLAINT

Plaintiff Leonard Brandt ("Brandt"), for his causes of action against defendants Home Diagnostics, Inc. ("HDI"), George H. Holley ("Holley"), and the Estate of Robert J. Salem ("Salem Estate"), states and alleges as follows:

## IDENTIFICATION OF PARTIES

1. At all times material hereto and until July 2000, Plaintiff Leonard Brandt was a citizen and resident of the State of Minnesota.

2. Defendant HDI is a Delaware corporation with its principal place of business at 2400 N.W. 55th Court, Ft. Lauderdale, Florida 33309. HDI is engaged in the business of manufacturing and distributing home testing systems for diabetes. HDI was founded by George Holley and Robert Salem in 1985 to manufacture and distribute home testing systems for diabetes. At all times material hereto, Messrs. Holley and Salem were HDI's shareholders; Mr. Holley served as HDI's Chairman of the Board; and Mr. Salem was a director or officer of HDI.





3. At all times material hereto, MIT Development Corporation ("MIT") was a research and development company of blood glucose monitoring systems and equipment. In or around November 1999, MIT and HDI entered into a merger agreement whereby MIT was merged into HDI. For purposes of this litigation, HDI has agreed to assume and be responsible for any liabilities owed by MIT to Mr. Brandt.

4. Defendant George Holley is a Connecticut resident. Mr. Holley founded HDI and MIT, was an owner and director of MIT, and is the chairman of the board of HDI and a stockholder in HDI.

5. Together with Mr. Holley, Robert Salem founded MIT and at all relevant times hereto was an owner and director/officer of MIT and HDI.

6. Defendant Judy Cheng Salem is named in her capacity as Executrix of the Estate of Robert J. Salem. Robert J. Salem died in December 1999. The Estate of Robert J. Salem is being adminisered by its Executrix, Judy Cheng Salem, in the Connecticut Court of Probate, Town of Bethel, District No. 009. On December 7, 2000, Mr. Brandt served a Notice of Cltaim on the Executrix of Mr. Salem's Estate, notifying her of Mr. Brandt's claims against Mr. Salem and his Estate. A notice of rejection of claim, executed by Judy Salem, was received on February 27, 2001.

## JURISDICTION AND VENUE

7. Because the matter in controversy, exclusive of interest and costs, exceeds the sum of $75,000 and is between citizens of different states, this Court has jurisdiction under 28 U.S.C. § 1332.

8. This case was transferred to the United States District Court for the District of Connecticut by the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1404(a).

## FACTUAL BACKGROUND

9. At all times material hereto, Defendant Holley acted as the agent for MIT, HDI, and Mr. Salem.

10. Leonard Brandt first met George Holley in the late 1980s while serving with him on the board of directors of HDI. During that time, they attended board meetings at HDI's headquarters in New Jersey, and Mr. Holley became aware of Mr. Brandt's background in the areas of business and financial consulting.

11. In July 1993, Defendant Holley made several telephone calls to Mr. Brandt at his Minnesota residence, soliciting him to provide business and financial consulting services and assistance to HDI and its affiliate company, MIT, in an effort to obtain increased value for MIT and its co-owners, Messrs. Holley and Robert Salem, from HDI. At the time Mr. Holley approached Mr. Brandt in 1993, HDI was in extreme need of leadership, strategy, shareholder management, financial resources, and managerial resources to continue in business.

12. During the period from July 1993 through March 1994, Mr. Holley and Mr. Brandt had ongoing negotiations leading up to the formation of a contract in March 1994. During their discussions, Mr. Holley consistently represented to Mr. Brandt that he acted as the agent for MIT, HDI and Mr. Salem and had the authority to represent

and bind them. Examples of these representations by Mr. Holley to Mr. Brandt are as follows:

(a) In July of 1993, Mr. Holley made several phone calls from HDI in New Jersey and his home in New York to Mr. Brandt at his Minnesota residence. During these telephone conversations, Mr. Holley told Mr. Brandt that he had the authority to represent and bind MIT, HDI, Mr. Salem and himself in their negotiations relating to Mr. Brandt's compensation and his work on their behalf. Mr. Holley told Mr. Brandt that he would be Mr. Brandt's primary contact person for HDI, MIT and Mr. Salem in contract negotiations and in the work that Mr. Brandt would do on their behalf. According to Mr. Holley, Robert Salem had requested Mr. Holley to take this role because Mr. Salem had withdrawn from the same level of active involvement that he once had with HDI and MIT due to medical and other reasons.

(b) During defendant Holley's telephone calls to Mr. Brandt in July 1993, Mr. Holley informed Mr. Brandt that Mr. Salem and he had ongoing communications in which Mr. Holley reported to Mr. Salem about the status of the activities and happenings of HDI and MIT, and that Mr. Salem's input and approval would come through Mr. Holley. He also informed Mr. Brandt that he had become Chairman of the Board of HDI and that he was to become, or had become, the Chief Executive Officer of HDI, replacing Sam Martin. He represented that none of the investors were active in the company any longer and had resigned from the Board and that, in fact, Mr. Holley and Mr. Salem made up a majority of the Board at that time.

(c) As a result of Mr. Holley's calls, on July 21, 1993, Mr. Brandt traveled from Minnesota to New Jersey to meet with Mr. Holley at HDI's headquarters. During this trip, Mr. Brandt met with Mr. Holley at HDI, as well as his apartment in New York, where they continued discussions on a wide range of business and strategic issues relating to HDI and MIT. Mr. Holley again requested that Mr. Brandt provide business and strategic consulting services for MIT and HDI. They agreed that Mr. Brandt would be reimbursed for the expenses he incurred on behalf of MIT and HDI, and that an agreement to compensate him for his services would be worked out shortly. Mr. Holley again represented to Mr. Brandt that he represented Mr. Salem's interests and had authority to negotiate on Mr. Salem's behalf as well on behalf of MIT and HDI.

(d) After the July 21, 1993 trip, George Holley and Mr. Brandt had various discussions relating to the compensation Mr. Brandt would receive for his

business and consulting services. In addition to several telephone conversations relating to this topic, various written communications were exchanged. For example, on November 10, 1993, Mr. Brandt faxed his original proposal to Mr. Holley addressing the issue of the financial arrangements between defendants and him. A true and correct copy is attached hereto as Exhibit A. Mr. Brandt's November 10, 1993 letter proposed that, in exchange for his services rendered, he receive ten percent of the proceeds received by MIT, a five to ten percent interest in MIT (which had other business activities), a small retainer from HDI/MIT, and an upside carried interest similar in structure and vesting to the next president of HDI, but at the rate of 20-25 percent. Shortly thereafter, Mr. Holley responded to Mr. Brandt's November 10, 1993 proposal via a telephone call to Mr. Brandt, representing to Mr. Brandt that he had communicated to Mr. Salem about the proposal, that Mr. Salem objected to it because he did not want Mr. Brandt to participate with respect to all MIT interests, and that a subsequent proposal would be sent to Mr. Brandt on behalf of Mr. Holley, Mr. Salem, MIT and HDI.

(e) On January 18, 1994, George Holley sent to Mr. Brandt at his Minnesota address a letter setting forth a proposed compensation arrangement between the parties. This letter articulated a proposal between "MIT Shareholders", which were only Mr. Holley and Mr. Salem, and not just the interests of Mr. Holley alone. Shortly thereafter, he sent to Mr. Brandt another copy of the same letter, which contained his handwritten statements relating to the proposed agreement. A true and correct copy of this letter is attached as Exhibit B. After sending this letter, Mr. Brandt and Mr. Holley had telephone conversations in which they discussed the terms contained in Mr. Holley's letter, with Mr. Holley again representing that the letter was sent on behalf of MIT, HDI, Mr. Salem and himself, and that he had authority to negotiate on their behalf. Their discussions relating to the compensation issue continued via various telephone conversations over the next month or so.

(f) On March 2, 1994, after several communications with Mr. Holley, Mr. Brandt faxed a letter from his Minnesota address to Messrs. Holley and Salem setting forth the agreed terms of his compensation. Mr. Holley then made handwritten notations on the letter and faxed it back to Mr. Brandt. A true and correct copy of this letter is attached as Exhibit C. Mr. Brandt understood from Mr. Holley that, consistent with his previous actions, he had discussed Mr. Brandt's letter with Mr. Salem, and then made handwritten notations on the letter and faxed it back to Mr. Brandt at his Minnesota address confirming his agreement. At this time, an agreement was reached with Mr. Holley, Robert Salem, MIT, and HDI to compensate Mr. Brandt for his services. Again, Mr. Holley's conduct and

representations to Mr. Brandt made clear that he was representing both Mr. Salem and himself in contract negotiations; that Mr. Salem approved of the agreement Mr. Holley negotiated with Mr. Brandt; that he had participated through Mr. Holley in the contract negotiations; and that he had given his approval for Mr. Brandt to go forward by performing under the contract terms.

13. Under the parties' agreement, defendants requested Mr. Brandt to provide business and strategic consulting services. In consideration of Mr. Brandt's services, Mr. Holley, Mr. Salem, MIT, and HDI promised and agreed to pay to Mr. Brandt the following:

(a) A monthly consulting fee of $2,000, with the understanding that they would not be responsible for more than $1,000 per month if HDI did not pay MIT under a management contract with MIT then in existence or in the process of being formed; and

(b) Compensation equal to ten percent (10 %) of the value, interest, equity, collections, revenue and assets above $1,000,000 received from HDI by MIT; its affiliate company, Applied Sciences Corp. ("ASC"); and Messrs. Holley and Salem.

14. In reliance upon Defendants' promises and agreement, Brandt, between August 1993 and 1999, expended substantial time, talent, and effort in furtherance of the interests of MIT, HDI, and Messrs. Holley and Salem.

15. Contrary to Defendants' representations and to Mr. Brandt's detriment, Defendants have failed to pay to Mr. Brandt the agreed monthly consulting fees set forth in paragraph 13 (a) as well as the additional compensation as set forth paragraph 13 (b) above. With the exception of five payments of $1,000 (for a total of $5,000) made payable to Mr. Brandt in 1994 (with checks written in April, May, July and September 1994), no other monthly consulting fees have been paid, despite Mr. Brandt's continuous provision of business and consulting services from March 1994 through

December 1997. Defendants have also failed to pay any of the agreed additional compensation set forth in paragraph 13 (b), including compensation triggered by the merger between MIT and HDI.

16. Upon information and belief, in November 1999, ASC, a subsidiary of MIT, was sold to HDI, but Defendants failed to pay to Mr. Brandt the agreed compensation as set forth above.

17. Upon information and belief, HDI has recently engaged, or will in the immediate future engage, in a financial transaction with a third party, triggering Defendants' obligation to pay Mr. Brandt in excess of $2.5 million. Defendants also owe Mr. Brandt any additional value, interest, equity, collections, revenues and assets above $1,000,000 received from HDI by MIT, ASC and Messrs. Holley and Salem, as well as the monthly consultation fee set forth above.

## CAUSES OF ACTION
## COUNT ONE
## BREACH OF CONTRACT
## (Against All Defendants)

18. Plaintiff Leonard Brandt incorporates paragraphs 1 through 17 as if fully set forth herein.

19. For good and valuable consideration, Defendants made various agreements with Plaintiff, including, but not limited to, the following:

(a) That they would pay to Plaintiff a monthly consulting fee of $2,000, with the understanding that they would not be responsible for payments to Plaintiff of more than $1,000 per month in the event that HDI did not make payments to MIT under a management contract then existing with MIT or which was being formed; and



Doc# 1512261\2
JAO/31593/2/611399v1
12/10/02-HRT/

(b) That they would pay Plaintiff additional compensation equal to ten percent (10 %) of the value, interest, equity, collections, revenues and assets above $1,000,000 received from HDI by MIT, ASC and Messrs. Holley and Salem.

20. Implied in the agreements between Defendants and Plaintiff is an obligation of good faith and fair dealing which requires that each do nothing destructive of the other's rights to benefit from the contracts or to obstruct the other's performance of the contracts, and which requires both honesty and the observance of reasonable commercial standards of fair dealing in the trade in the parties' performance of their business dealings arising out of their contracts.

21. Defendants breached their agreements with Plaintiff set forth above, as well as the implied covenant of good faith and fair dealing implied therein, by failing to make payments to Plaintiff as they represented and agreed. Defendants have also engaged in anticipatory repudiation of these agreements and this covenant. With the exception of five payments of $1,000 (for a total of $5,000) made payable to Mr. Brandt in 1994 (with checks written in April, May, July and September 1994), no other monthly consulting fees have been paid, despite Mr. Brandt's continuous provision of business and consulting services for Defendants from March 1994 through December 1997. Defendants have also failed to pay any of the agreed compensation set forth in paragraph 19 (b).

22. As a direct and proximate result of Defendants' material breaches of their agreements with Plaintiff and the covenant of good faith and fair dealing implied therein, Plaintiff has been damaged in an amount not yet determined, but which is reasonably estimated to be in excess of $75,000.

COUNT TWO
ESTOPPEL
(Against All Defendants)

23. Plaintiff Leonard Brandt incorporates paragraphs 1 through 22 as if fully set forth herein.

24. Defendants, in order to induce Plaintiff to enter into a business relationship with them and to expend substantial time, effort and energy in furtherance of Defendants' interests, made representations and promises to Plaintiff, including, but not limited to, those set forth in paragraphs 11, 12 and 13 above, and omitted to disclose material information to Plaintiff.

25. Plaintiff reasonably relied upon Defendants' promises and conduct in expending substantial time and effort in furtherance of MIT and HDI, and Plaintiff would not have done so absent Defendants' above-stated promises, agreements and conduct.

26. Defendants have received a substantial benefit as a result of Plaintiff's work and efforts.

27. Based on their promises and conduct to Plaintiff, Defendants are estopped from acting in a manner inconsistent with their promises and previous conduct and from denying that their promises and conduct are valid and enforceable agreements with Plaintiff.

28. As a direct and proximate result of Defendants' failure to honor their promises and agreements which they are estopped to deny, Plaintiff has suffered past and continuing damage in an amount not yet determined, but which is reasonably believed to be in excess of $75,000.

COUNT THREE
UNJUST ENRICHMENT
(Against All Defendants)

29. Plaintiff Leonard Brandt adopts by reference paragraphs 1 through 28 as set forth above.

30. By inducing Plaintiff to expend substantial time, money and effort, and then failing to perform in accordance with Defendants' promises and the parties' agreement, Defendants have been unjustly enriched.

31. As a direct and proximate result of Defendants' unjust enrichment, Plaintiff has been damaged in an amount not yet determined, but which is reasonably believed to be in excess of $75,000, and Plaintiff is entitled to compensatory damages and other appropriate relief from Defendants.

COUNT FOUR
FRAUD IN THE INDUCEMENT
(Against Defendant George Holley)
(Alternative Claim)

32. Plaintiff Leonard Brandt adopts by reference paragraphs 1 through 31 as set forth above, and makes the following claim, in the alternative, against Defendant Holley.

33. Defendant Holley, in order to induce Plaintiff Brandt to enter into contracts and a business relationship with Defendants, and to expend substantial time, effort and energy in furtherance of Defendants' interests, made representations and promises to Plaintiff concerning material facts that were not true and/or omitted to state material

facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading to Mr. Brandt.

34. The fraud and misrepresentation of Mr. Holley includes, without limitation, the following statements and representations:

(a) that Mr. Holley had authority from Mr. Salem to act as his agent and to bind him in contract negotiations and the formation of agreements with Mr. Brandt; and

(b) that Mr. Salem approved of the agreements Mr. Holley negotiated with Mr. Brandt, participated through Mr. Holley in the contract negotiations, and gave his approval for Mr. Brandt to go forward by performing under the contract terms.

35. The above statements and representations were made at various times by Mr. Holley, and the time, place, and nature of the communications are specifically set forth in paragraph 12 (a), (b), (c), (d), (e), and (f) above.

36. Defendant Holley's material misrepresentations and omissions were false when made. Moreover, Defendant Holley's omissions to state material facts occurred when he was bound to fully, fairly and truthfully disclose all material facts.

37. Defendant Holley knew, or through the exercise of reasonable care should have known, of said misrepresentations and omissions of material facts.

38. None of the false and misleading statements above described or omissions to state material facts were known to Plaintiff Brandt at the time he entered into the contracts with Defendants and expended substantial time, effort and money in furtherance of Defendants' interests.

39. Plaintiff relied on the false representations made by Defendant Holley. Had Plaintiff known the true facts, he would not have entered into the agreements and

business relationship with Defendants nor expended substantial time, effort and money in furtherance of Defendants and their interests.

40. As a direct and proximate result of the aforesaid misconduct, Plaintiff has suffered past and continuing damage in an amount not yet determined, but which is reasonably believed to be in excess of $75,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Leonard Brandt requests that the Court enter judgment as follows:

1. An award of damages against Defendants, jointly and severally, in an amount in excess of $75,000;
2. An award of Plaintiff's expenses, including attorneys' fees;
3. An award of Plaintiff's costs and disbursements; and
4. For such other and further relief as the Court deems just and appropriate.

PLAINTIFF,
LEONARD J. BRANDT

By ______________________

Jennifer L. Cox
Federal Bar No. ct14245
Jennifer A. Osowiecki
Federal Bar No. ct14646
225 Asylum Street, Goodwin Square
Hartford, Connecticut 06103-4302
Telephone (860) 522-5175
Facsimile (860) 522-2796
Email: josowiecki@pepehazard.com

Terrence J. Fleming
Federal Bar No.: ct23455
Kim Ruckdaschel-Haley
Federal Bar No.: ct23456
LINDQUIST & VENNUM P.L.L.P.
4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2205
Telephone (612) 371-3211

ATTORNEYS FOR PLAINTIFF

NOV-10-93 WED 16:54

EXHIBIT A

Leonard J. Brandt
2215 Irving Ave. S.
Minneapolis, MN 55405
(612) 374-1171
(612) 374-9489 fax

Memo to : George Holley

From : Len

Date : November 10 1993

Re: Compensation

George, this note summarizes the arrangement between myself and MIT and HDI that we seemed to come to on Sunday. The thought was that each of us would have a chance to think more about it if we had a note on it. So, here it is. Incidentally, I have had some additional thoughts and will try to point them out here.

Our discussion divided compensation from MIT and HDI along different lines. In order to be strictly working on behalf of MIT in any sale or investment the compensation from MIT related to proceeds that MIT would eventually realize, recognizing that this may well take quite some time. The compensation relating to any management consulting to HDI and any mentorship to any new management would come from HDI.

I will first outline what we seemed to agree to on Sunday, but have some further thoughts.

(a) LB to receive 10% of all proceeds to MIT/ASC. This would be defined as net flow so that MIT received payments but incurring new receivables so that net investment at risk essentially stayed the same would not result in any compensation implication to LB.

(b) LB to receive 5% to 10% interest in MIT this could be in the form of stock or other mechanism to be discussed. This would vest over 36 months. So that if MIT is sold 3 months from now then LB would only have an interest of 3/36ths of the agreed upon option or other interest.

(c) LB to receive a small retainer from HDI

(d) LB to receive an upside carried interest similar in structure and vesting to the next president's but at the rate of 20-25%.

I think these are the points we came to. My further thoughts are that there are really two agreements here. One with MIT and one with HDI. Clearly, MIT is bearing the greater burden of the potential compensation. In some ways this makes sense in some ways maybe not.

It makes sense in that it is similar to a venture capital partner being compensated only by his venture firm to the extent of there interest (20% is a pretty standard industry figure, but some firms have been at 15%). The vc partner gets no compensation for any reward that develops for others in the deal. In this situation we are clearly looking out for MIT's interest. Indeed, one would argue that in the last deal only MIT's interest were compromised. It was actually a very good deal for HDI, meaning the other stockholders and management.

PLAINTIFF'S EXHIBIT 30

HDI 100079

The way it doesn't completely make sense is that MIT is going beyond the call of duty by stepping in to a high risk conflict situation by assuming the CEO position of HDI and putting forth the significant effort to live up to this responsibility with no compensation. This is not right. Similarly by bringing me to the contribution table in a fairly active and soon to be aggressive way, again, it seems to be sharing a disproportionate share of the effort (read cost) with no counterbalancing compensation.

At this point until the capital structure of HDI is reviewed this may be the best course. I certainly don't think we should attempt to deal with the issue just for my needs. If we hire a president then we will have to. But more importantly we don't want to begin this discussion and tip our hand prior to having an acquision negotiation. So I think we are stuck for now.

My view is lets get something in place now. Lets revisit it as HDI capital structure revisions allow us to. It is very possible that MIT can reach agreement with the board for compensation for its and my effort, it is very possible we can make some alterations after the dust has settled from any investment / takeover that occurs, It is very possible that should we bring on a manager prior to other financial activities that we can make some alterations.

Regarding the notion of retainer I have been thinking of something between $1k to $2k per month. One option might be $1k in cash and $1k accruing or owed (get in line with the rest of the creditors) or perhaps the midpoint of $1.5k in cash.

Call me this week to discuss further. It would be nice to at least have a letter of understanding before getting to FL so that we might have a final review there.

Len

FROM FAEGRE & BENSON (TUE) 12.30'97 15 5:00/NO. 4261654274 P 3






MIT DEVELOPMENT CORPORATION

January 18, 1994

*LEN — YOU SAID YOU'D GO 1.6 ON VALUATION BUT FACE OF "F" IS 600K NOT 300 K. HOW ABOUT $1.75M. GH*

Mr. Len Brandt
2215 Irving Avenue
Minneapolis, MN 55405

Dear Len:

This letter follows up on our conversations regarding your future compensation in assisting MIT to realize increased value from the HDI situation.

Len Brandt will receive 10% "net cash received" for value increases MIT Shareholders receive, ~~up to a five year period~~. Net value increases will be based on a increase from the pre-agreed valuations below:

- Receivables 1.5M *+.250 = 1.75 CURRENT VALUATION*
- ~~Class "F" Stock~~ .3M *ACTUALLY .6 FACE VALUE*
- Other Stock 0
- New Product Earn-out .6M

*LET'S COMPROMISE AT 250K FOR THIS GROUP.*

Value enhancements to the existing MIT manufacturing and engineering contact that results from trade-off, compromises, or offsets to the previously listed assets will also be compensated at 10%.

In the event MIT can secure a management contract of at least 56k monthly, and be paid by HDI, Len Brandt will receive a monthly retainer of $2,000 in cash. *MIT WILL NOT BE RESPONSIBLE FOR MORE THAN $4,000 PER MONTHS. IF EXCEPT HDI CAN'T PAY.*

I'll call you about 4:30 to discuss.

Best regards,

*LEN — HOW DO WE INSURE YOU DON'T WALK AWAY IN THREE MONTHS ... DO LITTLE IF ANYTHING... AND MYSELF OR OTHERS DO ALL THE WORK AND YOU STILL GET 10%? GEORGE*

George Holley

GHH/wh

PLAINTIFF'S EXHIBIT 31 4/4/02

HDI 100265

FROM FAEGRE & BENSON (TUE) 12. 30' 97 15 /S. 15:00 NO. 4261654274 P 4




Copy TO Bob Salem
From Len Brandt
5/27/97

Leonard J. Brandt
2215 Irving Ave. S.
Minneapolis, MN 55405
(612) 374-1171
(612) 374-9489 fax

FAX TO: George Hoiley

FAX FROM: Len

DATE: 3/2/94

NO. OF PAGES INCLUDING THIS: 1

BASED ON RECEIVABLES OF AIPAX & 20 NICE(?) NOT IF WHICH WERE NOT 90 DAYS

George, as we have agreed this February began our first month under our compensation agreement. Accordingly the charges for my time is the agreed upon amount of $2000. We also agreed that the base level of value at which a calculation of my compensation would be based on would be at $1,000,000. This represents a change from the earlier amount that we agreed to as a result of Home Diagnostics, Inc. outstanding payable to MIT and its subsidiary ASC was quite a bit less than you had originally thought. We also agreed that should MIT recapture any previously thought to be forgiven debts that the base level could be raised again. — YES

To review the understanding that I have with MIT and its subsidiary ASC and Bob Salem and yourself I will receive compensation equal to 10% of any assets received above $1,000,000 by the collective group of MIT, ASC, Bob Salem and yourself.

YES — OK SUBJECT TO FINE TUNING OF RECB AMT.

I do plan to construct a more complete definition of our understanding, but I have not had the time to dig into it yet. Please sign this letter to indicate your agreement with the changes outlined above and return a copy to me as soon as possible.

Sincerely,

Leonard J. Brandt

P.S. I'm HAVING NOT COMPL. WITH AGREEMENT WITH HDI ORANY US. IT MAKES IS OK THEY SHOULD HAVE NO TROUBLE PAYING. G

LEN

THIS GENERALLY WHAT WE AGREED, EXCEPTING THAT IF MIT FAILED TO GET OFFSETTING DAMAGES COMPENSATION FROM HDI MIT'S EXPOSURE WOULD BE NOT MORE THAN $1,000 PER MONTH, THE $1.0M LEVEL WE CAN ADJUST TO 50% OF OUTSTANDING RECEIVABLES, PERHAPS ON A RUNNING BASIS. WHAT DO YOU THINK.

GEORGE M.

HDI 100266

PLAINTIFFS EXHIBIT 32

** TOTAL PAGE.05 **

CERTIFICATION

THIS IS TO CERTIFY THAT a copy of the foregoing was mailed via first class mail, postage prepaid, this 10th day of December, 2002, to:

Richard A. Roberts, Esq.
Nuzzo & Roberts, LLC
One Town Center
P.O. Box 747
Cheshire, CN 06410

Paul M. Brown, Esq.
Laura McQuade, Esq.
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, NY 10169-0079

By ______________________
Jennifer A. Osowiecki

Doc# 1512261\2
JAO/31593/2/611399v1
12/10/02-HRT/

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

## APPEARANCE

LEONARD BRANDT,
Plaintiff,

V.

HOME DIAGNOSTICS, INC., ET AL.,
Defendants.

CASE NUMBER: 3:01CV1889 (SRU)

To the Clerk of this court and all parties of record:

Enter my appearance as counsel in this case for:

LEONARD BRANDT

December 10, 2002
Date

Signature

ct14646
Connecticut Federal Bar Number

Jennifer A. Osowiecki
Print Clearly or Type Name

(860) 522-5175
Telephone Number

225 Asylum Street, Goodwin Square
Address

Hartford, Connecticut 06103-4302

(860) 522-2796
Fax Number

mailto:josowiecki@pepejosowiecki@pepehazard.com
E-mail address

## CERTIFICATE OF SERVICE

This is to certify that the foregoing Appearance was mailed on this date to the following:

Richard A. Roberts, Esq.
Nuzzo & Roberts, LLC
One Town Center
P.O. Box 747
Cheshire, CN 06410

Paul M. Brown, Esq.
Laura McQuade, Esq.
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, NY 10169-0079

Signature

(Use additional pages, if necessary, to list the name and address of each attorney or party for which you are certifying service)