`,     ,`

# SATTERLEE STEPHENS BURKE & BURKE LLP
## 230 PARK AVENUE
### NEW YORK, NY 10169-0079
### (212) 818 9200

33 WOOD AVENUE S.
ISELIN, NJ 08830-2735
(732) 603-4966
FAX (732) 603-4977

FAX (212) 818-9806/7
www.ssbb.com

**E-Mail: pbrown@ssbb.com**
**Direct Dial: (212) 404-8786**

September 4, 2007

**BY REGULAR MAIL AND FAX (203-579-5704)**

Honorable Stefan R. Underhill
United States District Judge
District of Connecticut
914 Lafayette Boulevard
Bridgeport, CT  06604

> Re:  *Leonard Brandt v. MIT Development Corp., et al.*
>       Docket No. 3:01 cv 1889 (SRU)

Dear Judge Underhill:

I write Your Honor with great reluctance, but nevertheless find it necessary to request the Court's assistance in this matter.  Specifically, I request that the Court compel the plaintiff Leonard Brandt to accept the form of settlement on which Your Honor approved, and accept and comply with the proposed settlement agreement forwarded by us to Mr. Brandt's counsel in late July in accordance with Your Honor's ruling.

The factual background to the instant request is as follows:

- ▪ March 8, 2007: This case was settled before Your Honor in open court and on the record.

- ▪ July 19, 2007:  Your Honor rendered a written Ruling regarding disputed settlement terms, adopting the proposal of the defendants.  A copy of Your Honor's ruling is attached as Exhibit 1.

- ▪ July 27, 2007:  I forwarded Mr. Dunham a revised settlement agreement[1] drafted in accordance with Your Honor's Ruling.  A copy of the e-mail transmitting the settlement and the draft settlement agreement[1] are attached hereto as Exhibits 2 and 3.

---

[1] The outline and general terms had basically been earlier drafted and sent to me by Mr. Dunham.

705203_2

SATTERLEE STEPHENS BURKE & BURKE LLP
Honorable Stefan R. Underhill
September 4, 2007
Page 2

- **July 27 – 31, 2007:**    I responded to Mr. Dunham's e-mail concerning Rule 144 restrictions, as did my partner, Edwin Markham, a corporate/securities lawyer, by separate communication. A copy my e-mail exchange with Mr. Dunham is annexed hereto as Exhibit 4.

- **August 14, 2007:**    I wrote Mr. Dunham and urged him to move forward with the settlement.

- **August 20, 2007:**    Your Honor made an Endorsement Order denying Mr. Brandt's Motion for Extension of time. The Order states "The parties agreed that I would act as a mediator and impose a final decision of the open issues. That agreement does not contemplate a Motion to Reconsider the mediation ruling. Signed by Judge Stephan R. Underhill on 8/20/2007."

- **August 21, 2007:**    We once again wrote Mr. Dunham and asked him to have Mr., Brandt "promptly address the settlement agreement" that had been forwarded a month earlier.

- **August 29, 2007:**    We wrote Mr. Dunham one further time indicating that if Mr. Brandt did not immediately address the settlement agreement, we would have no alternative, but to move before Your Honor to compel Mr. Brandt to adhere to the settlement and to execute the settlement agreement we drafted, and which had been proffered to Mr. Dunham on July 27, 2007. A copy of our e-mail communications to Mr. Dunham of August 14, 20 and 29 are collectively annexed hereto as Exhibit 5.

To our knowledge thus far, Mr. Brandt has not addressed executing the draft settlement agreement forwarded him, and has not engaged new counsel. Your Honor specifically retained jurisdiction of this matter to enforce the settlement. The defendants want this matter concluded. Arrangements must be made for defendants to fund the $600,000 cash portion of the settlement and, even more importantly, to make arrangements with the Home Diagnostics transfer agent to have an aggregate amount of 221,592 shares of common stock of HDI transferred to Mr. Brandt. This takes time and effort. Defendant George Holley wants immediate closure; the Estate of Robert Salem cannot be closed unless this matter is resolved; and HDI, a public reporting company, wants this matter concluded so that it can both make necessary reports to the SEC and its shareholders and appropriate adjustments on its financial books and records.

The enclosed draft settlement agreement is strictly in accordance with Your Honor's Ruling, and over a period of six weeks we have received no requests for changes, additions or deletions. As has been noted, the registration rights agreement is a standard, customary form of agreement, and the text of the settlement, we respectfully believe, has been prepared in accordance with Your Honor's Ruling. Defendants are ready, willing and able to comply with the settlement agreement and we ask that Mr. Brandt be compelled by this Court to also comply with the terms of the settlement, by executing the agreement proffered, and complying with the other terms and conditions necessary to implement the settlement.

705203 2

SATTERLEE STEPHENS BURKE & BURKE LLP
    Honorable Stefan R. Underhill
    September 4, 2007
    Page 3

        In view of Mr. Brand's intransigence, we respectfully request that if he should fail to comply with any direction of this Court within ten days of such direction, that defendants may apply to have counsel fees assessed against Mr. Brandt for having caused defendants' counsel (1) to oppose Mr. Brandt's improvident request to reconsider and reargue Your Honor's ruling, and (2) to bring on this application.

                               Respectfully submitted,

                               Paul M. Brown

PMB:kms

cc:    Edward W. Dunham, Esq. (via fax: 203-782-2889)
       Richard Roberts, Esq. (via email: rroberts@nuzzo-roberts.com)
       Todd Mayover (via email: tmayover@hdidiabetes.com)
       Wayne Winters (via email: dwwinters@winters-forte.com)
       George Holley (via email: gholley@hdidiabeties.com)

705203_2

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

LEONARD BRANDT                        :
                                      :
        v.                            :                 Civ. Action No.
                                      :                 3:01 CV 1889 (SRU)
MIT DEVELOPMENT CORP., ET AL.         :

### RULING REGARDING DISPUTED SETTLEMENT TERMS

On March 8, 2007, the parties settled this case. The settlement, which was placed on the record, provided that the parties would continue to negotiate the details of the terms on which the total $3 million settlement proceeds would be paid by the defendants to plaintiff. The settlement also provided that, in the event that the parties could not resolve those remaining details and I could not mediate any differences informally, that I would serve as a binding mediator and would impose a decision concerning the disputed terms of the settlement. That contingency has come to pass, and this ruling serves as my decision regarding the final terms of the settlement among the parties.

We have proceeded by way of "baseball arbitration," with each side submitting their last, best settlement position. My task is to choose between the parties' positions and to impose on the parties as the final settlement terms the proposal that most fairly reflects the intent of the parties in reaching the settlement in principle. In doing so, I have carefully reviewed the transcript of the proceedings in which the parties stated the terms of their settlement in principle. I have also considered the arguments made in the parties' submissions.

The defendants' proposal best reflects the terms of the settlement in principle and the intent of the parties at the time they agreed to settle this case. That proposal includes the payment of four times as much cash as was discussed at that time, with the balance of the $3

09/04/2007 16:17 FAX   212 818 9606          SATTERLEE STEPHENS B&B                            ☑006/026

07/19/07  14:39 FAX 203 579 5704          Chambers—Judge Underhill                            ☑003/004

million payable in HDI stock, as originally intended. The use of a value reflecting a discount of the recent trading price of the stock minimizes the risk to plaintiff from the possibility that the stock price will fall during the period of the stock sale restrictions. Providing plaintiff with "piggyback" rights under any registration statement filed by HDI over the next twelve months will also reduce the risk to plaintiff and may allow him to liquidate his stock more quickly. I am modifying the defendants' proposal in one respect: The effective date of the settlement will be today, and the valuation of the HDI stock will be based on 94% of the average closing price for the five trading days immediately prior to today, July 19, 2007.

Accordingly, the following are the terms of the payment obligation under the settlement reached by the parties in this case: Defendants shall immediately pay plaintiff $600,000 in cash and $2,400,000 in restricted HDI stock. The number of shares of stock to be transferred shall be calculated using a value of 94% of the average closing price for the five (5) trading days immediately prior to today, July 19, 2007. Plaintiff shall be accorded piggyback rights to sell his HDI shares under any registration statement filed by HDI within twelve months from today.

As previously agreed, the appeal of the ruling granting summary judgment in favor of the Salem estate, if it is still pending, shall be voluntarily dismissed immediately. The parties shall immediately exchange mutual general releases. It is not necessary to dismiss or withdraw claims made in this case, because the case has already been dismissed. The parties are free to enter into a formal settlement agreement, if they wish, but the terms of the payment obligation will not be delayed or otherwise affected should they choose to do so.

Although captioned a "ruling," this decision shall be treated as a private event. This decision will be sent to the parties, but will not be docketed unless a party requires docketing in a proceeding to enforce the settlement agreement. This court will retain jurisdiction to enforce the

07/19/07  14:40 FAX 203 579 5704          Chambers-Judge Underhill                      ☑004/004

terms of the parties' settlement agreement, including those terms imposed by this ruling.

It is so ordered.

Issued this 19th day of July 2007 at Bridgeport, Connecticut.

Stefan R. Underhill
United States District Judge

09/04/2007 16:17 FAX  212 818 9606    SATTERLEE STEPHENS B&B    @ 008/026

-----Original Message-----
From: Paul M. Brown <pbrown@ssbb.com>
To: Dunham, Edward W.
CC: Edwin Markham <emarkham@ssbb.com>; Todd Mayover <tmayover@hdidiabetes.com>
Sent: Thu Jul 26 15:05:12 2007
Subject: FW: Agreement and Release: Brandt v. HDI

Jack: I am forwarding you a revised settlement agreement containing the terms found by Judge Underhill in his Ruling. Please review and let me have your comments so we can get this in final and close this out. As soon as we have a final agreement we will immediately arrange for a transfer of shares to Len Brandt working through HDI's transfer agent and can have the check issued promptly or, if preferred, a wire transfer arranged.

A few comments about the draft. (1) The shares were computed in a straightforward manner although a few dollars were rounded off. (2) MIT was added as a release even though it was merged into HDI and is no longer in existence although it had been a part in the case. (3) We necessarily added a very standard and customary form of registration rights agreement which will be required if there is any registration of Brandt's shares over the next 12 months.

I trust you will find things both satisfactory and fair. Paul

-----Original Message-----
From:  Kathleen Sullivan

8/31/2007

09/04/2007 16:17 FAX  212 818 9606        SATTERLEE STEPHENS B&B                              ☑009/026

## AGREEMENT AND MUTUAL RELEASE

THIS AGREEMENT is made this _____ day of July 2007 by and between Leonard Brandt ("Brandt"), on the one hand, and Home Diagnostics, Inc. ("HDI"), the Estate of Robert J. Salem ("Salem"), and George Holley ("Holley"). HDI, Salem and Holley are together known herein as "the defendants," and Brandt and the defendants are collectively known herein as "the parties."

WHEREAS, Brandt sued HDI, Salem, and Holley in an action maintained in the United States District Court for the District of Connecticut, designated by the Clerk of the Court as Case No. 3:01-CV-1889 (SRU) (the "Suit"), and assigned to the Honorable Stefan J. Underhill (the "Court");

WHEREAS, the Court granted in part the defendants' motion for summary judgment, dismissing, inter alia, all claims against Salem and certifying the dismissal of all claims against Salem as a final judgment; Brandt appealed the dismissal of the claims against Salem to the United States Court of Appeals for the Second Circuit (the "Circuit"), an appeal designated by the Clerk of the Circuit as No. 06-3482-CV (the "Appeal"), and the Appeal is fully briefed and awaiting oral argument;

WHEREAS, the remainder of the Case, involving claims against HDI and Holley, proceeded to jury selection, opening arguments, and the presentation of Brandt's case in chief;

WHEREAS, during the course of the trials the Court mediated discussions between the parties in order to encourage their settlement of the Suit, and on March 8, 2007 the parties reached a settlement in principle, the terms of which were read into the official record of proceedings that day;

WHEREAS, the Court thereafter conducted, in accordance with the parties' agreement, an arbitration, by which the detailed, financial terms of settlement were determined; and

700968_4



WHEREAS, the parties have been represented by counsel of their choosing, and fully advised by their attorneys of their respective rights and liabilities, each to the other; and

WHEREAS, On July 19, 2007, the Court rendering a Ruling Regarding Disputed Settlement Terms and adopted defendants' proposal; and

WHEREAS, the parties wish to memorialize all the terms of their settlement, and thereby resolve any and all claims either may have against the other, so as to achieve certainty and finality and to avoid the time, expense and uncertainty of continued litigation of any such claims;

NOW, THEREFORE, in consideration of the mutual covenants and promises hereinafter set forth, the parties hereto agree as follows:

1.  In full and complete satisfaction and settlement of this action and Brandt's claims against defendants, defendants shall pay and deliver to Brandt the following:

> A.  Upon execution of this agreement, $600,000 in cash by certified check or wire transfer, pursuant to Brandt's instructions.

> B.  A share certificate or certificates of Home Diagnostic's Inc.'s common stock having a value of $2,400,000 as determined in accordance with a formula hereinafter set forth in C and D below.

> C.  The number of shares to be delivered by Defendants to Brandt shall be calculated by using a value equal to 94% of the average closing price for the five (5) trading days immediately prior to July 19, 2007.

> D.  The common shares of HDI trading under the symbol HDIX, had closing prices of $11.64 on Thursday, July 12, $11.55 on Friday, July 13, $11.56 on Monday, July 16, $11.50 on Tuesday, July 17 and $11.36 on Wednesday, July 18. The average closing price of those five (5) dates is $11.52. Ninety-four percent (94%) of such average price equals $10.83. Accordingly, simultaneously with the execution of this agreement, defendants shall deliver to plaintiff a share certificate in the name of Leonard Brandt representing 221,592 shares of common stock of HDI (the "Settlement Shares") and bearing the following legend:

> THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR STATE SECURITIES LAWS, BUT HAVE BEEN ISSUED OR TRANSFERRED PURSUANT TO AN

700968_4

EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE ACT. NO DISTRIBUTION, SALE, OFFER FOR SALE, TRANSFER, DELIVERY, PLEDGE, OR OTHER DISPOSITION OF THESE SECURITIES MAY BE EFFECTED EXCEPT IN COMPLAINCE WITH THE ACT, ANY APPLICABLE STATE LAWS, AND THE RULES AND REGULATIONS OF THE SECURITIES AND EXCHANGE COMMISSION AND STATE AGENCIES PROMULGATED THEREUNDER.

E.    HDI hereby grants to Brandt "piggyback" registration rights to sell the Settlement Shares under any registration statement filed by HDI within twelve (12) months of July 19, 2007, on the terms and subject to the conditions set forth on Exhibit A hereto.

2.    Promptly upon execution of this Agreement, Brandt shall cause to be filed, in the form attached hereto as Exhibits A and B respectively, the papers necessary to effectuate the withdrawal with prejudice or dismissal with prejudice of the Suit and the Appeal.

3.    The parties each expressly acknowledge that payment of the consideration of this Agreement reflects a compromise of possible claims; and that the payment is made solely to avoid the time, expense and uncertainty of litigating claims.

4.    For and in consideration of the promises, covenants, and undertakings in this Agreement, the defendants, for themselves and for each and all of their heirs, assigns, executors, administrators, affiliates, agents, officers, directors, trustees, partners, employees, shareholders, attorneys, predecessors, successors, affiliates, parent entities, subsidiary entities, and any other representatives or persons acting on their behalf (their "Related Parties"), hereby release and discharge Brandt and each and all of his Related Parties, from any and all claims, demands, rights, causes of action, judgments, executions, damages, liabilities, accounts, debts, reckonings, costs and expenses (including but not limited to attorneys' fees and court costs), known or unknown, in law or equity (collectively, the "Liabilities"), which they ever had or have, or that any of their Related Parties ever had or have. The releases and discharges set forth in this Paragraph shall be irrevocable.

700968_4

5.    For and in consideration of the promises, covenants, and undertakings in this Agreement, Brandt for himself and for each and all of his Related Parties, hereby releases and discharges the defendants and each and all of their Related Parties, including without limitation MIT Development Corp. from any and all claims, demands, rights, causes of action, judgments, executions, damages, liabilities, accounts, debts, reckonings, costs and expenses (including but not limited to attorneys' fees and court costs), known or unknown, in law or equity (collectively, the "Liabilities"), which he ever had or has, or that any of his Related Parties ever had or has. The releases and discharges set forth in this Paragraph shall be irrevocable.

6.    This Agreement:

(a) constitutes the entire agreement among the parties concerning the subject matter hereof, and supersedes all other and prior agreements, writings, or understandings, oral or written, with respect thereto;

(b) is contractual, not merely a recital;

(c) shall be binding upon the parties and their respective Related Parties;

(d) may be amended only by a writing signed by both parties;

(e) shall be governed by Connecticut law, without regard to its conflict of laws principles;

(f) has been reviewed and negotiated by both parties and their counsel, and shall be construed without regard to any presumption or other rule requiring construction against the party drafting the provision to be interpreted, and

(g) may be executed in separate counterparts, each of which when so executed shall constitute an original, but all of which together shall constitute one and the same instrument.

700968_4

7.    Each of the parties represents that it has the full power and authority to enter into, have executed, and deliver this Agreement and to perform its obligations hereunder, and that this Agreement constitutes the valid and legally binding obligation of each such party, enforceable in accordance with its terms. Each person executing this Agreement represents that he or she has full right, authority and capacity to act on behalf of the party for which the Agreement is executed.

8.    The latest date set forth on the signature lines below shall be inserted in the first line of this Agreement:

9.    Before commencing any suit arising out of a claim of breach of this Agreement, the aggrieved party shall give at least thirty (30) days' written notice to the other party and its counsel of such party's intent to bring suit, unless the statute of limitations would cause any such claim to be time-barred within such thirty-day period, in which case the aggrieved party will provide as much notice as possible under the circumstances. The parties shall consult with one another in a good faith effort to resolve their differences and to avoid litigation. Counsel designated to receive such notice as of the execution date of this Agreement are as follows:

Leonard Brandt's Designated Agent:

Edward Wood Dunham, Esq.
Wiggin and Dana LLP
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832;

HDI's Designated Agent:

Paul Brown, Esq.
Edward Markham, Esq.
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, NY 10169

700968_4

George Holley's Designated Agent:

Paul Brown, Esq.
Edward Markham, Esq.
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, NY 10169

Estate of Robert Salem, Deceased's Designated Agent:

Richard Roberts, Esq.
Nuzzo & Roberts, LLC
P.O. Box 747
Cheshire, CT 06410

10.    Any dispute arising out of or related to this Agreement shall be adjudicated in the

United States District Court for the District of Connecticut; or, if the United States District Court

does not have subject matter jurisdiction, by the Superior Court of the State of Connecticut,

Judicial District of New Haven; or, if and only if neither of the two aforementioned courts shall

have jurisdiction to hear such a dispute, in whatever court has jurisdiction.

700968_4

**HOME DIAGNOSTICS INC.**

Date:_____

By:_____
J. Richard Damron, Jr., Its C.E.O., Duly
Authorized

**THE ESTATE OF ROBERT J. SALEM**

Date:_____

By:_____
Judy Cheng Salem, Executrix, Duly Authorized

**GEORGE HOLLEY**

Date:_____

By:_____
George Holley

**LEONARD BRANDT**

Date: _____

By:_____
Leonard Brandt

\16273\1\652460.1

700968_4

09/04/2007 16:18 FAX  212 818 9606        SATTERLEE STEPHENS B&B                        ☑016/026

Exhibit A

# REGISTRATION RIGHTS AGREEMENT

By and Between

## Leonard Brandt

and

## Home Diagnostics, Inc.

700968_4

# TABLE OF CONTENTS

Page

1.    Registration Under Securities Act, etc. ............................................................................. 1

    1.1    Piggy-Back Registration. ............................................................................... 1
    1.2    Registration Procedures. ................................................................................. 2
    1.3    Underwritten Offerings. .................................................................................. 3
    1.4    Stop Orders. ..................................................................................................... 3
    1.5    Indemnification. ............................................................................................... 3

2.    Holder' Obligations. ........................................................................................................ 4

3.    Termination. ..................................................................................................................... 5

4.    Amendment and Waiver. .................................................................................................. 5

5.    Notices. ............................................................................................................................. 5

6.    Assignment. ...................................................................................................................... 5

7.    Severability. ...................................................................................................................... 5

8.    Entire Agreement. ............................................................................................................ 5

9.    Descriptive Headings. ...................................................................................................... 6

10.   Governing Law. ................................................................................................................ 6

700968_4

REGISTRATION RIGHTS AGREEMENT, dated as of July 19, 2007 (this "Agreement"), between Home Diagnostics, Inc., a Delaware corporation (the "Company"), and Leonard Brandt ("Holder").

This Agreement is being entered into in connection with and as part of the Agreement and Mutual Release dated as of July    , 2007 (the "Settlement Agreement"), among, *inter alia*, the Company and Holder, providing for, among other things, the transfer to Holder of an aggregate of 221,592 shares (the "Shares") of the common stock, par value $0.01 per share (the "Common Stock"), of the Company. For the purposes of this Agreement, the Shares shall be deemed to include any shares of Common Stock issued with respect to the Shares by way of a stock split, reverse stock split or combination, or stock dividend.

    1.    <u>Registration Under Securities Act, etc.</u>

    1.1    <u>Piggy-Back Registration.</u>

    (a)    <u>Right to Include Shares.</u> If the Company at any time proposes to file a registration statement to register shares of Common Stock under the Securities Act (other than a registration (A) on Form S-8 or S-4 or any successor or similar forms or (B) relating to Common Stock issuable upon exercise of employee share options or in connection with any employee benefit or similar plan of the Company), for sale by any of its shareholders, it will each such time give prompt written notice (the "Company Notice") to Holder of its intention to do so and of Holder's rights under this Section 1.1. Subject to Section 0 below, upon the written request of Holder (which request shall specify the amount of Shares intended to be disposed of by Holder) made as promptly as practicable and in any event within 20 days after the receipt of any such notice, the Company will use its best efforts to effect the registration under the Securities Act of all Shares which the Company has been so requested to register by Holder.

    (b)    <u>Company Right to Withdraw Registration.</u> Notwithstanding anything to the contrary set forth herein, (A) if the registration involves an underwritten public offering, Holder must sell his Shares to the underwriters on the same terms and conditions as apply to the other selling shareholders and (B) if, at any time after giving written notice of its intention to register any Common Stock pursuant to Section 1.1, the Company shall determine in its sole and arbitrary discretion for any reason not to register, or to withdraw such registration of, such Common Stock, the Company shall give written notice of such determination to Holder and, thereupon, may withdraw or cease to pursue such registration and shall be relieved of its obligation hereunder to register, or maintain the registration of, any Shares in connection with such withdrawn or otherwise terminated registration.

    (c)    <u>Priority.</u> If the Company in its sole discretion shall determine that the total amount of Shares requested to be included in a registration pursuant to Section 1.1 would have a material adverse effect on such offering, then the Company shall include in such registration, first, all securities proposed by the Company to be sold for its own account and second, all securities being offered for the account of Holder.

    (d)    <u>Expenses.</u> The Company will pay all registration expenses in connection with any registration effected pursuant to this Section 1.1, except that Holder shall

pay all brokerage and underwriting fees, discounts and commissions with respect to the Shares offered for sale by Holder in such registration and all fees and expenses of Holder's own counsel or advisors with respect to such registration, if any.

      1.2    <u>Registration Procedures.</u>(a)   Subject to Section 1.1(b), if and whenever the Company is required to effect the registration of any Shares under the Securities Act as provided in Section 1.1, the Company will, as expeditiously as possible use its best efforts to:

      (i)    furnish to Holder such number of conformed copies of such registration statement and of each such amendment and supplement thereto (in each case including all exhibits), such number of copies of the prospectus contained in such registration statement (including each preliminary prospectus and any summary prospectus) and any other prospectus filed under Rule 424 under the Securities Act, in conformity with the requirements of the Securities Act, as Holder may reasonably request; and

      (ii)    notify Holder at any time when a prospectus relating to such registration statement is required to be delivered under the Securities Act, upon discovery that, or upon the happening of any event as a result of which, the prospectus included in such registration statement, as then in effect, includes an untrue statement of a material fact or omits to state any material fact required to be stated therein or necessary to make the statements therein not misleading, in the light of the circumstances under which they were made, and at the request of Holder promptly prepare and furnish to Holder a reasonable number of copies of a supplement to or an amendment of such prospectus as may be necessary so that, as thereafter delivered to the purchasers of such securities, such prospectus shall not include an untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein not misleading in the light of the circumstances under which they were made.

      (b)    Notwithstanding the foregoing provisions of Section 1.2(a), the Company may, during the registration period, suspend the use of the prospectus included in the registration statement for an unlimited period of time if, for any reason, the Company determines in its sole discretion that it is in the best interests of the Company to suspend such use, and prior to or contemporaneously with suspending such use, the Company provides Holder with written notice of such suspension, which notice need not specify the reason for such suspension. At the end of any such suspension period, the Company shall provide Holder with written notice of the termination of such suspension.

      (c)    Holder agrees that, upon receipt of any notice from the Company of the happening of any event of the kind described in subdivision (ii) of Section 1.2(a), Holder will forthwith discontinue Holder's disposition of Shares pursuant to the registration statement relating to such Shares until Holder's receipt of the copies of the supplemented or amended prospectus contemplated by subdivision (ii) of Section 1.2(a) and, if so directed by the Company, will deliver to the Company (at the Company's expense) all copies, other than permanent file copies, then in Holder's possession of the prospectus relating to such Shares current at the time of receipt of such notice.

700968_4

2

(d)    Holder agrees that upon receipt of any notice from the Company of a suspension of the use of the prospectus described in Section 1.2(b), or a withdrawal of the registration statement described in Section 1.2(b), or the issuance of a stop order described in Section 1.4, Holder shall forthwith discontinue Holder's disposition of shares pursuant to such suspended or withdrawn registration statement until Holder's receipt of written notice from the Company that either such suspension has been terminated or such stop order has been withdrawn.

1.3    Underwritten Offerings. If the Company proposes to register any of its securities under the Securities Act as contemplated by Section 1.1 and such securities are to be distributed by or through one or more underwriters, at the Company's request, Holder shall be a party to the underwriting agreement between the Company and such underwriters. Holder shall not be required to make any representations or warranties to or agreements with the Company or the underwriters other than representations, warranties or agreements regarding Holder, Holder's Shares and Holder's intended method of distribution of the Shares or any other representations required by applicable law.

1.4    Stop Orders. The Company shall promptly notify Holder of any stop order issued or threatened by the Commission relating to a registration statement registering any Shares.

1.5    Indemnification.

(a)    Indemnification by the Company.  The Company will, and hereby does, indemnify and hold harmless Holder, in the case of any registration statement filed pursuant to Section 1.1, against any losses, claims, damages or liabilities to which Holder may become subject under the Securities Act or otherwise, including, without limitation, the reasonable fees and expenses of legal counsel, insofar as such losses, claims, damages or liabilities (or actions or proceedings, whether commenced or threatened, in respect thereof) arise out of or are based upon any untrue statement of any material fact contained in any registration statement under which Shares were registered under the Securities Act, any preliminary prospectus, final prospectus or summary prospectus contained therein, or any amendment or supplement thereto, or any omission to state therein a material fact required to be stated therein or necessary to make the statements therein in light of the circumstances in which they were made not misleading; provided, that the Company shall not be liable in any such case to the extent that any such loss, claim, damage, liability (or action or proceeding in respect thereof) or expense arises out of or is based upon an untrue statement or alleged untrue statement or omission or alleged omission made in such registration statement, any such preliminary prospectus, final prospectus, summary prospectus, amendment or supplement in reliance upon and in conformity with information furnished to the Company by or on behalf of Holder.

(b)    Indemnification by Holder.  As a condition to including any Shares in any registration statement, the Company shall have received an undertaking satisfactory to it from Holder, to indemnify and hold harmless (in the same manner and to the same extent as set forth in subdivision (a) of this Section 1.5) the Company, and each director of the Company, each officer of the Company and each other person, if any, who participates as an underwriter in the offering or sale of such securities and each other person who controls the Company or any

3

such underwriter within the meaning of the Securities Act, with respect to any statement in or omission from such registration statement, any preliminary prospectus, final prospectus or summary prospectus contained therein, or any amendment or supplement thereto, if such statement or omission was made in reliance upon and in conformity with information furnished to the Company by Holder; provided, however, that the liability of Holder shall not in any event to exceed the net proceeds received by Holder from the sale of Shares covered by such registration statement.

(c)    Notices of Claims, etc.  Promptly after receipt by an indemnified party of notice of the commencement of any action or proceeding involving a claim referred to in the preceding subdivisions of this Section 1.5, such indemnified party will, if a claim in respect thereof is to be made against an indemnifying party, give written notice to the latter of the commencement of such action; provided, however, that the failure of any indemnified party to give notice as provided herein shall not relieve the indemnifying party of its obligations under the preceding subdivisions of this Section 1.5, except to the extent that the indemnifying party is actually prejudiced by such failure to give notice.  In case any such action is brought against an indemnified party, the indemnifying party shall be entitled to participate in and to assume the defense thereof, to the extent that it may wish, and after notice from the indemnifying party to such indemnified party of its election so to assume the defense thereof, the indemnifying party shall not be liable to such indemnified party for any legal or other expenses subsequently incurred by the latter in connection with the defense thereof.  No indemnifying party shall be liable for any settlement of any action or proceeding effected without its written consent.  No indemnifying party shall, without the consent of the indemnified party, consent to entry of any judgment or enter into any settlement which does not include as an unconditional term thereof the giving by the claimant or plaintiff to such indemnified party of a release from all liability in respect to such claim or litigation or which requires action other than the payment of money by the indemnifying party.

2.    Holder' Obligations.Holder's right to have Shares included in a registration statement pursuant to the provisions of Section 1.1 above shall be subject to the following further conditions:

(a)    Holder shall have promptly furnished to the Company in writing any and all such information, agreements and documents regarding Holder and any distribution of Shares proposed by Holder as the Company, the managing underwriter(s) of any proposed issuance of securities by or on behalf of the Company, if any, and its counsel may reasonably request; and

(b)    Holder shall have executed and delivered to the Company such written undertakings as the Company and its counsel may reasonably require in order to assure full compliance with applicable provisions of the Securities Act and the Securities Exchange Act of 1934, as amended (the "Exchange Act"), which may include, without limitation, undertakings not to buy any securities of the same class as the Shares or to solicit such purchases by others until Holder's distribution of Shares is completed and otherwise to comply with the Commission's anti-manipulation rules, and to inform any exchange upon which the Company's common stock may be traded and the managing underwriter(s) or broker(s) participating in

Holder's distribution of Shares of the substance of the foregoing undertakings and of any restrictions on Holder's right to sell Shares contained in the Purchase Agreement.

      3.      <u>Termination.</u>This Agreement and the rights granted under Section 1.1 hereof shall terminate on July 19, 2008.

      4.      <u>Amendment and Waiver.</u>Any provision of this Agreement may be amended and the observance thereof may be waived (either generally or in a particular instance and either retroactively or prospectively), only with the written consent of the Company and Holder. Any amendment or waiver effected in accordance with this Section 4 shall be binding upon Holder and the Company.

      5.      <u>Notices.</u>All notices, demands and other communications provided for or permitted hereunder shall be made in writing and shall be by registered or certified first-class mail, return receipt requested, telex, telegram, telecopier, reputable courier service or personal delivery:

      (a)      if to Holder, addressed to Holder in the manner set forth in the Settlement Agreement, or at such other address as he shall have furnished to the Company in writing; or

      (b)      if to the Company, addressed to it in the manner set forth in the Settlement Agreement, or at such other address as the Company shall have furnished to Holder in writing.

      All such notices and communications shall be deemed to have been duly given: when delivered by hand, if personally delivered; one business day after being sent by reputable courier service; three business days after being deposited in the mail, postage prepaid, if mailed; when answered back, if telexed; and when receipt is acknowledged, if telecopied.

      6.      <u>Assignment.</u>This Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and, with respect to the Company, its respective successors and assigns. Holder may not assign this Agreement or any of his rights or obligations hereunder without the prior written consent of the Company.

      7.      <u>Severability.</u>In the event that any one or more of the provisions contained herein, or the application thereof in any circumstances, is held invalid, illegal or unenforceable in any respect for any reason, the validity, legality and enforceability of any such provision in every other respect and of the remaining provisions contained herein shall not be in any way impaired thereby.

      8.      <u>Entire Agreement.</u>This Agreement is intended by the parties as a final expression of their agreement and intended to be a complete and exclusive statement of the agreement and understanding of the parties hereto in respect of the subject matter contained herein. There are no restrictions, promises, warranties or undertakings, other than those set forth or referred to herein and therein. This Agreement supersedes all prior agreements and understandings between the parties with respect to such subject matter.

9.    Descriptive Headings.The descriptive headings of the several sections and paragraphs of this Agreement are inserted for reference only and shall not limit or otherwise affect the meaning hereof.

10.    Governing Law.This Agreement shall be construed and enforced in accordance with, and the rights of the parties shall be governed by, the laws of the State of Florida applicable to agreements made and to be performed entirely within such State.

700968_4

6

09/04/2007 16:19 FAX  212 818 9606        SATTERLEE STEPHENS B&B                    ☑024/026

-----Original Message-----
**From:** Paul M. Brown
**Sent:** Monday, July 30, 2007 10:01 AM
**To:** 'Dunham, Edward W.'
**Cc:** Edwin Markham; 'Todd Mayover'
**Subject:** RE: Agreement and Release: Brandt v. HDI

Jack:I believe the restrictions are generally contained in Rule 144.By this email I am asking my partner Ed Markham to advise you directly by email.The restrictions from the SEC viewpoint are statutory/regulatory as opposed to company or underwriter restrictions which are based on contract or policies. Paul

    -----Original Message-----
    **From:** Dunham, Edward W. [mailto:edunham@wiggin.com]
    **Sent:** Friday, July 27, 2007 2:32 PM
    **To:** Paul M. Brown
    **Cc:** Edwin Markham; tmayover@hdidiabetes.com
    **Subject:** Re: Agreement and Release: Brandt v. HDI

    Paul:

    Can you please send me the precise language of the restriction(s) that apply to the shares? Len would. Like to see that ASAP.

    Thanks.

    Jack

4

## Paul M. Brown

| | |
|---|---|
| **From:** | Aaron Zeisler |
| **Sent:** | Wednesday, August 29, 2007 5:06 PM |
| **To:** | 'Dunham, Edward W.' |
| **Cc:** | Paul M. Brown; 'Roberts, Richard'; 'George Holley'; 'Todd Mayover'; Edwin Markham; Freiman, Jonathan |
| **Subject:** | RE: Brandt v. HDI |

Dear Jack,

We write again to follow-up on the settlement agreement. and insist that this matter be resolved immediately. Mr. Brandt is not only prejudicing HDI, but he is inhibiting the closing of the Salem estate, adversely affecting its heirs and beneficiaries. Paul forwarded a settlement agreement on July 26, which we have asked you to address on several occassions -- most recently, on August 21. Unfortunately, you have not responded. Our clients remain ready to implement the settlement of this matter in accordance with Judge Underhill's July 19 private ruling, and if you have any comments to the proposed settlement agreement, we would like them at once. Otherwise, we are prepared to have Judge Underhill enforce the settlement as per his private ruling.

We have never had so much difficulty in getting someone to accept so much money.

Regards,
Aaron

Aaron M. Zeisler, Esq.
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, New York 10169
Dir: (212) 404-8737
Fax: (212) 818-9606

To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

-----Original Message-----

| | |
|---|---|
| **From:** | Aaron Zeisler |
| **Sent:** | Tuesday, August 21, 2007 12:44 PM |
| **To:** | 'Dunham, Edward W.' |
| **Cc:** | 'Roberts, Richard'; 'George Holley'; 'Todd Mayover'; Edwin Markham; Paul M. Brown |
| **Subject:** | RE: Brandt v. HDI |

Dear Jack,

In light of Judge Underhill's ruling denying Brandt's reargu-ment motion. would you please promptly address the settlement agreement that Paul had forwarded you at the end of July.

Regards,
Aaron

Aaron M. Zeisler, Esq.
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, New York 10169
Dir: (212) 404-8737
Fax: (212) 818-9606

To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this

1

$\mathcal{5}$

communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

-----Original Message-----
**From:**  Paul M. Brown
**Sent:**  Tuesday, August 14, 2007 2:27 PM
**To:**  'Dunham, Edward W.'
**Cc:**  'Roberts, Richard'; 'George Holley'; 'Todd Mayover'; Edwin Markham; Aaron Zeisler
**Subject:** Brandt v. HDI

Dear Jack: Defendants remain ready to immediately implement the settlement of this matter in accordance with Judge Underhill's Ruling of July 19,2007.I note that I forwarded you a revised settlement agreement on July 26 which incorporated the Court's Ruling and stated our clients were prepared to proceed immediately upon execution of the agreement to pay the $600000 by check or WT and had already been in touch with the HDI Transfer Agent about the necessary steps to transfer the shares to your client's name.I feel our clients have acted diligently and that any delay in implementing the settlement is solely attributable to Leonard Brandt.Almost a month has now passed since July 19 and the settlement could have been long since concluded.
Instead,Mr. Brandt has decided to attempt to challenge the Court's private Ruling, which effort we have vigorously opposed.I hope and trust Judge Underhill will summarily deny Mr.Brandt's request.In the meanwhile,please let me know if he has yet engaged new counsel and the details of their contact information.Regards Paul

2