SATTERLEE STEPHENS BURKE & BURKE LLP
230 PARK AVENUE
NEW YORK, NY 10169-0079
(212) 818-9200

METROPARK
33 WOOD AVENUE SOUTH
ISELIN, NJ 08830
(732) 603-4966

FAX (212) 818-9606, 9607
www.ssbb.com

E-Mail: azeisler@ssbb.com
Direct Dial: (212) 404-8737

November 16, 2007

**VIA FEDERAL EXPRESS**

Honorable Stefan R. Underhill
United States District Judge
915 Lafayette Boulevard
Bridgeport, Connecticut 06604

Re:  <u>Brandt v. Home Diagnostics, Inc., et al. - CV No. 3:01-1889 (SRU)</u>

Dear Judge Underhill:

        We seek the Court's intervention to put an end to Mr. Brandt's violations of Your Honor's October 31, 2007 ruling regarding disputed settlement terms and the related directions given at the October 30 telephonic conference (the "Ruling"). In short, the Defendants arranged for an escrow agent and placed in escrow signed releases, shares of stock, a registration rights agreement and cash, with interest, for Mr. Brandt's benefit, whereas Mr. Brandt has violated the Ruling by: (i) failing to dismiss the appeal against the Salem Estate, and (ii) failing to deliver a full release to the escrow agent for the benefit of Defendants.

        As Your Honor directed, defense counsel drafted and sent Mr. Brandt and the Defendants: (i) mutual Releases, and (ii) a registration rights agreement (to effectuate Mr. Brandt's 12-months of piggy-back registration rights), along with instructions to forward them to the escrow agent, Cozen O'Connor. (Attached hereto as Exhibit A is a copy of the correspondence to Mr. Brandt enclosing the Releases, a Registration Rights Agreement and escrow agent instructions).

        Under separate cover, counsel for the Salem Estate also sent Mr. Brandt the documents necessary to dismiss the appeal against the Estate – although he never accepted the certified mailing containing them (which counsel has now re-sent). <u>See</u> Ex. B.

        Defendants then funded the escrow with the required $600,000 payment plus interest from July 20 to the date of payment. Defendants even funded $10,849.32 in interest (<u>see</u> Ex. C), which is more interest than Brandt himself claims he is owed. <u>Compare</u> Brandt's Nov. 15 Ltr. ($10,158.90).

        Defendants also calculated the required HDI stock as 249,579 shares based upon Your Honor's Ruling. <u>See</u> Ex. D. In an abundance of caution, Defendants even performed the calculation so that Mr. Brandt would receive 99 <u>more</u> shares than he was owed so that he would not complain about rounding or decimal places. <u>See id.</u> ($2,400,000 divided by $9.62 equals

702614_2

SATTERLEE STEPHENS BURKE & BURKE LLP

November 16, 2007
Page 2

only 249,480 shares, but Defendants used $9.616 as the price so that Mr. Brandt would receive 249,579 and, hopefully, not complain). Moreover, despite the fact that Mr. Brandt has ignored correspondence from defense counsel and has refused to provide his social security number so that Deutsche Bank could send HDI shares in Mr. Brandt's name to the escrow agent (see Ex. E), Defendants have managed to work around Mr. Brandt's intransigence by transferring shares through various steps (a time consuming and paperwork intensive process) so that they could be put in his name for the escrow.

Yet, no good deed by Defendants goes unpunished. First, Mr. Brandt writes Your Honor asking for assistance in getting paid when he has not satisfied his obligations, such as dismissing the appeal against the Estate (even though Mr. Roberts sent him the required documents on November 7, 2007). See Ex. B.

Second, Mr. Brandt has altered his Release of the Defendants so that it does not release all claims through the date of his signature -- November 2007 -- as Your Honor had directed. (Please compare his modified release to the mutual Releases attached hereto as Ex. A). Indeed, the Defendants expressly raised the issue of the time-period of Mr. Brandt's release with Your Honor during the parties' October 30, 2007, telephonic conference – especially given the specter of new fraud and misrepresentation claims raised by Mr. Brandt in his letter dated September 14, 2007. In fact, Your Honor told the Defendants that, even though they were obligated to give more shares to Mr. Brandt because the Court was altering the calculation of shares of stock (basing it on the average of the stock price on October 30, 2007 and the five July 2007 trading days), the Defendants were gaining a release from Mr. Brandt that would extend through November 2007 instead of only March 8, 2007. Yet, Mr. Brandt's proposed release falls far short of the Court's Ruling, as it only deigns to release claims arising from the lawsuit and his alleged consulting services.

For these reasons, we respectfully request that the Court: (i) compel Mr. Brandt to dismiss the appeal immediately as per the Court's Ruling; (ii) compel Mr. Brandt to execute the same, full Release that the Defendants have executed in favor of Mr. Brandt (Ex. A); and (iii) adjudge that Defendants have no liability to Mr. Brandt for "non-payment" of the settlement (the cash, stock and releases that are sitting in escrow for his benefit), until he delivers the requisite Release (Ex. A) to the escrow agent.

Respectfully,

Aaron M. Zeisler

AMZ:cag
Encl.

cc:    Leonard Brandt
       Richard Roberts, Esq.

702614_2

**Aaron Zeisler**

| From: | Aaron Zeisler |
|---|---|
| Sent: | Thursday, November 08, 2007 12:07 AM |
| To: | 'lbrandt@cnsresponse.com' |
| Cc: | 'Roberts, Richard'; Paul M. Brown |
| Subject: | RE: Brandt - Mutual Releases and Registration Rights Agreement |
| Importance: | High |

Dear Mr. Brandt,

Attached please find mutual general releases, which Judge Underhill ordered the parties to exchange. (Your release of the defendants is contained on the first two pages of the document.) Also, consistent with the Court's October 31, 2007 written ruling, attached please find a Registration Rights Agreement granting you piggyback rights to sell your HDI shares under any registration filed by HDI within 12 months from October 31, 2007.

As directed by the Court, we have also set up an escrow account as follows:

Evan B. Caplan, Esquire
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103

Kindly review and execute the Release (which you must sign before a notary), and the Registration Rights Agreement, and send them both to the escrow agent immediately. Also, please immediately dismiss the appeal of the ruling granting summary judgment in favor of the Salem estate if you have not already done so.

Be advised that defendants do not agree with Judge Underhill's October 31, 2007 ruling insofar as it granted you additional interest and altered the stock calculation (when compared to the July 19, 2007 ruling); however, we will comply with it. If, however, you do not comply with the ruling by executing the Release and the Registration Rights Agreement, and by dismissing the appeal immediately, defendants will seek sanctions and attorneys' fees, and hereby reserve all of their rights, at law and in equity.

Please acknowledge that you have received this email and the two attachments.

Aaron

   

Mutual           Registration Rights
Releases.pdf (23 KB)   Agreement....

Aaron M. Zeisler, Esq.
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, New York 10169
Dir: (212) 404-8737
Fax: (212) 818-9606

To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

1

## GENERAL RELEASE

**TO ALL WHOM THESE PRESENTS SHALL COME OR MAY
CONCERN, KNOW THAT,** Leonard J. Brandt ("Brandt"), for himself and for any
of his heirs, spouses, dependents, executors, administrators, legal representatives,
attorneys, employees, agents, fiduciaries, trustees, successors and/or assigns, as **Releasor**,
in consideration of certain cash and HDI stock set forth in Judge Underhill's Ruling
Regarding Disputed Settlement Terms, issued October 31, 2007, and other good and
valuable consideration, receipt of which is hereby acknowledged, hereby releases, waives
and discharges Home Diagnostics, Inc. ("HDI"), George Holley ("Holley"), and the Estate
of Robert J. Salem (the "Estate"), as **Releasees**, and the **Releasees'** past, present and/or
future heirs, spouses, dependents, executors (including, by way of example and not
limitation, Judy Cheng Salem, Executrix of the Estate), administrators, legal
representatives, attorneys, employees, agents, fiduciaries, trustees, directors, officers,
shareholders, subsidiaries, parents, owners, affiliates (including, by way of example and not
limitation, MIT Development Corp.), successors and/or assigns, from all actions, causes of
action, claims, counterclaims, suits, debts, dues, sums of money, accounts, reckonings,
bonds, bills, liens, specialties, covenants, contracts, controversies, agreements, promises,
variances, trespasses, judgments, extents, executions, liabilities, attorney's fees, costs,
damages, profits, value, interest, equity, collections, revenue, assets and/or demands
whatsoever, in law, admiralty or equity (hereinafter, "Claims"), which against the
**Releasees**, whether individually or collectively, the **Releasor** ever had, now has or
hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing
whatsoever from the beginning of the world to the day of the date that this RELEASE is
executed, including, by way of example but not limitation: (i) any Claims arising from,
related to or in any way connected with the action captioned *Leonard Brandt v. MIT
Development Corp., et al.* (Civ. Action No. 3:01cv1889); (ii) any Claims arising from, related
to or in any way connected with any consulting services or similar services provided to
HDI, MIT Development Corp., ASC, Inc., Holley and/or the Estate; and/or (iii) Claims
arising from, related to or in any way connected with those raised in Brandt's letter dated
September 14, 2007.

711805_3

The words **"Releasor"** and **"Releasees"** include all releasors and all releasees under this **Release**. This **Release** may not be changed orally and is irrevocable. This **Release** may be executed in counterparts, or by facsimile or other electronic means, each of which, when executed and delivered, are an original, and constitute a valid **Release**.

The **Releasor** represents that he executes this **Release** freely and voluntarily, and that he has had an opportunity to consult with an attorney to his satisfaction prior to signing this **Release**.

**IN WITNESS WHEREOF**, the RELEASOR has caused this RELEASE to be executed on November ____, 2007.

**LEONARD J. BRANDT**

_____

By: Leonard J. Brandt

**Uniform Form of Acknowledgment
Within the State of California**

State of California    )
                       )    ss.:
County of _____    )

On the ____ day of November, in the year 2007, before me the undersigned, a Notary Public in and for said State, personally appeared Leonard J. Brandt, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within General Release and acknowledged to me that he executed the same, and that by his signature on the instrument, the individual executed the instrument.

_____

Notary Public

711805_3                                    2

## GENERAL RELEASE

**TO ALL WHOM THESE PRESENTS SHALL COME OR MAY CONCERN, KNOW THAT,** Home Diagnostics, Inc. ("HDI"), George Holley ("Holley"), and the Estate of Robert J. Salem (the "Estate"), for themselves and for any of their heirs, spouses, dependents, executors (including, by way of example and not limitation, Judy Cheng Salem, Executrix of the Estate), administrators, legal representatives, attorneys, employees, agents, fiduciaries, trustees, directors, officers, shareholders, subsidiaries, parents, owners, affiliates (including, by way of example and not limitation, MIT Development Corp.), successors and/or assigns, as **Releasors**, in consideration of plaintiff's dismissal of the action captioned *Leonard Brandt v. MIT Development Corp., et al.* (Civ. Action No. 3:01cv1889), plaintiff's related appeals, and other good and valuable consideration, receipt of which is hereby acknowledged, hereby release, waive and discharge Leonard J. Brandt ("Brandt"), as **Releasee**, and the **Releasee's** past, present and/or future heirs, spouses, dependents, executors, administrators, legal representatives, attorneys, employees, agents, fiduciaries, trustees, successors and/or assigns, from all actions, causes of action, claims, counterclaims, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, liens, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, extents, executions, liabilities, attorney's fees, costs, damages, profits, value, interest, equity, collections, revenue, assets and/or demands whatsoever, in law, admiralty or equity (hereinafter, "Claims"), which against the **Releasee**, whether individually or collectively, the **Releasors** ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date that this RELEASE is executed, including, by way of example but not limitation: (i) any Claims arising from, related to or in any way connected with the action captioned *Leonard Brandt v. MIT Development Corp., et al.* (Civ. Action No. 3:01cv1889); (ii) any Claims arising from, related to or in any way connected with any consulting services or similar services provided to HDI, MIT Development Corp., ASC, Inc., Holley and/or the Estate; and/or (iii) Claims arising from, related to or in any way connected with those raised in Brandt's letter dated September 14, 2007.

711805_3

The words **"Releasors"** and **"Releasee"** include all releasors and all releasees under this **Release**. This **Release** may not be changed orally and is irrevocable. This **Release** may be executed in counterparts, or by facsimile or other electronic means, each of which, when executed and delivered, are an original, and constitute a valid **Release**.

The **Releasors** represent that they execute this **Release** freely and voluntarily, and that they have had an opportunity to consult with an attorney to their satisfaction prior to signing this **Release**.

**IN WITNESS WHEREOF**, the RELEASORS have caused this RELEASE to be executed by themselves or their duly authorized officers or representatives on November ____, 2007.

**HOME DIAGNOSTICS, INC.**

_____

By: J. Richard Damron, Jr., Its C.E.O.

**Uniform Form of Acknowledgment**
**Within the State of Florida**

State of Florida    )
                   )   ss.:
County of _____ )

On the ____ day of November, in the year 2007, before me the undersigned, a Notary Public in and for said State, personally appeared J. Richard Damron, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within General Release and acknowledged to me that he executed the same in his capacity as CEO of Home Diagnostics, Inc., and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____

Notary Public

711805_3

2

**GEORGE HOLLEY**

_____

By: George Holley


**Uniform Form of Acknowledgment
Within the State of Connecticut**


State of Connecticut  )
                       )     ss.:
County of _____    )


      On the ____ day of November, in the year 2007, before me the undersigned, a Notary Public in and for said State, personally appeared George Holley, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within General Release and acknowledged to me that he executed the same, and that by his signature on the instrument, the individual executed the instrument.


_____

Notary Public


711805_3

3

**THE ESTATE OF ROBERT J. SALEM**

_____

By: Judy Cheng Salem, as Executrix

**Uniform Form of Acknowledgment**
**Within the State of Connecticut**

State of Connecticut  )
                       )    ss.:
County of _____    )


On the _____ day of November, in the year 2007, before me the undersigned, a Notary Public in and for said State, personally appeared Judy Cheng Salem, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within General Release and acknowledged to me that she executed the same in her capacity as Executrix of the Estate of Robert J. Salem, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.


_____

Notary Public

711805_3

4

# REGISTRATION RIGHTS AGREEMENT

By and Between

## Leonard Brandt

and

## Home Diagnostics, Inc.

711642_3

# TABLE OF CONTENTS

Page

| | | |
|---|---|---|
| 1. | Registration Under Securities Act, etc. | 1 |
| | 1.1 Piggy-Back Registration. | 1 |
| | 1.2 Registration Procedures. | 2 |
| | 1.3 Underwritten Offerings. | 3 |
| | 1.4 Stop Orders. | 3 |
| | 1.5 Indemnification. | 3 |
| 2. | Holder' Obligations. | 4 |
| 3. | Termination | 5 |
| 4. | Amendment and Waiver. | 5 |
| 5. | Notices. | 5 |
| 6. | Assignment. | 6 |
| 7. | Severability. | 6 |
| 8. | Entire Agreement. | 6 |
| 9. | Descriptive Headings. | 6 |
| 10. | Governing Law. | 6 |
| 11. | Signatures. | 6 |

REGISTRATION RIGHTS AGREEMENT, dated as of October 31, 2007 (this "Agreement"), between Home Diagnostics, Inc., a Delaware corporation (the "Company"), and Leonard Brandt ("Holder" or "Brandt").

This Agreement is being entered into to provide Brandt "piggyback" registration rights to sell shares of HDI stock (which Brandt receives in settlement as per the Court's rulings dated July 19, 2007 and October 31, 2007) under any registration statement filed by HDI within twelve (12) months of October 31, 2007, and to transfer to Brandt an aggregate of 249,579 shares (the "Shares") of the common stock, par value $0.01 per share (the "Common Stock"), of the Company as per the Court's above-mentioned settlement rulings. For the purposes of this Agreement, the Shares shall be deemed to include any shares of Common Stock issued with respect to the Shares by way of a stock split, reverse stock split or combination, or stock dividend.

    1.    <u>Registration Under Securities Act, etc.</u>

    1.1    <u>Piggy-Back Registration.</u>

    (a)    <u>Right to Include Shares.</u> If the Company at any time proposes to file a registration statement to register shares of Common Stock under the Securities Act (other than a registration (A) on Form S-8 or S-4 or any successor or similar forms or (B) relating to Common Stock issuable upon exercise of employee share options or in connection with any employee benefit or similar plan of the Company), for sale by any of its shareholders, it will each such time give prompt written notice (the "Company Notice") to Holder of its intention to do so and of Holder's rights under this Section 1.1. Subject to Section 0 below, upon the written request of Holder (which request shall specify the amount of Shares intended to be disposed of by Holder) made as promptly as practicable and in any event within 20 days after the receipt of any such notice, the Company will use its best efforts to effect the registration under the Securities Act of all Shares which the Company has been so requested to register by Holder.

    (b)    <u>Company Right to Withdraw Registration.</u> Notwithstanding anything to the contrary set forth herein, (A) if the registration involves an underwritten public offering, Holder must sell his Shares to the underwriters on the same terms and conditions as apply to the other selling shareholders and (B) if, at any time after giving written notice of its intention to register any Common Stock pursuant to Section 1.1, the Company shall determine in its sole and arbitrary discretion for any reason not to register, or to withdraw such registration of, such Common Stock, the Company shall give written notice of such determination to Holder and, thereupon, may withdraw or cease to pursue such registration and shall be relieved of its obligation hereunder to register, or maintain the registration of, any Shares in connection with such withdrawn or otherwise terminated registration.

    (c)    <u>Priority.</u> If the Company in its sole discretion shall determine that the total amount of Shares requested to be included in a registration pursuant to Section 1.1 would have a material adverse effect on such offering, then the Company shall include in such registration, first, all securities proposed by the Company to be sold for its own account and second, all securities being offered for the account of Holder.

711642_3

(d)    Expenses. The Company will pay all registration expenses in connection with any registration effected pursuant to this Section 1.1, except that Holder shall pay all brokerage and underwriting fees, discounts and commissions with respect to the Shares offered for sale by Holder in such registration and all fees and expenses of Holder's own counsel or advisors with respect to such registration, if any.

1.2    Registration Procedures. (a) Subject to Section 1.1(b), if and whenever the Company is required to effect the registration of any Shares under the Securities Act as provided in Section 1.1, the Company will, as expeditiously as possible use its best efforts to:

(i)    furnish to Holder such number of conformed copies of such registration statement and of each such amendment and supplement thereto (in each case including all exhibits), such number of copies of the prospectus contained in such registration statement (including each preliminary prospectus and any summary prospectus) and any other prospectus filed under Rule 424 under the Securities Act, in conformity with the requirements of the Securities Act, as Holder may reasonably request; and

(ii)    notify Holder at any time when a prospectus relating to such registration statement is required to be delivered under the Securities Act, upon discovery that, or upon the happening of any event as a result of which, the prospectus included in such registration statement, as then in effect, includes an untrue statement of a material fact or omits to state any material fact required to be stated therein or necessary to make the statements therein not misleading, in the light of the circumstances under which they were made, and at the request of Holder promptly prepare and furnish to Holder a reasonable number of copies of a supplement to or an amendment of such prospectus as may be necessary so that, as thereafter delivered to the purchasers of such securities, such prospectus shall not include an untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein not misleading in the light of the circumstances under which they were made.

(b)    Notwithstanding the foregoing provisions of Section 1.2(a), the Company may, during the registration period, suspend the use of the prospectus included in the registration statement for an unlimited period of time if, for any reason, the Company determines in its sole discretion that it is in the best interests of the Company to suspend such use, and prior to or contemporaneously with suspending such use, the Company provides Holder with written notice of such suspension, which notice need not specify the reason for such suspension. At the end of any such suspension period, the Company shall provide Holder with written notice of the termination of such suspension.

(c)    Holder agrees that, upon receipt of any notice from the Company of the happening of any event of the kind described in subdivision (ii) of Section 1.2(a), Holder will forthwith discontinue Holder's disposition of Shares pursuant to the registration statement relating to such Shares until Holder's receipt of the copies of the supplemented or amended prospectus contemplated by subdivision (ii) of Section 1.2(a) and, if so directed by the Company, will deliver to the Company (at the Company's expense) all copies, other than permanent file

711642_3

2

copies, then in Holder's possession of the prospectus relating to such Shares current at the time of receipt of such notice.

(d) Holder agrees that upon receipt of any notice from the Company of a suspension of the use of the prospectus described in Section 1.2(b), or a withdrawal of the registration statement described in Section 1.2(b), or the issuance of a stop order described in Section 1.4, Holder shall forthwith discontinue Holder's disposition of shares pursuant to such suspended or withdrawn registration statement until Holder's receipt of written notice from the Company that either such suspension has been terminated or such stop order has been withdrawn.

1.3 <u>Underwritten Offerings</u>. If the Company proposes to register any of its securities under the Securities Act as contemplated by Section 1.1 and such securities are to be distributed by or through one or more underwriters, at the Company's request, Holder shall be a party to the underwriting agreement between the Company and such underwriters. Holder shall not be required to make any representations or warranties to or agreements with the Company or the underwriters other than representations, warranties or agreements regarding Holder, Holder's Shares and Holder's intended method of distribution of the Shares or any other representations required by applicable law.

1.4 <u>Stop Orders</u>. The Company shall promptly notify Holder of any stop order issued or threatened by the Commission relating to a registration statement registering any Shares.

1.5 <u>Indemnification</u>

(a) <u>Indemnification by the Company</u>. The Company will, and hereby does, indemnify and hold harmless Holder, in the case of any registration statement filed pursuant to Section 1.1, against any losses, claims, damages or liabilities to which Holder may become subject under the Securities Act or otherwise, including, without limitation, the reasonable fees and expenses of legal counsel, insofar as such losses, claims, damages or liabilities (or actions or proceedings, whether commenced or threatened, in respect thereof) arise out of or are based upon any untrue statement of any material fact contained in any registration statement under which Shares were registered under the Securities Act, any preliminary prospectus, final prospectus or summary prospectus contained therein, or any amendment or supplement thereto, or any omission to state therein a material fact required to be stated therein or necessary to make the statements therein in light of the circumstances in which they were made not misleading; provided, that the Company shall not be liable in any such case to the extent that any such loss, claim, damage, liability (or action or proceeding in respect thereof) or expense arises out of or is based upon an untrue statement or alleged untrue statement or omission or alleged omission made in such registration statement, any such preliminary prospectus, final prospectus, summary prospectus, amendment or supplement in reliance upon and in conformity with information furnished to the Company by or on behalf of Holder.

(b) <u>Indemnification by Holder</u>. As a condition to including any Shares in any registration statement, the Company shall have received an undertaking satisfactory to it from Holder, to indemnify and hold harmless (in the same manner and to the same extent as set

forth in subdivision (a) of this Section 1.5) the Company, and each director of the Company, each officer of the Company and each other person, if any, who participates as an underwriter in the offering or sale of such securities and each other person who controls the Company or any such underwriter within the meaning of the Securities Act, with respect to any statement in or omission from such registration statement, any preliminary prospectus, final prospectus or summary prospectus contained therein, or any amendment or supplement thereto, if such statement or omission was made in reliance upon and in conformity with information furnished to the Company by Holder; provided, however, that the liability of Holder shall not in any event to exceed the net proceeds received by Holder from the sale of Shares covered by such registration statement.

      (c)    <u>Notices of Claims, etc</u>. Promptly after receipt by an indemnified party of notice of the commencement of any action or proceeding involving a claim referred to in the preceding subdivisions of this Section 1.5, such indemnified party will, if a claim in respect thereof is to be made against an indemnifying party, give written notice to the latter of the commencement of such action; <u>provided, however</u>, that the failure of any indemnified party to give notice as provided herein shall not relieve the indemnifying party of its obligations under the preceding subdivisions of this Section 1.5, except to the extent that the indemnifying party is actually prejudiced by such failure to give notice. In case any such action is brought against an indemnified party, the indemnifying party shall be entitled to participate in and to assume the defense thereof, to the extent that it may wish, and after notice from the indemnifying party to such indemnified party of its election so to assume the defense thereof, the indemnifying party shall not be liable to such indemnified party for any legal or other expenses subsequently incurred by the latter in connection with the defense thereof. No indemnifying party shall be liable for any settlement of any action or proceeding affected without its written consent. No indemnifying party shall, without the consent of the indemnified party, consent to entry of any judgment or enter into any settlement which does not include as an unconditional term thereof the giving by the claimant or plaintiff to such indemnified party of a release from all liability in respect to such claim or litigation or which requires action other than the payment of money by the indemnifying party.

      2.    <u>Holder' Obligations</u>.  Holder's right to have Shares included in a registration statement pursuant to the provisions of Section 1.1 above shall be subject to the following further conditions:

      (a)    Holder shall have promptly furnished to the Company in writing any and all such information, agreements and documents regarding Holder and any distribution of Shares proposed by Holder as the Company, the managing underwriter(s) of any proposed issuance of securities by or on behalf of the Company, if any, and its counsel may reasonably request; and

      (b)    Holder shall have executed and delivered to the Company such written undertakings as the Company and its counsel may reasonably require in order to assure full compliance with applicable provisions of the Securities Act and the Securities Exchange Act of 1934, as amended (the "Exchange Act"), which may include, without limitation, undertakings not to buy any securities of the same class as the Shares or to solicit such purchases by others until Holder's distribution of Shares is completed and otherwise to comply with the

Commission's anti-manipulation rules, and to inform any exchange upon which the Company's common stock may be traded and the managing underwriter(s) or broker(s) participating in Holder's distribution of Shares of the substance of the foregoing undertakings and of any restrictions on Holder's right to sell Shares contained in the Purchase Agreement.

3. <u>Termination</u>. This Agreement and the rights granted under Section 1.1 hereof shall terminate on October 31, 2008.

4. <u>Amendment and Waiver</u>. Any provision of this Agreement may be amended and the observance thereof may be waived (either generally or in a particular instance and either retroactively or prospectively), only with the written consent of the Company and Holder. Any amendment or waiver effected in accordance with this Section 4 shall be binding upon Holder and the Company.

5. <u>Notices</u>. All notices, demands and other communications provided for or permitted hereunder shall be made in writing and shall be by registered or certified first-class mail, return receipt requested, telex, telegram, telecopier, reputable courier service or personal delivery:

(a) if to Holder, addressed in the manner set forth below, or at such other address as he shall have furnished to the Company in writing:

Leonard Brandt
CNS Response
2755 Bristol Street, Suite 285
Costa Mesa, CA 92626-5985

Fax: (714) 545-2994

(b) if to the Company, addressed in the manner set forth below, or at such other address as the Company has furnished to the Holder in writing:

Paul Brown, Esq.
Edward Markham, Esq.
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, NY 10169-0079

Fax: (212) 818-9606

All such notices and communications shall be deemed to have been duly given: when delivered by hand, if personally delivered; one business day after being sent by reputable courier service; three business days after being deposited in the mail, postage prepaid, if mailed; when answered back, if telexed; and when receipt is acknowledged, if telecopied.

711642_3

5

6. <u>Assignment</u>. This Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and, with respect to the Company, its respective successors and assigns. Holder may not assign this Agreement or any of his rights or obligations hereunder without the prior written consent of the Company.

7. <u>Severability</u>. In the event that any one or more of the provisions contained herein, or the application thereof in any circumstances, is held invalid, illegal or unenforceable in any respect for any reason, the validity, legality and enforceability of any such provision in every other respect and of the remaining provisions contained herein shall not be in any way impaired thereby.

8. <u>Entire Agreement</u>. This Agreement is intended by the parties as a final expression of their agreement and intended to be a complete and exclusive statement of the agreement and understanding of the parties hereto in respect of the subject matter contained herein. There are no restrictions, promises, warranties or undertakings, other than those set forth or referred to herein and therein. This Agreement supersedes all prior agreements and understandings between the parties with respect to such subject matter.

9. <u>Descriptive Headings</u>. The descriptive headings of the several sections and paragraphs of this Agreement are inserted for reference only and shall not limit or otherwise affect the meaning hereof.

10. <u>Governing Law</u>. This Agreement shall be construed and enforced in accordance with, and the rights of the parties shall be governed by, the laws of the State of Florida applicable to agreements made and to be performed entirely within such State.

11. <u>Signatures</u>. The parties hereby signify their agreement to the above terms by their signatures below. The authorized representative of the Company represents that he is authorized to execute this Agreement on behalf of the corporate entity. Brandt represents that he executes this Agreement on his own behalf, freely and voluntarily, and that he has had an opportunity to consult with an attorney to his satisfaction prior to signing this Agreement.

**HOME DIAGNOSTICS, INC.**

Date:_____        By:_____
                              J. Richard Damron, Jr., Its C.E.O., Duly
                              Authorized


**LEONARD BRANDT**

Date: _____       By:_____
                              Leonard Brandt

711642_3                        6

**Exhibit B**

# NUZZO &
# ROBERTS, L.L.C.
L A W     O F F I C E S

ANTHONY NUZZO, JR.
RICHARD A. ROBERTS
DAVID J. WEIL
JANE S. BIETZ
ROBERT J. CHOMIAK, JR.
NICOLE C. DABEKIS CHOMIAK
JANE M. CARLOZZI
MICHELE C. CAMEROTA
JENNIFER J. CAVALIER
AMBER J. BRANCIFORTE
NADINE M. PARE
ANGELINE N. IOANNOU
KEVIN C. HINES
JASON K. MATTHEWS
JAMES R. FIORE
EILEEN M. LAWLOR
TODD J. RICHARDSON
PATRICIA M. GIRARD
STACEY L. PITCHER
STEPHEN J. LEARY
KELLY B. GAERTNER
RYAN W. SCULLY
MICHAEL F. AUGER

November 16, 2007

Mr. Leonard J. Brandt
28911 via Hacienda
San Juan Capistrano, CA 92675

Re:    Brandt v. MIT Corp.; Estate of Salem

Dear Mr. Brandt:

This is in further reference to your correspondence stating you did not receive anything from our office by which to dismiss the appeal. Our November 7, 2007 letter went out to you by certified mail and we've now learned that you did not respond to a post office notice to pick it up. You will receive duplicate papers tomorrow morning via UPS with a return, overnight mail envelope that is prepaid. Once that is accomplished there will be no need for you to retrieve the certified mail from our office.

Very truly yours,

NUZZO & ROBERTS, L.L.C.

Richard A. Roberts
RAR/nr
cc:    Aaron Zeisler, Esq.
\\fp\nuzzo\WP\419021\001\APPEAL 2nd Circuit\Let Brandt 2007 11 16.doc

ONE TOWN CENTER
P.O. BOX 747
CHESHIRE, CONNECTICUT 06410
TELEPHONE (203) 250-2000
FAX (203) 250-3131
www.nuzzo-roberts.com

# NUZZO &
# ROBERTS, L·L·C.
L A W    O F F I C E S

ANTHONY NUZZO, JR.
RICHARD A. ROBERTS
DAVID J. WEIL
JANE S. BIETZ
ROBERT J. CHOMIAK, JR.
NICOLE C. DABEKIS CHOMIAK
JANE M. CARLOZZI
MICHELE C. CAMEROTA
JENNIFER J. CAVALIER
AMBER J. BRANCIFORTE
NADINE M. PARE
ANGELINE N. IOANNOU
KEVIN C. HINES
JASON K. MATTHEWS
JAMES R. FIORE
EILEEN M. LAWLOR
TODD J. RICHARDSON
PATRICIA M. GIRARD
STACEY L. PITCHER
STEPHEN J. LEARY
KELLY B. GAERTNER
RYAN W. SCULLY
MICHAEL F. AUGER

November  7, 2007

Mr. Leonard J. Brandt
28911 via Hacienda
San Juan Capistrano, CA 92675

      Re:    Brandt v. MIT Corp.; Estate of Salem

Dear Mr. Brandt:

In accordance with Judge Underhill's instructions that you immediately, voluntarily dismiss the appeal, I have prepared a Dismissal Agreement pursuant to Federal Rules of Appellate Procedure, Rule 42(b).  I have enclosed an original and copy of the Agreement, along with a copy of my proposed letter to the Circuit Clerk.  Please sign both the original and copy of the Agreement and return them to me in the envelope provided.  I will forward the original to the Court with the original letter.  I will send you fully signed copies at that time.

Thank you.

Very truly yours,

NUZZO & ROBERTS, L.L.C.


Richard A. Roberts

RAR/nr
Enclosures
cc:    Honorable Stefan R. Underhill
      U.S. District Judge
      915 Lafayette Blvd.
      Bridgeport, CT 06604

      Wiggin & Dana, LLP
      Paul M. Brown, Esq.

ONE TOWN CENTER
P.O. BOX 747
CHESHIRE, CONNECTICUT 06410
TELEPHONE (203) 250-2000
FAX (203) 250-3131
www.nuzzo-roberts.com

# NUZZO &
# ROBERTS, L.L.C.
L A W   O F F I C E S

ANTHONY NUZZO, JR.
RICHARD A. ROBERTS
DAVID J. WEIL
JANES BIETZ
ROBERT J. CHOMIAK, JR.
NICOLE C. DABEKIS CHOMIAK
JANE M. CARLOZZI
MICHELE C. CAMEROTA
JENNIFER J. CAVALIER
AMBER J. BRANCIFORTE
NADINE M. PARE
ANGELINE N. IOANNOU
KEVIN C. HINES
JASON K. MATTHEWS
JAMES R. FIORE
EILEEN M. LAWLOR
TODD J. RICHARDSON
PATRICIA M. GIRARD
STACEY L. PITCHER
STEPHEN J. LEARY
KELLY B. GAERTNER
RYAN W. SCULLY
MICHAEL F. AUGER

[DATE]

Clerk of the Second Circuit
    Court of Appeals
U.S. Courthouse at Foley Square
40 Centre Street
New York, NY 10007

> Re:    Docket No. 06-3482 CV
>        Leonard J. Brandt v. MIT Dev. Corp.

Dear Clerk:

Enclosed is the parties' stipulation for dismissal.    The parties request, pursuant to Rule 42(b),  that this appeal be dismissed forthwith.

Thank you.

Very truly yours,

NUZZO & ROBERTS, L.L.C.

Richard A. Roberts

RAR/nr
Enclosure
:\f\nuzzo\WPM\1902\\001\APPEAL 2nd Circuit\Let Circuit Clerk re dismissal.doc

ONE TOWN CENTER
P.O BOX 747
CHESHIRE, CONNECTICUT 06410
TELEPHONE (203) 250-2000
FAX (203) 250-3131
www.nuzzo-roberts.com

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

------------------------------x

LEONARD BRANDT,                                   :

      Plaintiff – Appellant,             : Civil Action No.:
                                 CV-06-3482
             VS.                            : 3:01-1889 (SRU)

HOME DIAGNOSTICS, INC., GEORGE H.                 :
HOLLEY, AND JUDY CHENG SALEM,
EXECUTRIX OF THE ESTATE OF ROBERT J.              :
SALEM,

                                :

      Defendant – Appellee

----------------------------

## DISMISSAL AGREEMENT

    The Plaintiff-Appellant, Leonard Brandt, and Richard A. Roberts, Esq. Counsel

for the Defendant-Appellee, Judy Cheng Salem as Executrix of the Estate of Robert J.

Salem, pursuant to Rule 42(b) of the Fed. Rules of Appellate Procedure, hereby stipulate

that this appeal may and should be dismissed pursuant to certain orders issued by

Honorable Stefan R. Underhill, United States District Judge, in a ruling of October 31,

2007, copy attached as Exhibit A.   Judge Underhill's ruling sets forth all the terms of

settlement and payment that are relevant to this appeal.

    Accordingly, the parties request that the Circuit Clerk dismiss the instant appeal.

662195_2662195_2

PLAINTIFF-APPELLANT,


_____

Leonard J. Brandt
28911 Via Hacienda
San Juan Capistrano, CA 92675
(949) 218-6888
(714) 545-2994 fax

DATED: _____


JUDY CHENG SALEM, EXECUTRIX OF
THE SALEM ESTATE
NUZZO & ROBERTS, L.L.C.


By:_____
    Richard A. Roberts (CT 07665)
    One Town Center, P.O. Box 747
    Cheshire, Connecticut 06410
    Telephone: (203) 250-2000
    *Attorneys for the Defendant-Appellee*

DATED: _____

## **CERTIFICATION**

      This is to certify that on                 , a true copy of the foregoing Dismissal
Agreement was mailed via first class, postage prepaid, mail to:

Edward W. Dunham, Esq.
Jonathan Freiman, Esq.
Wiggin & Dana, LLP
One Century Tower
New Haven, CT  06508-1832

Paul M. Brown, Esq.
Aaron Zeisler, Esq.
Satterlee, Stephens, Burke & Burke
230 Park Avenue
New York, NY 10169


                                           _____

                                           Richard A. Roberts

662195_2662195_2

Exhibit C

**Brandt Settlement**
Interest from 7/20/07 - 11/7/07

```
 600,000.00  Principal
        6%  interest rate
 0.000164384  daily factor  [interest rate/365 days]
      98.63  daily rate

        110  # of days
   10,849.32  interest is [daily rate x principal x number of day
```

Exhibit D

**Calculation of HDI shares for Brandt**

1) The average closing price for the five trading days prior to July 19 was **$11.52** (based upon $11.64 on Thursday, July 12; $11.55 on Friday, July 13; $11.56 on Monday, July 16; $11.50 on Tuesday, July 17; and $11.36 on Wednesday, July 18).

2) The closing price for October 30 was **$8.93**.

3) The average of $11.52 and $8.93 is **$10.23**.

4) Multiplying $10.23 by 0.94 equals **$9.62**.

5) **$2,400,000** divided by $9.62 equals 249,480 shares (but, in an abundance of caution, we used $9.616 as the price so that Mr. Brandt would receive 99 more shares – **249,579 shares**, erring in his favor so that he would not complain about rounding or decimal places).

6) Defendants have used the **249,579** share number.

713314_1

Exhibit E

# Aaron Zeisler

| | |
|---|---|
| **From:** | Paul M. Brown |
| **Sent:** | Friday, November 09, 2007 4:32 PM |
| **To:** | 'Len Brandt' |
| **Cc:** | 'jennifer.cuneo@db.com'; 'Roberts, Richard'; 'David Wayne Winters'; Aaron Zeisler |
| **Subject:** | Brandt v. HDI Settlement: Stock Transfer |

Dear Mr. Brandt: DeutschBank is involved with the handling of the Salem Estate.It is preparing to transfer a share certificate to you in accordance with the terms of the recent settlement order of Judge Underhill on October 31.We have previously requested you furnish your tax ID number and/or social security number which we have not yet received.I just received a call from Jennifer of DeutschBank who was preparing to send shares in your name to the escrow agent but told me she could not do so without your social security number.Please email or call Jennifer at 212:454:2622 and give her your social security number so the transfer can be effected promptly. Paul Brown

1