# EXHIBIT A

08MAR07 Brandt.txt

953

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - x

LEONARD BRANDT                      :   No. 3:01CV-1889 (SRU)
                                    :   915 Lafayette Boulevard
         vs.                        :   Bridgeport, Connecticut
                                    :
                                    :   March 8, 2007
HOME DIAGNOSTICS, INC., ET AL       :

- - - - - - - - - - - - - - - x

SETTLEMENT

B E F O R E:

        THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.

A P P E A R A N C E S:

    FOR THE PLAINTIFF:

            WIGGIN & DANA
                One Century Tower
                P.O. Box 1832
                New Haven, Connecticut 06510
            BY:   EDWARD WOOD DUNHAM, ESQ.
                  JONATHAN M. FREIMAN, ESQ.


    FOR THE DEFENDANTS:

            SATTERLEE, STEPHENS, BURKE & BURKE
                230 Park Avenue
                New York, N. Y.   10169
            BY:   PAUL M. BROWN, ESQ.
                  JUSTIN KLEIN, ESQ.


                Susan E. Catucci, RMR
                Official Court Reporter
                915 Lafayette Boulevard
            Bridgeport, Connecticut   06604
                 Tel: (917) 703-0761


                        Page 1

954

```
1                    (9:35 O'CLOCK, A. M.)
2          THE COURT:  How did you make out last night?
3          MR. DUNHAM:  Your Honor, last night and actually
4    this morning, we have reached what I will characterize, I
5    think accurately, as an agreement in principle to settle
6    the case with the defendants paying consideration of $3
7    million.  And the reason I say in principle is that the
8    substantial majority of the consideration, we don't know
9    exactly how much, but the vast majority of consideration
10   were be in stock in Home Diagnostics.  And that raises a
11   number of issues about how many shares, the value, whether
12   there are any restrictions on the stock, that we need -- I
13   don't want to lay them out right now because I'm not sure
14   I know what all of them are.  But what we would like to
15   do, Your Honor, since we have gotten this far, is try to
16   take the time today and tomorrow to see if we can identify
17   and work through those issues so that we can get this
18   agreement in principle to a final agreement.  I don't have
19   any reason to believe that we won't be able to conclude
20   this but we can't do it in ten minutes because of the
21   nature of the consideration.
22          MR. BROWN:  That's a fair statement.
23          THE COURT:  All right.  Well, I'm very pleased
24   obviously that you've been able to reach an agreement in
25   principle.  The immediate concern I have, I've got seven
```

08MAR07 Brandt.txt

1    jurors in the back room.  Are we dismissing the jurors?
2    Are we confident we have settled the case and we can put
3    something on the record and dismiss them?  Should I -- are
4    we going to call back Mr. Wills and continue with
5    examination?  What are we going to do here?
6              MR. DUNHAM:  Your Honor, the reason I brought
7    Mr. Wills here was in an excess of caution because I
8    didn't want to be presumptuous.  I don't think it's a --
9    again, although nothing is guaranteed, I am optimistic and
10   confident that we are going to be able to get these
11   stock-related issues resolved.
12             What I would suggest, if Your Honor was, would
13   be willing to do this, is not to dismiss the jury for
14   keeps but to excuse them for today.  I apologize, I left
15   Your Honor a message this morning on your cell phone as
16   early as I knew we had reached an agreement in principle,
17   we just weren't there last night, in hopes we might be
18   able to reach the jury before they came in this morning.
19   I apologize that I couldn't get to you earlier.
20             THE COURT:  I just didn't turn it on.
21             MR. DUNHAM:  Well, that's understandable.  So if
22   we could excuse them until Monday, just in case things
23   unexpectedly break down so that we are not stuck, because
24   we don't actually have the full agreement worked out yet
25   but I don't think we can, as I say, get it done in the

08MAR07 Brandt.txt

1    next few minutes.  And it seems to me that it would be a
2    more prudent use of everybody's time to spend time trying
3    to work through those issues than to keep putting on the
4    evidence.
5           Let me throw out one other possibility which
6    I've done in a number of cases and it's worked pretty
7    well.  One approach would be to put on the record --
8    ideally I'd like to have the parties here to do that
9    well -- the settlement in principle, the general terms,
10   and then explain that there are issues to be resolved,
11   that you intend to work in good faith to resolve them, and
12   then designate somebody, me, Judge Garfinkel, somebody, as
13   a neutral.  In the event you cannot work it out, the case
14   is still settled and that neutral will resolve whatever
15   differences you have.  Now, this may not be the kind of
16   case where you can do that, but it may be, and I'm going
17   to feel more comfortable -- as you may or may not know I
18   have two juries waiting.
19          MR. DUNHAM:  I understand, Your Honor.
20          THE COURT:  The next case was scheduled
21   originally to start on Monday.  They are obviously not
22   going to do that if this case is still going, but it's
23   going to inconvenience a number of people, court staff,
24   juries, et cetera, if we kind of lose a day and then to
25   have pick this case back up, I don't want to be in a

957

Page 4

08MAR07 Brandt.txt

1    position where we're wasting a day and then we're not, the
2    case falls apart for whatever reason and we're back to
3    trying it.  I don't know how far you are, I guess, in
4    terms of whether you have really settled or disagree to
5    that type of approach or not.

6           MR. DUNHAM:  Your Honor, let me, and Mr. Brown
7    will obviously chime in if he thinks I'm going astray
8    here, just to outline where we are and my understanding of
9    what the issues are.  We have, Mr. Brandt authorized me at
10   about 7:30 this morning to accept a settlement of $3
11   million with the understanding that a relatively small
12   percentage of it, as yet undetermined, would be in cash.
13   The number that Mr. Brown and I have talked about, but not
14   holding to this, would be somewhere in the neighborhood of
15   $150,000, that the rest of it would be in stock in HDI
16   that would be coming from Mr. Holley and from the estate
17   of Salem.  So that one of the points of this is this would
18   result in a total resolution of all claims, withdraw all
19   of the appeal in the 2nd Circuit, exchange of releases, so
20   everybody's done.

21          I think where the issues come is the nature of
22   the stock, whether there are any trading restrictions on
23   the stock that would pass to Mr. Brandt.  And Mr. Brown's
24   initial information, and again I'm expressing no criticism
25   of him at all in what I'm about to say -- that initially

☐

958

Page 5

08MAR07 Brandt.txt
1    his understanding from other sources was that there were
2    no restriction on the stock, that it would be immediately
3    tradeable. He's now obtained some new information as of
4    within the last hour that might not be the case and there
5    may be be some required holding period. We need to work
6    through those issues. This is, as I said to Paul in our
7    last conversation before I came down here, if we're
8    settling for $3 million, Mr. Brandt is required to hold
9    the stock for some period of time and then by the time
10   he's able to sell it, the stock is tanked and isn't worth
11   anything, we can't resolve it on that basis. So there's
12   got to be some, if there's a holding period, there's got
13   to to be some protection on the value of it.

14        And there are also -- HDI's announcing its
15   earnings this week which could have -- and Mr. Holley
16   obviously knows what those earnings would be, Mr. Brandt
17   doesn't and can't. So when we would actually close, we
18   would get the stock, issues of that sort, and since I'm
19   not a securities lawyer, there may well be other issues
20   that I don't even know about.

21        But we have a deal in principle that the
22   consideration for the settlement would be $3 million and
23   the rest of this is -- I don't mean to dismiss it by
24   saying it's details but it's the logistics and mechanics
25   of figuring out how we can effect that from Mr. Brandt's

0

959

1    perspective so it is actually a $3 million settlement.

Page 6

08MAR07 Brandt.txt

```
 2          MR. BROWN: Your Honor, let me just add this:  I
 3     agree with what Mr. Dunham has said. One of the issues
 4     raised was the value of the stock.  I don't think there
 5     would be any problem working that out. We can either have
 6     the stock valued after the statements come out or on the
 7     average of the last five days which is, whatever that is,
 8     that would be the price per share.  It's around $11.50 let
 9     say now.  I don't think we'll have a problem working that
10     out.  The advantage to Mr. Brandt obviously is if he holds
11     a stock for sufficient period of time, some or all of it
12     might be afforded cap gains treatment at 50 percent rather
13     than combined rate, he lives in California, of 40 some-odd
14     percent and we understand that.  On $3 million it could be
15     the difference between paying taxes of million two or
16     $450,000 or some such number. So we are, we have
17     committed that if he wants to structure this in a way that
18     is not harmful to the defendants, we've agreed. He can
19     put whatever language in it provided it doesn't affect the
20     deductibles of these payments on the part of the
21     defendant.  So I think we've cleared that hurdle.
22          With respect to the stock, I do know that if the
23     shares are transferred to him, he is not an insider like
24     George Holley, like the estate, he's not in a position of
25     Home Diagnostics and I think probably the stock would have
```

960

```
 1     to be sold under rule 144, the so-called dribble rule, the
```

Page 7

```
                        08MAR07 Brandt.txt
   2    details of which I need to be certain about.

   3              I also know that he could sell shares off market
   4    at something of a discount pretty easily because there are
   5    restrictions under, probably under 144 rather than the
   6    restriction from the underwriters. Stock was sold in
   7    September and the underwriting restriction on those
   8    stocks, the lockup period, so to speak, are coming off
   9    this month, I'm told. Six months. And the other insider
  10    and so forth restrictions are not applicable.

  11              So that has to be worked out in some way, and I
  12    think we do have a wrap. Agreed?

  13              MR. DUNHAM: Yes. And my concern, Judge, is --
  14    again, I'm meaning no criticism or disrespect to Paul at
  15    all by what I'm about to say -- but is the stock
  16    restricted or is it not, is there some required holding
  17    period or there is not, is a pretty material issue. And
  18    I've gotten different information about that at
  19    7:00 o'clock this morning and then at 8:00 o'clock this
  20    morning. And this isn't something that we can -- we
  21    obviously have to have actual reliable information about
  22    the nature of the shares, have to be able to talk to
  23    experienced securities counsel about what all these issues
  24    are. And I mean, I would be favorably inclined to a
  25    mechanism like what Your Honor suggested with a resolution
```

961

```
   1    in principle and an understanding, whether it was Your
   2    Honor or Judge Garfinkel as the decider in the event that
                             Page 8
```

08MAR07 Brandt.txt

3   we hit pot holes, that we're unable to resolve ourselves.

4          MR. BROWN:  I agree with that, Your Honor.  I'm

5   not so sure I like the word "decider" but other than that,

6   I agree with you.

7          THE COURT:  All right, fair enough.  I've never

8   called myself a decider.

9          MR. BROWN:  No, you haven't, Judge.

10         THE COURT:  What I'd like to do then, if it's

11  okay with everybody, is get your clients in here and let's

12  put on the record the terms in effect of an enforceable

13  settlement so that I have some comfort that the case has

14  settled and we're not in a mistrial situation where it's

15  going to fall apart and we've got to start all over again

16  or whatever.

17         I'd like to, these jurors have been here for a

18  while, they've been pretty patient, and I'd like to let

19  them know that they are free to go.  It sounds to me like

20  these, although they are not insignificant issues, they

21  sound to me like resolvable issues and certainly you can

22  write around these problems --

23         MR. BROWN:  I think so, Judge.

24         THE COURT:  -- in various ways and, you know, if

25  you get to a sticking point, I'm happy to, as I said, try

962

1   to resolve it.

2          MR. BROWN:  I also have two constituents here,

Page 9

08MAR07 Brandt.txt
3    I've got Mr. Holley, I've got in effect the estate which

4    is really along here.

5              THE COURT:  Right.

6              MR. BRANDT:  And I have the company.  The

7    insurance company denied coverage, as I explained, so

8    they'll have to be sued as a -- that's an internal

9    problem.  And the amount of shares that might come from

10   each, the consideration from each is an internal problem,

11   although I may need separately the court's help on trying

12   to deal through that, and that wouldn't involve Mr. Dunham

13   directly.

14             MR. DUNHAM:  Your Honor, just so -- I'll

15   withdraw decider, whatever word we want to use, just so I

16   understand, if in the unlikely event, what I believe is an

17   unlikely event, that the parties are unable to resolve

18   these issues themselves, if we were to come to you and you

19   were unable to cajole or coerce us into resolving the

20   issues ourselves, where are we then?  I'm trying to

21   understand what the process is so I can explain this to

22   Mr. Brandt and --

23             THE COURT:  My contemplation would be in effect

24   that if I can't convince people to reach an agreement,

25   that in effect the parties would have delegated to me the

963

1    authority to resolve it.

2              MR. DUNHAM:  Okay, that's what I thought.

3    That's fine.

Page 10

08MAR07 Brandt.txt

```
 4              THE COURT:  what I have done in the past quite
 5      frankly is I've gotten two settlement agreements,
 6      plaintiff's settlement agreement, defendant's settlement
 7      agreement, and they are consistent with respect to
 8      everything except these two paragraphs, Judge, and we want
 9      you to pick or we want you to reformulate a new one, and
10      that's really the kind of thing I'm anticipating --
11              MR. DUNHAM:  That's fine.
12              MR. BROWN:  That's acceptable, Judge.
13              THE COURT:  -- if we get to that point.  Okay,
14      good.  But again, I need to have a sense, I mean more than
15      a sense, I need to have assurances on the record from the
16      parties, and that may mean actually from the estate, which
17      I hadn't contemplated, before we can get this done because
18      if they are not consenting to have me play this role, then
19      what I'm stuck with is enforcing against Mr. Holley and
20      HDI and then you're going to be stuck in terms of what
21      recourse you have against the estate.
22              MR. BROWN:  Mr. Holley, I can say this, I think
23      has always had very good relationship with Mrs. Salem, Bob
24      salem's wife.  She was the controller for MIT and she has
25      been kept fully advised.  I have kept Mr. Roberts fully
```

964

```
 1      advised and they have worked together informally to come
 2      up with some of the consideration involved in this offer.
 3      so I will -- perhaps Mr., Mr. Holley will be able to make
```

Page 11

08MAR07 Brandt.txt

4      certain statements on behalf of the estate.  If not, we
5      can give Mr. Roberts a call.
6              THE COURT:  Fair enough.  When do you think you
7      can get your clients here?  Are they nearby?
8              MR. DUNHAM:  Mr. Brandt is in New Haven right
9      now and Mr. Freiman is available to bring him down.  I'm
10     hoping they can be here, assuming I reach them promptly,
11     in an hour maybe.
12             MR. BROWN:  Our client will be here in five
13     minutes.
14             THE COURT:  All right.  I think what I'm going
15     to do then is tell the jury that we're not going to start
16     this morning until 11:00 o'clock, so if they want to run
17     an errand, go shopping, have a cup of coffee, they can do
18     that and we'll reach them at 11.  Any problem with that?
19             MR. DUNHAM:  No, sir.
20             MR. BROWN:  No, sir.
21             THE COURT:  And that way something will be done,
22     we'll have something on the record by this time.  So just
23     let chambers know and when everybody is here, we'll
24     proceed.
25             MR. BROWN:  Yes, sir.

                                                          965

1              THE COURT:  Can each of you, may be best by cell
2      phone, just confirm that your clients are on board with
3      this approach, because if they are not, then we probably
4      should figure out where we are, start the trial or
                        Page 12

08MAR07 Brandt.txt

 5    whatever.

 6              MR. BRANDT:  We can do that.

 7              THE COURT:  Okay.  Thank you all and

 8    congratulations.  I'm very appreciative that you've been

 9    able to work it out.

10              MR. DUNHAM:  Thank you for your help, Your

11    Honor.

12              THE COURT:  Not at all.  Unless I hear from you

13    earlier, we'll be back here in about an hour.  Stand in

14    recess.

15              MR. BROWN:  Thank you.

16              (Whereupon a recess was taken from 9:45 o'clock,

17        a. m. to 11:00 o'clock, a. m.)

18              (Note:  Mr. Brandt appearing by telephone.)

19              THE COURT:  Mr. Brandt?

20              MR. BRANDT:  Yes, this is Len.

21              THE COURT:  Hi.  This is Judge Underhill.  How

22    are you?

23              MR. BRANDT:  Hello, Judge.  I'm doing fine,

24    thank you.

25              THE COURT:  Good, good.  We're in court and

                                                          966

 1    we're on the record, and what we're going to try and do I

 2    think is put on the record the terms of the parties'

 3    settlement and please let me know if at any time you can't

 4    hear what's going on.

                        Page 13

08MAR07 Brandt.txt

5      MR. BRANDT:  Well, thank you.  Let me just say

6   I'm going to need to pay a taxi bill in about one minute.

7           THE COURT:  All right.

8           MR. BRANDT:  So if you hear extra comments, it's

9   from the taxi driver.

10          THE COURT:  All right.  Why don't we start with

11  counsel putting the terms of the agreement on the record.

12          MR. DUNHAM:  Your Honor, this is Edward Dunham,

13  Mr. Brandt's counsel, and I'm going to describe, I hope

14  accurately, a summary of the settlement terms.

15          We have agreed this morning that this case will

16  be settled for a total payment of $3 millions.  That

17  consideration will be at least $150,000 in cash, and

18  perhaps more than that.  We haven't resolved the total

19  amount.  The balance of the consideration will be paid in

20  stock in Home Diagnostics Inc.; will be coming from some

21  from Mr. Holley and some from the estate of Robert Salem.

22          MR. BRANDT:  Please speak up a little bit more.

23          MR. DUNHAM:  Okay.  That in consideration for

24  this total payment of $3 millions, Mr. Brandt will

25  withdraw the claims against Mr. Holley and Home

□

967

1   Diagnostics.  He will also withdraw the appeal of Your

2   Honor's ruling granting summary judgment against the

3   estate of Robert Salem.  So that this settlement will

4   result in a complete resolution of all of the claims that

5   were originally brought in this case.  There will be

Page 14

08MAR07 Brandt.txt

6       complete general releases exchanged by Mr. Brandt with all
7       of the defendants and reciprocal general releases back to
8       Mr. Brandt.

9               That the parties are going to, forthwith, work
10      to negotiate the details of the settlement agreement as
11      they relate to the stock. And note, I'm not going to go
12      into those details. We talked with Your Honor off the
13      record and counsel have continued to have discussions.

14              And we have further agreed that in the event the
15      parties are unable to come to a resolution on any issues
16      related to this stock or features of the settlement, that
17      we would come back to Your Honor, that Your Honor would
18      initially attempt to facilitate a mutually agreeable
19      resolution and, if that's not possible, both parties
20      consent to Your Honor deciding what the final terms of
21      settlement will be. It is with our agreement that
22      Mr. Brandt is settling this case for a total
23      consideration, total value of $3 million.

24              THE COURT: All right. Thank you. Mr. Brown,
25      anything to add to that summary?

968

1               MR. BROWN: No, I think that's a fair summary.
2               MR. BRANDT: I think I heard it all and I think
3       it was accurate. Jack's voice sort of went in and out a
4       little but everything I heard I think was accurate.
5               MR. DUNHAM: And, Len, I'll just tell you that

Page 15

08MAR07 Brandt.txt
6    what I just reported on the record was entirely consistent
7    with several conversations that you and I had earlier this
8    morning by phone.
9              THE COURT:  All right.  What I'd like to do
10   now --
11             MR. BROWN:   May I add one thing, Judge?  I don't
12   mean to interrupt.
13             THE COURT:  Sure.
14             MR. BROWN:  You did ask me before --
15             THE COURT:  Just use the mic, if you would.
16             MR. BROWN:  You did ask me before about
17   Mr. Roberts.
18             MR. BRANDT:  I can really not hear that
19   unfortunately.  I can hear you, Judge Underhill,
20   excellently.
21             THE COURT:  Okay.
22             MR. BRANDT:  But these are very possible --
23             MR. BROWN:  You asked me before about Judge
24   Roberts (sic).
25             THE COURT:  Can you hear now?

                                                         969

1              MR. BRANDT:  I'll try to give it a shot.
2              MR. BROWN:  I spoke to Mr. Roberts today and
3    explained to him, a little while ago, what the overall
4    terms were, and although he has not spoken to Judy Salem,
5    the executrix, the last several days, he knows that George
6    Holley has been speaking to her and if she is agreeable to
                              Page 16

08MAR07 Brandt.txt

```
 7    this settlement, that's fine with him. And I know that
 8    Mr. Holley spoke with Ms. Salem this morning and that she
 9    has even contacted her tax attorney to find about the tax
10    consequences. So I think whatever is represented here is
11    accurate.
12              THE COURT: Very good. All right.
13         MR. BRANDT: Judge?
14              THE COURT: Yes.
15         MR. BRANDT: Just a second?
16              THE COURT: Sure.
17         MR. BRANDT: It would help me greatly, because I
18    can hear you so well, if you could summarize the gist of
19    what was just said. And they would also hear that, would
20    prove that your understanding, their understanding and
21    everyone's understanding is the same. A summary may be
22    helpful not just for me but everybody.
23              THE COURT: Okay. In summary, as I understand
24    it, the parties have agreed to settle this case in its
25    entirety, including the pending appeal of my ruling
```

                                                              970

```
 1    concerning the Salem estate. The terms of that settlement
 2    are in essence that the defendants are going to pay you,
 3    Mr. Brandt, a total of $3 million, which will consist of
 4    at least $150,000 in cash, the exact amount not having
 5    been set yet.
 6              The balance of the settlement amount will be
```

08MAR07_Brandt.txt

7    paid to you in the form of HDI stock.  That stock will be
8    coming both from Mr. Holley and the Salem estate.

9         You agree in exchange for that total payment of
10   $3 million to withdraw claims against HDI, Mr. Holley, as
11   well as the pending appeal concerning the Salem estate.

12        All parties, and I'm assuming at this point that
13   includes the Salem estate but someone can tell me if
14   that's not right, will exchange mutual general releases,
15   meaning everybody's releasing everybody else from whatever
16   claims they may have through the day of the release.

17        There are various details to work out concerning
18   the stock that's going to be transferred as part of the
19   settlement amount.  Those issues were not detailed just
20   now in any great detail but they include issues such as
21   the ability to sell the stock, what restrictions there may
22   be on that stock, et cetera.

23        Finally, if there are details of the settlement
24   that cannot be resolved, for example, if the parties
25   cannot agree on the terms of the general releases, if the

971

1    parties cannot agree on the details concerning the
2    transfer of stock, the parties will come here, I will
3    attempt to resolve those disputes informally.

4         If that informal process does not work, the
5    parties are all authorizing me to act as an, in effect a
6    binding mediator and to impose a decision on the areas of
7    dispute concerning the details of the settlement.

Page 18

08MAR07 Brandt.txt

 8          So, in sum, that's my understanding of the
 9    settlement and counsel can correct me or fill me in if
10    I've missed something.
11          MR. DUNHAM:  Your Honor, I think that was an
12    entirely accurate summary.
13          MR. BROWN:  I agree, Your Honor.
14          THE COURT:  All right.  Mr. Brandt, did you
15    follow everything that I said?
16          MR. BRANDT:  I did.  That was an excellent
17    summary, an excellent hearing, so I understood every word.
18          THE COURT:  So, let me ask you this:  Are you
19    agreeing to the settlement terms that I just outlined?
20          MR. BRANDT:  Yes.
21          THE COURT:  All right.  And let me now turn to
22    Mr. Holley and ask him on behalf of himself as well as on
23    behalf of HDI as its representative:  Mr. Holley, are you
24    agreeing to the terms that I just outlined?
25          MR. HOLLEY:  Yes, I am.

                                                           972

 1          THE COURT:  Both for yourself and for the
 2    company?
 3          MR. HOLLEY:  Yes, I am.
 4          THE COURT:  All right.  And did you want to make
 5    any representations concerning statements that have been
 6    made to you by the executrix of the Salem estate about
 7    whether the estate will also agree to those terms?

                        Page 19

08MAR07 Brandt.txt
```
 8              MR. HOLLEY:  The Salem estate has told me they
 9    will participate in the settlement, although they did not
10    hear the full terms of what we discussed today.
11              THE COURT:  All right.  Mr. Brandt, what
12    Mr. Holley just said was that the estate has informed him
13    that they will participate in the settlement although they
14    have not heard all of the terms that have been outlined
15    today.
16              MR. BRANDT:  So are we dependent on the -- does
17    this settlement understanding that we are trying to reach
18    today depend a further conversation?
19              THE COURT:  Well, that's a good question.  Let
20    me ask Mr. Holley on behalf of himself and HDI, in the
21    event that the Salem estate does not come through with
22    whatever it is you think they are going to be coming
23    through with, will HDI and yourself step up and fund the
24    full amount of this settlement nevertheless?
25              MR. HOLLEY:  Yes, we will.
```

973

```
 1              THE COURT:  And the answer was yes, Mr. Brandt.
 2              MR. BRANDT:  Thank you.
 3              THE COURT:  All right.  Anyone else feel the
 4    need to put anything else on the record at this time?
 5              (No response)
 6              MR. DUNHAM:  Not for the plaintiff, Your Honor.
 7              MR. BRANDT:  Everything is satisfactory to the
 8    defendants, Judge.
```
                          Page 20

08MAR07 Brandt.txt

```
 9          THE COURT:  All right.  And once again, thanks
10    to everyone for accomplishing this.  I think it's a good
11    result for everybody.  Settlements -- I didn't say this to
12    either of you last night but settlements are by definition
13    arrangements that everybody is a little bit unhappy with,
14    and I think that's probably a fair characterization of my
15    sense of where everybody stands today.  I think the
16    defendants feel that they are paying too much, I think
17    Mr. Brandt feels he's not getting enough, so I think it's
18    probably a pretty fair settlement.
19          So, but quite seriously, I very much appreciate
20    everyone's willingness to maintain an open mind and to
21    continue working even while on trial to try to resolve
22    this.
23          MR. BRANDT:  I'd just like to say I appreciate
24    your energy, Judge.
25          THE COURT:  Well, it's my pleasure.  Happy to do
```

                                                        974

```
 1    it, and I'm glad that it worked out.
 2          All right, my thought now is to hang up the
 3    phone with Mr. Brandt, have the jury come in and basically
 4    discharge them.  Anything else we need do before we cut
 5    this phone connection?
 6          MR. DUNHAM:  No, Your Honor.
 7          THE COURT:  All right.  Mr. Brandt, thanks very
 8    much.
```

                              Page 21

08MAR07 Brandt.txt

9          MR. BRANDT:  Okay, bye bye.

10         THE COURT:  Bye bye.

11         (Phone cut off.)

12         THE COURT:  Let me, before we bring the jury,

13    let me inquire whether either of you want to make any

14    statement of any kind to the jury.

15         MR. BROWN:  I think the only thing we could say,

16    Judge, is what you would say, which is to thank them for

17    putting up with this and doing their service and we're all

18    very grateful.  And it would not have happened without

19    them sitting over there.

20         THE COURT:  I do intend to tell them that.

21         MR. DUNHAM:  I agree with that, Your Honor, and

22    I think it's better for you to be the spokesperson for all

23    of us who participated in the trial.

24         THE COURT:  All right.  What I typically do

25    after a trial, usually after a verdict, but I go back into

1     the jury room, thank them again, ask them if they have any

2     questions or concerns.  It would be my intention to do

3     that.  They may have questions about why did something

4     happen with the trial or whatever, and I think they've

5     earned the right to have their questions answered.  I am

6     sure they are going to ask what it settled for.  I don't

7     sense that it's a confidential issue but I want to raise

8     that with you before --

9              MR. DUNHAM:  Not as far as Mr. Brandt is

Page 22

08MAR07 Brandt.txt

10    concerned, Your Honor.

11              MR. BROWN:  We don't care, Judge.

12              THE COURT:  If they ask, I'll tell them.  That's

13    good.  Thank you.

14              Okay, let's bring the jury in please.

15              (Whereupon the jury entered the courtroom at

16    11:15 o'clock a. m.)

17              THE COURT:  Good morning, ladies and gentlemen.

18    Welcome back.  Thank you for your patience.  I have some

19    good news and that is that this case has settled.  We, we

20    all have been working really for a couple days, I think,

21    toward that goal and were able to achieve an agreement

22    this morning, and that means that all of you get back to,

23    get to get back to your busy lives.  And I want to take

24    some time to really thank all of you for your service.  I

25    think it's fair to say, as probably was obvious during the

976

1     trial, the parties have very different views about what

2     happened here, and nevertheless were able to continue

3     talking with each other and could reach a mutually

4     satisfactory resolution.  That was accomplished.  This

5     case has been going on a long, long time and that was

6     accomplished, I think, because all of you are here.

7     You've been attentive, you've been listening to what's

8     going on and were getting ready to decide this case and

9     that, I think, helped focus everyone's mind, realizing

Page 23

08MAR07 Brandt.txt

10    that somebody was going to walk out of the court very

11    unhappy. And the parties have, were able to, as I said,

12    reach a resolution.

13           So, again, my apologies that we couldn't have

14    done this sooner and save you some inconvenience but I

15    hope that my promise to you that this would be an

16    interesting and rewarding experience has been true. I

17    found it to be an interesting trial and I hope you did as

18    well.

19           I know some of you may be disappointed that you

20    didn't get a chance to deliberate. That, you know,

21    ultimately is what you are chosen to do. But hopefully

22    the fact that you have a shorter service will make up for

23    that.

24           It's my practice to speak to juries privately

25    after a case is over. That's not a requirement, you don't

977

1     have to stay around, but I'll come back in the jury room

2     in a couple minutes. If any of you have questions or

3     comments you would like to make, if you have any

4     suggestions to how we can make life of jurors more

5     comfortable in the future, or if there's anything else you

6     want to talk about, I'll be back with my law clerk Kelly

7     to talk to you, any of those of you who would like to.

8            But let me thank you very sincerely on behalf of

9     everyone. I asked the lawyers if they wanted to make any

10    comments to you directly and they just asked that I share

Page 24

08MAR07 Brandt.txt

11     with you their deep appreciation for all you've done to

12     help them resolve this case.

13          And so with that, you're all discharged.  I am

14     going to ask that you leave your notes in the jury room.

15     Those will be destroyed.  They will not be read.  You're

16     now free to discuss the case at home or with anyone you

17     want to, so helpfully that will be fun for you to do.  And

18     again, thank you very much.

19          A JUROR:  Thank you.

20          THE COURT:  Take care.

21          A JUROR:  You said in a few minutes?

22          THE COURT:  I'll come back literally in two

23     minutes.  Give anybody who wants to leave a chance to

24     leave without feeling embarrassed and then I'll come back.

25     Thanks very much.

                                                          978

1          (Whereupon the jury left the courtroom.)

2          THE COURT:  All right, thanks again.  Unless

3     there's anything else we'll stand in retest.

4          MR. DUNHAM:  Thank you.

5          (Whereupon the above matter was adjourned at 11:20

6     o'clock, a. m.)

7

8

9

10

08MAR07 Brandt.txt

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

D

979


C E R T I F I C A T E


        I, Susan E. Catucci, RMR, Official Court
Reporter for the United States District Court for the
District of Connecticut, do hereby certify that the
foregoing pages are a true and accurate transcription of
my shorthand notes taken in the aforementioned matter to
                    Page 26

08MAR07 Brandt.txt

the best of my skill and ability.

---

Susan E. Catucci, RMR
Official Court Reporter
915 Lafayette Boulevard
Bridgeport, Connecticut  06604
Tel: (203) 246-6385

0=