# EXHIBIT B

31OCT07 Brandt.txt

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - x

LEONARD BRANDT                    :    No. 3:01CV-1889 (SRU)
                                  :    915 Lafayette Boulevard
              vs.                 :    Bridgeport, Connecticut
                                  :
                                  :    October 31, 2007
MIT DEV. CORP., ET AL             :

- - - - - - - - - - - - - - - x

TELEPHONE CONFERENCE

B E F O R E:

     THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.

A P P E A R A N C E S:

     FOR THE PLAINTIFF:

          LEONARD BRANDT, PRO SE
               28911 Via Hacienda
               San Juan Capistrano, California  92675

     FOR THE DEFENDANTS:

          SATTERLEE, STEPHENS, BURKE & BURKE
               230 Park Avenue
               New York, N. Y.  10169
          BY:  PAUL M. BROWN, ESQ.

          NUZZO & ROBERTS, L.L.C.
               One Town Center
               P.O. Box 747
               Cheshire, Connecticut 06410
          BY:  RICHARD A. ROBERTS, ESQ.


               Susan E. Catucci, RMR
               Official Court Reporter
               915 Lafayette Boulevard
            Bridgeport, Connecticut  06604
               Tel: (917)703-0761

2

1              (Whereupon the following session was held in

2    chambers telephonically.)

3                    (2:00 O'CLOCK, P. M.)

4              MR. ROBERTS:  Rick Roberts.

Page 1

310CT07 Brandt.txt

5            MR. BROWN:  Paul Brown.

6            THE COURT:  Stefan Underhill.

7            MR. BRANDT:  Good afternoon, Your Honor.  How

8  are you today?  Len Brandt here.

9            THE COURT:  Is that everyone we're expecting?

10           MR. BROWN:  Yes.  And my associate Erin Ziesler

11  is here also, Your Honor.

12           THE COURT:  All right.  All right, we are on the

13  record just so every one knows.  It would be helpful if

14  you could state your name each time you speak so my court

15  reporter knows who's saying what.

16           I have obviously the papers that have been filed

17  in this matter back and forth.  The letters, I guess I

18  shouldn't say filed, but have been sent to me, the letters

19  from Mr. Brown and also from Mr. Brandt, and I believe

20  also from Mr. Roberts, I have something --

21           MR. ROBERTS:  That is correct, Your Honor.

22           THE COURT:  Let me start out by saying that it

23  appears to me that no one has fully complied with the

24  order or, more precisely, the ruling regarding disputed

25  settlement terms that I issued back in July.  The ruling                      3


1   called for the immediate payment of both cash and stock

2   and the immediate exchange of releases and it appears to

3   me that no one has --

4            MR. BROWN:  Your Honor, Paul Brown.  You're

5   fading out, sir.

6            THE COURT:  Sorry.  I'm just saying it appears

7   to me that neither side has complied with the obligation

8   to sign a release which was part of the original

9   settlement terms and it appears that the settlement

31OCT07 Brandt.txt

10    amounts have not been paid which causes me concern.  So
11    Mr. Brandt has requested in effect various relief under
12    the circumstances and I suppose we ought to hear from each
13    side about how you think the matter should proceed at this
14    point.

15              MR. BROWN:  Paul Brown, Your Honor.  We have
16    been at all times ready, willing and able to comply with
17    Your Honor's ruling of July 19 -- I think that's the
18    date -- early on in this procedure.  And in March Jack
19    Dunham sent me a draft settlement agreement and told me as
20    soon as we get the details worked out I should fill in the
21    blanks and send him back a corrected draft.  Immediately
22    after July 19 and certainly I think seven or eight days
23    later, as I stated in the papers, I turned it around and
24    sent it back to him and said we're ready to go.  And what
25    that contained was a document which followed Your Honor's

4

1    ruling with a number, the number of shares, with the
2    exchange of releases contained therein which he had
3    drafted, with a registration rights agreement, without
4    which Mr. Brandt would not be able to have an underwriter
5    register his shares if there was a piggyback offering
6    within a year, and he then went dark on me.  And I kept
7    writing him notes and we want to get this settled, we're
8    anxious to get this done.  We've got an estate that wants
9    to be closed.  We've got George Holley who has financial
10    planning and we've got a public company that has already
11    told the world about the settlement and it wants to follow
12    through on that and adjust its record.

13              So any delays, Your Honor, here in implementing
14    this settlement have definitely not been the fault of the
15    defendants.  And I understand there was some disputes

Page 3

31OCT07 Brandt.txt

16    between Mr. Brandt and his lawyers and that probably is

17    the reason for the delay, because Jack Dunham more than

18    anybody else wanted a settlement agreement. We've been

19    ready since day one to implement this.

20         THE COURT: Right. The problem is the ruling

21    says the defendant shall immediately pay plaintiff

22    $600,000 in cash and $2,400,000 in restricted HDI stock,

23    and here we are a month after the fact and that hasn't

24    occurred yet.

25         MR. BROWN: The reason -- Paul Brown -- it

☐                                                                          5

1    hasn't occurred is, as I explained, both sides agreed to

2    have a written settlement agreement, a copy of which was

3    sent to Your Honor, with one of those letters, and all we

4    had to do was it get it signed and done, and particularly

5    since Mr. Brandt has now threatened our clients with suit

6    for securities fraud and various other things, we think

7    it's very important we get a release.

8         MR. BRANDT: This is Leonard Brandt. And you

9    asked the question how to proceed here, how we might

10    proceed, so I'd like to answer my view on that, Your

11    Honor.

12         THE COURT: Sure.

13         MR. BRANDT: I think that the matter, as I

14    understand it, that started this is a letter from

15    Mr. Brown to you on September 4th asking that you compel

16    me to accept and comply with the proposed settlement

17    agreement forwarded by him to me. So I think probably

18    that is the specific issue which started this particular

19    discussion, might be the first thing to make some comments

20    on, and if that issue gets finished I think it would be

Page 4

310CT07 Brandt.txt

21    valuable for everybody to deal with your broad issue of,

22    you know, what has gone awry from the ruling of July 19th

23    that has got broader issues in it. But I think if we

24    focus on the very specific request of Mr. Brown and allow

25    me to also make my comment there, maybe we can put that to

                                                  6

1    bed.

2            THE COURT: Fine. I'm happy to hear whatever

3    you want to say.

4            MR. BRANDT: Okay. Well, this is Len Brandt

5    again and I will simply explain sort of what would seem to

6    me to be fairly simple, which is I did agree -- in fact

7    the exact words are listed on the March 8th conference

8    which I appeared by telephone, and that -- and you

9    summarized at my request what the understanding was

10    regarding my releasing the Salem estate and claims, et

11    cetera, in that fund. And I understood that, I agree you

12    said you, meaning me, I agree in exchange for that total

13    payment of $3 million to withdraw claims against HDI,

14    Mr. Holley, as well as the pending appeal concerning the

15    Salem estate. So I believe that is the obligation upon

16    me, and when I receive $3 million I have to, I've agreed

17    to withdraw all those claims. But I don't have to

18    withdraw all those claims or the pending appeal if I don't

19    receive $3 million and I have not received $3 million.

20    Therefore, my understanding, that everybody agreed on

21    March 8, is that I don't have to do that and I don't think

22    I should do it until $3 million has shown up.

23            THE COURT: Well, actually based upon the ruling

24    what you get is $600,000 in cash and $2,400,000 in

25    restricted HDI stock valued at the appropriate date, which

                                                  7

31OCT07 Brandt.txt

1    is a total of $3 million. I acknowledge you haven't
2    received that, but to the extent that you're suggesting
3    that you get $3 million in cash or cash equivalence, I
4    think you're mistaken.
5         MR. BRANDT: Well, I understood that you reached
6    a ruling, and I hope we have a chance to discuss where
7    that process went sort of awry, but I just want to say
8    that my understanding, and I admit I don't have -- how
9    those two things seem to differ in my obligation, I don't
10   have the best legal appreciation of, I'm sure, but it was
11   very clear to everybody on that phone that this $3
12   million, whether it's of exchangeable value or actual
13   cash, is what goes with a release. And I don't have it.
14   So I shouldn't be obligated to just do my part if they
15   haven't done theirs.
16        THE COURT: Right.
17        MR. BRANDT: You bring up the other point, I do
18   hope we have a chance to talk about that because it is
19   something that we are extremely close to finishing this
20   deal and something went awry at the tail end and I hope
21   the parties are willing to chat about that and save a lot
22   of hassle for everybody. But if not, the answer to your
23   very first question or the answer to what Paul Brown
24   stated in his letter is compel Brandt, it seems that
25   compelling goes with that $3 million -- call it value,

8

1    also being delivered and the not -- without it, it doesn't
2    happen.
3         THE COURT: Well, right, and that was my point.
4    Both parties have not done what they are obligated to do.
5    The defendants were obligated to immediately pay you

Page 6

31OCT07 Brandt.txt
6      $600,000 in cash and 2.4 million in restricted HDI stock.
7      All parties were ordered to immediately exchange mutual
8      general releases, and the ruling specifically said that
9      you're free to enter into a formal settlement agreement if
10     you want to but the terms of the payment obligation will
11     not be delayed or otherwise affected if you choose to do
12     so.  So nobody has done what they are supposed to do under
13     this agreement and the ruling.

14               MR. BROWN:  Your Honor, Paul Brown.  May I be
15     heard, please?

16               THE COURT:  Sure.

17               MR. BROWN:  I respectfully disagree, Your Honor.
18     That while it's true that the consideration hasn't been
19     paid, it's also true the reason it hasn't been paid is
20     because Wiggin & Dana was insisting and we agreed on a
21     formal settlement agreement, number one.  And, number two,
22     they never responded to us and, in fact, they have
23     delayed -- and probably not intentionally but because of
24     Mr. Brandt not getting this thing done.  I also note that
25     Mr. Brandt moved for reconsideration of Your Honor's

                                                              9

1      ruling and asked for an extension and that was denied, and
2      Your Honor stated that the parties agreed I would act as a
3      mediator, impose a final decision of the open issues.
4      That agreement does not contemplate a motion to reconsider
5      the mediation ruling, and so we have then frankly, and
6      I've written and I've sent to Your Honor, I'm not going to
7      repeat it, a number of email or faxes to Mr. Dunham
8      indicating we want to get this done, we're anxious to get
9      it over with.  And I really feel that the delay here, and
10     it's obvious, is Mr. Brandt who never fully accepted that
11     he was getting 600,000 in cash and two million four in
                                Page 7

31OCT07 Brandt.txt

12   value in restricted stock.

13        And he's hardly a neophyte. He has a company

14   that just went public. He has an MBA. He worked for

15   years with Northstar Venture Capital Partners and they did

16   lots of exit strategies with turning companies into and

17   selling their stock. So for him to say he doesn't know

18   what a legend on a restricted stock certificate is, I'm

19   astonished. I don't believe it.

20        THE COURT: Mr. Brown, that may well be. I

21   really don't care who's so-called fault it is. The ruling

22   said the parties are free to enter into a formal

23   settlement agreement if they wish but the terms of the

24   payment obligation will not be delayed or otherwise

25   affected should they choose to do so. It was easy for me        10

1    to anticipate in July of this year that any delay in

2    payment was going to lead to further dispute. That's why

3    that language is in there. I didn't want payment to be

4    delayed while the parties tried to agree to the terms of a

5    settlement agreement. That's why I ordered that they be,

6    the payments be made immediately, the releases be

7    exchanged immediately. And, you know, it was easy to

8    foresee that the parties would have difficulty reaching a

9    settlement agreement, frankly. The fact that we had to

10   undertake the binding mediation was in itself evidence

11   that the parties couldn't agree. So --

12        MR. ROBERTS: Your Honor, Rick Roberts. May

13   I -- I've been somewhat on the sideline because, as you

14   may recall, I represent the estate of Salem and that was

15   appealed. But I think it was my understanding that, I

16   mean, before paying the money there would be releases in

Page 8

31OCT07 Brandt.txt
17  escrow anyway.  That's the way those things normally --

18            MR. BROWN:  Rick, could you speak up?  We're

19  having trouble hearing you, please.

20            MR. ROBERTS:  I'm sorry.  I was saying that it

21  was at least my understanding that before any actual cash

22  or stock would be transferred, that there would at least

23  be releases held by the lawyers in escrow and I thought it

24  was Mr. Brandt who was refusing to sign a release.  That's

25  what I thought the primary hold-up was.

                                                                    11

1            THE COURT:  Did the Salem estate send a release

2   to anyone to be held in escrow?

3            MR. ROBERTS:  We did not.

4            THE COURT:  No, no one did.

5            MR. BROWN:  That's not correct, Your Honor.  We

6   did.  We sent a draft settlement agreement on July 27th,

7   eight days after your ruling, which contained mutual

8   releases which had been drafted by Jack Dunham and we

9   agreed to them.

10           THE COURT:  Mr. Brown, had you signed releases

11  in favor of any party and sent them to anyone else to be

12  held in escrow?

13           MR. BROWN:  No, sir, because we wanted Mr.

14  Dunham to be, to approve the language.  Had he done that,

15  we would have done it immediately.

16           THE COURT:  The point is if there was a

17  contemplation they were going to be held in escrow.  No

18  one complied with that.  No one here signed a release and

19  sent it to anybody else to be held in escrow.

20           MR. BROWN:  That's true.

21           THE COURT:  That's true.

22           MR. BROWN:  That's true, sir.
                        Page 9

310CT07 Brandt.txt

23          THE COURT: The problem I have is this. The
24    terms set forth in the ruling in July were fair had they
25    been complied with, and now we are some months later and                    12

1     it's not clear that simply complying with those terms
2     today is still fair. Mr. Brandt has asked for interest
3     and it's a reasonable thing to ask for interest on a
4     payment of cash that was due immediately after July 19,
5     2007.
6          MR. ROBERTS: But -- Richard Roberts, Your
7     Honor -- I mean in fairness, he didn't give us the release
8     either.
9          THE COURT: Right, but who -- who bears the risk
10    of not making a payment that's been ordered?
11         MR. BROWN: Paul Brown, Your Honor. The problem
12    here is Mr. Brandt was obviously behind the scenes having
13    disputes with Mr. Dunham's firm and it was delaying this
14    whole thing. We were just sitting here waiting for them.
15    We were all set to go. What really happened, and I think
16    it's undeniable, is there are a dispute, there was a fee
17    dispute, there are other things that are going on with
18    them and we're like prisoners to this. We want this over
19    with, Judge. We don't disagree with you, but why should
20    we have to pay interest when the delay is not relevant on
21    our part? We have not done one thing, with all the
22    respect, to delay this restitution. Not one thing.
23         THE COURT: But your client has had the benefit
24    of the $600,000.
25         MR. BROWN: That's true, Your Honor, we agree                    13

1     with that. That's a fair statement. But other than that,
                        Page 10

310CT07 Brandt.txt

2    we didn't care about that, we were prepared to go forward,

3    and I feel that we've been treated unfairly here because

4    we did act in good faith and we've been delayed on the

5    other end because Mr. Brandt obviously never wanted to

6    sign a release. That's obvious. I mean he has a

7    completely different view of the settlement than everybody

8    in that courtroom.

9          THE COURT: what's happened to the stock

10   since --

11         MR. BROWN: The stock's gone down from eleven

12   bucks to nine dollars and change. Had it gone up to 13,

13   we probably wouldn't have heard from Mr. Brandt, Your

14   Honor.

15         THE COURT: well, sure, but --

16         MR. BRANDT: No, that's not true at all. Sorry

17   to interrupt.

18         THE COURT: Let me just tell everybody what I

19   think are reasonable terms to resolve the problem we're

20   in, and all of you can tell me what you disagree with.

21   The defendant should immediately pay Mr. Brandt $600,000

22   in cash plus 6 percent interest from July 20, 2007, to the

23   date of payment. They should deliver $2,400,000 in

24   restricted HDI stock. The number of shares to be

25   transferred should be calculated using a value of

                                                        14

1    94 percent of the average closing price, five trading days

2    immediately prior to today. There should be piggyback

3    rights to accept the HDI sales under any registration

4    statement filed by HDI within 12 months of today. The

5    appeal of the ruling regarding summary judgment in favor

6    of the Salem estate shall be immediately dismissed. The

7    parties shall immediately exchange mutual releases, good

                        Page 11

31OCT07 Brandt.txt

8    through the date they are signed. That is presumably
9    tomorrow. And if the parties want to enter into a formal
10   settlement agreement, they can do so.
11              MR. BROWN:  Your Honor?
12              THE COURT:  Yes.
13              MR. BROWN:  Yes, Paul Brown. I don't see why we
14   should have to bear the risk of the price of the stock
15   when we in good faith offered to pay 94 percent on
16   106 percent in effect of the value of the stock, like
17   1,500,000 at the time of the settlement, and now we're --
18   Your Honor, why do we have to bear the risk when the
19   reason why the settlement hasn't been executed is
20   Mr. Brandt?
21              THE COURT:  But, Mr. Brown --
22              MR. BROWN:  That's not fair.
23              THE COURT:  Mr. Brown --
24              MR. BROWN:  And that alters your prior ruling,
25   Your Honor.

15

1              THE COURT:  It does not alter my prior ruling.
2    Look at the ruling, July 19th, second page. I've read the
3    sentence several times. The parties are free to enter
4    into a formal settlement agreement if they wish but the
5    terms of the payment obligation will not be delayed or
6    otherwise affected should they choose to do so. Now, if
7    you had paid the money immediately as it was required by
8    the ruling, there would have been no risk. The risk would
9    have been on Mr. Brandt.
10             MR. BROWN:  Your Honor, how could I pay this
11   without getting a release?
12             THE COURT:  You going to get a release. The

Page 12

31OCT07 Brandt.txt

13    order required you to get a release. If you didn't get

14    one you could come to me and say, Judge, we paid the money

15    like you said and we didn't get a release.

16          MR. BROWN: We'd have been fired by our client,

17    Your Honor, as Your Honor well knows, if I had paid

18    $600,000 and $2,500,000 and some odd thousand dollars in

19    stock without getting a release.

20          I appreciate what Your Honor is saying. The

21    delay here was not me, and it was not us. It was

22    Mr. Brandt because of his fights with his own firm, and

23    we're being asked to now pay interest on the money which I

24    at least can conceptually understand that, but to change

25    the number of shares and increase them by 15 percent or so

16

1    to me is manifestly unfair, and your ruling states that

2    the shares should be figured out as of the dates indicated

3    which was in July, not October.

4          THE COURT: Mr. Brown, what prevented you from

5    paying into escrow the full amount of the settlement

6    proceeds within one day, five days, whatever, of

7    July 19th, 2007?

8          MR. BROWN: On the cash, Your Honor, we probably

9    would have needed about ten days or so. And on the stock,

10    that would have taken approximately ten days or so, and I

11    think I told Mr. Dunham that at the time.

12          THE COURT: Right. And my point is not how long

13    it would take you, my point is Mr. Brandt had a lawyer ten

14    days after that ruling to whom you could have paid this

15    money and said hold it in escrow.

16          MR. BROWN: Your Honor, all I did was act fairly

17    with him. I sent him, to repeat myself, a settlement

18    agreement within eight days. He discussed it with me on

                          Page 13

31OCT07 Brandt.txt

19    the telephone.  It was his original draft which I marked
20    up.  We agreed upon -- some of those days were weekend
21    days, by the way, and I told him we're ready to go.  Let
22    me know if you have any comments.  If not, we're ready to
23    go forward.  Now, I was ready to go forward on July 27 and
24    here we are months later and I'm being asked to pay for
25    the intransigence of Mr. Brandt.  It's not fair.

17

1            THE COURT:  How did the intransigence of
2     Mr. Brandt prevent you from sending the settlement
3     proceeds to Mr. Dunham to be held in escrow?
4            MR. ROBERTS:  Well, Your Honor, if I may,
5     Richard Roberts.  I mean, remember that Mr. Brandt and his
6     lawyer also, there was nothing to prevent them from
7     putting a release and any withdrawal of the appeal in
8     escrow.  But I mean, every settlement I've ever done, and
9     I know this is somewhat unconventional, Your Honor, you
10    normally, you normally put the releases upfront first
11    before the cash.
12            THE COURT:  Well, look, they get sent to the
13    other side to be held in escrow and then they are released
14    from escrow when everybody has everything they need.  The
15    point is Mr. Brown and his client would have been
16    protected had they complied with the ruling and sent this
17    payment, as was required, to Mr. Dunham to be held in
18    escrow.  It would have been a simple matter.
19            MR. BROWN:  I might add, Your Honor, that they
20    didn't accept your ruling and on, on -- you know, they
21    moved, as Your Honor knows, in August to have Your Honor
22    give them an extension so we could find another lawyer and
23    have a, the ruling reconsidered.  What were we supposed to

Page 14

31OCT07 Brandt.txt

24  do? We were like up in the air and we're being told by
25  Jack Dunham that, you know, Mr. Brandt may be getting

18

1   another lawyer, I'm not quite sure, and what should happen
2   to the appeal? And so we're like standing there, what do
3   we do?

4           MR. ROBERTS: He told us, he pretty much was
5   saying I can't get you a release, I'm not going to get you
6   a release. And I mean so even though Your Honor is
7   correct that certainly I think that both sides could have
8   complied, I mean to put everyone back in a position that
9   if they had complied would seem to be fair, would be --
10  the interest makes sense and so would the stock as of the
11  value in July, not as value in October because that's what
12  put people back in the same position if they had complied.
13  But the plaintiff is equally guilty, for lack of a better
14  word, of not complying and I would argue much more so
15  because he's basically telling us through lawyers and then
16  on his own that he disagrees with Your Honor's ruling,
17  that he doesn't plan to honor it, and I think it's a
18  little -- it may be asking a lot to have, to have to put
19  all that money, to have tendered it under those
20  circumstances.

21          THE COURT: Let me suggest this. What I think
22  you and Mr. Brown are overlooking is the part of my
23  suggestion today that the releases be dated as of now.
24  Mr. Brandt is giving up his potential lawsuits against
25  your clients and he's going to get the change in value of

19

1   the stock in effect that was held because it wasn't paid
2   over. It seems to me both sides are losing something
3   here.

Page 15

31OCT07 Brandt.txt

4            MR. ROBERTS:  Well --

5            MR. BROWN:  I don't think he's losing anything,
6       Judge.  He's getting, he's going to get another 15 or
7       20 percent in stock.  He's going to get interest on the
8       money.  We're getting nothing.  We've borne the risk of
9       the stock.  It's restricted stock.  That's something that
10      he and his attorney agreed he would bear as part of this
11      agreement.  Now we're bearing it instead because he has
12      failed and refused and never wanted to enter into this
13      settlement, as Your Honor has heard today.  I mean we've
14      acted, Judge, really in good faith here.  We've not
15      sought -- we've wanted this thing over with.

16           MR. ROBERTS:  But again, Your Honor, our point
17      is simply we understand he's giving up his rights to sue
18      on what's occurred recently, but if he gets the interest,
19      then he's put in exactly the same position as he would had
20      he complied himself by withdrawing the appeal and by
21      tendering the release, which not only did he not do but he
22      basically said I'm not going to do that.  So I mean, I
23      think, I think certainly being generous to his position,
24      both sides didn't do what Your Honor asked them to do,
25      which is immediately exchange releases and also tender the

                                                                20

1       money, but I entirely agree with Attorney Brown that it
2       just seems unfair to put the burden on our clients to -- I
3       mean I have enough difficulty getting my client to agree
4       to pay that amount back then but I just think the whole
5       point here is we would have done that if he had complied
6       with his side and at worst, I mean if Your Honor looks at
7       it that we both failed to comply, to, you know, do that
8       would be putting us in a position of where we would be if

                                Page 16

31OCT07 Brandt.txt

```
 9    we had complied which would be he'd have the stock with
10    its value then plus interest on the cash and we'd have a
11    release and I'd have a withdrawal of appeal and I wouldn't
12    have spent another -- well, all defendants, you know,
13    wouldn't have spent another 15, $20,000 in legal fees
14    between moving the appellate court, writing letters and
15    doing research on the issues Mr. Brandt was raising, which
16    we didn't anticipate incurring anymore legal fees.  So we
17    all have some losses here, but I mean the real issue is
18    why should the defendants have to shoulder any change in
19    value when the deal was it would be valid in July and he
20    didn't comply either?
21              THE COURT:  Well, okay --
22              MR. BRANDT:  There's --
23              THE COURT:  Go ahead, Mr. Brandt.  Go ahead.
24              MR. BRANDT:  There's three points and I'm going
25    to try to organize three primary points here, so please
```

21

```
 1    bear with the three points.  On the very first point,
 2    which will be brief, this discussion going on is all about
 3    should we try to transfer to Brandt something
 4    substantially less than $3 million of real value.  So I
 5    just listened to it all and I understand that the
 6    defendants think they should and that's the question on
 7    the table and I want to say I understand the point that
 8    everybody would like to transfer less than $3 million.  I
 9    do believe that was the fundamental essence of what led us
10    to settle, to try to settle in the first place and it
11    shouldn't be forgotten.
12              The second point which you asked, okay, here,
13    Judge, you said, well, here's what seems like a possibly
14    reasonable solution where we are today, and you asked for
```

Page 17

31OCT07 Brandt.txt

15    comment back and I'd like to also give you mine.  There

16    are two issues in all of that.  Issue number one is it

17    makes me party to a transfer of stock that doesn't appear

18    to me and to the limited advice I've gotten to be legal.

19    And I don't think I should be compelled into having to

20    break the law somehow and I believe there's very

21    fundamental reasons for that, and I am prepared to go

22    through them but let me make the general point that seems

23    like a major problem to me.  I want to put that point --

24    and I will explain it if you ask.

25            The second problem for me, which goes back to,

                                                                    22

1     okay, your notion of here seems like a fair notion, in

2     fact when Mr. Brown made his proposal to you -- well, in

3     fact, going even further if I might for a quick second,

4     your actual ruling on March 8 said that if we can't agree

5     to things, you will settle the matter of the disputed

6     items.  You said that on page 971 of the March 8

7     settlement transcript.  You'll find it on line six.  You

8     said that, you then said in the conference memo that led

9     to this on May 15, the same thing in paragraph three and

10    you instructed everybody to identify what are the

11    undisputed items and then propose in your arbitration

12    process the resolution of the disputed items that you'll

13    rule on, that the judge will rule on.  Paul Brown in his

14    submission of May 24 on page four acknowledges the two

15    points that actually were the only things in dispute, and

16    fortuitously you would think to everybody, Edward Dunham

17    in his response to you on May 29th identifies the

18    identical items as the disputed items, and there were only

19    two.  Because of all the issues or whatever history of

310CT07 Brandt.txt
20    issues with the restricted stock that was unknown at the
21    time of March 8 and also unknown and contemplated that
22    Holley had further restrictions as the control person, all
23    discussions had gone to, well, you sell your own stock and
24    we'll wait for you, Mr. Holley. And two disputed issues
25    were agreed by both parties, only should it be $3 million

23

1     of cash you deliver or $2.9 million of cash. There was a
2     difference on that. Mr. Brown had proposed $2.9 million
3     allowing a 50-cent per share commission that I would pay,
4     although the world charges about five cents. And the
5     second item is while I wait, should there be interest paid
6     to me. We said okay, if I've got to wait six months, if
7     there's not interest then -- you're going to take all six
8     months, then you really agree to sell it along the way.
9     So we said pay us 6 percent interest and pay us the full
10    $3 million because that's what the settlement was for.
11    Mr. Brown said in his proposal to you, one of two that he
12    made, pay $2.9 million and we're not going to pay you
13    interest and those were the only two disputed items and
14    those were the different opinions. Had we -- had judgment
15    been made on just the disputed items, as all the
16    communications to that point had been, presumably one of
17    those two choices would have been made.

18          Mr. Brown did make, go all the way back to
19    discussions that hadn't happened for a while, I hadn't
20    been party to any of it, to say on the other hand, you
21    know, we could go back to restricted stock and take a
22    6 percent discount. No discussion had taken place on that
23    and because I believed that while one could conceivably
24    consider something like that, that it's required by law
25    that there be a full disclosure and as defined by
                            Page 19

31OCT07 Brandt.txt

1    documents that I've come up with, that is meant to be
2    resale purchasers must be provided with full disclosure of
3    the type of information found in registration statements
4    for the offer or private placement memorandum,
5    particularly when there is a control person because those
6    people are not, the control people are not differentiated
7    from the company itself.  So had that been provided to
8    you, that being provided to me if I was doing it but now
9    you are placed in that role and you had all that
10   information, you'd be able to make a judgment of, okay, is
11   that fair and reasonable?  Is 6 percent discount, a
12   discount typically associated or earned by an U.S. T Bill,
13   a reasonable basis in light of full disclosure?  And
14   further, that if Mr. Holley was in possession of insider
15   information, he would have had an obligation to disclose
16   that as well.

17         So, at that time Mr. Brown made two offers while
18   I thought and I think everybody thought that based on all
19   the previous documented instructions that there would only
20   be a settlement on any open items, we thought that you
21   would have decided an interest rate or not, $2.9 million
22   or $3 million.  If you have the ability, and apparently
23   you do because you're a judge, to go say, well, despite
24   all this I'm going to do it a whole different way and go
25   back and consider this new idea of Mr. Brown's, then he

1    had at least an obligation to not mislead you with his
2    6 percent notion and provide you what is required by law a
3    full disclosure document so that you can make such
4    judgment, or I would have liked an opportunity to have

Page 20

31OCT07 Brandt.txt
5    also evaluated it as well. The fact that beyond that --
6    he didn't do that and beyond that, it came to light that
7    there actually was additional information that did affect
8    the stock price that was hidden from us, et cetera, et
9    cetera. And now releasing Mr. Holley from his obligation
10   there even further would be the --
11              (Voice cuts out)
12              MR. BRANDT:  -- lack of something as I said,
13   that's unrelated to the settlement on March 8, that's
14   another activity that doesn't seem fair that I should have
15   to release Mr. Holley for acting outside of, what I
16   believe is acting outside of his obligation.
17              In summary, in the notion of the question you
18   asked, okay, this seems like a reasonable settlement, I
19   actually believe it would be reasonable to do one of two
20   things. Either continue the consistent pattern of
21   settlement, the disputed items and bind us to it, which is
22   $2.9 million or $3 million, interest or not, or if you say
23   no, I'm going to go completely around that, require the
24   defendants to provide a full disclosure document and
25   evaluate it whether you think that's in fact a more

26

1    reasonable alternative and somehow somebody tell me I am
2    not breaking the law by being a party to this because the
3    law says very clearly to me I am not allowed to buy this
4    stock for resale and that is the only reason --
5              (Voice cuts out)
6              MR. BRANDT:  -- investor in this company and not
7    planning to do it. So somebody has to tell me I can do
8    this and somebody's got to tell me I think that it will
9    hold up because it says blatantly on the stock that he
10   can't do this. It cannot be sold it says blatantly on it
                              Page 21

310CT07 Brandt.txt

11    so why can we ignore that? I think there needs to be
12    somebody that keeps me from getting in trouble if I'm
13    forced to participate in a stock resale of restricted
14    stock, even though that was not any of the dispute items.

15          So those are the two I sort of see and why I do
16    have concerns with what you're suggesting, is I release
17    them and I am party to a settlement that involves stock
18    I'm not, I'm told I'm not allowed to take, I'm told they
19    are not allowed to sell and I'm told that further there's
20    a control person, he's not allowed to do it without an
21    actual disclosure document, and I'm told further he's not
22    allowed to act on insider information.

23          So that seems what everybody is focusing on,
24    seems to me like, wow, a major problem. If in fact we
25    could just settle the two issues that both parties

27

1    proposed, both parties agreed with, except for interest
2    rate and amount, I think we'd all be done.

3          THE COURT: Okay. Well, the problem,
4    Mr. Brandt, is you're trying to dig over old ground.
5    Obviously you and I disagree about the way this binding
6    mediation was set up and the way it was resolved. The
7    ruling that I issued in July 19, reflected in my view the
8    closest approximation of the terms that the parties had
9    agreed to in settling this case and $2.9 million versus
10   3 million was not the issue. The issue was how much in
11   cash, how to value the stock, et cetera, which are the
12   issues that I tried to resolve. It doesn't do any good to
13   go back and start over. It seems to me that we need to in
14   effect continue the binding mediation. There are
15   obviously disputes that have arisen here and I've got to

Page 22

310CT07 Brandt.txt
16    resolve them, so it would be helpful to me to hear what if
17    anything you think is wrong with the proposal that I set
18    forth today.

19         MR. BRANDT: You've been misled in your notion
20    of the fairness of that value so dramatically that it goes
21    against the intention of all the parties on March 8.  It
22    is just not wrong, it isn't even close.  It is a joke.
23    They have misled you and they should have provided you --
24    if that's what you're going to do, we're going to do
25    restricted stock, they should have provided you with the

28

1     information so you could make the judgment you're making.
2     They didn't.  I would have liked an opportunity to provide
3     you with information as well.  I've tried to do that to
4     show you that it is way off and there is not a $3 million
5     settlement coming out of this deal the way they -- they
6     put a one sentence notion in their proposal of this
7     6 percent, and it's now gospel but it isn't even close to
8     the truth.  So it is fundamentally taking the value down
9     dramatically.

10        And, secondly, the only other thing point I'll
11    say what's wrong with it is everybody did agree on
12    March 8.  March 8 is not irrelevant.  That is when we all
13    dismissed the case and went to this other process,
14    everybody agreed and understood that the notion of paying
15    Brandt in stock that he couldn't sell and putting him at
16    risk to its value, and that's in the transcript by Mr.
17    Dunham and everybody understood it, was not on the table.
18    Was not an option.  I never agreed to it, everybody knew I
19    never agreed to it.  That's what his proposal that he made
20    to you was and, god, I'm being forced into something I
21    absolutely stated was not acceptable and everybody
                          Page 23

31OCT07 Brandt.txt

22    understood, and in the March 8 settlement didn't presume

23    that and yet here it is.  On top of which now I've got a

24    legal question if even I can do it.

25              So I understand that you don't want to rehash                    29

1     all that and you don't want to go back to what would be,

2     it seems to me, a very simple absolutely no more lawsuit,

3     complete release solutions, if you choose one way or the

4     other, if you don't want to do it, I understand.  The

5     problem is the information you are working on is

6     misleading to you and you don't have an ability to judge

7     it because they didn't disclose anything else to you but

8     that 6 percent, and they were at least obligated to by

9     law.

10             MR. BROWN:  Your Honor, Paul Brown.  May I be

11    heard?

12             THE COURT:  Sure.

13             MR. BROWN:  Needless to say I don't really

14    appreciate as a professional being told by Mr. Brandt

15    after all that's happened that we have misled the court.

16    And we have in every step along the way discussed not with

17    Mr. Brandt, with whom we ethically could not discuss this

18    with, but with his attorney, not only the nature of the

19    restrictions but Mr. Dunham's partner, who is a security

20    lawyer who is speaking to a securities lawyer in his firm

21    and he well understood that a legend on a share of

22    restricted stock is not only common, it's required by the

23    SEC as Mr. Brandt must well know, otherwise I don't see

24    how he could have gotten his MBA.

25             Secondly, and leaving aside the fact that the                     30

31OCT07_Brandt.txt
1    settlement was for whatever it was, 600,000 in cash, two
2    million four in restricted stock, Mr. Brandt heard that.
3    I discussed it the night before with Mr. Dunham, it was
4    agreed with Your Honor, it was discussed the next day on
5    the record.  That's exactly the only settlement that took
6    place.  Had it been for cash it would have been a lesser
7    amount and that's why we were able to make that amount.
8    The people did not want to pay $3 million in cash.

9         The next point is with respect to Your Honor's
10   ruling today, I have less problem with the interest
11   payment than I do frankly with Your Honor going back to
12   change your ruling of July 19th, which states that it is
13   based upon the five trading days immediately prior to
14   today on July 19.  And I again point out that we were
15   prepared within days to follow through on that agreement
16   and the problem why it never happened was Mr. Brandt.  And
17   then later on Mr. Brandt in fact said he didn't agree with
18   the entire ruling, he did not want the stock, he didn't
19   want $600,000.  He wanted $3 million and threw the whole
20   thing up in the air and forced Mr. Dunham to write a
21   letter to Your Honor asking for an extension so he could
22   find another lawyer, and Your Honor ruled on that saying
23   the settlement of July 19 stands, it's not going to
24   change.  And now Your Honor is purporting to change a part
25   of it which, I may be repeating myself and I apologize for

□

                                                              31

1    that, which I find is very unfair.

2         The delay here has not been us.  We're being
3    forced to bear the risk of Mr. Brandt's own problems with
4    the settlement which he has never, you know, apparently
5    privately accepted or which he's had problems with.  He's
6    trying to rewrite the entire settlement, be a revisionist,
                              Page 25

31OCT07 Brandt.txt

7    and we shouldn't have to pay for it.

8              THE COURT:  Anybody else want to be heard

9    further?

10             MR. ROBERTS:  No, Your Honor.

11             MR. BRANDT:  Just a legal question.  Does

12   anybody protect me if I'm party to this conclusion that

13   brings stock instead of cash?  How I do get protected from

14   operating illegally?

15             THE COURT:  Mr. Brandt, you're not buying the

16   stock so you're not reselling it.  It's my understanding.

17   You ought to seek legal advice but --

18             MR. BRANDT:  I've been told otherwise.

19             THE COURT:  Well, okay.

20             MR. BRANDT:  That's why I asked the question.

21             THE COURT:  Hire a lawyer.

22             MR. BRANDT:  I understand.

23             MR. BRANDT:  That was my only question, how I'm

24   protected to enter this transaction.

25             THE COURT:  All right.  This is in effect what

                                                              32

1    I'm going to order, and this will be as a practical matter

2    a continuation of my authority under the settlement

3    agreement to resolve disputes concerning the settlement.

4              The defendant shall immediately pay Mr. Brandt

5    $600,000 plus 6 percent interest from July 20th.  That

6    money can be paid to an escrow agent and they shall pay

7    2.4 million in restricted HDI stock, also to an escrow

8    agent immediately.  The number of shares of stock to be

9    transferred shall be calculated using a value of

10   94 percent of the average of the closing price on the

11   original date set in my July 19th order and the closing

31OCT07 Brandt.txt

12    price yesterday. That splits the risk. Both sides here

13    have been in violation of the ruling and both of them

14    should share the risk of the change in the stock price.

15            The plaintiff shall be accorded piggyback rights

16    to sell the HDI shares under any registration statement

17    filed by HDI within 12 months from today.

18            The appeal of the ruling granting summary

19    judgment in favor of the Salem estate shall be voluntarily

20    dismissed immediately.

21            Parties shall immediately exchange mutual

22    releases which they will hold in escrow until everyone is

23    satisfied that all the obligations under this ruling have

24    been met, at which time the settlement payment can be

25    released from escrow and provided directly to Mr. Brandt

33

1    and the releases become effective.

2            Parties are free to enter into a formal

3    settlement agreement if they wish but the terms of the

4    payment and release obligations will not be delayed or

5    otherwise affected should they choose to do so.

6            MR. ROBERTS: Your Honor, I may have said this,

7    Richard Roberts, and I apologize, if I did so. You say

8    the release is to be dated --

9            THE COURT: As of today.

10            MR. ROBERTS: Okay. Thank you, Your Honor.

11            MR. BROWN: Your Honor, Paul Brown. Question:

12    If we're in this, we brought -- we asked this proceeding

13    to be brought and compel Mr. Brandt to enter into a

14    settlement. If he still has reservations and refuses to

15    perform the terms of, what rights, what rights do we have?

16    And if he causes our clients to incur legal fees, we'd

17    like him to pay them. We want this over with.

Page 27

31OCT07 Brandt.txt

18         THE COURT:  I'm sure he does too.

19         MR. BROWN:  Well, that may be, Judge, but he

20    probably doesn't accept this ruling and we will, I

21    believe, accept it fully, and if he doesn't and we're

22    caused to incur legal fees, may we apply to Your Honor to

23    recover those?

24         THE COURT:  I'm not going to decide that today.

25    I mean anybody can make whatever motions they want to

                                                              34

1     make.  What I'm deciding are the terms of the settlement.

2     Presumably Mr. Brandt would like to get paid.  If he wants

3     to get paid, he's got to sign a release, releases, and get

4     them delivered to the appropriate parties.  If he doesn't

5     want to get paid, then he won't and the money will just

6     sit in escrow.

7          MR. BROWN:  How about if he challenges Your

8     Honor's ruling by making application or an appeal and we

9     have to incur legal fees to oppose it?  This would be the

10    third time.

11         THE COURT:  Well, you know, if he does that --

12    let's not make any decisions today about what's going to

13    happen in the future.  If he does that and you want to

14    seek fees claiming it's a frivolous motion, then you're

15    free to file whatever motions you want to file.

16         MR. BROWN:  Your Honor, did I understand you to

17    say the calculation would be between the average closing

18    price between July 19 and -- August -- October 31?

19         THE COURT:  The average closing price originally

20    set in the July 19th ruling, which was five trading days

21    prior to July 19.  I'm not sure what day that would be,

22    quite frankly.  July -- 13th, 14th, whatever.

                            Page 28

31OCT07_Brandt.txt
23          MR. BROWN:  Yes, sir.

24          THE COURT:  And yesterday.

25          MR. BROWN:  October 30th.

35

1          THE COURT:  Right.

2          MR. BROWN:  It's the entire period of time,

3    right, Your Honor?  Some 50 --

4          THE CLERK:  Sixty days.

5          MR. ROBERTS:  Oh, you're saying we take those

6    two prices and average them, right?

7          THE COURT:  Take those two and average them.  In

8    other words, the difference between what would have

9    happened if the stock had been paid over immediately and

10   Mr. Brandt would have had the risk of loss is being

11   shared.  Both sides failed to comply with the order, both

12   sides are going to share in the risk that came to pass

13   that the stock price would change.

14          MR. BRANDT:  I have no stock to sell.  I

15   couldn't theoretically hedge it, find a way to sell it, if

16   my interpretation of the law is wrong, no matter what, I

17   have no ability to do that but I'm still exposed to

18   suffering the fact that an undisclosed liability, an

19   undisclosed event got disclosed and the stock went down,

20   so I have no -- that's sort of the net effect.

21          THE COURT:  The net effect is the parties share

22   the risk of the change in the stock price because neither

23   side complied with the order of July 19th, 2007.

24          MR. BRANDT:  I thought I was complying.  This is

25   a different point, Your Honor.  Len Brandt.  The way this

36

1    works is that this conclusion that you have just found,

2    which I'm sure we'll see in writing somewhere, actually
                              Page 29

31OCT07 Brandt.txt

3    supersedes or overtakes any previous agreements that we
4    had all reached, including the March 8th one, is that the
5    way this works?

6                THE COURT:  I don't understand the question.

7                MR. BRANDT:  Well, March 8th we reached an
8    agreement of something.  Does what you just stated, if
9    that was in contrast to something on the March 8 agreement
10   that we all thought we had, does what you just state make
11   March 8 irrelevant now?  And that's the only thing that is
12   relevant, is what you just stated, and any previous
13   agreements entered into and agreed to by the parties,
14   including the settlement on that date, if it's different
15   in any way, shape or form, is irrelevant now; is that what
16   I'm being told?

17               THE COURT:  Well, for example, on March 8th the
18   agreement was that you would receive at least $150,000 in
19   cash; instead you're going to receive $600,000 in cash.
20   So yes --

21               MR. BRANDT:  That's not, those points don't
22   differ because we did on March 8 say at least 150, but on
23   March 8th we agreed that my release of the pending appeal
24   and other matters would be in exchange, is in exchange for
25   total payment of a certain amount.  So now that amount is

0                                                                    37

1    clearly much less by any calculation in the world.  The
2    compromise motion you have just done places a value of
3    about 2.4 million or something, so now even though I
4    agreed that it's 3 million as a release, you are forcing
5    me and superseding that previous agreement, throwing that
6    one away and saying here's a new one and this is the only
7    one that matters; is that what I should understand?

                              Page 30

310CT07 Brandt.txt
8        THE COURT:  You should understand if you want to
9   receive the payment of the settlement proceeds which I've
10  just outlined, you need to comply with your obligations
11  under the agreement which include dismissing the appeal
12  and providing releases to all the other parties.
13        MR. ROBERTS:  Your Honor, in the interest of
14  full disclosure I'm not sure when I wrote to you the only
15  time about the pendency of the argument of the appeal, the
16  court did in fact continue without any specific
17  rescheduled date the appeal.  That was going to be argued
18  Friday November 2nd.  I don't know if Your Honor knew that
19  but I at least wanted to let you know that that was
20  contingent.  As of the time I wrote to you, it had not
21  been contingent but soon thereafter it was.
22        MR. BRANDT:  I gather there's nothing more that
23  can be said to affect this and we are basically done, is
24  that what I understand?
25        THE COURT:  Well, Mr. Brandt, I want to make

38

1  sure you understand whatever you need to understand to
2  comply with your obligations.
3        MR. BRANDT:  Well, I'm sure that there will be a
4  transcript that I can read and if I need somebody to help
5  me with, I can get that.  So, I think I understand what
6  you said and I can even repeat it.  How it dovetails with
7  our previous agreement does confuse me but, you know, I'm
8  not an attorney and I don't understand it.  I've been told
9  this is now a private matter and I hadn't understood
10  exactly that or what it means.  So there are obviously
11  things that -- I know you're not my counselor, you're not
12  my attorney so I don't expect you to be be counseling me,
13  but there is a great deal I don't understand right at the
Page 31

310CT07 Brandt.txt

14      moment.

15              THE COURT: All right. well, do you understand

16      how to dismiss the appeal?

17              MR. BRANDT: I understand that there are people

18      I know that can tell me how do that. I actually don't

19      know how to do it but I'm sure I can figure it out.

20              THE COURT: I might suggest Mr. Roberts send you

21      a draft pleading that would permit you to sign it, if you

22      like it, and send it into the Court of Appeals and maybe

23      he can even give you the address to send it to.

24              MR. ROBERTS: I'm happy to do that, Your Honor.

25              THE COURT: All right, and I suggest --

                                                                        39

1               MR. ROBERTS: In fact, I thought we -- well, I

2       know we've e-mailed Mr. Brandt but I don't know if we ever

3       sent you the -- but I'm happy to do that.

4               THE COURT: And I might suggest that the parties

5       circulate mutual releases, identical mutual releases so

6       that everybody's signing the same thing.

7               MR. ROBERTS: We'll take care of that. Paul or

8       I will take care of that, Your Honor.

9               THE COURT: All right. And are you going to

10      have any trouble finding a private escrow agent to pay

11      this money to? And stock to?

12              MR. ROBERTS: We've had trouble doing everything

13      else so far, Your Honor.

14              THE COURT: But you're going to accomplish that,

15      right?

16              MR. ROBERTS: I think we should be able to

17      handle that.

18              THE COURT: Okay.

31OCT07 Brandt.txt

19          MR. ROBERTS: How about Wiggin & Dana? They are

20  not in the case anymore. Sorry -- forget that remark.

21          THE COURT: All right. Anything else we should

22  talk about today?

23          MR. ROBERTS: No, Your Honor.

24          THE COURT: All right, thank you all.

25          MR. BRANDT: Thank you, Your Honor.

                                                        40

1          MR. ROBERTS: Thank you.

2          (Whereupon the above matter was adjourned at 3:00

3  o'clock, p. m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Page 33

31OCT07 Brandt.txt

25                                                                          41

C E R T I F I C A T E


        I, Susan E. Catucci, RMR, Official Court

Reporter for the United States District Court for the

District of Connecticut, do hereby certify that the

foregoing pages are a true and accurate transcription of

my shorthand notes taken in the aforementioned matter to

the best of my skill and ability.




                    _____

                    Susan E. Catucci, RMR
                    Official Court Reporter
                    915 Lafayette Boulevard
                Bridgeport, Connecticut  06604
                      Tel: (917) 703-0761