# EXHIBIT C

06DEC07 Brandt transcript.txt

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - x

LEONARD BRANDT                    :  No. 3:01CV-1889 (SRU)
                                  :  915 Lafayette Boulevard
            vs.                   :  Bridgeport, Connecticut
                                  :
                                  :  December 6, 2007
MIT DEVELOPMENT CORP., ET AL      :

- - - - - - - - - - - - - - - - x

TELEPHONE CONFERENCE

B E F O R E:

        THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.

A P P E A R A N C E S:

        FOR THE PLAINTIFF:

            LEONARD BRANDT, PRO SE

        FOR THE DEFENDANTS:

            SATTERLEE, STEPHENS, BURKE & BURKE
                230 Park Avenue
                New York, N. Y.  10169
            BY:  PAUL M. BROWN, ESQ.
                AARON M. ZEISLER, ESQ.

            NUZZO & ROBERTS, L.L.C.
                One Town Center
                P.O. Box 747
                Cheshire, Connecticut 06410
            BY:  RICHARD A. ROBERTS, ESQ.

                Susan E. Catucci, RMR
                Official Court Reporter
                915 Lafayette Boulevard
             Bridgeport, Connecticut  06604
                 Tel: (917)703-0761

2

1                    (12:05 O'CLOCK, P. M.)

2               THE COURT:  Stefan Underhill.

3               MR. BROWN:  Paul Brown and Aaron Zeisler here,

4       Your Honor.

06DEC07 Brandt transcript.txt

5          MR. ROBERTS:  Richard Roberts, Your Honor.  Good
6     afternoon.

7          MR. BRANDT:  And Leonard Brandt.

8          THE COURT:  All right, thank you.  We're on the
9     record so if each of you would identify yourselves when
10    you speak, that would be helpful.

11         MR. BROWN:  Well, Judge, Paul Brown.  We asked
12    for this conference in order to get this settlement once
13    and for all concluded.  All the money, which is 600,000
14    plus interest, 10- or 11-, 12,000, whatever the number is,
15    is in escrow, plus the requisite number of shares, 249-odd
16    thousand shares.  The appeal has been finally dismissed
17    and the iron we have in the fire here and the major
18    dispute we have, although Mr. Brandt has a little quibble
19    over the precise number of shares but we think we're
20    right, but the basic dispute is he doesn't want to furnish
21    the release that Your Honor ordered which is to have
22    everybody sign mutual releases through October 31.
23    Instead he gave us a release I think dated as of -- for
24    events through March 8th or something like that and, you
25    know, obviously wants to and has threatened to sue us and

3

1     the other defendant for some 10b-5 violation on the
2     shares.

3          We went through all that before and that's why
4     Your Honor asked that the shares be dated October 30.
5     Other than that, if he would do that, everything's ready
6     to go.  If they'll give us the proper release and submit
7     to the escrow agent, we're done.  And if he won't, I ask
8     Your Honor to compel him to do so.

9          THE COURT:  All right.  Mr. Brandt?

Page 2

06DEC07 Brandt transcript.txt
10      MR. BRANDT:  Yes, Your Honor.

11      THE COURT:  Do you want to respond?

12      MR. BRANDT:  I think that Paul Brown is accurate
13 in stating that I did everything that he said I did.  I
14 sent all the information that you requested of me in order
15 to do this.  I did send a release I think generally as he
16 described associated with the dismissal, the same release
17 that he would have received or his clients would have
18 received had they in fact complied on -- complied with you
19 originally.  And, you know, the extension of time and the
20 delay of time isn't something that I believe I need to
21 release him for, that he should get a broader release than
22 he otherwise would have received.

23      And I do believe that -- I don't know if anybody
24 received a copy of the letter that arrived this morning
25 via fax but I do believe it lays out, you know, my views

                                                        4

1 that on some day that I actually receive the stock and
2 cash, which is yet to occur immediately as instructed or
3 otherwise, that by the calculation that you chose I lost,
4 it should equate the value that the settlement was for.
5 And those are sort of my two points of view.  I don't
6 think it's anything new versus what I said in my letter to
7 Mr. Zeisler and copied everybody on.

8      THE COURT:  Yes, I received and read your
9 letter.  I think there's some misunderstandings on your
10 part in that letter and the first of which is that I did
11 order as part of the continuing settlement process that
12 the parties exchange mutual releases as of the end of
13 October, and I think what you're overlooking is that that
14 resulted in, as I understand it, a benefit to you in the
15 form of more stock than you would have received had you
                            Page 3

06DEC07 Brandt transcript.txt

16    only gotten the amount as of the prior date, and that was
17    why, since you were getting the benefit of the change in
18    stock price that was, that resulted from the delay, that
19    it only made sense that the parties would exchange
20    releases as of the date that the stock was being valued.
21                 MR. BRANDT:  I'm sorry -- am I interrupting?
22                 THE COURT:  No, go ahead.
23                 MR. BRANDT:  You know, I believe that the
24    settlement didn't specify a number of shares, but on the
25    date that I was to receive the shares that they would

                                                                    5

1    equal $2.4 million based on a formula that you elected
2    and, you know, we didn't settle for 100,000 shares or
3    300,000 shares, so --

4                 THE COURT:  Right, but the problem is had I held
5    everybody to the prior ruling, you would have received
6    fewer shares of stock. They would have been valued by the
7    process that was set up but you would have received fewer
8    shares. As a result of my last ruling you therefore
9    received more shares as well as interest, et cetera. So
10    the point is simply it's not fair to give a release
11    through the first date and receive the benefit of the
12    delay. You want to go, if you want to go back and receive
13    less money, that is less stock, then and give a release
14    through that date and have the option of bringing a
15    lawsuit for perceived problems, we can talk about that.
16                 MR. BRANDT:  Okay. Well, I guess -- you bring
17    up the notion of fairness so please let me respond to
18    that. I believe the presentation of the option that you
19    elected, you know, the presentation by Paul Brown of the
20    option that you elected was based on the notion that I

                                Page 4

06DEC07 Brandt transcript.txt

21    should be able to basically immediately sell that stock
22    and that there was a discounting applied of 6 percent to
23    reflect a discount that I would likely have to take.  And
24    it certainly would be my intention, as I think everybody
25    knows, not to hold this stock for investment.  It is

6

1    implausible for my family.  So whenever I receive the
2    stock, presumably would sell it, and it really doesn't
3    matter what the share price is that day and whether
4    there's more shares or less shares.  In theory I was to
5    receive and be able to get $2.4 million by the formula, by
6    the argument they made.  So the fact it's more shares
7    today or less shares today doesn't create any value for me
8    by the fact that it isn't the appropriate number of shares
9    on the date that I receive it if it loses value for me.
10   And the share price isn't the determinant solely as in
11   share price and the number of shares less 6 percent
12   discount.  I should be able to sell immediately or at
13   least hedge if I can't sell it.  My family has taken that
14   loss for the delay.

15            And I don't want to, and I don't want to get
16   into the argument of who the fault is.  Everybody knows I
17   don't think it is mine.  I think the order was immediate
18   and had the order been done immediately, those shares and
19   that exposure would not be suffered by my family.  So it
20   isn't fair at all that I am now taking a loss that was not
21   contemplated in the settlement or the order.

22            THE COURT:  All right, well, I think you
23   misperceive things.  You can't have it both ways.  Would
24   you prefer to go back to the earlier calculation and
25   receive fewer shares of stock and have the ability to sue

7

Page 5

06DEC07 Brandt transcript.txt

1    whoever you want to sue from the period that this
2    settlement has been up in the air, or would you prefer to
3    get the full value that has been paid into escrow and give
4    a release as of that date?  Those are the choices.  You
5    can't have it both ways.  You can't give a release as of
6    the earlier date and get more shares of stock.  So either
7    you bear the risk on the stock having gone down over the
8    time and you give a release from an earlier date, or the
9    defendants bear the risk that the stock actually went down
10   and they are going to have to pay you, as they have, more
11   shares of stock to that 2400 -- excuse me, $2,400,000
12   figure.  But in that event, you need to give them a
13   release through the date that the stock has now been
14   valued.

15             MR. BRANDT:  Understood.  And in the choices
16   that you outline of full value and full release to that
17   date versus lower value and earlier release only, I would
18   choose the latter -- I would, pardon me, I would choose
19   the full value.  In fact, I would have no case, there
20   would be no complaint if there's 2.4 million valued by the
21   process that you selected and as you initially had
22   suggested at the outline of the last call, then I would
23   choose that and provide the full release and be done.

24             THE COURT:  All right.  Well, Mr. Brown, what is
25   the escrow arrangement?  When was, when were the shares

8

1    paid in and so forth and to -- who was acting as escrow
2    agent?

3             MR. BROWN:  There's a firm called Cosen &
4    O'Connor (ph), Your Honor.  It's a Philadelphia law firm,
5    a big firm.  They have the cash and they have the shares,

Page 6

06DEC07 Brandt transcript.txt
6      all of the shares and all of the cash, and it's ready to

7      -- it's been ready to go. And Mr. Brandt, you know,

8      accuses us of being late but if he hadn't had a dispute

9      with his lawyers, this thing would have been over with

10     months ago.

11              THE COURT:  Let's all get beyond pointing

12     fingers.  Let's just get this accomplished.

13              As I understand it, what remains to be done,

14     Mr. Brandt, you have to get a release through the

15     appropriate date -- I don't have the exact date in front

16     of me but through the appropriate date.

17              MR. BROWN:  I think it's October 31, Your Honor.

18              THE COURT:  That's fine.  So, Mr. Brandt, when

19     you get a release through October 31 to the defendants,

20     Mr. Brown, you'll immediately contact Cosen & O'Connor and

21     tell them the conditions of the escrow have been

22     satisfied?

23              MR. BROWN:  Yes, sir.  And they are aware that

24     they have to receive those releases and upon receipt of

25     those releases they will, in accordance with Your Honor's                    9

1      instruction, release the cash and the shares to

2      Mr. Brandt.

3              THE COURT:  So you're asking that the releases

4      be sent to Cosen & O'Connor, not to yourself?

5              MR. ZEISLER:  Doesn't matter.

6              MR. BROWN:  If he wants to send them to us,

7      we'll transfer them to the escrow agent.

8              MR. BRANDT:  If I might interrupt for a second,

9      Your Honor, just to be clear, the number of shares that

10     they have placed in, as I understand it by their letter,

11     into the escrow agent, whenever they placed them and I
                              Page 7

06DEC07 Brandt transcript.txt

12    didn't hear that, it does not by that formula calculate
13    $2.4 million, and I would be willing to give the full
14    release if it did but it doesn't; their calculation
15    doesn't equal that and it should. I'm happy to give the
16    release and I believe to be consistent the release should
17    be on the date, up to the date that I actually receive,
18    until I actually receive the shares and the calculation of
19    the value the day that that, that I receive it, it should
20    equal $2.4 million by the, by the formula that you
21    describe. I'm not -- you know, getting a release of, a
22    full release when it's something less than $2.4 million.
23    That is not what I understood you to be asking me and I
24    wouldn't do that.

25            MR. BROWN: Your Honor, it seems to me that

                                                                    10

1    Mr. Brandt is relitigating this thing all over again. The
2    shares were determined in accordance with the formula set
3    up in Your Honor's order, precisely, and a 6 percent added
4    to them as of closing dates and average date -- whatever
5    the formula was, the cash was put in there. We sent him a
6    release, copy of which Your Honor has. That's the release
7    we want signed. We don't want him to sign his own
8    truncated version of release and turn around and start
9    suing us. If he's going to be getting this consideration,
10   we don't want to pay somebody $2 million and then get sued
11   for it, and this release is fair. It was --

12           THE COURT: Well, Mr. Brown, I don't hear him
13   complaining about the language.

14           MR. BROWN: He did, he changed the release
15   dramatically when they sent us a release. That's the
16   problem.

Page 8

06DEC07 Brandt transcript.txt
17          MR. BRANDT:   The point -- I'm sorry.

18          THE COURT:   My understanding of what Mr. Brandt

19    said just a moment ago is he's prepared to sign the

20    correct release through October 31st.  Is that right,

21    Mr. Brandt?

22          MR. BRANDT:   Well, actually through the date

23    that I actually receive the stock, whenever it shows up.

24          THE COURT:   Well, the stock has been placed in

25    escrow, so --

                                                              11

1           MR. BRANDT:   I believe, Your Honor, that I was

2     to receive $3 million of value as described by yourself as

3     initially immediately and that when that value shows up I

4     should release these people and --

5           THE COURT:   Mr. Brandt.

6           MR. BRANDT:   -- and until that point, if the

7     stock goes down to 12 cents, that isn't what was

8     stipulated or suggested and isn't going to deliver me the

9     $3 million of value.  So when it shows up, it should be

10    the date when you ordered the immediate release -- the

11    immediate payment, it was the date that it would be paid,

12    would be identical to the value that was being

13    transferred.  I still believe that that is the appropriate

14    thing and I would absolutely release everybody.  There

15    would be no other issue if they did it on that date, they

16    did it on the date that you suggested.  And if they do it

17    tomorrow or they do it a week from tomorrow, whenever they

18    do it, if it's appropriate to the value that we all

19    settled for based on the calculation that I lost on, and I

20    accept that, then I will deliver the full release that

21    they want.  But if it's not $2.4 million of stock and

22    $600,000 of value in cash, I won't do that.  It's not

                          Page 9

06DEC07 Brandt transcript.txt

23    fair.  I don't know what anybody else's definition of fair

24    is but I settled for $3 million based on a formula that

25    you guys won on.  Just do it.                                    12

1          THE COURT:  Mr. Brandt, what is -- I don't

2     understand your concern about the value that has been

3     placed in escrow so why don't we start there.  The

4     $600,000 --

5          MR. BRANDT:  The value, the formula that you

6     selected --

7          THE COURT:  Sir, sir, let me ask my question.

8     Just slow down.  I understand $600,000 cash, plus

9     6 percent interest calculated from July 20, 2007 through

10    the date of payment has been paid to the escrow agent.

11    Mr. Brown, is that correct?

12         MR. BROWN:  Yes, the precise amount that was

13    sent to escrow is $610,849.32.

14         THE COURT:  Okay.  Mr. Brandt, do you have a

15    problem with that calculation?

16         MR. BRANDT:  Offhand I don't think I do.  I

17    actually don't have the number in front of me that I

18    calculated but Mr. Zeisler said on the phone he thinks

19    we're very close to one another on our calculations and

20    I'll accept that being the case.

21         THE COURT:  Okay.  Now, the number of shares of

22    HDI stock that have been placed in escrow, was that equal

23    to $2,400,000 in market value using a value of 94 percent

24    of the average of that stock's valuation price set forth

25    in the July 19 ruling and the closing price on October 30,    13

1     2007?

06DEC07 Brandt transcript.txt
2           MR. BROWN:  Paul Brown, Your Honor.  It is and

3     the amount of shares 249,579.

4           THE COURT:  All right.  Mr. Brandt, do you have

5     a problem with that calculation?

6           MR. BRANDT:  That particular calculation as I

7     outlined to everybody in a letter was 99 shares low, I

8     believe, but was -- those shares were never transferred to

9     me.  So I understand the calculation, being only 99 shares

10    different, on the date that I receive, whenever I receive

11    it, however, it is unlikely that that will be worth $2.4

12    million or 6 percent greater than $2.4 million.

13          THE COURT:  Mr. Brandt, this is the problem.

14    Use of an escrow agent to transfer the property that each

15    side is getting and one side releases on the other side

16    cash and stock is how this is going to get done.  This is

17    how, this is how matters are settled everyday.  So you

18    have the value.  It's being held in escrow for you.  It's

19    as if it was paid to your lawyer.  Mr. Brown, what day was

20    all this done?

21          MR. BROWN:  It was done on various days.  I

22    think the first thing that was put in was the cash.  The

23    next thing that was put in -- I can't give you the precise

24    date, Your Honor -- were shares but, however, from

25    Mr. Holley, there was a tie-up in getting the shares from

                                                              14

1     the estate because we had trouble getting some information

2     from Mr. Brandt.  The transfer agent wanted his --

3           MR. ZEISLER:  Social security number which he

4     wouldn't give us.

5           MR. BROWN:  -- tax ID number which he refused to

6     give and we had to go through some hoops to get this done.

7     Everything is in there.

                         Page 11

06DEC07 Brandt transcript.txt

8          THE COURT:  Approximately when was the first

9     stock transfer done?

10         MR. BROWN:  Three weeks ago?

11         THE COURT:  All right.

12         MR. ZEISLER:  Probably three weeks.  This is

13    Aaron Zeisler.  Probably three weeks or so.

14         MR. BROWN:  I don't have the precise date, Your

15    Honor.  The most recent shares were recently and the cash

16    was maybe a month ago.

17         THE COURT:  All right.  So, Mr. Brandt, that's

18    there for you.  It's in your control.  As soon as you

19    provide the required release, that money and that stock

20    will be sent to you.  But it's not in the defendant's

21    possession anymore.  It's in the, it's in your agent's

22    possession.  That's the way it works.  So you have been

23    paid as a practical matter.  It's out of the

24    defendants' -- they don't own it, they can't control it

25    anymore, it's out of their hands as of the date they

                                                                15

1     transferred to the escrow agent.

2          MR. BROWN:  The shares are in your name,

3     Mr. Brandt.

4          MR. BRANDT:  On that date that value was not

5     $2.4 million and the date hasn't, and it hasn't been

6     transferred to me as had been initially ordered to be

7     immediate.  But the nice thing about what you ordered,

8     Judge, is you ordered the calculation to occur in a way

9     that would allow very limited exposure to anybody on any

10    stock exchange value.  You ordered it immediate.  You

11    ordered five days before that to be the calculation, so

12    it's a very minimal approach and you ordered it twice as I

Page 12

06DEC07 Brandt transcript.txt
13    thought I understood it.  And had that happen that way, I
14    would have been able to both hedge that risk or be able to
15    sell it which would, of course, have been my intention.
16    It didn't happen that way at the same time and now with a
17    month and-a-half that has occurred differently, the value
18    has again changed significantly.  And while you might say
19    that, well, three weeks ago they put it in your possession
20    in escrow, because I didn't have it to sell, it couldn't
21    occur.

22              Whether the stock went up or down, I suppose I
23    don't really care so long as it equals $2.4 million based
24    on the formula.  It didn't then and it doesn't now.  And
25    so that is how deals are also done.  At least every deal I

16

1    have ever done are done with a closing date that is
2    established.  Everybody agrees to the formula.  The
3    transfer happens on that date predictably and we also all
4    have no argument about calculations.  And I would be happy
5    to do that now.
6              THE COURT:  Well, do you understand, sir, why
7    you don't have the cash and stock?  Do you understand what
8    the hold-up is?
9              MR. BRANDT:  Well, I think I do.
10             THE COURT:  Yes.
11             MR. BRANDT:  And I'm happy to articulate to see
12    if I'm right.
13             THE COURT:  I'll articulate and see if you
14    agree.  You haven't provided the release that I ordered be
15    provided immediately.  You still haven't done it.
16             MR. BRANDT:  That's only one of two reasons,
17    Your Honor.
18             THE COURT:  Well, you still haven't done it.
                                      Page 13

06DEC07 Brandt transcript.txt

19    You could have had this yesterday or the day before or the
20    day before or the day before.

21           MR. BRANDT:  No, actually had I done it on any
22    of those days, it would have been worth less than $2.4
23    million and I don't believe I ever settled for less than
24    $2.4 million in your calculation or any calculation.

25           THE COURT:  When you settled, you realized some

                                                                17

1     of this was stock.

2            MR. BRANDT:  Yes, absolutely.

3            THE COURT:  You realized that stock goes up and
4     stock goes down.

5            MR. BRANDT:  Absolutely.

6            THE COURT:  And I came up with a formula that
7     gave you in effect as of the date of the calculation more
8     than $2.4 million in stock because of the discount.  And
9     so if there's been a change in value of some small amount,
10    you're still covered.  You got more than $2.4 million.
11    Why you're not executing a release and getting your hands
12    on that stock is beyond me frankly.

13           MR. BRANDT:  Well, it's not true, Your Honor.
14    There's nothing more than $2.4 million.  In fact, there's
15    $600,000 of value that has gone away by not immediately
16    transferring it to me and you're asking me to be
17    responsible for that.

18           THE COURT:  No, I'm saying it was transferred to
19    you.

20           MR. BRANDT:  No, it was not.

21           THE COURT:  When it was sent to escrow, it was
22    transferred to you.  All you have to do to get that money
23    is complete your side of the deal.

                            Page 14

06DEC07 Brandt transcript.txt

24          MR. BRANDT:  Your Honor, those numbers, even on

25     the date it transferred, did not equal $2.4 million.  I

                                                                    18

1     could not go in the market, subtract 6 percent and walk

2     away with $2.4 million.

3          THE COURT:  Well, I don't understand why you say

4     that.

5          MR. BRANDT:  Because the formula that now is put

6     in July 30th, sort of the reward for their delay of this

7     thing, an average value from some value that is long gone

8     of $11 -- and I understand that you do not want to hear

9     from me any further about whose fault it is and what

10    inside information is available, I understand that, but

11    the fact of the matter is because it has changed to a

12    formula that took on old prices and waited that way, a

13    price on that day, five days before that date, it was no

14    longer $2.4 million.

15          MR. ROBERTS:  Your Honor, this is Rick Roberts.

16    This is kind of deja vu.  I mean we spoke on October 31st.

17    Our position was the delay was not our fault, that

18    Mr. Brandt delayed getting us documents, his lawyers were

19    not able to negotiate any agreement and Mr. -- our

20    position was that we should still be obligated to tender

21    the stock as of July 20th or July 29th.  Mr. Brandt's

22    position was, well, the stock's gone down, I want the

23    prices of October 30th.  Your Honor split the difference.

24    It was quite clearly laid out in the order.  We've

25    complied with that order.  I don't understand what

                                                                    19

1     Mr. Brandt's not understanding because, of course, it's

2     not worth the same amount because it's now an average of

3     October 30th and July 19th, which is clearly laid out.

                                Page 15

06DEC07 Brandt transcript.txt

4     we've now fully complied and he hasn't.  I don't know if
5     Mr. Brandt understands the reason it's gone down in theory
6     is because it's an average that Your Honor entered a
7     ruling as to based on the two arguments you heard last
8     time, but this is just the same rehashing of the same
9     argument.
10                    THE COURT:  Right, right.
11                    MR. BRANDT:  I guess, I think -- there's two
12    points to the value lost.  One point is that the stock has
13    continued to go down and I have not had the ability to
14    sell it, and until the date it shows up where I have the
15    ability to sell it, you know, that value could go up or
16    down and I think the calculation was $2.4 million of
17    value, not a fixed number of shares.
18                    THE COURT:  All right, let me just cut to the
19    chase.  Mr. Brandt, you've got really two choices.  You
20    can either go through with the settlement as I've ordered
21    you to or, you know, we can come back and we can reopen
22    the case.  We can pick a jury and we can find out what
23    they think this case is worth.  Because, to be completely
24    frank, this is an extremely generous settlement and you
25    would be, in my view, quite foolish if you don't close

20

1     this deal out and take the money and run.  But I'm happy
2     to reopen this thing, get another jury and get back and
3     try this case because, frankly, it would be simpler from
4     my point of view to try it than to be haggling month after
5     month after month in what seems to be just a circular
6     argument over and over and over again.  So, do you want to
7     come back, you want to come back and start again?
8                     MR. BRANDT:  I was going to say -- to understand

Page 16

06DEC07 Brandt transcript.txt

9      then, your point is I have a choice A or a choice B and

10     that you would maybe advise me, maybe is not the right

11     word, but your understanding is you think that I should

12     accept the value today that I could receive, which is

13     about $1.8 million worth of stock and $600,000 of cash

14     plus interest thereon, and that would be generous and I

15     would be foolish not to take the $2.4 million settlement

16     value that it is today and -- but if I am willing to be

17     that foolish, then so be it and I have a decision to make.

18               And I guess I would ask Your Honor for at least

19     a little bit of time -- I feel a little bit on the spot

20     here -- a little bit of time before I answer that

21     question, and it won't take very long but I do feel a

22     little bit on the spot and I would would at least like to

23     have a talk with myself, my family and maybe one

24     counselor.

25               THE COURT:  How much time are you looking for?

21

1                MR. BRANDT:  I'm sure that -- well, the

2      counselor presumably would be available the next three

3      days.  What's today -- you know, I would say early next

4      week would be fine.  I mean I don't know if he's in town

5      or out of town so I'd like to talk to him.  And it could

6      be the end of this week, Friday, or Monday or Tuesday.  I

7      have no reason to know that he's on vacation.  I don't

8      think -- even if he is, I think I'll get a reply.  So a

9      few days, a few business days?

10               THE COURT:  Well, look, you need to do one of

11     two things.  You either need to get an executed proper

12     release with a correct date and the correct language

13     either to the escrow agent or the defendants, and you can

14     talk to counsel about who it ought to be sent to.  Or

Page 17

06DEC07 Brandt transcript.txt

15  you've got to make a motion to reopen this case.  Those
16  are your two options.
17          MR. BRANDT:  Okay.  Is it okay that I could have
18  a few days to consider those two options?
19          THE COURT:  Sure.  If you want to do the former,
20  just get it done.  The sooner you get it done, the sooner
21  you get your money.
22          MR. BRANDT:  I understand that.  If I sent the
23  release that they've authored, that everybody would
24  understand that's my election and --
25          THE COURT:  Right.

                                                                22

1          MR. BRANDT:  -- I would take this $2.4 million
2  valued settlement or whatever it turns out to be when it
3  gets released.
4          THE COURT:  Right.  And if you want to try and
5  go back and have another jury trial, I'm not saying I'm
6  going to grant that motion, but if you want to file that
7  motion, you need to file it by a week from today.
8          MR. BROWN:  Your Honor, we would expect to
9  oppose that on the ground that this settlement is binding.
10          THE COURT:  I don't doubt -- you know, I don't
11  doubt that.  I'm just -- I want Mr. Brandt to understand
12  that, you know, there's a limit to how much we're going to
13  be running around and going around this merry-go-round
14  over and over and over.  And either we're going to put up
15  and shut up or we're going to go back and we're going to
16  start all over again.
17          MR. BRANDT:  Your Honor, presuming that I
18  couldn't accept the settlement for $2.4 million that I
19  thought I'd accepted for 3 million, I presume it would
                            Page 18

06DEC07 Brandt transcript.txt
20  take me a few days to get somebody to author the motion

21  that is, you know, legally allowed to do that in

22  Connecticut, so I would ask you only that I be allowed

23  some time to do that.

24          THE COURT:  Well, if you want to, if you want to

25  make a motion to go back and have a jury trial, send me a

23

1  letter.  You've done that several times.  Send me a letter

2  within a week from today.  Otherwise, if I don't get that

3  letter, I'm assuming everything is under control and

4  you're going to sign the release and this is going to go

5  away.

6          MR. BRANDT:  I understand.

7          THE COURT:  All right.

8          MR. BROWN:  Your Honor, may we just be heard on

9  one point please?

10          THE COURT:  Sure.

11          MR. ZEISLER:  Your Honor, this is Aaron Zeisler.

12  Just so we're crystal clear, the release, if Mr. Brandt

13  chooses to elect the release and to sign the release and

14  get the money instead, he is signing Exhibit A to my

15  letter to Your Honor of November 16th, 2007, being the

16  release that the defendants have signed of Mr. Brandt and

17  the release that we would expect Mr. Brandt would sign in

18  our favor, except that as per Your Honor's statements

19  today, it would be from, the release would be from the

20  beginning of the world to the date, instead of the date

21  the release is signed, the date of October 31st, 2007, and

22  that would be the release that he would be signing.

23          THE COURT:  Mr. Brandt, are you clear on what

24  release we're talking about?

25          MR. BRANDT:  I assume it's the one they've sent
                          Page 19

O

1  to me which I've been told would cover any other ills that
2  these parties have ever done to me, would insure them,
3  even if they don't have correct title and interest to the
4  stock or whatever dispute, I'm still at risk for it and
5  the whole thing like that.  Is that the correct
6  interpretation?  That seems a little odd to me but you
7  know I'm not a lawyer so --

8          MR. ZEISLER:  Your Honor, it's not a fair
9  characterization.  The release is a general mutual release
10  with mirror language.  The one thing that Mr. Brandt, or
11  Your Honor has suggested is it would be through
12  October 31st, 2007 and the one we had drafted had just
13  said to the day that the release was signed.  But
14  October 31st, 2007 is fine and it is a general release.
15  Your Honor has a copy of it.  It is the one that the
16  defendants have executed in his favor and are sitting in
17  escrow.

18          THE COURT:  Let's be clear where it should be
19  sent if it's going to be executed.

20          MR. ZEISLER:  Your Honor, I think if it's sent
21  to escrow, that is fine, and the escrow agent can release
22  the money.  If it is sent to us, Your Honor, to Paul Brown
23  or to myself, we will send it to the escrow agent.  That
24  doesn't matter as long as the release is in the proper
25  form, Exhibit A, with that one modification of

O                                                              25

1  October 31st, 2007, that's acceptable.

2          MR. BRANDT:  On the location, I will just say,
3  having never received anything on escrow instructions or
4  you know, a fax to send to an escrow agent, I don't even

Page 20

06DEC07 Brandt transcript.txt
5   know who these people are.  I have zero information.  I
6   would send it to Paul Brown, I believe, because I don't
7   have anything else.

8           MR. ZEISLER:  Your Honor, just for the record,
9   in my November 16th, 2007 letter to Your Honor, Exhibit A,
10  which Mr. Brandt received as well, there is my clear email
11  setting forth the escrow agent, Evan Kaplan (ph) at Cosen
12  & O'Connor, all the contact information.  Mr. Brandt
13  received that by email on November 8th.  He received it
14  again on November 16th when I copied Your Honor.  So he
15  has that information.  If he'd rather send to us, that's
16  fine.

17          MR. BROWN:  He can send it to us.  That's fine.
18          MR. BRANDT:  Is it reasonable for me to request
19  a copy of whatever the escrow agreement is that I'm being
20  partied to?  Is it reasonable to see what it says?  If
21  it's all going to go through an escrow agent, it's very
22  possible my counselor would like to at least read that.
23  It's also, you know, I mean I'd like to read it --
24          THE COURT:  Mr. Brandt --
25          MR. BRANDT:  -- if we're going to go through an

                                                                    26

1   escrow --

2           THE COURT:  Mr. Brandt, I don't know but I'd be
3   surprised if there's a written escrow agreement here.  The
4   lawyers serve as escrow agents all the time and I assume
5   the instructions are when you get the release from
6   Mr. Brandt in this form you can send him the cash and the
7   stock and it's probably in the form of oral communications
8   or perhaps a cover letter.

9           MR. BRANDT:  Okay, I'll take your explanation.
10  The only other request I have, Your Honor, is it would
                            Page 21

06DEC07 Brandt transcript.txt

11      really be valuable to me to get a transcript of this so
12      that there can be an accurate communication beyond what my
13      notes are to, you know, whoever I can get to help me
14      consider this.  So is it possible that I could get that
15      emailed ASAP?  You know, there's really a lot of time
16      pressure to make a decision, get some counsel.  I'd love
17      to send the accurate communication.
18              THE COURT:  You'll have to contact my court
19      reporter.  You know transcripts are not free and if you
20      wish to order one you can contact Susan Catucci.
21              MR. BRANDT:  Is she on the line right now?
22              THE COURT:  917-703-0761.  She is here now and
23      she'll be expecting your call.
24              MR. BRANDT:  I will call as soon as we hang up.
25      Ms. Catucci --

                                                                    27

1               THE COURT:  She'll need five minutes to get
2       downstairs but that's fine.  917-703-0761.  All right?
3               MR. BRANDT:  So the answer is it is, in fact,
4       the release as characterized in my question and that there
5       are no other options.  That's the release, like it or not.
6       And if it turns out these shares are not actually, you
7       know, correctly owned, I'm taking the liability for that,
8       if I understand that.
9               THE COURT:  Well, I haven't reviewed the release
10      in any detail.  It says whatever it says, and you and your
11      counsel will have to decide what you want to do.
12              MR. BRANDT:  Yes, obviously that's part of the
13      consideration.  Well, I have a copy of the release so --
14              MR. BROWN:  I must say that the shares have been
15      transferred through, you know, one of the major transfer

                                Page 22

06DEC07 Brandt transcript.txt

16  agents in the United States, and what they do is to check

17  the shareholdings of the transferors and deduct that and

18  then the shares are then transferred to the transferee,

19  and because these are contracting shareholders, they have

20  to file forms with the SEC saying that they've disposed of

21  these shares, so I don't think you should have any worry

22  about that, Mr. Brandt.

23           THE COURT:  All right.  Anything further?

24           MR. BROWN:  Not with me, Your Honor.  I

25  understand my instructions.

                                                          28

1           THE COURT:  All right.  Thank you all.

2           (Whereupon the above matter was adjourned at

3  12:40 o'clock, p. m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

                        Page 23

06DEC07 Brandt transcript.txt

22

23

24

25

29

C E R T I F I C A T E

        I, Susan E. Catucci, RMR, Official Court
Reporter for the United States District Court for the
District of Connecticut, do hereby certify that the
foregoing pages are a true and accurate transcription of
my shorthand notes taken in the aforementioned matter to
the best of my skill and ability.

_____

Susan E. Catucci, RMR
Official Court Reporter
915 Lafayette Boulevard
Bridgeport, Connecticut  06604
Tel: (917) 703-0761

=