UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LEONARD BRANDT | : Civil Action No. 3:01-CV-01889 (SRU) |
| Plaintiff | : |
| v. | : |
| MIT DEVELOPMENT CORP., HOME DIAGNOSTICS, INC., GEORGE H. HOLLEY, and JUDY CHENG SALEM, EXECUTRIX OF THE ESTATE OF ROBERT J. SALEM | : |
| Defendants | : FEBRUARY 7, 2008 |

**PLAINTIFF, LEONARD BRANDT'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS HOME DIAGNOSTICS, INC.'S
AND GEORGE H. HOLLEY'S
<u>MOTION TO ENFORCE SETTLEMENT AGREEMENT</u>**

I.   **INTRODUCTION**

Plaintiff Leonard Brandt ("Brandt") hereby objects to Defendants' Motion to Enforce Settlement Agreement dated January 17, 2008, and submits this memorandum of law in opposition thereto and to the four orders sought therein ("Defendants' Motion"). Defendants' motion must be denied for each of the following reasons:

- As set forth in Brandts' memorandum of law in support of his Motion for Relief from: (i) The Court's March 15, 2007 Order; (ii) The Report of the Parties' Agreement In Principle to Settle on March 8, 2007; and (iii) The Court's July 19 and October 31, 2007 Rulings Regarding Disputed Settlement Terms; and to Reopen the Case and for a New Trial dated January 25, 2008 ("Brandt's Motion for Relief"), there was and is no enforceable settlement agreement among Brandt and Defendants;

- The case law cited by Defendants is wholly inapplicable to the facts of this case;

**ORAL ARGUMENT REQUESTED**

TJR/33764/2/840880v1
02/07/08-HRT/

- Brandt is in compliance with the Court's December 6 and 7, 2007 Orders; and

- In the absence of an enforceable settlement agreement, and Brandt having complied with this Court's December 6 and 7, 2007 Orders, there is no basis for a finding that Brandt is in contempt.

## II. ARGUMENT[1]

### A. Defendants Seek To Enforce The Terms Of A "Binding Settlement Agreement" When, In Fact, There Was And Is No Enforceable Settlement Agreement Between Brandt and Defendants.

Defendants' entire argument is premised upon the false assertion that the "agreement in principle to settle" reported to the Court on March 8, 2007, was an enforceable "settlement agreement." It was not. Defendants simplistically, but erroneously, conclude that the "agreement in principle to settle" is enforceable because it was put on the record, and Brandt heard it and agreed to it. But while that analysis may have facial appeal, the issue here is not, as Defendants suggest, whether Brandt heard and understood the terms of the "agreement in principle to settle" that were reported on the record, or whether Brandt's counsel stated for the record on March 8 that the matter was resolved. The question is whether the parties had in fact come to a meeting of the minds; *i.e.*, mutually understood and agreed upon all of the material terms required to achieve an enforceable settlement. The answer to that question is clearly no.

As set forth in Brandt's memorandum of law in support of his Motion for Relief, there was no enforceable settlement agreement. *See* Motion for Relief, pp. 27-33. Brandt adopts

---

[1] The relevant factual and procedural background is well known to this Court and already set forth in detail at pages 4 through 21 of Brandt's Motion for Relief. Rather than restate here what has already been set out for the Court's consideration, Brandt adopts and incorporates that factual and procedural background by reference.

2

and incorporates herein, as if set forth in full, the arguments and positions already carefully set out in his Motion for Relief, and will not repeat those arguments here. For those reasons, Brandt has moved this Court for relief under Rule 60 of the Federal Rules of Civil Procedure and for a new trial of the claims set forth in his fourth Amended Complaint dated December 10, 2002.[2]

Moreover, and because here there is no enforceable settlement agreement, the case law cited by Defendants is inapt. Indeed, the cases offered by Defendants stand for the unremarkable propositions that settlement agreements are contracts, and, when all material terms have been agreed upon, courts will enforce them even when one of the parties has a change of heart or seeks to renegotiate. Neither scenario is presented here.

In *Powell v. Omnicon*, 497 F.3d 124 (2d Cir. 2007), the Court affirmed the trial court's denial of a motion to reopen the case because "the parties agreed to all of the material terms of the settlement agreement." In so doing the court rejected the plaintiff's argument that the parties' agreement was not binding because it was not reduced to writing as the parties intended. While the court recognized "that even 'minor' or 'technical' changes arising from negotiations over the written language of a [settlement] agreement can weigh against a conclusion that the parties intended to be bound absent a formal writing . . . such changes are

---

[2] Brandt specifically moved pursuant to Fed. R. Civ. P. 60(b)(6). However, this Court could also consider Brandt's motion under Fed. R. Civ. P. 60(b)(1). In addition to supporting relief under Rule 60(b)(6), a party's mistaken understanding of the nature of the settlement agreement may also support relief under Rule 60(b)(1). *See Simpson v. City of Hartford,* 246 F.R.D. 102, 103 (D. Conn. 2007) (Smith, M.J.) (denying relief but noting that a party's claims that he "inadvertently entered into [a settlement] agreement and operated under a mistaken understanding of the nature of the settlement - do fit within the language of Rule 60(b)(1)"). That subsection provides that a district court may grant relief from an order or judgment due to "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Whether Brandt's mistaken understanding regarding the nature of the restricted stock is analyzed as a "mistake" under subsection (1) or a mutual mistake of the parties under subsection (6), the outcome must be the same.

relevant ... only if they show that there were points remaining to be negotiated such that the parties would not wish to be bound until they synthesized a writing 'satisfactory to both sides in every respect.'" Since there were no such changes at issue in *Powell*, the settlement agreement was enforceable.

In *Omega Engineering, Inc. v. Omega, S.A.*, 432 F.3d 437 (2d Cir. 2005), a Swiss based corporate defendant allowed its representative to negotiate a settlement of litigation before Magistrate Judge Smith in Hartford. Although all material terms of the settlement were agreed to, the defendant attempted to renegotiate part of the agreement because it did not like one of the terms. When the plaintiff moved to enforce the settlement, the defendant claimed that the agreement contained an ambiguity and absent a signed agreement there was nothing to enforce. The Court concluded, however, that the defendant could not repudiate the agreement simply because it had concluded that its representative in Hartford had made a mistake. Indeed, since all material terms were agreed to, enforceable contractual obligations were established.

Finally, in *Red Ball Interior Demolition v. Palmadessa*, 173 F.3d 481 (2d Cir. 1999), the court found defendants' efforts to claim ambiguity in a settlement achieved on the eve of trial as "a *post hoc* attempt to redefine the terms of the Settlement Agreement and thereby to create ambiguity where none exists." Since there was no ambiguity in the settlement terms the Court of Appeals reversed the district court's denial of the plaintiff's motion for a declaratory judgment, and enforced the terms of the settlement.

Each of the foregoing decisions was predicated on the fact that the parties had achieved a meeting of the minds on all material terms, and that the agreements were therefore

enforceable. None of those cases involved a situation, like the one before this Court, where the parties had failed to achieve a meeting of the minds on all of the material terms of their agreement.[3] Indeed, Brandt does not take issue with the legal proposition espoused in those cases (and by Defendants here), that where the parties have agreed to all material terms, their settlement agreement is enforceable by the court.

Here, however, the relief requested by Defendants is predicated upon the bald assumption that the "agreement in principle to settle" establishes binding and enforceable contractual obligations. *See* Motion to Enforce, p. 2 and *passim* ("Brandt . . . unequivocally agreed to clear settlement terms . . . ."). That assumption is unwarranted and unsupported because were the terms so clear and the agreement so unequivocal, there would have been no concern about the nature of the stock and whether it was restricted. If the stock was unrestricted, the parties would have determined the market trading price, calculated the number of shares then and there, and all material terms would have been resolved. But as the March 8, 2007 transcript reveals, there was not even a clear understanding that the stock was restricted. *See* Exh. A[4], TX 3/8/07, pp. 2, 5, 6, 8, 18. There was only an understanding that the stock might be restricted and, if so, unanswered questions about the nature of the restrictions and how they would effect Brandt's ability to convert the shares to cash. Those questions had just then come to light.[5, 6] Indeed, to see that the material terms were

---

[3] Nor is this a situation, as Defendants imply, where Brandt has reassessed the consequences of settling for $3 million in consideration. Indeed, he remains ready and willing to do so. But the mutual misunderstandings of the parties prevent them from delivering $3 million in consideration using restricted HDI stock.

[4] All exhibit references are to exhibits attached to the Declaration of Thomas J. Rechen dated and filed January 25, 2008.

[5] In fact, in his March 8, 2007 comments on the record Attorney Dunham made clear that: ". . . if we're settling for $3 million, Mr. Brandt is required to hold the stock for some period of time and then by the time he's able to sell it, the stock is tanked and isn't worth anything, we can't resolve it on that basis. So there's got to be some protection on the value of it." *See* Exh. A, TX 3/8/07, p. 6. Then, a few moments later, Attorney Dunham

5

unresolved one need look no further than Attorney Dunham's April 2, 2007 letter to Attorney Brown (*see* Exh. E) and Attorney Brown's April 16, 2007 response (*see* Exh. F).

In Attorney Dunham's letter he recited the history of negotiations including, most particularly, that Brandt was unaware—until the morning of March 8, 2007 after he had already accepted Defendants' $3 million offer—that there would be any restrictions on his ability to freely trade HDI stock. Attorney Dunham then made clear his understanding on April 2, 2007, that the restriction at issue would require Brandt to hold the restricted shares for at least an entire year, at which time he could liquidate only a portion of his holdings, and that the balance could not be liquidated for still another year thereafter. *See* Exh. E. Twice in that letter Attorney Dunham stated that such an extended holding period was "inconsistent with" and "never a premise of" the parties' settlement discussions. *See* Exh. E, pp. 2-3. He therefore proposed an all cash settlement.

In Attorney Brown's response—specifically paragraphs 3)d through 3)f—he proposed an elaborate and convoluted mechanism ostensibly designed to "protect" Brandt against any downside movement in share value, but guaranteeing only eighty-five (85%) percent of the intended value and providing no adjustment for the time value of money lost during the holding period. *See* Exh. F, p. 2. Clearly, the terms of his letter—which he also termed a "proposal"—indicates that there was no agreement on any of these salient points. And equally

---

emphasized the point: ". . . but is the stock restricted or is it not, is there some required holding period or there is not, is a pretty material issue. And I've gotten different information about that at 7:00 o'clock this morning and then at 8:00 o'clock this morning . . . we obviously have to have actual reliable information about the nature of the shares . . . . *See* Exh. A, TX 3/8/06, p. 8.

[6] That Defendants failed to understand the implications of the last minute introduction of *restricted* stock to the deal was made clear by Attorney Brown on March 8, 2007 when he stated: "With respect to the stock, I do know that if the shares are transferred to [Brandt], he is not an insider like George Holley, like the estate, he's not in a position of Home Diagnostics and I think probably the stock would have to be sold under rule 144, the so-called dribble rule, the details of which I need to be certain about." *See* Exh. A, TX 3/8/07, pp. 7-8.

6

clearly, Attorney Brown would not have penned his April 16 letter, and would not have proposed an all cash deal as reflected in Attorney Dunham's May 6 e-mail (*see* Exh. G) and in Attorney Brown's arbitration submission (*see* Exh. I), if there was "unequivocal agreement" or "clear settlement terms" as Defendants now claim.

Indeed, the parties as of the dates of their April 2 and April 16 letters were attempting to negotiate and resolve a substantial problem neither contemplated—let alone comprehended—on March 8, 2007. And the correspondence and arbitration submissions that followed—all of which include all cash proposals—prove the point. *See* Exhs. G, I and J.[7] Defendants' Motion to Enforce the "agreement in principle to settle" must be denied because, despite the parties' best intentions on March 8, 2007, their mutual mistakes prevented them from reaching enforceable settlement terms. And the private mediator, being limited to "settlement details," lacked the authority to resolve this fundamental problem, which revealed that the parties had not achieved a meeting of the minds.

      **B.**      **Contrary To Defendants' Argument, Brandt Does Indeed Respectfully Claim That The Court, In Its Role As Private Mediator, Lacked The Authority To Require Brandt To Accept Restricted HDI Shares And Lacked The Authority To Require Brandt To Release Claims Beyond Those Before The Court On March 8, 2007.**

At page 9 of Defendants' Motion they argue that "Brandt does not claim (because he has no basis to claim) that the First, Second or Third Rulings by Your Honor were made in 'manifest disregard of the law,' that they violated public policy, or that Your Honor did not

---

[7] Defendants' own correspondence reveals that they did not feel bound by anything that was put on the record on March 8, 2007, including the $3 million in consideration that they had supposedly agreed to pay. To represent that there was agreement as to the material terms of the settlement, when Defendants subsequently reduced their "binding and conclusive settlement agreement" from $3 million to $2.9 million, simply flies in the face of the facts.

have authority to render such rulings." In fact, Brandt has argued, at pages 26 through 31 of his Motion for Relief, that the Court lacked the authority to require Brandt to accept restricted HDI stock for which there was no market.[8] In addition, Brandt has repeatedly argued, at pages 33 through 36 of his Motion for Relief and on the record before the Court on December 6, 2007, see Exh. C, TX 12/6/07, pp. 6, 7-10, 13-14, that he never agreed to release claims that were not before the Court and had not matured as of March 8, 2007.[9] Moreover, nothing in the parties' agreement to submit "details of the settlement" to private mediation empowered the mediator or arbitrator to deviate from the agreed upon consideration of $3 million in value.

These arguments, having already been made by Brandt, do not bear repetition here. Suffice it to say that in addition to Brandt's argument that there are no agreed upon settlement terms to enforce, this Court cannot enforce "settlement" terms that the Court, in its role as private binding mediator, was not empowered to impose.

    **C.**    **There Are No Grounds For An Order Compelling Brandt To Comply With A Settlement Agreement That Does Not Exist Or Compelling Brandt To Comply With The Second And Third Rulings.**

In addition to their request that this court enforce the terms of a "binding settlement agreement," Defendants further request that Brandt be compelled to comply with the Settlement Agreement[10] and the Court's Second and Third Rulings Regarding Disputed Settlement Terms.

---

[8] At the time Defendants filed their Motion to Enforce Settlement, Brandt had not yet filed his Motion for Relief and so Defendants may have been unaware that Brandt was making this argument.

[9] At the time Defendants filed their Motion to Enforce Settlement, Defendants were clearly aware that Brandt was making this argument.

[10] Defendants have not articulated how their request "for an Order (i) enforcing the terms of the binding settlement agreement . . ." differs from their request "for an Order (ii) compelling Brandt to comply with the Settlement Agreement . . .," and the difference is not manifest. For purposes of this Memorandum of Law Brandt treats these two separately stated requests as one.

As to both the Second and Third Rulings, to the extent they are predicated upon incomplete and unenforceable terms, those Rulings are themselves unenforceable.

As to the Second Ruling, it is further unenforceable to the extent it requires Brandt to execute and deliver a release of claims that were not part of his lawsuit; not part of the "agreement in principle to settle;" and not existent on March 8, 2007.

Finally, contrary to Defendants' claims, Brandt has fully complied with the Third Ruling by timely filing his Motion for Relief as the Court directed him to do.

### D. There Are No Grounds For An Order Of Contempt Or Any Other Relief Against Brandt Because He Has Complied With The Court's December 6 And 7, 2007 Orders By Moving For Relief Under Rule 60 As The Court Instructed Him To Do.

Defendants argue that Brandt should be held in contempt of this Court for his "violation of the terms of the Settlement Agreement and this Court's Second and Third Rulings." *See* Defendants' Motion to Enforce, p. 12.

First, Brandt cannot be held in contempt for failing to participate in a "settlement" that was unenforceable, the product of mutual mistake, and which requires him to surrender rights that were never part of the "agreement in principle to settle".

Second, Defendants', in arguing for an order of contempt, intentionally omit or conveniently ignore the fact that the Court, on the record on December 6, 2007, and more particularly in its Third Ruling on December 7, 2007, provided Brandt the following option: "

> In the event that Brandt chooses not to comply with the terms of the settlement, he may file a motion to reopen this case. Brandt should file such a motion, or send my chambers a letter indicating that he intends to do so, by Thursday, December 13.

9

*See* Exh. U. In fact, through thirteen pages of their memorandum in support of their Motion to Enforce, Defendants never once mention that this Court afforded Brandt an alternative to acceptance of the private mediator's terms of settlement, nor do they mention that Brandt complied.

On December 12, 2007, Brandt advised the Court in writing of his decision to move to reopen the case and requested until January 22, 2008 to retain new counsel, obtain the necessary files from Wiggin & Dana and file the Motion to Reopen, which, after the Court granted a three day extension, he did on January 25, 2008. Indeed, despite Defendants' mischaracterization of the Court's December 6 and 7 Orders, Brandt has done precisely what the Court permitted him to do – to move that the case be restored to the active case docket and to explain why that motion should be granted. Since the "agreement in principle to settle" is not enforceable, and since Brandt has in fact complied with the Court's Third Ruling, there is no basis for contempt.

*Doi v. Halekulani Corp.*, 276 F. 3d 1131 (9th Cir. 2002), cited by Defendants at page 12 of their memorandum in support of their Motion to Enforce, provides no applicable guidance. In *Doi*, the plaintiff appealed a ruling of contempt on the sole ground that "if the district court erred in ordering enforcement of the oral 'settlement agreement', then there was no basis for the district court to impose a sanction...." The Ninth Circuit, however, concluded that the parties had agreed to all of the material terms and the settlement was binding. Since the court concluded that the district court had not erred, and no other arguments were advanced as to why the order of sanctions was in error, the district court's award of sanctions was affirmed. *Doi* stands for nothing more than the uncontroverted proposition that a court

10

may sanction a party for failing to perform a binding settlement. Such facts do not exist here and there is no basis for an order of contempt against Brandt.

Finally, in considering Defendants' repeated claim that they "have bent over backwards to effectuate the settlement," *see* Motion to Enforce, pp. 7, 12, this Court should take into account the following:

- Until one hour before the parties went on the record with their "agreement in principle to settle," Defendants represented to Brandt that the stock he would receive in settlement was immediately tradable;

- Defendants did not provide Brandt (or the Court) a copy of the restrictive legend until after the Court issued its First Ruling Regarding Disputed Settlement Terms;

- Defendants did not immediately transfer cash and stock as the First Ruling required and as the Court so found on October 31, 2007;

- Defendants insisted upon a release of all claims through October 31, 2007 as the only acceptable consideration for the stock and cash that they ultimately transferred to the escrow agent, knowing full well that was never part of the "agreement in principle to settle;" and

- Defendants have continually attempted to enforce a settlement when they know there was no meeting of the minds as correspondence authored by their lawyer reveals.

Indeed, Defendants have continually attempted to portray Brandt in a poor light notwithstanding their own culpability. Thus, the principle that "one who seeks equity must do equity," serves as added grounds for denying Defendants' motion for sanctions.

## CONCLUSION

For the foregoing reasons, this Court must deny Defendants' Motion to Enforce Settlement Agreement dated January 17, 2008 and all requested orders therein.

PLAINTIFF:
LEONARD BRANDT

By _____
Thomas J. Rechen
Federal Bar No. ct03385
Pepe & Hazard LLP
His Attorneys
225 Asylum Street
Hartford, CT 06103-4302
Tel. 860-522-5175
Fax 860-522-2796
trechen@pepehazard.com

TJR/33764/2/840880v1
02/07/08-HRT/

## CERTIFICATION

I hereby certify that on February 7, 2008, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**COUNSEL FOR HOME DIAGNOSTICS, INC.**
**and GEORGE H. HOLLEY**
Aaron M. Zeisler, Esq.
Paul M. Brown, Esq.
Satterlee Stephens Burke & Burke, LLP
230 Park Avenue
New York, NY   10169
Tel.: 212.404.8737
Fax: 212.818.9606
Email: azeisler@ssbb.com
Email: pbrown@ssbb.com (sent via e-mail)


Richard A. Roberts, Esq.
Nuzzo & Roberts
One Town Center
P. O. Box 747
Cheshire, CT   06410
Tel: 203.250.2000
Fax: 203.250.3131
Email: rroberts@nuzzo-roberts.com

_____
Thomas J. Rechen