UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - — - - - x

LEONARD BRANDT,                                    :

        Plaintiff,                              : Civil Action No.:
                                            3:01-1889 (SRU)
           - against -                        :

HOME DIAGNOSTICS, INC., GEORGE H. HOLLEY,    :
and JUDY CHENG SALEM, EXECUTRIX OF THE
ESTATE OF ROBERT J. SALEM,                         :

        Defendants.                             : February 15, 2008

- - - - - - - - - - - - - - - - - - - — - - - - - - - — x

## DEFENDANTS' MEMORANUM OF LAW IN OPPOSITION TO BRANDT'S MOTION TO VACATE CERTAIN ORDERS AND RULINGS AND TO REOPEN THE CASE, AND IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT

        Defendants Home Diagnostics, Inc. ("HDI") and George H. Holley ("Holley") (together, "Defendants"), by their attorneys Satterlee Stephens Burke & Burke LLP, respectfully submit this combined memorandum of law: (i) in opposition to plaintiff Leonard Brandt's ("Brandt's") January 25, 2008 Motion For Relief From Certain Orders and Rulings and To Reopen The Case (Point I, infra); and (ii) in further support of Defendants' January 17, 2008 Motion to Enforce the Settlement Agreement (Point II, infra).

### PRELIMINARY STATEMENT

        Brandt unilaterally decided that the March 8, 2007 settlement agreement was no longer binding because he wanted $3 million in cash – without any stock. Brandt's change of heart began with his May 29, 2007 mediation submission, which asked for $3 million in cash (Rechen Decl., Ex. J, p. 6), and has continued to the present. However, the settlement agreement was never for $3 million in cash. The parties expressly agreed, on the record, that Brandt would

be paid "at least $150,000 in cash" with the remainder to be paid in restricted HDI stock. (Brown Decl., Ex. A, Tr. at 970:1-8). Although Brandt is now fixated on receiving $3 million in cash, he knew that that was not the settlement that was reached, as he concedes in his May 29, 2007 letter. See Rechen Decl., Ex. J, p. 7 ("Mr. Brandt understands that when the defendants agreed to settle, they were expecting that the vast majority of the consideration would be in the form of HDI stock."). Certainly, that is what the settlement agreement stated. See Brown Decl., Ex. A, Tr. at 970:6-8 ("The balance of the settlement amount will be paid to you [Brandt] in the form of HDI stock."). Indeed, the only open issues at the time of the settlement (as opposed to the "hundreds" that Brandt now claims existed) were: (i) the exact proportion of cash to HDI stock he was to receive (within the agreed upon parameters of "at least $150,000 in cash"), and (ii) the precise legal conditions under which he could sell the HDI stock. There was no great mystery as Brandt currently claims, and there are no grounds upon which to vacate the settlement agreement or related court orders. Brandt simply refuses to live up to his end of the parties' bargain.

Yet, in what can only be described as a gross misrepresentation of the record in an attempt to avoid his settlement obligations, Brandt asserts that the parties merely reached an "agreement in principle to settle" on March 8, 2007, rather than a binding settlement agreement. But, in order to promote this specious theory, Brandt relies upon a limited portion of the March 8, 2007 settlement transcript (the 9:35 a.m. portion) while willfully ignoring the later portion of the transcript in which the parties placed the terms of an enforceable settlement agreement on the record – after a lengthy recess during which the attorneys spoke with their clients about the terms of the agreement, including issues concerning the restricted nature of the HDI stock. Indeed, after 11:00 a.m. (the portion of the transcript that plaintiff continually ignores), the Court set forth the terms of the settlement agreement on the record, and Brandt stated that he "understood

2

every word" and was "agreeing to the settlement terms [the Court] just outlined." As set forth in

Defendants' January 17, 2008 Memorandum of Law in Support of Their Motion to Enforce the

Settlement Agreement ("Defs.' Mem."), the parties expressly assented to this settlement on the

record with the benefit of their counsel, and it is binding and conclusive. See Defs.' Mem. at 4-

10. Accordingly, Brandt's motion to vacate should be summarily denied on these grounds alone.

In addition to Brandt's concocted theory that the parties only reached an

"agreement in principle," Brandt offers four other disingenuous and equally flawed rationales as

to why the settlement agreement (and related Court orders) should be voided. First, Brandt

erroneously asserts that there was no settlement agreement because "core terms" were missing

(Pl.'s Mem. at 8-11, 27-28) – an assertion that is not only belied by the settlement transcript itself

(which listed the necessary terms for a settlement), but is contrary to well-settled Connecticut

law holding that parties may reach a binding agreement even if, as Brandt now asserts, some of

the terms of that agreement are missing or indefinite. Furthermore, Brandt should be estopped

from raising this argument given that he, ironically, took the exact opposite position when he

opposed defendants' motion for summary judgment and successfully argued that his oral

employment agreement – the basis of his case – was enforceable despite numerous indefinite and

missing terms.

Second, Brandt's claim that "numerous mutual mistakes by the parties prevented

any meeting of the minds" (Pl.'s Mem. at 28-29, 31-33) willfully disregards the law because

there can be no mutual mistake where, as here, the Defendants were never mistaken. Indeed,

what Brandt claims to be a mutual mistake (about such things as the restricted nature of the HDI

stock) is, at most, Brandt's unilateral mistake, which does not justify rescission as a matter of

law.

3

Third, Brandt's spurious argument that Your Honor lacked the authority to act as a private mediator because it was beyond the scope of the settlement (Pl.'s Mem. at 26-27, 29-30) should be rejected out-of-hand since the parties expressly empowered Your Honor "to impose a decision on the areas of dispute concerning the details of the settlement" that could not be resolved (including any issues surrounding the transfer of HDI stock).

Fourth, Brandt's argument that he never agreed to release claims after March 8, 2007 (Pl.'s Mem. at 33-36) should be flatly rejected because the parties agreed in the settlement to release everybody "from whatever claims they may have *through the day of the release*." Since Brandt never executed a mutual general release on March 8, 2007, he cannot possibly claim that his release should be limited to claims arising before March 8, 2007.

For these reasons, the reasons set forth in Defendants' Memorandum of Law in Support of Their Motion to Enforce the Settlement Agreement, and those reasons set forth below, Brandt's Motion For Relief From Certain Orders and Rulings and To Reopen The Case should be denied, and Defendants' Motion to Enforce the Settlement should be granted.

## ARGUMENT

### POINT I

### BRANDT FAILS TO MEET HIS BURDEN OF SHOWING THAT THE COURT'S PRIOR RULINGS AND ORDERS SHOULD BE VACATED AND THE CASE REOPENED

Brandt entered into a binding settlement agreement on the record and with the benefit of able counsel on March 8, 2007 (the "Settlement Agreement") – a Settlement Agreement that cannot now be undone simply because Brandt has had a change of heart. See Defs.' Mem. at 4-10. At the outset, it must be emphasized that Brandt bears the burden of demonstrating, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, that this Court's prior orders and rulings concerning the Settlement Agreement should be set aside. A final

4

judgment, order or proceeding "should not be reopened lightly," and Rule 60(b) may be invoked

"only on a showing of exceptional circumstances." Nemaizer v. Baker, 793 F.2d 58, 60-61 (2d

Cir. 1986). Moreover, any relief under Rule 60(b)(1) for an error constituting mistake, surprise,

inadvertence or excusable neglect – as Brandt claims here – "was not intended to relieve a

litigant from the consequences of ... a conscious decision, however unwise the decision may be

in retrospect." Parrilla-Lopez v. United States, 841 F.2d 16, 20 (1st Cir. 1988); see also

Nemaizer, 793 F.2d at 62 ("[m]ere dissatisfaction in hindsight with choices deliberately made"

does not provide relief under Rule 60(b)(1)).

Brandt does not meet his burden of showing the "exceptional circumstances"

necessary to reopen, much less vacate, the Settlement Agreement and the Court's prior rulings.

As is demonstrated below, Brandt's various spurious rationales for vacating the Court's prior

orders and rulings, and voiding the Settlement Agreement, are without merit and should be

rejected.

### A. The Court Should Roundly Reject Plaintiff's Baseless Assertion That The Parties Merely Reached An "Agreement In Principle To Settle" Rather Than A Binding Settlement Agreement

Brandt's primary argument is that there was never any settlement agreement – but

only a mere "agreement in principle to settle" – and thus, there is nothing for the Court to

enforce. Pl.'s Mem. at 1, 5, 27-28. This argument is utterly baseless and should be rejected.

Brandt never disputes the legal conclusion that "'a voluntary, clear, explicit, and

unqualified stipulation of dismissal entered into by the parties in court an on the record is

enforceable even if the agreement is never reduced to writing, signed, or filed.'" See Defs.'

Mem. at 8 (citing Powell v. Omnicon, 497 F.3d 124, 129 (2d Cir. 2007)). Instead, he mis-cites

the record in a transparent attempt to avoid the settlement that he readily agreed to, on the record,

with the benefit of his counsel, Wiggin & Dana.

Specifically, Brandt disingenuously asserts that there was only an "agreement in principle to settle" by focusing upon a limited portion of the March 8, 2007 settlement transcript – the 9:35 a.m. portion (see Pl.'s Mem. at 5-6) – while willfully ignoring that portion of the record in which the parties later placed the terms of their settlement agreement on the record (the 11:00 a.m. portion) after a substantial recess during which the attorneys spoke with their clients about the terms of the agreement, including issues concerning the restricted nature of the HDI stock. See Defs.' Mem. at 5-6 & Brown Decl., Ex. A (Tr. at 965:25- 972:3).

Indeed, after 11:00 a.m. (the portion of the record that plaintiff deliberately ignores), both Brandt's attorney and Your Honor set forth the terms of the parties' settlement agreement on the record. First, Brandt's attorney, Jack Dunham, set forth the terms of the settlement, which both Brandt and Attorney Dunham stated were accurate:

> Mr. Brandt: I think I heard it all and I think it was accurate. Jack's voice sort of went in and out a little but everything I heard I think was accurate.
>
> Mr. Dunham: And Len, I'll just tell you that what I just reported on the record was <u>entirely consistent with several conversations that you and I had earlier this morning by phone.</u>

Brown Decl., Ex. A (Tr. at 968:2-8) (emphasis added).

Then, the Court also recited the terms of the parties' settlement, asking the parties and their counsel to correct anything that was inaccurate; however, no one made any corrections and everyone stated that they understood the terms perfectly, especially Brandt:

> (The Court)  So, in sum, that's my understanding of the settlement and counsel can correct me or fill me in if I've missed something.
>
> Mr. Dunham:  Your Honor, I think that was an <u>entirely accurate</u> summary.
>
> Mr. Brown:  I agree, Your Honor.
>
> The Court:  All right.  Mr. Brandt, did you follow everything that I said?

6

Mr. Brandt: I did. <u>That was an excellent summary, an excellent hearing, so I understood every word.</u>

The Court: So, let me ask you this: Are you agreeing to the settlement terms I just outlined?

Mr. Brandt: <u>Yes</u>.

The Court: All right. And let me now turn to Mr. Holley and ask him on behalf of himself as well as on behalf of HDI as its representative: Mr. Holley, are you agreeing to the terms that I just outlined?

Mr. Holley: Yes, I am.

The Court: Both for yourself and for the company?

Mr. Holley: Yes, I am.

<u>Id.</u>, Tr. at 971:8 – 972:3 (emphasis added).

Despite the clear and unequivocal record cited above, Brandt has the audacity to assert that "[t]he parties made it very clear to the Court that there was no settlement agreement, only an 'agreement in principle to settle.'" Pl.'s Mem. at 5. Brandt's argument simply should not be countenanced. In fact, the very reason that Your Honor had the parties and their counsel put an <u>enforceable</u> settlement agreement on the record was to avoid the very situation Brandt is attempting to create, i.e., a "situation where it's going to fall apart and we've got to start all over again." Brown Decl., Ex. A (Tr. at 961:10-16).

**B.    Brandt's Argument That There Was No Settlement Agreement Because "Core Terms" Were Missing Is Utterly Specious**

Brandt indefensibly asserts that "the only 'agreement' reached on March 8, 2007 was an agreement to stop litigating and start settling." Pl.'s Mem. at 27. Yet, he also contradicts that bogus assertion by stating that "the proceedings on March 8, 2007 revealed that the parties had reached agreement on only one term – Defendants were to pay consideration of $3 million to Mr. Brandt." <u>Id.</u> at 8. Neither characterization is truthful or supported by the record.

7

1.    **The parties agreed to ample settlement terms on the record on March 8, 2007.**

To be effective, a settlement agreement should contain terms which provide for the dismissal of claims, payment by a settling party (if applicable) and, potentially, a dispute resolution mechanism or retention of jurisdiction by the court to enforce the settlement. Here, the parties' Settlement Agreement covers all of those basic terms: (i) the defendants were to pay Brandt a total of $3 million, which was to consist of at least $150,000 in cash and the remainder to be paid in restricted HDI stock; (ii) Brandt was to withdraw his claims against the defendants and dismiss his pending appeal; (iii) the parties were to exchange mutual general releases "releasing everybody else from whatever claims they may have through the date of the release;" and (iv) if the parties were unable to agree on the terms of the general release or the details concerning the HDI stock, the parties expressly agreed that Your Honor would, in your judicial capacity, informally decide the disputed settlement terms, and ultimately, "impose a decision on the areas of dispute." See Settlement Tr. at 970:1- 971:7 (Brown Decl., Ex. A).

Brandt's assertions that the parties only reached an agreement "to stop litigating and start settling" (Pl.'s Mem. at 27), or that they only reached agreement on price (id. at 8), are utterly belied by the record and should be rejected.

2.    **Brandt should be estopped from arguing that there is no enforceable settlement agreement due to some allegedly missing or indefinite terms.**

Even more outrageous is Brandt's argument that the settlement agreement was unenforceable because it was supposedly missing a slew of essential terms. Id. at 9-11, 27-28. For example, Brandt spuriously claims that the parties should have determined, *inter alia*: the exact amounts of cash and stock, the number of shares to be transferred from Holley, the number of shares to be transferred from the Salem Estate, how Holley and Salem acquired their shares,

8

how to structure the transaction to obtain the most favorable tax treatment for plaintiff, and the analyses and recommendations of securities counsel. Id. at 9-10. Clearly, Brandt understands that these "terms" are not necessary in order to have an enforceable settlement agreement under Connecticut law since they are not essential terms.[1] See, e.g., Nora Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 749 (2d Cir. 1998); Housing Auth. v. Melvin, 533 A.2d 1231 (Conn. App. 1987).

Indeed, Brandt should be estopped from arguing that the Settlement Agreement is unenforceable due to the alleged lack of certain terms given that he took the exact opposite position in opposing defendants' motion for summary judgment. Cf. Bates v. Long Island R.R., 997 F.2d 1028, 1038 (2d Cir. 1993). As the Court may recall, Defendants moved for summary judgment on Brandt's oral contract claim, arguing that it was unenforceable for several reasons, including the fact that it was missing terms and suffered from indefiniteness. See Docket # 113 (Defs.' Memo of Law In Support of Summary Judgment, pp. 15-22). Brandt, however, avoided summary judgment, successfully arguing that his underlying oral employment agreement was not unenforceable due to missing or indefinite terms. See Docket # 121 (Pl.'s Memo of Law In Opposition to Summary Judgment, pp. 26-32). For example, Brandt argued:

> "[A] failure of total definition does not import intolerable ambiguity even into terms that are essential to the formation of an enforceable agreement." *Willow Funding Co. v. Grencom Assoc.*, 63 Conn. App. 832, 845-46 (2001). To the contrary, "if the parties so intend, they may reach a binding agreement even if some of the terms of that agreement are still indefinite." *Id.* at 844. Thus, a contract can be enforceable even if it is "missing" a term generally regarded as essential, such as price. As the Connecticut Supreme Court has made clear, it has "long" been the rule "that an agreement will not be rejected if the missing terms can be

---

[1] It strains credulity for Brandt to argue, for example, that the history behind how Holley or Salem acquired their shares is at all relevant, much less vital, to the enforceability of the Settlement Agreement. The Court should take notice that most of the "terms" listed on pages 9 to 11 of Brandt's brief are superfluous.

> ascertained, either from its express terms or by fair implication."
> *Presidential Capital Corp. v. Reale*, 231 Conn. 500, 507-08
> (1994). "[I]f the trier of fact can find a reasonable basis for
> implying a missing term—such as price—the absence of the term
> is not fatal to the contract." *Nora Beverages, Inc. v. Perrier Group
> of Am., Inc.*, 164 F.3d 736, 749 (2d Cir. 1998) (applying
> Connecticut law).

Id. p. 29 (emphasis added).

The irony of Brandt's contradictory positions should not escape notice, and he should be barred from arguing that the Settlement Agreement is unenforceable due to missing or indefinite terms. Bates, supra. Moreover, the Settlement Agreement is far clearer here, given that it was a detailed contract entered into on the record before multiple attorneys and a federal court judge.

### C.    Brandt's Assertion That "Numerous Mutual Mistakes By The Parties Prevented Any Meeting of the Minds" Is Fanciful And Should Be Rejected

Brandt now claims that the Settlement Agreement is unenforceable because mutual mistakes prevented the parties from reaching a meeting of the minds. See Pl.'s Mem. at 28-29, 31-33. Specifically, Brandt claims that the parties' mutual mistakes consist of: (i) their belief "that they had sufficient information on March 8, 2007 to make the agreement they reported to the Court;" (ii) their supposed failure "to recognize all the information and missing elements they needed to settle this case;" and (iii) their supposedly incorrect assumptions about the HDI stock and the status of the stock. Id. at 29. Each of these concepts is addressed below.

#### 1.    The settlement transcript clearly evidences a meeting of the minds over the necessary settlement agreement terms.

As demonstrated in Points I.A and I.B.1, supra, Brandt and the defendants clearly assented to the Settlement Agreement placed on the record. Brown Decl., Ex. A (Tr. at 971:8 – 972:3). Moreover, their agreement set forth the necessary terms: (i) a payment term (defendants were to pay Brandt a total of $3 million, which was to consist of at least $150,000 in cash and the

remainder to be paid in restricted HDI stock); (ii) the withdrawal of claims and dismissal of the

pending appeal; (iii) the exchange of mutual general releases "releasing everybody else from

whatever claims they may have through the date of the release;" and (iv) a method for deciding

any disputed settlement terms, and ultimately, permitting the Court to "impose a decision on the

areas of dispute." See id. (Tr. at 970:1- 971:7).

> **2. Brandt's assertion that the parties mutually failed "to recognize all the information and missing elements they needed to settle this case" demonstrates Brandt's fundamental misunderstanding of the doctrine of mutual mistake.**

Not only does Brandt use his argument about supposed missing or indefinite

terms to claim that the settlement agreement is unenforceable (addressed in Point I.B., supra), he

also uses this fallacious argument to claim that there was a mutual mistake by the parties. See

Pl.'s Mem. at 29 ("Other mutual mistakes by the parties included: (i) their failure to recognize all

the information and missing elements they needed to address to settle this case").

Yet, all of Brandt's "mutual mistake" arguments are premised upon his willful

misapplication of the mutual mistake doctrine. A mutual mistake occurs "[w]here both parties

share a common assumption about a vital existing fact on which they based their based their

bargain and that assumption is false." Calamari & Perillo, THE LAW OF CONTRACTS, 4th ed.

(West 1998), § 9.26 (emphasis added). Under Connecticut law, it must be established that both

parties agreed to something different from what was expressed by their agreement, and "the

proof on this point should be so clear so as to leave no room for doubt." Greenwich Contracting

Co. v. Bonwit Constr. Co., 156 Conn. 123, 127 (1968). A court may only reform or void a

contract if the mistake is "supported by convincing evidence."[2] Indeed, it is axiomatic that a

---

[2] The Connecticut cases Brandt cites are consistent with defendants' above-cited cases (compare Pl.'s Mem. at 32-33), and even the Ninth Circuit case that Brandt cites, Stratman v. Babbitt, 1994 U.S. App. LEXIS 34354 (9th Cir. 1994) supports defendants' position because it confirms that relief under Fed.

unilateral mistake does not generally justify relief from the parties' agreement. <u>Alden Auto Parts</u>

<u>Warehouse, Inc. v. Dolphin Equip. Leasing Corp.</u>, 682 F.2d 330, 333 (2d Cir. 1982) (citing

Restatement of Restitution, § 12) ("A person who confers a benefit upon another, manifesting

that he does so as an offer of a bargain which the other accepts or as the acceptance of an offer

which the other has made, is not entitled to restitution because of a mistake which the other does

not share and the existence of which the other does not know or suspect").

More importantly, a party is foreclosed from seeking relief under Rule 60(b)(1)

and from arguing that a settlement was entered into by mistake where, as here, the party

negotiates the agreement in court and places the agreement on the record. <u>Ovadiah v. NYANA</u>,

1997 WL 342411, at *5 (S.D.N.Y. June 30, 1997). For example, in <u>Ovadiah</u>, the court denied

plaintiff's motion to vacate a settlement pursuant to Rule 60 (b)(1) on the grounds of mistake.

<u>Id</u>. Ovadiah was "well-educated and fully capable of expressing his position" and he "freely

expressed his demands and views." <u>Id</u>. He also used a legal adviser as necessary. Because

Ovadiah agreed to the terms of the settlement agreement in open court on the record, the court

held "that, in itself, is enough to bind him to the terms of the agreement and undermine any claim

by him of mistake or surprise under Rule 60(b)(1)." <u>Id</u>.

Here, there was no mutual mistake because Brandt and the Defendants did not

"share a common assumption about a vital existing fact on which they based their based their

bargain" which turned out to be false. Calamari, § 9.26, <u>supra</u>; <u>Greenwich Contracting</u>, 156

Conn. at 12. Moreover, as in <u>Ovadiah</u>, Brandt is foreclosed from claiming mistake under Rule

60(b)(1) given that he agreed to the settlement terms on the record in open court. At worst,

Brandt claims he was mistaken about the terms of the settlement agreement – not the Defendants.

---

R. Civ. P. 60(b) for a mutual mistake may only be granted where "a settlement agreement fails of its
purpose in its entirety." <u>See</u> Pl.'s Mem. at 33 & Rechen Decl., Ex. W.

Yet, as explained below, Brandt should not be permitted to avoid the Settlement Agreement because he now asserts that: (a) there was a mutual mistake about the restricted nature of the HDI stock (Pl.'s Mem. at 26-27); or (b) there was a mutual mistake because the parties' supposedly were "mistaken in believing that they could achieve $3 million in consideration using restricted stock of HDI" (Pl.'s Mem. at 31).

### a.    There was no mutual mistake about the fact that HDI's stock would be restricted.

Here, the parties' settlement agreement expressly accounted for the fact that there were further details to specify regarding the restricted HDI stock that was to be transferred as part of the settlement consideration, including "issues such as the ability to sell the stock, what restrictions there may be on that stock, et cetera." Brown Decl., Ex. A (Tr. at 970:17-22). Thus, Brandt and the Defendants consciously accepted any uncertainty about the restrictions on the HDI stock. Indeed, plaintiff does not dispute that, during the evening of March 7 and the morning of March 8, 2007, defense counsel raised with plaintiff's counsel the nature of the HDI stock that Brandt would receive, including possible restrictions. See Pl.'s Mem. at 5; Brown Decl., Ex. A (Tr. at 957-58). After a substantial recess during which the attorneys spoke with their clients about the terms of the agreement, including issues concerning the restricted nature of the HDI stock (id., Tr. at 957:21- 958:6; 965:1-17), Brandt's attorney stated to his client, "Len, I'll just tell you that what I just reported on the record was entirely consistent with *several conversations* that you and I had earlier this morning by phone." Id., Tr. at 968:2-8 (emphasis added). In reciting the settlement agreement, the court also expressly stated:

> There are various details to work out concerning the stock that's going to be transferred as part of the settlement amount. Those issues were not detailed just now in any great detail but they include issues such as the ability to sell the stock, what restrictions there may be on that stock, et cetera.

See id., Tr. at 970:17-22 (emphasis added).

Brandt clearly accepted the settlement agreement that was placed on the record with full knowledge that there were a few undetermined questions concerning the legal restrictions placed on the sale of the HDI stock. However, in arguing mutual mistake with respect to the restrictions, Brandt fails to differentiate between mistake and "conscious uncertainty." When two parties expressly agree that certain terms in their agreement are uncertain – for example, they agree to sell a particular stone for a particular price without knowing the exact nature of the stone – they have agreed to accept the "conscious uncertainty" that the stone may be more or less valuable than they think. Calamari, § 9.26(b), supra. Indeed, in the seminal case of Wood v. Boynton, 64 Wis. 265, 25 N.W. 42 (1885), the plaintiff found a small stone and sold it for one dollar to the defendant after two conversations in which the parties expressed their ignorance as to the nature of the stone (both guessing it may have been topaz). When the parties discovered that the stone was actually a diamond worth close to $1,000, the court enforced the parties' sale agreement because there was no mistake as to which stone was sold and the parties had accepted the conscious uncertainty about the nature of the stone. Id. In refusing to void the contract, the court held that each party took the risk that the stone may be more or less valuable than $1.

Applying the above-cited legal principles here, it is clear that there was no mutual mistake because there was no mistake about the nature of the HDI stock – only conscious uncertainty. The parties necessarily understood and incorporated any uncertainty into their Settlement Agreement. Accordingly, Brandt's protestations about his supposed mistake with respect to the restricted nature of the HDI stock should not be countenanced.

14

    **b.**    *Brandt misrepresents the nature of the restricted HDI stock and misconstrues the applicable securities regulations in a misguided attempt to claim yet another "mutual mistake."*

Brandt's claim that the parties "were mistaken in believing that they could achieve $3 million in consideration using restricted stock of HDI" (Pl.'s Mem. at 31) is both false and not a "mutual mistake."

First, the restricted HDI stock definitely could achieve the required consideration. Under the Settlement Agreement, Brandt was to receive "a total of $3 million, which [was to] consist of at least $150,000 in cash, the exact amount not having been set yet. The balance of the settlement amount . . . paid to [Brandt] in the form of HDI stock." Brown Decl., Ex. A (Tr. at 970:1-8). When the parties could not resolve the exact payment mixture and invoked the resolution mechanism set forth in the Settlement Agreement, the parties submitted their respective positions and the Court ruled. Your Honor found that Brandt would receive $600,000 in cash and a number of shares of HDI restricted stock equal to $2,400,000 as measured by a value of 94% of the stock's average closing price for the five trading days prior to July 19, 2007. See First Ruling, p. 2 (Brown Decl., Ex. D). This formula clearly achieves the required $3 million in consideration. Brandt complains, however, solely because the stock has subsequently declined in price. Were it to rise in price, it is likely that Brandt would not complain. Regardless, Brandt was willing to take the risk that his settlement could be worth more or less than the parties' agreed upon $3 million in consideration given that Brandt initially agreed to accept as much as $2,850,000 in restricted HDI stock as part of the settlement (and stock necessarily fluctuates with the market over time).

Second, Holley and Salem were in no way prohibited under applicable securities law from transferring the HDI stock to Brandt as he now contends (Pl.'s Mem. at 17), and in fact,

Holley and the Salem Estate have long since transferred the required shares of HDI stock (which are sitting in escrow) into Brandt's name.

Third, Brandt disingenuously argues that he may "not engage in any <u>public</u> sale of HDI restricted stock" (Pl.'s Mem. at 25), when he knows full-well that he can arrange a <u>private</u> sale – which is exactly what the 6% premium he was awarded was intended to account for. <u>See</u> Rechen Decl., Ex. I (May 24, 2007 letter). Neither the Securities Act, nor the stock legend, nor his piggy-back rights prohibits such private sales transactions.[3] <u>See</u> § 4(1) of the Securities Act of 1933, 15 U.S.C. § 77a, et. seq.

For all of the above reasons, the Court should reject Brandt's argument that several mutual mistakes by the parties prevented a meeting of the minds.

### D. Brandt's Assertion That Your Honor Did Not Have The Authority To Act As A Private Mediator Because It Was Beyond The Scope Of The Settlement Is Contrary To The Record

Brandt erroneously argues that the Court exceeded its authority under the parties' Settlement Agreement when Your Honor "create[d] a settlement" rather than "impose[d] a decision on the areas of dispute concerning the details of this settlement." Pl.'s Mem. at 30. Brandt's position lacks merit and is contradicted by the record.

First, Your Honor was expressly empowered by Brandt and the other parties to the Settlement Agreement to informally decide the disputed settlement terms – in Your Honor's judicial capacity – and ultimately, "impose a decision on the areas of dispute." <u>See</u> Settlement

---

[3] Moreover, as Brandt concedes in his brief, the holding period for any private buyer that Brandt finds would only be subject to a six-month holding period – not a one-year period – since an important revision to Rule 144(d) decreased the required holding period effective February 15, 2008. <u>See</u> Rule 144(d)(1), 17 C.F.R. § 230.144(d)(1) & SEC Release No. 33-8869; Pl.'s Mem. at 25 n. 9. In addition, Brandt's argument that he faces some supposedly onerous volume restriction (Pl.'s Mem. at 14, 26), does not apply to private sales and, in any event, was eliminated effective February 15, 2008 due to the SEC's revision to Rule 144(e). <u>See</u> Rule 144(e), 17 C.F.R. § 230.144(e) & SEC Release No. 33-8869.

723747_7

Tr. at 970:23- 971:7 (Brown Decl., Ex. A).   Moreover, the parties agreed that the "areas of dispute" would include the situation where "the parties cannot agree on the terms of the general release" or "cannot agree on the details concerning the transfer of stock." Id. at 970:23- 971:2. As it turns out, the parties could not agree on all of these details, and the Court decided them as per the Settlement Agreement.   Yet, Brandt's assertion that this was beyond the Court's contractual mandate (Pl.'s Mem. at 30) has no logical or legal foundation.   Indeed, Brandt's position that the Court exceeded its authority is contradicted by Brandt's former counsel's April 2, 2007 letter to defense counsel, in which he stated that the parties agreed to have Your Honor be "the ultimate arbiter" of any detailed settlement terms that could not be resolved and that "Mr. Brandt and your clients [the defendants] agreed to that approach." Rechen Decl., Ex. E (p. 2). Thus, the Court should reject Brandt's bad faith assertion that Your Honor had no authority to act as a private mediator.

> ### E.  Brandt's Argument That He Never Agreed To Release Claims After March 8, 2007 Is Plainly Contradicted By The Settlement Agreement

Another of Brandt's disingenuous arguments is that he never agreed to release claims after March 8, 2007. Pl.'s Mem. at 33-36. But, as the record clearly reflects, Brandt and the Defendants expressly agreed to release everybody "from whatever claims they may have through the day of the release." See Tr. at 970:12-16 (Brown Decl., Ex. A) (emphasis added). Since Brandt never executed a mutual general release on March 8, 2007, his argument that he "never agreed to release claims arising after March 8, 2007" has no merit – he was to release all claims through the day he signed the release. In addition, the only reason that the Court ordered Brandt to execute a release through October 31, 2007 (as opposed to some later date) was due to the fact October 31 was the date of the parties' hearing, and Brandt had still not signed the "mutual general release" that the parties had been ordered to execute by that date. See Oct. 31,

2007 Tr. at 32:21- 33:9 (Rechen Decl., Ex. B); see also Dec. 6, 2007 Tr. at 23-24 (Brown Decl., Ex. K); Third Ruling (id., Ex. L).

Brandt has no basis to argue that his release of defendants should exclude claims purportedly arising after March 8, 2007.[4] To the contrary, his refusal to execute a release through "the day of the release" – whether that day is measured as of today or as of October 31, 2007 – is a clear violation of the parties' settlement agreement.

## POINT II
### DEFENDANTS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND THE COURT'S SUBSEQUENT RULINGS SHOULD BE GRANTED

Brandt raises no new arguments, and cites no new case law, in his February 7, 2008 Memorandum of Law in Opposition To Defendants' Motion To Enforce Settlement Agreement ("Pl.'s Opp.").

#### A.    Brandt Does Not Provide Any Legal Authority To Defeat Defendants' Motion To Enforce The Settlement Agreement

Under well-settled Second Circuit precedent, the Settlement Agreement is binding and must be enforced. See Defs.' Mem. at 8-10. Brandt fails to cite any contrary case law, and his attempt to distinguish Defendants' cited cases falls far short. See Pl.'s Opp. at 3-4. For instance, Defendants cited Powell v. Omnicon, 497 F.3d 124, 128-29 (2d Cir. 2007) as being particularly relevant to the case at bar because plaintiff, a sophisticated business woman, orally agreed to settlement terms on the record but later moved to avoid the agreement and restore the case to the calendar. Finding that plaintiff had assented to its terms on the record, the Powell court enforced the settlement, and the Second Circuit affirmed. Id.

---

[4] In addition, Brandt's supposed Rule 10b-5 claims are unsound because Brandt never accepted any shares of HDI stock, and therefore, he was not a shareholder who would have standing to bring claims for defendants' alleged securities fraud in connection with the settlement agreement.

723747_7

Brandt feebly attempts to distinguish Powell by claiming that its holding was only valid because the terms of the settlement remained constant, whereas here, Brandt claims that the parties were still supposedly negotiating certain terms. Pl.'s Opp. at 4. Yet, in Powell, the parties were still discussing several terms (including the tax status of the settlement payment and the wording of the reference letter that defendant employer had to write), and the Second Circuit enforced the settlement agreement despite those ongoing negotiations. Powell, 497 F.3d at 128.

In addressing Omega Engineering, Inc. v. Omega, S.A., 432 F.3d 437 (2d Cir. 2005), Brandt misrepresents the facts surrounding the settlement negotiations at issue in a misguided attempt to distinguish the case, which is directly on point. In Omega, the general counsel for plaintiff had negotiated terms of a settlement agreement and then agreed to those terms on record. Plaintiff later challenged the agreement, despite an initial "meeting of the minds," because the general counsel agreed to terms which contradicted certain previous confidential instructions he had received from plaintiff's principals in Switzerland. Omega, 432 F.3d at 442-43. The Court refused this request and enforced the settlement agreement in its original form. Yet, Brandt would have the Court believe that the agreement in Omega was held to be enforceable only because there was a complete "meeting of the minds" by the parties. Pl.'s Opp. at 4. Rather, the Omega court enforced the agreement, as it should, because the parties entered into a binding settlement agreement with sufficiently definitive terms.

Finally, Brandt attempts to distinguish Red Ball Interior Demolition v. Palmadessa, 173 F.3d 481, 485 (2d Cir. 1999), by arguing that the settlement agreement at issue in that case was enforceable only because there was no ambiguity in its terms. Pl.'s Opp. at 4. Yet, the defendants in Red Ball – like Brandt – tried to redefine the terms of the agreement by attempting to create an ambiguity only after the parties had already reached an agreement. No

real distinction can be drawn between the circumstances of <u>Red Ball</u> and Brandt's actions in this case; thus, this Court should enforce the settlement agreement as the <u>Red Ball</u> court did.

Given that Brandt fails to distinguish these cases, or the others cited by Defendants' in their moving brief (Defs.' Mem. at 9-10), Defendants' motion should be granted.

**B.    Brandt Tries To Avoid the Settlement Agreement By Claiming That He Had No Idea That The HDI Stock Would Be Restricted**

Brandt attempts to muddy the record, once again, in a feeble attempt to avoid the binding Settlement Agreement, as evidenced most notably by his baseless claim that he had no idea that "there would by any restrictions on his ability to freely trade HDI stock" until after he had already accepted Defendants' settlement offer.  Pl.'s Opp. at 6.  Again, Brandt only points to a limited portion of the March 8, 2007 settlement transcript (the 9:35 a.m. portion) while conveniently ignoring that portion of the record in which the parties placed the terms of enforceable settlement agreement on the record (the 11:00 a.m. portion) after a substantial recess during which the attorneys spoke with their clients about the terms of the agreement, including issues concerning the restricted nature of the HDI stock.  <u>See</u> Brown Decl., Ex. A (Mar. 8, 2007 Tr. at 957:21- 958:6; 965:1-17).

Clearly, Brandt accepted the settlement agreement placed on the record with full knowledge that there were stock restriction issues, and his protestations to the contrary should not be countenanced.  As the Court stated in reciting the settlement agreement:

> There are various details to work out concerning the stock that's going to be transferred as part of the settlement amount.  Those issues were not detailed just now in any great detail but <u>they include issues such as the ability to sell the stock, what restrictions there may be on that stock</u>, et cetera.

<u>See</u> <u>id.</u>, Tr. at 970:17-22 (emphasis added).

20

Even assuming, arguendo, that Brandt was mistaken, he provides no legal basis to justify how his unilateral mistake voids the settlement. Indeed, it does not. See Point I.C.2, supra. Accordingly, Defendants' Motion to Enforce the Settlement Agreement should be granted.

**C.    Although Brandt Claims That He Was Given The "Option" Of Moving To Reopen The Case, Brandt Ignores That Portion Of The Court's Ruling Finding Him In Violation Of The Court's Prior Order**

Although Brandt's newly retained counsel states that the Court gave Brandt, in effect, the option of either complying with the Settlement Agreement or moving to reopen the case (Pl.'s Opp. at 9-10), such an argument misapprehends the clear record since March 8, 2007 and, specifically, the tenor of the Court's words during the telephonic hearing on December 6, 2007.

On December 6, 2007, Brandt was ordered to comply with the Settlement Agreement and the Court's prior rulings – and when he stated that he may not comply – the Court told Brandt that it had no more patience for him and that if he chose not to follow the Court's rulings, he had no other option than to file a motion to reopen the case. See Dec. 6, 2007 Tr. at 19-21 (Brown Decl., Ex. K). Yet, the Court's frustration with Brandt's contempt for its authority should not be misinterpreted as encouraging, far less condoning, a motion to reopen the case. The Court clearly indicated that it was not saying that it would grant such a motion (id.), and indeed, on December 7 (the very next day), this Court once again ordered Brandt to comply with the terms of the Settlement Agreement and the prior rulings regarding disputed settlement terms:

> Brandt has not provided the defendants with an executed release through October 31, as per that ruling. Because Brandt has not complied with my earlier order, I again order his compliance.

See Third Ruling, p. 2 (Brown Decl., Ex. L); see also Defs.' Mem. at 12.  Thus, Brandt has defied this Court's orders and is in contempt of the Court – his filing of a motion to reopen the case does not alter the fact that he remains in contempt of Court and its October 31 ruling.

Moreover, Brandt does not even bother to dispute that "a court may sanction a party for failing to perform a binding settlement agreement."  Pl.'s Opp. at 10-11.  Rather, Brandt argues that he should not be held in contempt because there was no enforceable settlement agreement. Id. at 9.  However, there was a binding settlement agreement (Point I, supra), and thus, Brandt should be sanctioned for contempt.  As stated in Doi v. Halekuluni, 276 F.3d 1131 (9th Cir. 2002), the court should not "countenance a plaintiff's agreeing to settle a case in open court, then subsequently disavowing the settlement when it suits [him]."  As this Court has expressly acknowledged, Brandt needlessly multiplied these proceedings by "haggling month after month after month in what seems to be just a circular argument over and over again."  See Hearing Tr. at 20:4-6 (Brown Decl., Ex. K).  Accordingly, Brandt should be found in civil contempt.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court issue an Order:

(A) denying Brandt's Motion For Relief From Certain Orders and Rulings and To Reopen The Case; and

(B) granting Defendants' Motion to Enforce the Settlement, which includes: (i) enforcing the terms of the binding Settlement Agreement that the parties reached in open court on March 8, 2007; (ii) compelling Brandt to comply with the Settlement Agreement and the Court's Second and Third Rulings Regarding Disputed Settlement Terms which Brandt has violated and continues to violate; (iii) compelling Brandt to provide a general release to

22

Defendants dated through October 31, 2007 as ordered; (iv) holding Brandt in civil contempt of court and awarding Defendants their costs, attorney's fees and expenses incurred in attempting to enforce the Settlement Agreement and the Court's Second and Third Rulings Regarding Disputed Settlement Terms; and (v) granting such other relief that the Court deems just, proper and equitable.

Dated: New York, New York
      February 15, 2008

SATTERLEE STEPHENS BURKE & BURKE LLP

By:   _____

     Paul M. Brown (CT 23232)
     Aaron M. Zeisler (admitted *pro hac vice*)
     Justin Klein (admitted *pro hac vice*)
*Attorneys for Defendants*
230 Park Avenue
New York, New York 10169
(212) 818-9200
(203) 818-9606 fax

23

## CERTIFICATION

This is to certify that on February 15, 2008, a copy of the foregoing document was filed electronically. A true copy of the foregoing was also mailed via first class U.S. mail, postage prepaid, to:

Thomas J. Rechen, Esq.
Pepe & Hazard LLP
225 Asylum Street
Goodwin Square
Hartford, CT 06103-4302
*Counsel for Plaintiff*

Richard A. Roberts, Esq.
Nuzzo & Roberts, L.L.C.
One Town Center
P.O. Box 747
Cheshire, CT 06410
*Counsel for the Estate of Robert Salem*

_____
Aaron M. Zeisler

723747_7