UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LEONARD BRANDT | : | Civil Action No. 3:01-CV-01889 (SRU) |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| MIT DEVELOPMENT CORP., HOME DIAGNOSTICS, INC., GEORGE H. HOLLEY, and JUDY CHENG SALEM, EXECUTRIX OF THE ESTATE OF ROBERT J. SALEM | : | |
| | : | |
| Defendants | : | FEBRUARY 25, 2008 |

**PLAINTIFF, LEONARD BRANDT'S MEMORANDUM OF LAW
IN REPLY TO DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
BRANDT'S MOTION TO VACATE CERTAIN ORDERS AND RULINGS AND TO
REOPEN THE CASE, AND IN FURTHER SUPPORT OF DEFENDANTS' MOTION
TO ENFORCE THE SETTLEMENT AGREEMENT DATED FEBRUARY 15, 2008**

I.  **INTRODUCTION**

Plaintiff Leonard Brandt ("Brandt") respectfully submits this memorandum in reply to the memorandum of law filed by defendants Home Diagnostics, Inc. ("HDI") and George H. Holley ("Holley") dated February 15, 2008 (the "February 15 Memorandum"). The purpose of this memorandum is not to address every point made by Defendants in their February 15 Memorandum, but rather to address 4 specific arguments made by Defendants, which are either contrary to the record, contrary to the case law, or contrary to principles of logic, as follows:

**ORAL ARGUMENT REQUESTED**

TJR/33764/2/842843v1
02/25/08-HRT/

- Defendants' claim that Brandt has focused on only a limited portion of the March 8, 2007 transcript, and has ignored the 11:00 am portion of that transcript, is contrary to the record.

- Brandt did not have a "change of heart" or "unilaterally decide" that the terms of the "agreement to settle in principle" were "no longer binding." Rather, the parties have been completely unable to achieve the contemplated settlement using restricted HDI stock because an extended holding period was never contemplated, but is nonetheless required by the restriction that ultimately came to light.

- Either Defendants knew the restrictions on the HDI stock and the effect of those restrictions on transferability and value—and failed in their negotiations with Brandt and on the record thereafter to disclose those facts—or they did not know in which case there was a mutual mistake concerning the nature of the stock involved and its effect on the "agreement to settle in principle." Either way, this Court must grant relief from that "agreement in principle" and the orders of this Court that resulted from it.

- Brandt provided a release of all claims on trial before the Court on March 8, 2007. He cannot be compelled to release claims that were not before the Court and he cannot be held in contempt for failing to provide a release.

Finally, Defendants' February 15 Memorandum fails to address the significance of the negotiations that followed the March 8, 2007 "agreement to settle in principle," including Defendants' reduced counter-offer of $2.9 million on or about May 6, 2007.

## II. ARGUMENT

### A. Contrary to Defendants' Claims, Brandt Has Fairly Characterized The March 8, 2007 Transcript.

At pages 2 and 6 of the February 15 Memorandum, Defendants claim that Brandt "willfully" and "deliberately" ignores the 11:00 am portion of the March 8, 2007 transcript of proceedings before the Court. That claim, however highly charged with rhetoric, is a distortion of the record before this Court. Indeed, at pages 7, 8 and 30 of Brandt's January 25, 2008 memorandum of law (the "January 25 Memorandum"), he specifically cites to that

2

portion of the transcript that Defendants claim he has "willfully" and "deliberately" ignored.[1] Moreover, Brandt attached the entire March 8 transcript to the Declaration of Thomas J. Rechen, which accompanied Brandt's January 25 Memorandum.

That Brandt did not cite specifically to the exchange between Brandt and the Court where Brandt agreed to the settlement terms outlined by the Court is really of no moment. There is no question that Brandt thought he agreed to settle the case and heard and understood the terms articulated by counsel and the Court for the record. He has never claimed otherwise. But what happened thereafter manifested that the parties were mistaken in their understanding of the nature of the stock, and whether any restrictions would affect transferability and value. That is the issue here. Defendants' high-pitched protestations notwithstanding, the record does not reveal that on March 8, 2007 the parties actually understood there to be restrictions on the stock. The record does reveal, however, that there were questions concerning whether the stock, previously reported as "freely tradable," was restricted and, if so, the effect of those restrictions on the parties' "agreement in principle to settle."[2] Indeed, a review of the bolded quotations from the March 8, 2007 transcript, set forth at pages 5-7 of Brandt's January 25

---

[1] At pages 7 and 8 of his January 25 Memorandum Brandt cited to pages 14-15 and 17-18 of the March 8, 2007 transcript. At page 30 Brandt cited to page 18 of the March 8, 2007 transcript (mistakenly cited in the January 25 Memorandum as pp. 969-701).

[2] Indeed, although much of their February 15 Memorandum seems to suggest otherwise, at page 13 of their memorandum Defendants finally concede that all that was known on March 8, 2007 was that there were "possible restrictions." If all that the parties knew at that time was that there were possible restrictions, then they could not possibly understand how those unknown restrictions might affect the settlement that they were trying to achieve. That is the point of Brandt's motion for relief—the parties were mutually mistaken concerning the nature of the restrictions and how those restrictions would affect two critical components of their "deal," the final resolution of which they did not surrender to private mediation or arbitration.

3

Memorandum, shows that with respect to the status of the stock, its transferability, and the effect on value of any restrictions, there was expressed uncertainty.[3]

### B. Brandt's Counsel Made Clear In Proceedings Before The Court On March 8, 2007 That Brandt Could Not Accept An Extended Holding Period And, Thus, There Has Been No Change Of Heart, Only a Frustration Of Purpose.

At pages 1 and 4 of their February 15 Memorandum Defendants suggest that Brandt had a "change of heart" and that he "unilaterally decided that the March 8, 2007 settlement agreement was no longer binding." But the critical fact that Defendants refuse to acknowledge is that on March 8, 2007, unless they were withholding some piece of information known only to them, none of the parties were aware that the restriction they would ultimately confront required an extensive holding period, during which time there would be no protection of value as Brandt, through his counsel, made absolutely clear there needed to be:

> This is, as I said to Paul in our last conversation before I came down here, if we're settling for $3 million, Mr. Brandt is required to hold the stock for some period of time and then by the time he's able to sell it, the stock is tanked and isn't worth anything, we can't resolve it on that basis. So there's got to be some, if there's a holding period, there's got to be some protection on the value of it.

*See* Declaration of Thomas J. Rechen, **Exh. A,** TX 3/8/07, p. 6.[4] First, as counsel's comments establish, it was not clear that there was any holding period. Second, and as

---

[3] It appears that Defendants concede this point at page 2 of their February 15 Memorandum when they state that "the precise legal conditions under which [Brandt] could sell the HDI stock" was an "open issue at the time of the settlement."

[4] It is noteworthy that while Defendants repeatedly accuse Brandt of mischaracterizing and selectively citing the record, they never once acknowledge—let alone reconcile—Attorney Dunham's statement of what was not an acceptable settlement, even though Brandt clearly cited to that portion of the transcript in his January 25 Memorandum. Having made clear that he could not and would not accept such risk "absent some protection on the value," Brandt cannot be forced to accept such a settlement now. Indeed, when the entirety of the record is reviewed as the Defendants urge, it is clear that Brandt expressly rejected the very settlement that Defendants are seeking to enforce.

4

Defendants know full well, an extensive holding period was never within the contemplation of the parties; it was not part of the deal.[5] Brandt did not have a change of heart; the deal necessarily changed when the facts and law surrounding the restrictions became known. While Defendants repeatedly and forcefully argue that Brandt agreed to accept restricted HDI stock, see February 15 Memorandum, pp. 2, 8, 11, 13, 20, the record—and their citations thereto—do not bear out their claim. In fact, Defendants' citation to the Court's summary, appearing at page 20 of their February 15 Memorandum, establishes only that there was an issue to be worked out concerning "the ability to sell the stock, *what restrictions there may* be on that stock, et cetera." (Emphasis supplied). That record simply *does not* establish that Brandt agreed to accept restrictions, let alone restrictions of the kind and nature that are at issue here. And that is precisely why the parties' arbitration submissions each included non-stock proposals. Contrary to Defendants' claim at page 12 of the February 15 Memorandum, the parties shared "a common assumption about a vital existing fact on which they based their bargain' which turned out to be false." That mistaken fact concerned their belief that they could do a deal using stock that might be restricted, with the nature and effect of the possible restrictions unknown, and still achieve the parties'—and most particularly Brandt's—expressed settlement requirements. They could not because, as it turned out, there was a significant difference between doing the deal in unrestricted stock and doing the deal in restricted stock.

At page 14 of their February 15 Memorandum defendants cite *Wood v. Boynton*, 64 Wis. 265, 25 N.W. 42 (1885) for the proposition that conscious uncertainty about the value of

---

[5] Defendants' suggestion, at footnote 3 of their February 15 Memorandum, that the holding period was diminished and the volume restriction eliminated effective February 15, 2008 when the SEC revised Rule 144 is just silly. Those amendments came much too late for purposes of a deal that was to be effected as of March 8, 2007.

a stone that later turns out to be a diamond is grounds for rescission. But in that case the party seeking rescission (the seller of the stone) had the stone in her possession for a long time and had previously made inquiry into its nature and qualities. 25 N.W. at 9. She elected to sell the stone without further investigation as to its intrinsic value. As the Court stated:

> When this sale was made the value of the thing sold was open to the investigation of both parties, neither knew its intrinsic value, and, so far as the evidence in this case shows, both supposed that the price paid was adequate.

*Id.* at 11.

By contrast, the party claiming mistake here did not have possession of the stock, had no ability to investigate its nature or qualities, and under the circumstances was completely at the mercy of the defendants who had superior knowledge. And even so, counsel for Brandt made clear that if the deal required an extended holding period with no protection of value that would not work. Thus, *Wood v. Boynton* has no application to the facts before this Court.

    **C.**    **Defendants Cannot Credibly Argue That There Was No Mistake On Their Part Unless They Are Prepared to Admit That They Had Material Information Concerning The Nature Of The Stock Restrictions Which Were Not Disclosed To Brandt And To The Court On March 8, 2007.**

If there was not a mutual mistake, then the Defendants had material information that they withheld from Brandt and from the Court, misleading Brandt into the "agreement to settle in principle" and leading the Court to prematurely dismiss the jury. Defendants cannot have it both ways. They cannot credibly claim that there was no mutual mistake and at the same time profess to have made a full disclosure of what they knew concerning the nature of the HDI stock restrictions and the effect of those restrictions on transferability and value. If they were not mistaken concerning whether the stock was restricted and the nature of those restrictions,

then they knew something about the stock legend and its effect that was not known to Brandt and not disclosed to the Court on March 8, 2007. Armed with that superior knowledge, Defendants could not create uncertainty and then benefit from it by withholding information until after they had secured an "agreement to settle in principle."

### D. Defendants' Claim That Brandt Never Provided A Release And Is In Contempt For Not Providing One Must Fail.

At pages 17 and 18 of their February 15 Memorandum, Defendants continue to advance their claim that Brandt was required to release claims arising after March 8, 2007.

Brandt provided a release dated November 15, 2007, releasing all claims

> . . . which: (i) arose out of or was in any way connected with any consulting services or similar services provided to HDI, MIT Development Corp., ASC, Inc., Holley and/or the Estate; and/or (ii) and all that were asserted, or could have been asserted, in the action captioned *Leonard Brandt v. MIT Development Corp., et al.* (Civ. Action No. 3:01cv1889).

*See* Declaration of Thomas J. Rechen, **Exh. R**. That release had no temporal limitations. It was, however, limited to those claims on trial before the Court as of March 8, 2007. While Defendants may not like the scope of that release, they cannot claim that Brandt never provided a release. Nor have they cited to any agreement by Brandt to provide a broader release. Nor can they cite any legal authority requiring Brandt to release claims that were not part of the case on trial, arose after March 8, 2007, and for which no consideration was paid.

### E. Defendants' $2.9 Million Cash Settlement Offer Establishes There Was Never A Settlement Agreement.

Finally, while Defendants attack Brandt's position that there was no enforceable settlement agreement, their February 15 Memorandum is silent on the significance of the negotiations and cash settlement offer Defendants made to Brandt through counsel in May of

2007. There is no dispute that Defendants reduced the amount of consideration they were offering in settlement from $3 million to $2.9 million, as reflected in an e-mail from Attorney Dunham to Attorney Brown on May 6, 2007. *See* Declaration of Thomas J. Rechen, **Exh. G**. The fact that Defendants had no problem reducing the settlement amount to $2.9 million is proof that: 1) Defendants believed they were still negotiating a settlement in May of 2007, and were not bound to $3 million in consideration due to the problems a restricted stock deal presented; 2) there was no real meeting of the minds as to settlement on March 8, 2007, including the amount of consideration to be paid to Brandt; and 3) there was no enforceable settlement agreement. For these reasons alone, Brandt's motion should be granted.

## III.  CONCLUSION

For the foregoing reasons, and those set forth in Brandt's January 25 Memorandum and his Memorandum of Law in Opposition to Defendants Home Diagnostics, Inc.'s and George H. Holley's Motion to Enforce Settlement Agreement dated February 7, 2008, this Court must grant Brandt's Motion for Relief and deny Defendants' Motion to Enforce Settlement Agreement.

        PLAINTIFF:
        LEONARD BRANDT

By _____
        Thomas J. Rechen
        Federal Bar No. ct03385
        Pepe & Hazard LLP
        His Attorneys
        225 Asylum Street
        Hartford, CT  06103-4302
        Tel. 860-522-5175
        Fax 860-522-2796
        trechen@pepehazard.com

TJR/33764/2/842843v1
02/25/08-HRT/

## CERTIFICATION

I hereby certify that on February 25, 2008, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**COUNSEL FOR HOME DIAGNOSTICS, INC.**
**and GEORGE H. HOLLEY**
Aaron M. Zeisler, Esq.
Paul M. Brown, Esq.
Satterlee Stephens Burke & Burke, LLP
230 Park Avenue
New York, NY   10169
Tel.: 212.404.8737
Fax: 212.818.9606
Email:  azeisler@ssbb.com
Email:  pbrown@ssbb.com (sent via e-mail)

Richard A. Roberts, Esq.
Nuzzo & Roberts
One Town Center
P. O. Box 747
Cheshire, CT   06410
Tel: 203.250.2000
Fax: 203.250.3131
Email:  rroberts@nuzzo-roberts.com

_____
Thomas J. Rechen

10