28FEB08 Brandt.txt

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - x

LEONARD BRANDT                    : No. 3:01CV-1889 (SRU)
                                  : 915 Lafayette Boulevard
            vs.                   : Bridgeport, Connecticut
                                  :
                                  : February 28, 2008
MIT DEV. CORP., ET AL             :

- - - - - - - - - - - - - - - - x

MOTION HEARING

B E F O R E:

    THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.

A P P E A R A N C E S:

        FOR THE PLAINTIFF:

                PEPE & HAZARD
                    225 Asylum Street
                    Hartford, Connecticut   06103
                BY:  THOMAS J. RECHEN, ESQ.


        FOR THE DEFENDANT:


                SATTERLEE, STEPHENS, BURKE & BURKE
                    230 Park Avenue
                    New York, N. Y.   10169
                BY:  PAUL M. BROWN, ESQ.
                    AARON M. ZEISLER, ESQ.


                    Susan E. Catucci, RMR
                    Official Court Reporter
                    915 Lafayette Boulevard
                    Bridgeport, Connecticut   06604
                    Tel: (917)703-0761


                                                    2

1                  (2:00 O'CLOCK, P. M.)

2          THE COURT:  Good afternoon.

3          MR. RECHEN:  Good afternoon, Your Honor.

4          THE COURT:  We're here in the matter of Brandt

28FEB08 Brandt.txt
```
 5   versus Home Diagnostics, Inc.  Could I have appearances,
 6   please?
 7          MR. RECHEN:  Thomas Rechen for the plaintiff
 8   Leonard Brandt.  With me, Your Honor, is Mr. Brandt.
 9          THE COURT:  Thank you.
10          MR. BROWN:  Hello, Your Honor.  Paul Brown, and
11   with me is Aaron Ziesler, for the defendants Home
12   Diagnostics, Inc. and George Holley.  I understand that
13   Mr. Roberts will not be here and asked that we represent
14   his interests.
15          THE COURT:  All right, very well.  Thank you.
16          Let me begin by asking your help.  I want to
17   make sure that we have a complete record, and we had a
18   number of matters that were initially treated as private
19   matters and not docketed, and I believe all of them have
20   been attached as exhibits but I want to make sure anything
21   submitted to the court at any time in this case has been
22   included in the record.
23          MR. RECHEN:  Your Honor, the plaintiffs have
24   submitted three memoranda, one on January 25 together with
25   the motion for relief under Rule 60, together with an
```

                                                              3

```
 1   affidavit of myself that had attached to it a number of
 2   exhibits, A through W.  I believe a response then was
 3   filed on February 7 by the plaintiffs in response or in
 4   opposition to the defendant's motion to enforce the
 5   settlement agreement and for sanctions and for contempt.
 6   And then on Monday of this week, the plaintiff filed his
 7   reply memorandum relative to the opposition that was filed
 8   by the defendant to our original motion for relief under
 9   Rule 60.  So those are the three filings made by the
10   plaintiff.
```
                          Page 2

28FEB08 Brandt.txt

11          THE COURT:  Right.  What I want to be sure of is

12    that any letters or other documentation submitted to me

13    when I was acting as a mediator finds its way into the

14    file.  I expect unfortunately that this case will be

15    appealed and I want to make sure that the 2nd Circuit has

16    access to everything that I have seen, and I believe the

17    parties have attached everything that they've sent to me.

18    I just want to be sure that I haven't overlooked anything.

19          MR. RECHEN:  Your Honor, my understanding is --

20    and we certainly tried to be comprehensive in the

21    documents that were attached to the affidavit of myself

22    that was filed on January 25 -- I believe we have attached

23    certainly most if not all of the documents that were

24    before the court and I know that the motion that was filed

25    by the defendant certainly had other documents as well

4

1     attached.  I'm not aware of anything that is not in the

2     record at this point.

3           MR. BROWN:  Certainly, Your Honor.  Speaking for

4     the defendants, I believe that all of the correspondence

5     that related to your rulings which were submitted on

6     behalf of defendants HDI and Holley have been submitted.

7     I'm not sure about Mr. Roberts, whether all of those have

8     been submitted.  I believe that certainly between our

9     papers and those of Mr. Brandt's counsel, all of

10    Mr. Brandt's letters have been submitted, so the only

11    issue I have, is there anything out there from Rick

12    Roberts that has not found its way here.

13          THE COURT:  Okay.

14          MR. BROWN:  And if you'd like, we can check and

15    submit them to the court.

28FEB08 Brandt.txt
16          THE COURT:  I think that would be a good idea.
17     Thank you.

18          All right.  We have basically opposing motions,
19     motion for enforcement of the settlement, motion to
20     reopen, and motion for relief from court orders.  There is
21     also in the papers similar request that the plaintiff be
22     held in contempt, and obviously I am very familiar with
23     not only the submissions you made recently but with the
24     progress of this case, the settlement that was reached and
25     all the matters that have been discussed here.  So what

                                                                    5

1     I'd like to do is start with some questions, make sure we
2     flesh out some of these issues.

3          Mr. Rechen, let me begin with you.  From your
4     papers I get the sense that your view is that once a
5     settlement in principle has been reported to the court,
6     that the parties are not free to continue to negotiate to
7     reach a final settlement and then report that settlement
8     to the court, is that a fair statement?

9          MR. RECHEN:  I don't, I don't think it is, Your
10    Honor.  I think the point of the arguments that we've made
11    is that the negotiations that followed revealed that in
12    fact there was a mutual mistake among the parties on
13    March 8, 2007 when they reported to the court the
14    agreement in principle to settle.  What I mean by that --

15          THE COURT:  Well, let me pause right there,
16    because in your papers and again now you have used the
17    term "agreement to settle in principle" and it's obvious
18    from the transcript -- I know you weren't there, but I
19    was, and it's obvious from the transcript even if you
20    weren't there that there are two distinct periods of time
21    reflected in the transcript of March 8, 2007.  The first

28FEB08 Brandt.txt

22     is at around 9:45 when there is a report to me that
23     there's an agreement to settle in principle.  I
24     congratulated the parties, sent them off, kept the jury
25     waiting, sent them off to negotiate further to see whether

6

1      they could actually settle the case, because if they
2      couldn't actually settle the case, I was going to continue
3      trying the case.  At 11:00 o'clock, it's reported to me
4      formally on the record that the case has settled.
5      Everyone, including Mr. Brandt, expressly acknowledged
6      that.  I discharged the jury in reliance upon the parties
7      having informed me that they had settled the case, not
8      that they had reached a settlement in principle.  So I
9      don't understand the continual use of the phrase
10     "settlement in principle."  This is a settlement.  And if
11     you have evidence to the contrary, that there wasn't a
12     settlement here, then we ought to talk about that.
13               MR. RECHEN:  Well, then, Your Honor, I think I
14     do, and I guess my starting point, Your Honor, is is there
15     in fact a settlement.  Even though I recognize completely
16     everything that Your Honor just said, that there were two
17     segments to the proceedings on March 8, that in the latter
18     segment of those proceedings the parties reported they had
19     in fact achieved a settlement and there was a colloquy
20     between Your Honor and the parties, including Mr. Brandt,
21     in which there was an acknowledgement that a settlement
22     had been achieved.  But in hindsight, Your Honor, it is
23     the case that that settlement was predicated upon a mutual
24     mistake and that that mutual mistake made the settlement
25     that the parties thought they had achieved and put on the

7

28FEB08 Brandt.txt
1   record with apparent certainty on March 8, 2007, did they
2   in fact have a settlement agreement, which is why I refer
3   to --
4           THE COURT:  No, let me be clear.  If there was a
5   mutual mistake, then the settlement agreement that the
6   parties actually reached may not be enforceable but
7   there's a settlement agreement.  So I think the first step
8   is to figure out whether Mr. Brandt is acknowledging,
9   through you, that the parties settled this case.  And then
10  the second question is, or the next question is, is that
11  settlement agreement enforceable.  But I understand your
12  papers to be saying there is no settlement agreement and,
13  to be completely frank, I don't see any legal or factual
14  support for that position.
15          MR. RECHEN:  Well, Your Honor, perhaps we're
16  saying the same thing but we're approaching it from
17  different angles.  My position has been that if there is
18  not an enforceable settlement agreement, then there is in
19  fact no settlement agreement.  If there is a -- if there's
20  a mutual mistake, then there is not a settlement agreement
21  that can be enforced.
22          THE COURT:  Was a settlement agreement reached
23  by the parties at or about 11:00 o'clock on March 8, 2007?
24          MR. RECHEN:  I think it's clear that they
25  thought they had in fact reached a settlement agreement at

8

1   that time on that day.
2           THE COURT:  All right, so is that a yes?
3           MR. RECHEN:  Well, that is a yes that what was
4   reported on the record --
5           THE COURT:  Look, look --
6           MR. RECHEN:  -- I don't dispute.
                        Page 6

28FEB08 Brandt.txt

```
 7          THE COURT:  -- if you and I enter into a written
 8    contract, I'm going to buy your house, now we have a
 9    contract.  There may be a mutual mistake of fact in there
10    that prevents its enforcement but we have a contract.  So
11    my first question to you is is Mr. Brandt taking the
12    position through you today that there is no settlement
13    agreement in this case?  Or is he taking the position the
14    settlement agreement that was reached is not enforceable?
15    Because we've got two different things to look at
16    depending on what your answer is.
17          MR. RECHEN:  My position, Your Honor,
18    Mr. Brandt's position here is that Mr. -- the terms that
19    were reported to the court could not be achieved.  The
20    settlement that was reported to the court could not be
21    achieved.  The parties believed they had achieved the
22    settlement agreement, they reported those terms as they
23    understood them.  It was clear on the record at that time
24    that there was uncertainty about certain things, but there
25    was not uncertainty about two primary principles.  One,
```

9

```
 1    that $3 million in value was going to be delivered.
 2    Secondly, that if it turned out that there were
 3    restrictions on the share -- the stock that was going to
 4    be used to deliver that $3 million of value, if there were
 5    some restrictions that required a holding period, that
 6    then there was going to be protection.  So, there was $3
 7    million in value and there was to be some protection
 8    provided so that that $3 million would be delivered.
 9          To that extent, yes, Your Honor, there was a
10    settlement agreement.  And there was further an
11    understanding that to the extent that there were any
```

28FEB08 Brandt.txt
12    settlement details beyond those two terms that were stated

13    with certainty that needed to be sorted out, Your Honor's

14    good offices would be available as private mediator or

15    arbitrator to resolve those if the parties could not

16    resolve them amongst themselves.

17         To my way of looking at it, Your Honor, it is

18    two sides of the same coin here. Either that's a

19    settlement agreement but the parties were unable to

20    achieve the terms due to a mutual mistake, or because of

21    the mutual mistake, in fact a settlement agreement never

22    came into being. It seems to me, Your Honor, it doesn't

23    matter one way or the other because at the end of the day,

24    we end up in the same place, which is that regardless of

25    what the parties thought when they made this report to the                10

s

1     court on March 7, and however clearly they articulated the

2     terms that they were able to articulate, there were

3     certain uncertainties that made the two, or really the one

4     certain thing reported for the record, that $3 million in

5     value was going to be delivered to the plaintiff, Len

6     Brandt, given the unknown nature of the stock, that

7     couldn't be achieved. Len Brandt's position here --

8         THE COURT: Let me understand that, because my

9     understanding of the events as they actually unfolded was,

10    and this was following the first effort as a mediator, I

11    ordered the payment of more than $3 million in value and,

12    nevertheless, Mr. Brandt has taken the position that

13    that's not good enough and that's what I can't figure out.

14    The parties agreed $150,000 in cash at least; he got

15    600,000 in cash. The parties set the balance in

16    restrictive stock of HDI, he got more than the balance in

17    restrictive stock of HDI because of the 6 percent

Page 8

28FEB08 Brandt.txt

18    discount.  Where is the mutual mistake?

19            MR. RECHEN:  The mutual mistake, Your Honor --

20    first of all, I don't think the parties agreed that the

21    deal was going to be done in a restricted stock.  At the

22    time that the, that the agreement was reported on the

23    record, the record I think is quite clear and I'll refer

24    the court to pages two, three, five through six and eight

25    of the transcript.  Time and time again --

s                                                                    11

1             THE COURT:  That's all, all of those cites are

2     before the reported settlement.

3             MR. RECHEN:  That's true, Your Honor, but even

4     when, even in the latter segment -- first of all, I don't

5     think, Your Honor, that the transcript can -- we can read

6     the second part of the transcript without looking at the

7     first part of the proceedings on that particular morning,

8     because there were certain things that were reported

9     during the morning session that, for whatever reason,

10    didn't find their way into the afternoon session but were

11    not, but were not negated in the latter session -- I

12    should say the 11:00 o'clock session that Your Honor

13    referred to.  So that we have to look at the entirety of

14    the transcript and we have to recognize that first,

15    because even at the 11:00 o'clock hour, Your Honor, it was

16    not clear that this was going to, that this stock was

17    restricted and it certainly wasn't clear, if it was

18    restricted, what the nature of the restrictions would be.

19            THE COURT:  Well, it was completely clear it was

20    restricted.  There was absolutely no doubt about that

21    because -- I know that because during the time from 9:45

22    until 11:00, I was getting informal reports from counsel

Page 9

28FEB08 Brandt.txt
23    who were both conferring with their corporate lawyers.

24    What were they conferring about?  The nature and scope and

25    extent of the restrictions on the stock.  Absolutely

s                                                                    12

1     everybody knew the stock was restricted.  Period.  There's

2     no doubt about that.  They may not have known precisely

3     the full scope of the restrictions, but that's a very

4     different thing.

5            Moreover, if you look at page 18, which is page

6     970 of the official transcript, when I'm summarizing the

7     agreement, "The parties are going to work out the details

8     of the settlement, including what restrictions there may

9     be on that stock, et cetera.  And to the extent that they

10    can't, they've agreed that I'm going to resolve those

11    disputes."  So I really don't understand the concept that,

12    one, we somehow didn't know that there were restrictions,

13    and, two, even if there were some dispute about the

14    nature, scope or effect of those restrictions, that the

15    parties nevertheless have not settled the case by

16    referring it to me as a binding mediator.

17           There's just no question in my mind these

18    parties could have settled this case by saying simply

19    this.  Judge, we want to settle the case, we have settled

20    the case and we've settled on these terms.  You do a

21    binding mediation, we'll all abide by it.  Period.  That's

22    a settlement.  Period.  The fact that they were down to

23    the effect of certain restrictions on this stock can't be

24    a mutual mistake when they've agreed, they've acknowledged

25    the existence of those uncertainties and they've agreed

s                                                                    13

1     that those uncertainties are going to be resolved by the

2     court acting as a binding mediator.  Period.  I just don't

                              Page 10

3    understand how that isn't a binding settlement not

4    affected by mutual mistake.

5         MR. RECHEN:  Your Honor, let me start with what

6    Your Honor put on the record and read just a moment ago.

7    First of all, let me say that I obviously was not party to

8    any of the off-record conversations that occurred between

9    counsel and the corporate lawyers back in the office.  I'm

10   relying on the record here.  The record, even the record

11   that Your Honor refers to, does not make clear that there

12   are restrictions on the stock and certainly doesn't make

13   clear that the restrictions, whatever restrictions there

14   may be, what the nature of those restrictions are.  The

15   language that Your Honor referred to says, it refers to

16   which restrictions there may be on that stock.

17        THE COURT:  And just prior to that refers to the

18   ability to sell the stock.

19        MR. RECHEN:  Maybe I'm looking in the wrong

20   section.

21        THE COURT:  You're exactly right, you're exactly

22   right.  Look at the prior phrase.  Let's read the complete

23   sentence.  "Those issues were not detailed just now in any

24   great detail but they include issues such as the ability

25   to sell the stock, what restrictions there may be on that

s                                                                14

1    stock, et cetera."

2         MR. RECHEN:  That does not suggest, to me at

3    least, Your Honor, that that is a recognition that there

4    are restrictions on the stock and what the nature of those

5    restrictions are.  And that --

6         THE COURT:  Well, it may not but it was

7    completely clear to me given the representations made to

28FEB08 Brandt.txt
8    me off the record about communications with the corporate

9    counsel by both sides. And if you go back, I'm sure that

10   Wiggin & Dana will have time entries that will show

11   conference with or telephone call to some corporate

12   lawyer, and I'm sure Mr. Brown's firm has got the same

13   entries on their legal bills. Conference with, telephone

14   call to corporate lawyer. This is what was happening in

15   that intervening time. Because the settlement in

16   principle had resolved the big issues of how much money

17   and what was left was, okay, how much is the cash going to

18   be because we've got these restrictions on the stock.

19   We're going to have to sort it out. Let's figure it out.

20   So they were off making telephone calls to their corporate

21   counterparts. That's what was happen during that time.

22          MR. RECHEN: Even if that is correct, and I

23   assume that did happen, Your Honor -- I wasn't a party to

24   it, I wasn't aware of it -- but even taking that at face

25   value, it seems to me, Your Honor, we can't, we can't read

s                                                              15


1    that independent of the statement that was made by

2    Attorney Dunham on page 15, which is right, I think, right

3    before -- actually, I'm sorry, it's not page 15. Give me

4    just a moment here, Your Honor. It's on page six

5    actually.

6          THE COURT: Right, that's the early morning

7    session.

8          MR. RECHEN: It is indeed the early morning

9    session.

10         THE COURT: All right.

11         MR. RECHEN: Where Mr. Dunham makes perfectly

12   clear that if it turns out there are restrictions on this

13   stock and there is to be some holding period, there has to
                              Page 12

28FEB08 Brandt.txt

```
14   be protection on the value of it.  And that is how -- that
15   really, Your Honor, I think is the other missing piece
16   here.  Even if it were known that there was going to be
17   some restriction on the stock, one of the things that was
18   made clear is Mr. Brandt was doing this deal and
19   surrendering the risk of proceeding with the trial to get
20   in return some certainty, the certainty being $3 million
21   and that $3 million being protected in value.
22           THE COURT:  Right, and he was protected by
23   6 percent.  Now, maybe it turned out in the end that
24   6 percent wasn't enough protection but that was the result
25   of the mediation process.  He got protected 6 percent.
```

s                                                                16

```
1            MR. RECHEN:  Your Honor, without, without having
2    the stock legend, without understanding at least on
3    March 7 the full import of these restrictions and just
4    exactly what they were and how they apply, it was
5    impossible, it strikes me, for Attorney Dunham to
6    recognize on March 8 what the necessary protections were
7    going to be.
8            THE COURT:  That be may be, and what the parties
9    did at my suggestion was they agreed that if they can't
10   work out those issues, I'll decide them, and that's the
11   way things worked out.  If you look at the bottom of page
12   18, "If that informal process does not work, the parties
13   are all authorizing me to act as an, in effect a binding
14   mediator and to impose a decision on the areas of dispute
15   concerning the details of the settlement."  This is
16   immediately after we're talking about restrictions on
17   stock, et cetera, so --
18           MR. RECHEN:  Understood.
```

Page 13

28FEB08 Brandt.txt

19        THE COURT:  So, what happened here was the

20    parties acknowledged that they could not in the time

21    available with a jury sitting in the jury room reach a

22    detailed, formal, final settlement agreement in writing.

23    Instead, what they did is they put on the record, and I

24    restated on the record the terms of that settlement, which

25    included a method to resolve issues that arose.

s                                                                    17

1         MR. RECHEN:  Your Honor, I think that that

2    brings us to the question of whether or not the issues

3    that arose were of the nature that Your Honor was

4    enpowered to resolve.  Because the two things, as I said

5    earlier, the two things that the parties unequivocally

6    established was Mr. Brandt was to get $3 million in value

7    and he was to have the protection of the value.  What the

8    parties were not surrendering to Your Honor was the

9    ability to alter in any way the value that was going to be

10    delivered.

11        THE COURT:  Let me read to you what Mr. Dunham

12    said right before I summarized the parties' agreement.

13    This is on page 15, which is page 967 of the official

14    transcript.  "And we have further agreed that in the event

15    the parties are unable to come to a resolution on any

16    issues related to this stock or features of the

17    settlement, that we would come back to Your Honor, that

18    Your Honor would initially attempt to facilitate a

19    mutually agreeable resolution, and if that's not possible,

20    both parties consent to Your Honor deciding what the final

21    terms of settlement will be.  It is with our agreement

22    that Mr. Brandt is settling this case for total

23    consideration, total value of $3 million."

24        Now, what is it about Mr. Dunham's statement of

Page 14

28FEB08 Brandt.txt

s
25    the settlement terms that you think excludes any issues

1    that have come up between the parties?

2              MR. RECHEN:  It seems to me, Your Honor, that --

3    first of all, the -- well, the last sentence there I think

4    is critical because Mr. Dunham reiterates what had been

5    made clear earlier in the morning and that is that the

6    parties were agreeing to a total value of $3 million in

7    consideration.

8              THE COURT:  Right.

9              MR. RECHEN:  That was not on the table for

10   resolution by the court.  The parties had already resolved

11   that, and in Your Honor's --

12             THE COURT:  Let me just make this clear.  It

13   seems to me that what you're suggesting is there's been a

14   breach of the settlement agreement and that you've gotten

15   less than $3 million.  I think that's completely wrong.  I

16   think you got more than $3 million and if it hadn't been

17   for foot dragging, that this wouldn't have been a problem.

18   But, putting that aside, there's no, there's no reasonable

19   argument here that Mr. Brandt didn't get the value that he

20   agreed to when he settled this case.  He got more than

21   what he agreed to when he settled this case, because when

22   we came back, I required the defendants to pay interest

23   and to recalculate the stock value in light of the fact

24   that the stock price had dropped.  Mr. Brandt has gotten

25   three bites at the apple now.

s

1              MR. RECHEN:  Your Honor, here's the problem with

2    that, okay?  The value of $3 million was not achieved or

3    delivered, nor could it have been delivered in any of

Page 15

28FEB08 Brandt.txt
4    these various rulings that were made by the court given
5    the valuation method that was used, because we were always
6    focused on the day and the days, five days immediately
7    preceding the transfer of the stock.  But the settlement
8    here was that Mr. Brandt was going to get $3 million in
9    value, but he couldn't get $3 million in value if he was
10   receiving stock that was going to be restricted for a
11   period of up to two years, and that's what he was
12   receiving, which was not understood, at least not based
13   upon what's on the record, Your Honor, was not understood
14   on March 8th of 2007.

15              THE COURT:  We disagree about what the record
16   shows and we also disagree about whether he was getting
17   value or not.  This was never a $3 million cash deal.
18   Never, never, never.  And to suggest that he didn't get $3
19   million because he didn't get $3 million cash in his hand
20   is ridiculous frankly.

21              MR. RECHEN:  Your Honor, I'm suggesting that
22   while this was never a $3 million cash deal, $3 million in
23   value is equivalent to $3 million in cash.  The two have
24   to be exchangeable.

25              THE COURT:  But that -- okay, but the

s                                                                    20

1    disadvantage you're at is you were not part of the
2    negotiations.

3              MR. RECHEN:  And I recognize that.

4              THE COURT:  Because it was clear as day that
5    this case was only going to settle for that number if the
6    vast majority of the consideration was done with
7    restricted, everybody knew it was restricted, HDI stock.
8    That was from the beginning.  It was going to be $150,000
9    cash and the balance in stock, restricted stock.  Now,
                        Page 16

28FEB08 Brandt.txt

10    anybody who thinks that's equivalent to $3 million cash
11    today is either uneducated or naive, and it seems to me
12    that the defendants who ended up paying $600,000 cash and
13    were required to use a valuation method that gave
14    Mr. Brandt 6 percent downside protection, to suggest that
15    they haven't come up with $3 million of value within the
16    terms of the settlement agreement, you know, please, take
17    me up on that.
18                MR. RECHEN:  Your Honor, where I part company,
19    with all due respect, concerns the issue of the, I guess
20    it's coming back to the value of the stock and the nature
21    of the restrictions and, again, I'm limited by what is on
22    the record here, but I don't see anything that's on the
23    record that suggests that there was an understanding that
24    this stock was going to be restricted for up to a two year
25    period and it is going to be restricted for up to a two

s                                                                      21

1     year period, which turned out in fact to be the case here
2     and which clearly was not within the contemplation of the
3     parties until about an hour before they went on the record
4     on March 7.  If it was, if it was going to be restricted
5     for that length of period of time, Your Honor, then $3
6     million in value, which was one of the certain terms,
7     could not possibly be delivered unless there was some
8     mechanism put in place to protect Mr. Brandt when those
9     shares ultimately became tradeable.
10                THE COURT:  Have you inquired of Wiggin & Dana?
11                MR. RECHEN:  I've had conversations with Wiggin
12    & Dana, not with that level of detail, Your Honor.
13                THE COURT:  I think it's important that you do
14    that.  You don't want to be taking a position in court

Page 17

28FEB08 Brandt.txt
15    that's not supported by the evidence.  Period.  And let me
16    just tell you your position is not supported by the
17    evidence.  It seems to me I can find as facts things that
18    happened in front of me whether or not the court reporter
19    was taking it all down, and I can find as facts things
20    that were said to me whether or not the court reporter was
21    taking it down.  Certainly in the context of the
22    settlement, when I'm getting reports from the parties, it
23    seems to me I can make findings of fact about that, and if
24    you want to influence that in any way, I think you need an
25    affidavit from Mr. Dunham and I think what you're going to

s                                                                        22

1    find is you're not going to be able to get one that says
2    what you want it to say, because I was here, I know what
3    was happening.

4                  MR. RECHEN:  I understand that, Your Honor.
5                  THE COURT:  And it's one thing to make, you
6    know, an argument about value, but everybody knew that the
7    deal was $150,000 or more in cash and the balance of $3
8    million value in restricted HDI stock.  Period.  Everybody
9    knew that.  We didn't know if it was six months or a year
10   or a year and-a-half or two years, that may be true.  But
11   everybody knew it was restricted, Mr. Brandt included.
12   Period.

13                 And to come back now and time and time and time
14   again, I really have to tell you that what -- the part of
15   the settlement agreement that has not been given effect is
16   the peace that the defendants thought they were buying,
17   because they have incurred, I am sure, substantial
18   attorney's fees for what has amounted to, the best I can
19   say is misguided efforts to renegotiate a deal that was
20   already firmly and finally negotiated.  And, you know, I
                          Page 18

28FEB08 Brandt.txt

21    really don't have a lot of patience at this point with the
22    continued effort, and I think you need to be very careful
23    and make sure that you've got some evidence to back up the
24    arguments that you're making.
25                (Pause)

s                                                                          23

1                THE COURT:  Well, let me give you a chance to
2     make whatever further argument you want to make.
3     Mr. Rechen?
4                MR. RECHEN:  Well, Your Honor, I think in terms
5     of the, what we claim is the mutual mistake and whether or
6     not that mistake or the inability of the parties to put
7     the settlement that was reported on the record to bed was
8     within the court's power to resolve, we've addressed.  So
9     I won't belabor those points any further.
10                I will, however, focus on the issue of release
11    because the defendants have made much of the release that
12    has been delivered by Mr. Brandt.  Your Honor, the release
13    this was delivered by Mr. Brandt here was delivered by him
14    on November 15, 2007.  It was dated November 15, 2007.  It
15    was a release of all claims that arose out of or were in
16    any way connected with any of the consulting services or
17    similar services that were provided by Mr. Brandt to HDI,
18    MIT Development Corp., ASC Inc., Holley or the estate, and
19    it was also a release of all claims that were asserted or
20    could have been asserted in the action that was in, in
21    this lawsuit, in the case that was on trial on March 7 --
22    or March 8, 2007 when the parties reported their -- made
23    the report to the court.
24                That release, Your Honor, it seems to us,
25    completely fulfills Mr. Brandt's obligations.  The reason

s                                                                          24

28FEB08 Brandt.txt

1    it does is because the only claims that he was settling
2    were those that were on trial and those that had been
3    alleged in the complaint. So they've gotten the release
4    of all of Mr. Brandt's claims that were on trial.

5         Now, the defendants take the position that they
6    should be entitled to a release of claims that arose
7    thereafter and they have that concern because they know
8    that Mr. Brandt believes that Mr. Holley had material
9    undisclosed information concerning HDI's performance in
10   the second quarter that made Mr. Holley an insider,
11   potentially trading on information that was not available
12   to Mr. Brandt. If that's so, Your Honor, there was an
13   obligation on the part of the defendants to disclose to
14   Len Brandt and to the court when they made their
15   submission that information, information concerning the
16   performance of HDI during the second quarter of 2007, or
17   to have abstained from engaging in any trade or any offer
18   to use this stock in settlement of the claims that were on
19   trial in March of, of that year, of '07.

20        Now, Mr. Brandt has been unwilling to release
21   those claims, claims that had not arisen at the time that
22   the settlement was negotiated and reported to the court,
23   and claims that he was not aware of and claims that go to
24   the very heart of whether or not he has the ability or had
25   the ability to get the value that he believed was

s                                                              25

1    negotiated for on March 8th, 2007.
2         THE COURT: Was his release, November of '07
3    release, what you would describe as a general release?
4         MR. RECHEN: The answer to that I guess is yes
5    and no, it depends on the definition of general release,

                         Page 20

28FEB08 Brandt.txt

6    Your Honor.  I would define it this way.  I would call it,

7    and I was prepared to say it, I would call it a limited

8    release.  It is a release that releases all claims arising

9    out of or relating to the lawsuit.

10          Now, having said that, Mr. Brandt was perfectly

11   prepared to deliver a general release of all claims up to

12   and including March 8 of 2007.  The defendants would not

13   accept that either.  So what Mr. Brandt provided was, in

14   November was a release that released all claims that were

15   on trial and related to the lawsuit and the only claims

16   that could have been in consideration at the time that the

17   parties negotiated and reported a settlement to the court.

18          THE COURT:  Right.  Well, if you look at page 18

19   of your transcript, page 970 of the official transcript,

20   when I'm describing the settlement terms, I indicate that

21   "The parties will exchange mutual general releases,

22   meaning everybody's releasing everybody else from whatever

23   claims they may have through the day of the release."

24   Now --

25          MR. RECHEN:  Mr. Brandt was prepared to do

s                                                                        26


1    exactly that.

2          THE COURT:  He may, he may have been prepared to

3    do so but he never did.

4          MR. RECHEN:  Well, but that's because it was not

5    acceptable, Your Honor.  There was back and forth

6    concerning the releases.  They would not accept a release.

7    They would not accept a general release that released all

8    claims Mr. Brandt had from the beginning of the world to

9    March 8.  They wanted a release of claims that arose

10   afterwards.

28FEB08 Brandt.txt
11              THE COURT:  Yes, but they wanted that at a time
12    when they had been ordered to pay more consideration for
13    the settlement.
14              MR. RECHEN:  Well, Your Honor --
15              THE COURT:  This is the problem.  If the
16    settlement had been complied with at the time, then
17    Mr. Brandt would have provided a general release as of
18    March 8 or March 10 or 12, whenever he signed it, and he
19    would have gotten his money right away and we probably
20    wouldn't be here, but that isn't what happened.  And so,
21    as the binding mediator in this case, I have to decide,
22    okay, now I've got a situation where time has passed,
23    things have changed, Mr. Brandt is asking for more money,
24    in effect, and I've got to make a decision about what to
25    do about that.

s                                                                    27

1               Well, I gave him more money.  I said you're
2     going -- you still have to pay through the date of the
3     effect of the release, the effective date of release which
4     is the date that the settlement proceeds are exchanged.
5     You know, he can't have it both ways.  He can't come back
6     and get more money and at the same time expect he's going
7     to limit his release to events that predate his effort to
8     get more money.
9               MR. RECHEN:  Well, Your Honor, on the issue of
10    whether he was getting more money, I mean he was getting I
11    think the money that was agreed to on March 8 with the
12    protection of value on a going forward basis of some sort.
13    Not what he was looking for.  But the agreement that was
14    reached in settlement of the cases that were before --
15    settlement of the case that was before the court and the
16    consideration that was to be paid, however it's
                         Page 22

28FEB08 Brandt.txt

17    characterized, is still only consideration for a release

18    of claims that were known to Mr. Brandt at the time the

19    settlement was negotiated.  It seems to me, Your Honor,

20    that the court cannot order, require a party -- cannot

21    require Mr. Brandt to release claims that he has, that he

22    wasn't aware of and did not enter into any sort of

23    negotiation of the adequacy of the consideration for the

24    release of those claims, and none of this happened here.

25              THE COURT:  Well, look, at the bottom of page

s                                                                          28

1    970, which is again on your page 18, "Finally, if there

2    are details of the settlement that cannot be resolved, for

3    example, if the parties cannot agree on the terms of the

4    general releases --" and it goes on.  I will attempt to

5    resolve them informally; otherwise I am a binding

6    mediator.

7              So, one of the things that was expressly given

8    to me as a binding mediator is the terms of the general

9    releases.  I understand your argument that you don't think

10    it's fair and I heard already the defendants' arguments

11    about why it wasn't fair to make them pay more money to

12    revaluate the reconsideration for the new settlement, and

13    that's all on the record somewhere.  The point is I was

14    acting as a binding mediator.  And it came up and I said

15    the best way to resolve this is get Mr. Brandt more money

16    and have the general release that he's required to sign be

17    effective on the same date.  And, you know, that's where

18    we are.  That's what the parties authorized me to do and

19    that's what I did.

20              MR. RECHEN:  Your Honor, our position is this

21    party, and frankly neither of the parties authorized Your

Page 23

28FEB08 Brandt.txt
22    Honor to require releases of claims that had not been

23    matured, and to the extent there was any increase in the

24    value of what Your Honor was delivering to Mr. Brandt by

25    way of this binding mediation process, that did not bear

s                                                                              29

1    any relation to any negotiated resolution of claims that

2    had not yet matured as of March 8, and that was never

3    before Your Honor to resolve.

4            THE COURT:  Well, I really don't have too much

5    trouble taking the position that claims that arose out of

6    the settlement process, that is claims connected to the

7    manner in which this case was settled, come within the

8    scope of the agreement that I act as a mediator.  And if

9    you disagree, you know, let's see what the 2nd Circuit

10   says about it.  I really have no problem at all with that

11   concept.

12           MR. RECHEN:  Your Honor, if it is the case --

13   and there have not, there haven't been any formal claims

14   made and there certainly hasn't been any evidence

15   presented, but were it the case that there was a failure

16   to disclose material inside information that would have

17   caused Mr. Brandt not to do this deal or to request a

18   different settlement option and present it to the court,

19   certainly it was not his intention to release those

20   claims.  If Mr. Holley in driving his car knocked down

21   Mr. Brandt's mailbox, I mean that issue was not before the

22   court to resolve.  So a release of --

23           THE COURT:  That's always the case with a

24   general release.  You may have some claim that you're not

25   even aware exists out there --

s                                                                              30

1            MR. RECHEN:  Well, but --
                        Page 24

28FEB08 Brandt.txt

2           THE COURT:   -- that you bring against the party
3      that you're releasing --

4           MR. RECHEN:   -- the case law I think is clear
5      that, Your Honor, a party cannot release claims that have
6      not yet matured, and the agreement was negotiated on
7      March 8 of 2007.

8           THE COURT:   Right, but the agreement that was
9      negotiated included a provision that I act as binding
10     mediator to consider and resolve in a final sense and
11     frankly without appeal, any issues concerning the
12     settlement, including the terms of the general releases.
13     And it does not bother me, as I said before, that
14     Mr. Brandt, given his actions in having this case not
15     completely settle, that is, the settlement agreement not
16     be fulfilled, I have no problem with the concept that
17     something that happened during the settlement comes within
18     the scope of what was delegated to me by agreement of the
19     parties.

20          So, I understand your argument.  I'm not
21     persuaded.  It seems to me that at the time what was being
22     said was that the general release was going to be all
23     claims through the date of release, not through the date
24     of today, not through the date of settlement, through the
25     date of release.  And I actually think, for the record I

s                                                                    31

1      think I said date, D-A-T-E.  I don't think it makes a
2      difference but typical release language says from the
3      beginning of the world to the present date, and that's
4      what I intended to say but, whatever, the point is it
5      wasn't through the date of settlement, it was through the
6      date of release and --

28FEB08 Brandt.txt
 7              MR. RECHEN:  I understand, Your Honor, that's
 8    what it says.  I think it is reasonable to assume that the
 9    parties at that time thought they were going to be able to
10    wrap this settlement up quickly, and certainly the parties
11    at that time were not, Mr. Brandt certainly I don't think
12    was intending to release claims that had not matured.
13              THE COURT:  Well, you know, the only thing I
14    will say about that is it was obvious to me that there
15    were hard feelings between these parties already, that
16    there were complicated issues of corporate law potentially
17    to be resolved, and it would not -- it did not surprise me
18    and frankly one of the reasons I suggested the mediation
19    procedure was I didn't believe the parties could wrap it
20    up quickly and I thought it important to make sure we had
21    a process that was going to resolve this thing so we
22    didn't have a mistrial and come back and lose the trial
23    that we had started.
24              So, you know, we just disagree about that and I
25    think the facts, the circumstances and the manner in which

s                                                                    32

 1    this case was eventually resolved support my viewpoint on
 2    this.
 3              What other issues do you want to raise?
 4              MR. RECHEN:  Your Honor, the only other issue
 5    concerns the request that Mr. Brandt be held in contempt.
 6    They have made that request.  For the reasons that I've
 7    already stated, we believe that Mr. Brandt should not be
 8    held in contempt, cannot be held in contempt.  There is a
 9    settlement agreement that has not been performed, is based
10    upon mutual mistake.  I've laid out in my brief, the
11    various briefs the arguments in support of our position.
12    I'm not sure it makes -- I don't see that I need to repeat
                                 Page 26

28FEB08 Brandt.txt

13    what's already been stated, Your Honor.

14              THE COURT:  Mr. Brown?

15              MR. BROWN:  Your Honor, thank you.  I want to

16    address the contempt issue, Your Honor.  I just want to

17    take a moment or two to add something to the record

18    relating to something that Mr. Rechen was saying.  There

19    was never any huge mystery on July 8th and certainly not

20    on the evening -- strike that -- of March 8th, of

21    March 7th when I spoke to Mr. Dunham, we continued the

22    conversation that morning which led to the settlement,

23    that the shares were not freely transferable.  They were

24    covered by Rule 144 which had a one year holding period

25    and I think I also spelled out on the record at that time

s                                                                    33

1    one of the things we'd been concerned about was whether or

2    not Mr. Brandt would acquire the restrictions that

3    Mr. Holley and the estate had as control people and

4    insiders at the company.  I was advised and so stated on

5    the record the answer was no.  And, further, that the

6    black-out period from the IPO of the company, which was in

7    September, I think, I think September 26 of the prior

8    year, that would be terminating six months later, on

9    March 26 of this year.

10              I also told him that he could sell the stock off

11    market, and I am dismayed to see that Mr. Rechen said that

12    can't be done when there are thousands of people employed

13    in Wall Street doing nothing but buying private securities

14    like that and there's an exemption under Rule 4 of the

15    Securities Act of 1933, it's common knowledge.  I'm sure

16    Mr. Rechen has heard of private placement memoranda,

17    private sales of stock, so he was aware of that.

28FEB08 Brandt.txt
18          And I think it also ought to be stated on the
19    record that Mr. Brandt is no babe in the woods in this
20    area.  He has a Harvard MBA.  He was a partner in Norwest
21    Capital Partners, and Norwest Business was lending money
22    as a venture capital company to issuers and developing
23    them and developing an exit strategy, including doing
24    IPOs, and Mr. Brandt is no stranger to that.  His own
25    company had done an IPO while this case was going on, as

s                                                                    34

1     the court may recollect, and I'm sure he got restricted
2     stock and the legend on the stock is simply a restatement
3     of what the security rule is.  The stock can't be sold
4     except by public distribution.  It can't be hypothecated,
5     blah blah.  It's a stamp that's on every one of those
6     things in the world.  So, any notion here that he didn't
7     understand what the restriction is I must say can't be
8     honest.

9          He was told he'd be given a piggyback
10    registration right.  It's a standard agreement.  Again,
11    Mr. Brandt, if he doesn't know that, I'm surprised.  What
12    he was doing at Norwest and his other practices as an MBA?

13          So, I think the only thing that had not been
14    decided and that we had discussions on, so the record is
15    clear, is Mr. Brandt's concern, what about the down side
16    risks to the stock.  Everything else was pretty clear.
17    Everything, every single thing else, he would give up his
18    appeal, there would be an exchange in mutual releases, you
19    get at least 150,000 in cash, he'd get 2.8 million in
20    restricted stock.  All those things were resolved.  They
21    are on the record.  The only real question was Mr. Dunham
22    saying to me, well, Jack's concerned about what happens if
23    the market goes down, how am I protected on the down side,
                        Page 28

28FEB08 Brandt.txt

24    and that was something I proposed a collar to them,

25    20 percent protection on the down side.  If it goes

s                                                                    35

1    20 percent on the up side, you have to give shares back.

2    We went through a number of formulas.  That morning we

3    couldn't decide it and we both agreed that if that issue

4    couldn't really be resolved, Your Honor would -- we both

5    agreed to binding mediation of it.  That was basically

6    that and, say, the scope of the release which hadn't been

7    discussed a great deal other than it would be a general

8    release, were the only things that were really not finally

9    inked down, okay?

10            So, to say that there was a mutual mistake or

11    that we were withholding information is not true.  As a

12    matter of fact, during this period Jack Dunham said "I'm

13    not a securities lawyer, I'm speaking to my securities

14    partner at Wiggin -- and I don't know -- I don't recall

15    his name but I can tell the court he was, as the court

16    correctly noted, speaking to one of our securities

17    partners by the name of Ed Markham (ph) and he does have

18    time entries at or about that time and thereafter.  So all

19    of that was going on.  There was no, there's no two year

20    waiting period.

21            I also informed Mr. Dunham that I was told that

22    the one year holding period rule, there were bills pending

23    in Congress to cut it down from one year to six months.

24    In fact, in February it's been cut down six months, and

25    the volume restriction, which was 1 percent of the quarter

s                                                                    36

1    you can sell, has now been abandoned.  Had Mr. Brandt been

2    required to hold these shares from March through March of

Page 29

28FEB08 Brandt.txt
3    the following year, approximately one year, he would have
4    gotten rid of 98 percent of his stock in the first day
5    after the one year period expired.  To say it was a two
6    year holding period is just not accurate, just completely
7    a misunderstanding of simple securities law.

8           So, there was no mutual mistake.  This is what
9    occurred.  And the releases, as the court correctly notes,
10   was in recognition of the fact that there were additional
11   funds that had to be paid, interest about $11,000, there
12   was the shares, went from 221,000 to almost 250,000
13   shares -- I think that's right -- about 28- or 30,000 more
14   shares.  We were not happy about that and we insisted that
15   we be given a release through that date, particularly in
16   as much as Mr. Brandt was making noises about suing for in
17   effect the 10(b)(5) violation, which is a little hard to
18   understand, since you're not a stock holder, how you have
19   standing to sue for it.  We wanted it shut off, finished.

20          So, we're one year later here arguing the same
21   facts.  And I now get to the point, Your Honor, that this
22   is almost a one year anniversary, shy by about ten days,
23   of the settlement.  I really think Your Honor ordered
24   Mr. Brandt to comply twice.  It was stated on the record
25   in I think December and I think on one other occasion, and

s

37

1    Mr. Brandt has not complied.  We've had to go through
2    these motions.  The money was funded in the beginning of
3    November.  The stock was put in there during November,
4    within about ten days thereafter, after the cash was in.
5    It's made out in Mr. Brandt's name.  The company and the
6    individuals, the estate and Mr. Holley has incurred
7    significant legal fees and we think that we ought to be
8    permitted to put in an affidavit, make an application for
                              Page 30

28FEB08 Brandt.txt

9    legal fees here.  This is completely unnecessary.  It's a

10   waste of judicial resources and it's a waste of time and

11   money for the parties.

12           In addition to that, I think the court ought to

13   fine Mr. Brandt if he doesn't deliver the release as

14   requested on the order of $1,000 or $2,000 a day for every

15   day he doesn't do it.  The money is there, the stock is

16   there, and we want to be done with this and we want the

17   parties to be compensated for legal fees unnecessarily

18   occurred but for Mr. Brandt's clear refusal, conscious,

19   knowing refusal to comply with Your Honor's very fair and

20   direct orders.  I guess that's about it, Your Honor.

21           THE COURT:  Is my authority to order contempt

22   sanctions limited by the fact that the orders that he

23   failed to comply with are in the nature of mediator's

24   orders rather than court orders?

25           MR. BROWN:  No, I don't think so, Your Honor,

s                                                                38

1    for this reason.  Your Honor specifically retained

2    jurisdiction to enforce the terms of the settlement.  The

3    only way to enforce it here is to order compliance.  You

4    did order compliance, and he's failed and refused to

5    comply on several occasions.  I don't think that the fact

6    that you did a baseball arbitration with respect to those

7    issues somehow or other trumped your authority as a

8    federal judge to enforce the terms of the settlement.  I

9    don't think there's any doubt about it.

10           I think we cited some cases, Your Honor, on page

11   11 of our -- it's our brief, which says the court may

12   impose sanctions for civil contempt in the course of

13   disobedience of the court or compensate for the claim of

Page 31

28FEB08 Brandt.txt

14    losses, blah blah.  Pretty well known authorities, circuit
15    court and federal court authorities.  And willfulness is
16    also not a part of it.  There is no other way to enforce
17    Your Honor's orders other than by some kind of compulsion
18    and I think Mr. Brandt has kind of thumbed his nose and
19    said I disagree.  And what he wanted to do, as the court
20    intimated, was to say I really shouldn't have made this
21    deal, I want an all cash deal, and he's been proceeding as
22    if he wanted a $3 million payment in complete derogation
23    of the settlement he agreed to in May and the efforts of
24    this court over four rulings and having to plow through
25    all these papers.

s                                                                39

1         So I do believe Your Honor has the authority and
2    probably the duty to enforce it.
3         MR. RECHEN:  Your Honor, if I may, I haven't
4    considered whether or not Your Honor's ability to enforce
5    orders as a private mediator by way of contempt are
6    different from the authority that Your Honor has if those
7    are actually orders issued by Your Honor as a sitting
8    federal district court judge.  I would like an opportunity
9    to look at least at that issue and have an opportunity to
10   respond.
11        MR. BROWN:  May I note something further for the
12   court, please?  I'm sorry.
13        MR. RECHEN:  There was one other thing I would
14   like to note for the court also, and that is Mr. Brandt
15   indicated in the correspondence that was provided to
16   counsel, I believe in November of 2007, that he was
17   prepared to comply, although he did not agree with the
18   resolution that Your Honor had, had reached on October 31,
19   that he was prepared to comply so long as the defendants
                        Page 32

28FEB08 Brandt.txt

20    were prepared to accept the release and the changes that

21    he had made to the seven page shareholder agreement that

22    they had provided incident to the, incident to the

23    settlement, but that was not acceptable.

24            Further, Your Honor --

25            THE COURT:  That's just more negotiation.  You

40

1     can't say I'm willing to comply with the court order

2     provided you change something.

3             MR. RECHEN:  Well, I think that, Your Honor, to

4     calculate -- the view was that the calculation of the

5     shares was wrong, number one, even under the formula that

6     Your Honor had prescribed, and secondly, that -- I forgot

7     what my second point was.

8             Secondly, that he should not be required to

9     release claims, as I've already argued, that were not in

10    existence at the time he negotiated the settlement

11    agreement.  Further, Your Honor, on October 31 it was Your

12    Honor's view that both parties had failed to comply.

13            So, I think that these are all things that,

14    whether Your Honor has the authority to issue orders of

15    contempt, to enforce orders as a private mediator or as a

16    federal judge, Your Honor ought to consider all of the

17    factors at play here, including the fact that the way this

18    settlement came about, the fact that there was never a

19    discussion before March 8 of 2007 of any restricted stock.

20    Up to that time it was all considered to be freely

21    tradeable stock and it's from that event that all of the

22    rest of this unfolded, number one.

23            Number two, that as of October 31, Your Honor

24    considered both parties to be equally at fault.  Both

                    Page 33

28FEB08 Brandt.txt

25    parties had failed to perform the July 19 ruling that Your

1    Honor had issued as private mediator.

2             And, thirdly, Your Honor, that with some changes

3    to the release and with some changes to the calculation

4    that they had prepared, that Mr. Brandt in fact was

5    prepared to, even though he did not agree, he indicated in

6    writing that he was going to assent to the settlement that

7    Your Honor had ordered.  Thank you.

8             MR. BROWN:  One more point, Judge, and this is

9    with reference to your December 7th ruling where you

10    state, page two, "As of today the defendants have placed

11    cash and HDI shares into escrow for Brandt in accordance

12    with the October 31 ruling.  Brandt has not provided the

13    defendants with an executed release through October 31 as

14    per that ruling.  Because Brandt has not complied with my

15    earlier order, I again order his compliance."  And this

16    followed on our request that he be compelled to comply,

17    and at the very end you stated, "Although captioned a,

18    quote 'ruling' close quote, this decision shall be treated

19    as a private event.  This decision will be sent to the

20    parties but will not be docketed unless the parties

21    require docketing and a proceeding to enforce the

22    settlement agreement," which is what we have now.  "The

23    court will retain jurisdiction to enforce the terms of the

24    parties' settlement agreement, including those terms

25    imposed by this ruling."

1             Now, I once again think it's pretty clear the

2    court has the power to sanction here.

3             THE COURT:  All right.  Are there other matters

4    that either of you wish to raise today?

28FEB08 Brandt.txt

5           MR. BROWN:  No, Your Honor.

6           MR. RECHEN:  No, Your Honor.

7           THE COURT:  Okay.  I'm going to issue a written

8   ruling on these motions.  I don't think it's much of a

9   surprise that it's my intention to grant the motion to

10  enforce the settlement and to deny the motion to reopen

11  the case or for relief from the orders.  Frankly the

12  hardest issue here is the contempt issue, and it's

13  probably worth noting that I have never before seriously

14  contemplated entering a contempt order in any case.  This

15  one has been a complete nightmare and I have no doubt that

16  contempt sanctions would be appropriate in this case.  I

17  do have some doubt about whether procedurally they are

18  appropriate at this time and I'll take a look at that.

19          I do think, and I say this really just so people

20  can start thinking about it, one very serious respect in

21  which the settlement agreement has not been honored is

22  that there have been so many proceedings and so many

23  attorney's fees run up for what in my view was a complete

24  settlement agreement at the time and it's very, very

25  unfortunate.  My sense is that there is a very strong case

s                                                              43

1   of buyer's remorse in this matter, that Mr. Brandt has

2   been unable to let go of this case and that, whatever

3   happens, the reaction is to negotiate for more, and sooner

4   than or later that's going to come to an end.  I hope it

5   comes to an end with my ruling but I suppose we'll have to

6   see.  I will get something out to you as quickly as I can.

7           Oh, there is one formal matter I wanted to state

8   on the record.  The official transcript in this case has

9   one mistake in it that I want to bring to everybody's

Page 35

28FEB08 Brandt.txt
10    attention.  I've checked with the court reporter and I
11    think all of you will agree with me that in the context
12    it's apparent what happened here.  But at page 956 of the
13    official transcript, which appears as page four of the
14    transcript that all of you have been using, first full
15    paragraph beginning with "Let me throw out one other
16    possibility."  That paragraph was a paragraph that I spoke
17    and there is not an indication that it's from the court.
18    I think if you read down and you see where it says, line
19    12 of your version, "Then designates somebody, me, Judge
20    Garfinkel, somebody as a neutral," I think it becomes
21    obvious that paragraph is something that I said.  I intend
22    to order the official transcript to be corrected to
23    reflect that and I wanted to find out if either of you
24    have any objection.
25              MR. RECHEN:  No objection, Your Honor.

s                                                              44


1              MR. BROWN:  No objection.  That's my
2    recollection Your Honor.
3              THE COURT:  Okay.  Thank you all.  We'll stand
4    in recess.
5              (Whereupon the above matter was adjourned at 3:07
6    o'clock, p. m.)
7
8
9
10
11
12
13
14
15

28FEB08 Brandt.txt

16
17
18
19
20
21
22
23
24
25

s                                                                          45

C E R T I F I C A T E

I, Susan E. Catucci, RMR, Official Court

Reporter for the United States District Court for the

District of Connecticut, do hereby certify that the

foregoing pages are a true and accurate transcription of

my shorthand notes taken in the aforementioned matter to

the best of my skill and ability.

_____

Susan E. Catucci, RMR
Official Court Reporter
915 Lafayette Boulevard
Bridgeport, Connecticut  06604
Tel: (917) 703-0761

Page 37