UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LEONARD BRANDT | :    Civil Action No. 3:01-CV-01889 (SRU) |
| | : |
|      Plaintiff | : |
| | : |
| v. | : |
| | : |
| MIT DEVELOPMENT CORP., HOME | : |
| DIAGNOSTICS, INC., GEORGE H. | : |
| HOLLEY, and JUDY CHENG SALEM, | : |
| EXECUTRIX OF THE ESTATE OF | : |
| ROBERT J. SALEM | : |
| | : |
|      Defendants | :    MARCH 7, 2008 |

**PLAINTIFF, LEONARD BRANDT'S MOTION TO STAY RULING
AND TO FILE A SUPPLEMENTAL MEMORANDUM OF LAW**

Plaintiff, Leonard Brandt respectfully moves this Court to stay any ruling on (i) Defendants' Motion to Enforce Settlement Agreement dated January 17, 2008, and (ii) Plaintiff's Motion for Relief dated January 25, 2008, which motions were the subject of oral argument before the Court on February 28, 2008. Plaintiff further respectfully requests permission to file a supplemental memorandum of law challenging: (i) this Court's Article III authority to conduct any private arbitration or mediation, and (ii) the Court's subject matter jurisdiction to conduct or hold any proceedings regarding the resulting award, to confirm that award, or to enforce that award. Alternatively, Plaintiff will request that the Court recuse itself from any further proceedings on the ground that it cannot entertain any motions seeking to confirm or enforce its own arbitration award. Plaintiff respectfully requests until and through Tuesday, March 11, 2008 to file its supplemental memorandum.

**ORAL ARGUMENT NOT REQUESTED**

In support hereof, Plaintiff represents as follows:

1.  Pending before the Court are the following motions:

    - Defendants Home Diagnostics, Inc.'s ("HDI") and George H. Holley's ("Holley") Motion to Enforce Settlement Agreement dated January 17, 2008.

    - Plaintiff Leonard Brandt's ("Brandt") Motion for Relief From :(i) The Court's March 15, 2007 Order; (ii) The Parties' Report of an Agreement In Principle to Settle on March 8, 2007; and (iii) The Court's July 19 and October 31, 2007 Rulings Regarding Disputed Settlement Terms; and to Reopen the Case and for a New Trial.

(collectively the "Pending Motions").

2.  The Court heard oral argument concerning both motions on Thursday, February 28, 2008.

3.  Since oral argument, it has come to the attention of the undersigned counsel for Brandt that the Court may have lacked the authority to conduct any private arbitration or mediation proceedings and, further, that it lacks subject matter jurisdiction to confirm or otherwise enforce any resulting arbitration or mediation award. *See DDI Seamless Cylinder, Int'l, Inc. v. General Fire Extinguisher Corp.*, 14 F.3d 1163 (7th Cir. 1994); *Diagnostic Radiology Assocs., P.C. v. Jeffrey M. Brown, Inc.*, 193 F.R.D. 193 (S.D.N.Y. 2000); *Ovadiah v. New York Assn. for New Americans*, 1997 WL 342411 (S.D.N.Y. June 23, 1997) (copy attached as **Exhibit A**); *Hameli v. Nazario*, 930 F. Supp. 171 (D. Del. 1996); Code of Conduct for United States Judges, Canon 5(E). Further, counsel now believes, based on *DDI Seamless Cylinder*, that even if the Court had the legal authority to serve as an arbitrator, it cannot now entertain motions to confirm or enforce its own award.

TJR/33764/2/844327v1
03/07/08-HRT/

4.      Because the undersigned counsel for Brandt understands that a decision on the pending motions may be imminent, the undersigned wanted to bring these subject matter jurisdictional issues to the Court immediately, and to request a stay of the issuance of any order, decision or ruling until Brandt has had an opportunity to properly brief these matters, and the Court has had an opportunity to consider these serious issues.

5.      Brandt will be able to file his supplemental memorandum of law on Tuesday, March 11, 2008.

WHEREFORE, for the foregoing reasons, Plaintiff Leonard Brandt respectfully requests a stay of any ruling on the Pending Motions, and requests until Tuesday, March 11, 2008 to file his supplemental memorandum of law challenging the Court's subject matter jurisdiction with respect to the private arbitration/mediation proceedings conducted by the Court, the resulting award, and the continued proceedings thereon, and alternatively, requesting that the Court recuse itself from any further proceedings concerning the award.

RESPECTFULLY SUBMITTED,
PLAINTIFF:
LEONARD BRANDT


By_____
Thomas J. Rechen
Federal Bar No. ct03385
Pepe & Hazard LLP
His Attorneys
225 Asylum Street
Hartford, CT  06103-4302
Tel. 860-522-5175
Fax 860-522-2796
trechen@pepehazard.com

TJR/33764/2/844327v1
03/07/08-HRT/

## CERTIFICATION

I hereby certify that on March 7, 2008, a copy of the foregoing was filed electronically.

Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic

filing system.  Parties may access this filing through the Court's system.

**COUNSEL FOR HOME DIAGNOSTICS, INC.**
**and GEORGE H. HOLLEY**
Aaron M. Zeisler, Esq.
Paul M. Brown, Esq.
Satterlee Stephens Burke & Burke, LLP
230 Park Avenue
New York, NY   10169
Tel.:  212.404.8737
Fax:  212.818.9606
Email:  azeisler@ssbb.com
Email:  pbrown@ssbb.com (sent via e-mail)


Richard A. Roberts, Esq.
Nuzzo & Roberts
One Town Center
P. O. Box 747
Cheshire, CT   06410
Tel: 203.250.2000
Fax: 203.250.3131
Email:  rroberts@nuzzo-roberts.com

Thomas J. Rechen

TJR/33764/2/844327v1
03/07/08-HRT/

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.            FOR EDUCATIONAL USE ONLY                                    Page 1
Not Reported in F.Supp., 1997 WL 342411 (S.D.N.Y.)
**(Cite as: 1997 WL 342411 (S.D.N.Y.))**

**C**Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Isaac OVADIAH, Plaintiff,
v.
NEW YORK ASSOCIATION FOR NEW
AMERICANS, Defendant.
**Nos. 95 Civ. 10523(SS), 96 Civ. 330(SS).**

June 23, 1997.
Isaac Ovadiah, Plaintiff Pro Se 303 West 66th St.
Apartment 4HE New York, N.Y. 10023(212) 724-
5823

Richard A. Levin, Esq. Proskauer Rose Goetz &
Mendelsohn LLO 1585 Broadway New York, NY,
10036(212) 969-3670

MEMORANDUM OPINION AND ORDER

SONIA SOTOMAYOR, U.S.D.J.

*1 These employment related actions were settled
and the Court entered as an order of dismissal a
Stipulation of Discontinuance signed by the parties.
Plaintiff Isaac Ovadiah now brings this motion,
pursuant to Fed.R.Civ.P.60(b), seeking to vacate the
judgment dismissing the actions and to resume
litigation of the actions. For the reasons to be
discussed, the Court denies plaintiff's motion.

I originally referred these cases, arising from
plaintiff Ovadiah's employment termination by the
defendant, to Magistrate Judge Theodore H. Katz for
possible settlement. After several settlement
conferences, at which Ovadiah proceeded *pro se,* the
parties entered into a settlement agreement on the
record before Judge Katz on June 5, 1997. On June
7, 1996, the parties signed a Stipulation of
Settlement, and on June 12, 1997, the Court entered a
Stipulation of Discontinuance signed by the parties as
an order dismissing the actions. On June 25, 1996,
Ovadiah wrote to the Court seeking leave to rescind
the settlement agreement and vacate the dismissals of
the actions, alleging that he had been coerced into
signing the Stipulation of Settlement and that a letter
drafted by the Magistrate Judge pursuant to the terms

of that Stipulation did not comport with Ovadiah's
understanding of what Magistrate Judge Katz had
promised would be in the letter.

Following Ovadiah's motion to vacate, I again
referred the cases to Magistrate Judge Katz for a
report and recommendation. In a Report and
Recommendation dated an October 22, 1996 (the
"Magistrate Judge's Report"), Magistrate Judge Katz
recommended that Ovadiah's motion to vacate the
dismissals be denied.

Based on my *de novo* review of the record, including
the submissions of the parties and the Magistrate
Judge's Report, I deny the plaintiff's motion to vacate
the dismissals.

BACKGROUND
Defendant, New York Association for New
Americans ("NYANA"), a not-for-profit corporation
engaged in refugee resettlement and related services
to refugees, employed the plaintiff Ovadiah as a
translator, from October 1992 to April 1994. On
April 12, 1994, NYANA discharged Ovadiah from
his position allegedly because Ovadiah had engaged
in inappropriate conduct toward a client by loudly
screaming out confidential mental health information
about the client.

Local 215, District Council 1707, Community and
Social Agency Employees Union, AFSCME, AFL-
CIO (the "Union") represents NYANA's non-
managerial employees, including Ovadiah, for
purposes of collective bargaining. On Ovadiah's
behalf, the Union grieved NYANA's decision to
discharge Ovadiah, and, ultimately, submitted the
matter to arbitration under the grievance arbitration
provisions of the collective bargaining agreement.

On July 8, 1995, the Arbitrator issued his decision,
finding that Ovadiah was guilty of the charges
against him, and was a troublesome employee who
was difficult to supervise and lacked respect for basic
rules. Nevertheless, the Arbitrator found that
although severe disciplinary action was warranted,
discharge from employment was too harsh a
penalty. The Arbitrator required that NYANA

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                    FOR EDUCATIONAL USE ONLY                         Page 2
Not Reported in F.Supp., 1997 WL 342411 (S.D.N.Y.)
**(Cite as: 1997 WL 342411 (S.D.N.Y.))**

reinstate Ovadiah with seniority, but found that the approximately fifteen months from the date of discharge to the date of reinstatement were an appropriate disciplinary suspension without pay.

*2 In the intervening period between the date of discharge and the arbitration award, NYANA experienced a precipitous drop in its flow of Syrian clients. As a result, NYANA reduced its work force by approximately 40%. NYANA laid off employees in Ovadiah's unit in seniority order, and translators with more seniority than Ovadiah were laid off before the date of the arbitration award. After the arbitration award, NYANA informed Ovadiah that there was no position available for him to which he had a contractual right by virtue of his seniority. NYANA maintained that even if Ovadiah had not been terminated, he would have subsequently lost his job as the result of the downsizing. Ovadiah was not reinstated, and NYANA paid Ovadiah severance pay for his accrued service through April 1994.

Ovadiah then brought an action *pro se* in Supreme Court, New York County, seeking to vacate so much of the arbitration award as held that he should be suspended without pay for the fifteen-month period between his initial discharge and the award, and seeking to confirm and enforce only that portion of the award as directed that he be reinstated. NYANA, pursuant to § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), removed the action (95 Civ. 10523) to this Court.

I referred this case to Magistrate Judge Katz for possible settlement. Subsequently, Ovadiah brought a related action in this Court against NYANA, alleging discrimination based upon Ovadiah's religion and religious practices (96 Civ 330).

### THE SETTLEMENT PROCESS

Unless otherwise indicated, the following undisputed facts are found in the Magistrate Judge's Report.

The parties attended their first settlement conference with Magistrate Judge Katz on May 5, 1996. At that conference, as at all subsequent conferences, the Magistrate Judge advised the parties that they were under no obligation to settle, and that the Magistrate Judge's role was primarily that of a facilitator of the settlement process. While strenuously denying any liability, NYANA expressed interest in reaching a

global resolution of all of Ovadiah's pending and threatened cases. Ovadiah had secured new employment and also expressed an interest in settling.

After several settlement conferences, on June 5, 1997, the parties agreed to the terms of a settlement on the record before Magistrate Judge Katz. The specific terms of the agreement were to be kept confidential. NYANA agreed, *inter alia,* to pay Ovadiah a specified amount of money in settlement of all of Ovadiah's claims, but Ovadiah was permitted to preserve his administrative appeal of the denial of his unemployment benefits.

Ovadiah wanted NYANA's assistance in overturning the denial of his unemployment benefits. At first, NYANA declined to do anything at all, both because it viewed the denial as appropriate in light of Ovadiah's serious misconduct and because NYANA would incur additional financial consequences if Ovadiah was awarded unemployment benefits. NYANA ultimately agreed, however, not to oppose Ovadiah's administrative appeal and to send a letter on Ovadiah's behalf to the New York State Unemployment Insurance Appeal Board ("Appeal Board") stating that NYANA took no position with respect to the merits of the appeal. Ovadiah, on the other hand, wanted a letter effectively saying that NYANA thought Ovadiah was entitled to benefits. The parties agreed on the terms of the settlement, but could not agree on the exact text of a letter to the Appeal Board.

*3 At Ovadiah's suggestion, the parties agreed during the June 5th conference, and in the Stipulation of Settlement later signed by the parties, that if they could not agree on the text of a letter to the Appeal Board, each would submit a version of a letter to Magistrate Judge Katz and have Magistrate Judge Katz write a compromise letter. Magistrate Judge Katz made clear

> that while I would make a good faith attempt not to draft a letter that was not clearly inconsistent with either party's stated position, there could be no assurances as to what the letter would say or what its impact on the appeal board would be.

Report at 7. Ovadiah now insists, however, that the Magistrate Judge promised to draft a letter "beneficial" to him. Ovadiah's June 25, 1996 Letter to the Court.

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                    FOR EDUCATIONAL USE ONLY                                    Page 3
Not Reported in F.Supp., 1997 WL 342411 (S.D.N.Y.)
(Cite as: 1997 WL 342411 (S.D.N.Y.))

Because Ovadiah had expressed a sense of urgency about receiving the monetary settlement, defense counsel agreed to draft the necessary settlement agreement and stipulation of dismissal and submit them to Ovadiah and the Magistrate Judge the following day, June 6, 1996. Defense counsel also represented that NYANA would provide the settlement check within three business days of Ovadiah's signing the necessary documents. Because defense counsel was going out of town at the end of the week, he gave Ovadiah the option of signing the agreement papers by Friday, June 7, and receiving the check the following Wednesday, or signing the papers after defense counsel's return in two weeks.

On June 6, 1996, defense counsel faxed Ovadiah and the Magistrate Judge a proposed Stipulation of Settlement and Stipulation of Discontinuance, each of which was consistent with the settlement agreement reached on the record before the Magistrate Judge. The parties also exchanged draft letters to the Appeal Board by fax, but could not agree on a compromise.

On June 7, 1996, Ovadiah and NYANA signed the Stipulations of Settlement and Discontinuance at defense counsel's office, but were still unable to agree on the text of a letter to the Appeal Board. Ovadiah also wanted other changes to the agreement to which defense counsel would not consent. Defendant's Memorandum of Law in Opposition to Plaintiff's Opposition to the Report of the Magistrate Judge, at 6. Defense counsel again offered Ovadiah the option of waiting until his return to continue discussions. *Id.,* Ovadiah maintains he was presented with a " 'take it or leave it' offer," in which he was forced to sign the Stipulation of Settlement under the duress of defense counsel leaving for a number of weeks. Ovadiah's June 25, 1996 Letter to the Court. Ovadiah did sign the Stipulation of Settlement, a document for which he had, by his own concession, at least 2-3 hours to read. Ovadiah's November 25, 1997 letter to the Court, at 2.

The Stipulation of Settlement expressly provided that:

7. NYANA shall direct its counsel to send a letter to the New York State Unemployment Board advising the Appeal Board that NYANA does not take any position concerning the merits of Mr.

Ovadiah's appeal concerning his claim for unemployment insurance benefits. In the event that the parties cannot agree to the text of the such letter, United States Magistrate Judge Theodore Katz will review the parties' proposed letters and direct counsel for NYANA as to the form and content of the letter to the Appeal Board. The parties further agree that they will each be bound by the determination of the Unemployment Insurance Appeal Board, and that no further appeal of the determination of the Appeal Board will be taken by or on behalf of either party.

*4 As agreed, the parties submitted their draft letters to the Magistrate Judge, and Magistrate Judge Katz drafted a letter based on the parties' submissions and his understanding of the parties respective positions regarding the letter as expressed during the settlement conferences. On June 7, 1996, the Magistrate Judge faxed a copy of a letter to both parties and instructed defense counsel to have it typed on defense counsel's letterhead and sent to the Appeal Board for Ovadiah.

On June 7, 1996, after the Magistrate Judge had sent a fax of the letter to him, Ovadiah called the Magistrate Judge to express his concern regarding the procedure for NYANA sending the letter. Ovadiah sought assurance that defense counsel would send Magistrate Judge Katz's version of the letter to the Appeal Board. In response, the Magistrate Judge had defense counsel send the letter (typed on defense counsel's letterhead and signed) to Magistrate Judge Katz's chambers, allowing the Magistrate Judge to check the letter for accuracy and mail it from chambers. Ovadiah also requested assurance that the letter was sent by the Magistrate Judge and received by the Appeal Board. Complying with Ovadiah's request, the Magistrate Judge sent the letter to the Appeal Board by certified mail return receipt requested and provided Ovadiah with a copy of the receipt.

Thinking the case was settled, Magistrate Judge Katz sent the signed Stipulation of Settlement and Stipulation of Discontinuance to this Court and the Court on June 12, 1996, entered the Stipulation of Discontinuance as an order dismissing the actions.

The following Monday, Ovadiah called the law clerk of the Magistrate Judge to express that although he did not agree with the letter the Magistrate Judge had

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.          FOR EDUCATIONAL USE ONLY                              Page 4
Not Reported in F.Supp., 1997 WL 342411 (S.D.N.Y.)
(Cite as: 1997 WL 342411 (S.D.N.Y.))

drafted, he appreciated the time and effort the Magistrate Judge Katz had expended in helping to settle the case. Thereafter, Ovadiah timely received his check for the monetary settlement.

On June 25, 1996, Ovadiah moved to vacate the judgments of dismissals, pursuant to Fed. R. Civ. Pro. 60(b). Although expressing no dissatisfaction with the terms of the settlement agreement, Ovadiah had decided that the letter drafted by Magistrate Judge Katz did not adequately support his unemployment insurance appeal in the manner Magistrate Judge Katz had agreed to do, and argued, therefore, that the Stipulation of Settlement should be rescinded and the actions reopened. Additionally, Ovadiah claimed that he did not have sufficient time to review the Stipulation before signing it and that he was under duress when he signed the Stipulation of Settlement.

I referred Ovadiah's motion to vacate the dismissals to Magistrate Judge Katz for a report and recommendation. In his October 22, 1996 Report, Magistrate Judge Katz gave a full account of what had happened during the settlement process and recommended that Ovadiah's motion to vacate be denied.

Based upon my *de novo* review of the record, including the submissions of the parties and the Magistrate Judge's Report, I find that the Stipulation of Settlement accurately represents the terms agreed to by the parties, that Ovadiah was not coerced into signing the Stipulation, that the letter drafted by Magistrate Judge Katz was within the intentions of the parties as expressed in their settlement agreement, and that the Magistrate Judge did not exceed his authority in drafting the letter at the parties' request. In short, I find no extraordinary circumstances justifying the vacatur of the dismissals. Accordingly, I deny plaintiff's motion to vacate.

## DISCUSSION
*De Novo Standard of Review*

*5 I referred this action to Magistrate Judge Katz for settlement and, subsequently, for a Report and Recommendation, pursuant to 28 U.S.C. 636(b)(1)(A). This Court, therefore, retains jurisdiction over the case and because plaintiff has objected to the Report, the Court has conducted a *de novo* review upon the record, including the

submissions of the parties and the Magistrate Judge's Report.

*Standard for Vacating a Judgment*

Fed.R.Civ.P. 60(b) sets forth the grounds on which a court, in its discretion, can vacate or amend a final judgment or order. It provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence ...; (3) fraud ..., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged ...; or (6) any other reason justifying relief from the operation of the judgment.

Rule 60(b) "strikes a balance between serving the ends of justice and preserving the finality of judgments." *Nemaizer v. Baker,* 793 F.2d 58, 60 (2d Cir.1986) (citations omitted). "[f]inal judgments should not be reopened lightly," and Rule 60(b) should be invoked "only on a showing of exceptional circumstances." *Id.* at 61. Moreover, "[t]hat a litigant is *pro se,* standing alone, is an insufficient basis for relief under Rule 60(b)." *Colon v. LeFevre,* No. 85 Civ. 313, 1989 WL 131324, at *2 (N.D.N.Y.1989) (citing *Salter v. Hooker Chem., Durez Plastic & Chem. Div.,* 119 F.R.D. 7, 9 (W.D.N.Y.1988)). As noted in the Report, Subsections (1), (3) and (6) are the only sections arguably relevant in this case.

Relief under Rule 60(b)(1) for an error constituting mistake, surprise, inadvertence or excusable neglect "was not intended to relieve a litigant from the consequences of ... a conscious decision, however unwise the decision may be in retrospect." *Parrilla-Lopez v. United States,* 841 F.2d 16, 20 (1st Cir.1988); *see also Nemaizer,* 793 F.2d at 62 ("[m]ere dissatisfaction in hindsight with choices deliberately made" does not provide relief under Rule 60(b)(1).) Ovadiah is well-educated and fully capable of expressing his position. He has not shown himself either before the Magistrate Judge or this Court as incapable of understanding his rights. He has freely expressed his demands and views and actively negotiated the settlement agreement with NYANA, using a legal adviser when he thought it was

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                   FOR EDUCATIONAL USE ONLY                          Page 5
Not Reported in F.Supp., 1997 WL 342411 (S.D.N.Y.)
(Cite as: 1997 WL 342411 (S.D.N.Y.))

necessary during the settlement conference process. After several settlement conferences with Magistrate Judge Katz, Ovadiah agreed to the terms of the settlement agreement in open court. That, in itself, is enough to bind him to the terms of the agreement and undermine any claim by him of mistake or surprise under Rule 60(b)(1). *See Willgerodt v. Hohri,* 95 Civ. 6363(MGC) (S.D.N.Y.1997).

*6 In *Willgerodt,* a *pro se* defendant orally stipulated her agreement to the terms reached during a settlement conference before a magistrate judge. She later had a change of mind and would not sign the written agreement, claiming she had been pressured into agreeing to the terms. After a review of the record, the Court found that the Magistrate Judge had encouraged the parties to settle, but did not unduly pressure or coerce the defendant. The plaintiffs motion to confirm the oral settlement agreement was granted. *Willgerodt* at 5- 8. After negotiating the agreement in court, placing the agreement on the record, and showing no reason why he did not understand what he was doing, Ovadiah is foreclosed from arguing that he entered the settlement by mistake. Relief under Rule 60(b)(1) is, therefore, not available to plaintiff.

Ovadiah also alleges, however, that he was under duress when he signed the Stipulation of Settlement. Specifically, he claims he did not have enough time to review the Stipulation before signing it, that he had no opportunity to consult with counsel, and that he was coerced into the "take it or leave it" Stipulation of Settlement. This argument is completely unpersuasive. As previously noted, Ovadiah had by his own admission, at least 2-3 hours to read the seven page, double spaced Stipulation. Ovadiah has not explained how the Stipulation of Settlement differed from the terms to which he agreed on June 5, 1996 before the Magistrate Judge. Ovadiah has also not explained how the defendant's "take it or leave it" attitude forced him to sign the Stipulation of Settlement. By his own admission, he had the choice to "leave" the settlement agreement and continue in his litigation. Under these circumstances, whatever duress existed, if any, was of plaintiff's own making. Relief pursuant to Rule 60(b)(3) for the adversary's misconduct is, therefore, also not available.

Rule 60(b)(6), which permits relief from a judgment

for any other equitable reason, is "properly invoked only when there are extraordinary circumstances justifying relief ... when the judgment may work an extreme and undue hardship ... and when the asserted grounds for the relief are not recognized in clauses (1)-(5) of the Rule." *Nemaizer,* 793 F.2d at 63. Ovadiah has failed to demonstrate extreme and undue hardship entitling him to relief under Rule 60(b)(6). In fact, after having negotiated and settled in good faith, granting vacatur would be an injustice to defendant NYANA. NYANA not only paid Ovadiah his settlement monies relying under the Stipulation of Discontinuance, but Ovadiah also induced NYANA's attorneys to send the Appeal Board a letter in which NYANA took no position with respect to Ovadiah's appeal when absent the settlement, NYANA would have actively opposed Ovadiah's appeal. Ovadiah's appeal is still pending and NYANA is at risk for a potential outcome that it believed unwarranted absent the settlement. For the reasons to be discussed, I do not credit Ovadiah's claim that the Magistrate Judge breached a commitment to him in any way. As such, I find no ground in equity under Rule 60(b)(6) to vacate the dismissals entered in this action.

*The Letter to the Appeal Board*

*7 The essence of Ovadiah's complaint is that the compromise letter drafted by Magistrate Judge Katz did not sufficiently favor Ovadiah's unemployment insurance appeal as he understood Magistrate Judge Katz would do. Ovadiah's January 23, 1997 Letter to the Court. When asked by this Court what he expected Magistrate Judge Katz to do in compromising the parties' positions, plaintiff has explained that he wanted a letter stating the following:

> We now conclude that Mr. Ovadiah's reported breach of confidentiality was not serious enough to warrent (sic) the penalty of discharge. Moreover, at a recent arbitration hearing, the arbitrator concluded that the discharge of Mr. Ovadiah on the basis of gross misconduct was improper. Therefore, we consider that his actions may have been nothing more than casual poor judgment.

*Id.*

The letter Ovadiah says he expected the Magistrate Judge to send was nothing less than a shortened version of his own proposed letter. Ovadiah's originally proposed letter stated:

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.          FOR EDUCATIONAL USE ONLY                          Page 6
Not Reported in F.Supp., 1997 WL 342411 (S.D.N.Y.)
**(Cite as: 1997 WL 342411 (S.D.N.Y.))**

We represent the New York Association of New Americans, the former employer of the claimant listed above. NYANA takes No [sic] position on the merits of the appeal in this matter. However, in retrospect, we have reviewed the facts and circumstances regarding Mr. Ovadiah's separation from employment. Based upon our review of the July 8, 1995 Arbitrator's Award, which sustained the grievance, we have reconsidered the facts at issue.

We now conclude that Mr. Ovadiah's reported breach of confidentiality was not serious enough to warrant the penalty of discharge. We have since learned that many of our employees who are authorized to receive confidential information, routinely exchange confidential information among themselves, as a team approach to learning. To our knowledge, no other employee has ever received a warning or a penalty for those actions. Therefore, we considered that his actions may have been Nothing [sic] more than poor judgment.

Magistrate Judge's Report, Exhibit C.

The NYANA's proposed letter in turn offered to say only that:

We are the attorneys representing New York Association for New Americans, the former employer of the Claimant in this appeal.
Please be advised that our client takes no position with regard to the merits of the issues pending on appeal.

Magistrate Judge's Report, Exhibit B.

The letter drafted by the Magistrate Judge instead said:

We are the attorneys representing New York Association for New Americans, the former employer of the Claimant in this appeal.
Please be advised that our client takes no position with regard to the merits of the issues pending on appeal. However, we have reviewed the facts and circumstances regarding Mr. Ovadiah's separation from employment. Based upon our review of the July 8, 1995 Arbitrator's Award, we accept the fact that the arbitrator disagreed with the level of discipline imposed and converted Claimant's termination into a suspension. We recognize that there may be differences of opinion as to the seriousness of, and appropriate disciplinary

response to, the conduct that led to the Claimant's discharge from employment.

Magistrate Judge's Report, Exhibit D.

*8 This Court finds that the letter drafted by the Magistrate Judge was well within the expectations of the parties and within the express terms of Paragraph 7 of the Stipulation of Settlement in which NYANA undertook only to send a letter that did not take a position with respect to the merits of plaintiff's appeal. Plaintiff's own proposed letter to the Magistrate Judge, Exhibit C to the Report, underscored that plaintiff understood that NYANA would not take a position on the merits of plaintiff's appeal. What plaintiff now says he expected from Magistrate Judge Katz is expressly contradicted by his own proposed letter to the Magistrate Judge and by the Stipulation of Settlement.

As noted in the Report, Ovadiah's proposed letter to the Magistrate Judge and his "suggested compromise" to this Court, would have required the Magistrate Judge to misstate facts or set them forth in a misleading manner. Ovadiah's suggestion that the Magistrate Judge should have had the defendant's admit that plaintiff's conduct did not warrant discharge, contradicted the very essence of the defendant's position that it would take no position on the merits of plaintiff's appeal. Further, Ovadiah's proposed letter leaves the clear but false impression that the arbitration award exonerated Ovadiah. Instead, the arbitrator expressly concluded that "[t]here is no doubt in my mind that the Grievant is guilty of the charges against him and that severe discipline is warranted." Arbitration Award, dated July 8, 1995, attached as an exhibit to the Complaint in *Ovadiah v. NYANA,* 96 Civ. 330 ("Arbitration Award"), at 6. The arbitrator further concluded that Ovadiah's breach of confidentiality was "severe" and was "uncalled for," that none of Ovadiah's testimony at the arbitration was worthy of belief, and that Ovadiah was a "troublesome employee who is very difficult to supervise." *Id.* at 7 and 8. The arbitrator nevertheless ruled that the approximately fifteen months between Ovadiah's dismissal and the date of the arbitration award were a disciplinary suspension without pay.

In short, In his draft of the letter, Magistrate Judge Katz reached a reasonable compromise of the parties'

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.          FOR EDUCATIONAL USE ONLY                    Page 7
Not Reported in F.Supp., 1997 WL 342411 (S.D.N.Y.)
(Cite as: 1997 WL 342411 (S.D.N.Y.))

positions.  Magistrate Judge Katz's letter was at worse neutral, and as beneficial to Ovadiahas it could be given NYANA's position that it would take no position with respect to the merits of plaintiff's appeal.  Ovadiah could not have expected more, and his conduct immediately after the letter was sent, confirms this expectation.

*Plaintiff's Ratification of the Compromise Letter*

Magistrate Judge Katz faxed the draft letter to both parties for review before it was sent to the Appeals Board.  Magistrate Judge's Report, Exhibit A, at 12.  Upon receiving the fax, Ovadiah had an opportunity to review the letter before it was sent to the Appeal Board, and could have objected to the letter then.  Not only did Ovadiah not object to the text of the letter, but he insisted upon receiving assurance that the letter, as drafted by Magistrate Judge Katz, would, in fact, be sent to the Appeal Board.  By his actions, Ovadiah approved the letter as drafted and ratified the Magistrate Judge's action.  Ovadiah is equitably estopped from now trying to undo the settlement after he induced NYANA to send a letter relinquishing its opposition rights to plaintiff's appeal based upon the settlement.

*The Authority of the Magistrate Judge*

**\*9** Because Ovadiah's primary complaint is with the letter drafted by the Magistrate Judge, this Court has reviewed *sua sponte* whether the Magistrate Judge had the authority to draft the compromise letter at the request and upon the consent of the parties.

The Federal Magistrate Judge's Act (the "Act"), 28 U.S.C. § 636, gives the district court broad discretion in the delegation of duties to magistrate judges.  Upon consent of the parties, a magistrate judge "may conduct any and all proceedings in any civil case which is filed with the court ... and may order the entry of a final judgment."  28 U.S.C. § 636(c).  Indeed, § 636(b)(3) of the Act states in pertinent part: "A magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States."  Congress has encouraged district judges to "experiment in the assignment of ... duties to magistrates" and to otherwise engage in "innovative experimentation in the use of [magistrate judges]."  *Denny v. Ford Motor Co.,* 146 F.R.D. 52, 55 (N.D.N.Y.1993) (citing

legislative history from the 94th Cong., 2d Sess. (1976)).  The Act is silent, however, whether a magistrate judge can serve like an arbitrator for parties in doing such tasks as writing a compromise letter based on the record and the submissions of the parties.  Similarly, the local rules for the Southern District of New York are silent as to the limits of a magistrate judge's authority to act within the settlement context.  Finally, there are no cases in the Second Circuit dealing with this issue.

The two cases that address the issue of arbitration by a magistrate judge suggest that a magistrate judge might be acting ultra vires in serving as an arbitrator.  *See **DDI Seamless Cylinder v. General Fire Extinguisher, 14 F.3d 1163, 1165-66 (7th Cir.1994)*** ("Federal statutes authorizing arbitration, ..., do not appear to authorize or envisage the appointment of judges or magistrate judges as arbitrators....");** *Hameli v. Nazario,* 930 F.Supp. 171, 180-181 (D.Del.1996) ("Arbitation is not in the job description of a federal judge, including a magistrate judge.")  Nevertheless, both these cases recognize that innovative techniques in resolving disputes among partes is well within the functions of a magistrate judge.  *See DDI Seemless,* 14 F.3d 1166; *Hameli,* 930 F.Supp. at 180-81.

In the District of Delaware, for example, Local Rule 72. 1(a)(1) authorizes magistrate judges to "conduct various alternative dispute resolution processes, including but not limited to judge-hosted settlement conferences, mediation, *arbitration,* early neutral evaluation, and summary trials (jury and nonjury)."  District of Delaware, Local Rule 72.1(a)(1) (emphasis added).  The *Hameli* court avoided addressing the constitutionality of this Rule by finding that the federal court lacked subject matter jurisdiction over the issues addressed by the magistrate judge in the case before it and as such, that the magistrate judge's acts in that case, like those of a district court who acts without subject matterjmrisdiction, were voidable.  *Hameli,* 930 F.Supp. at 180, 183- 84.

**\*10** The Seventh Circuit in ***DDI Seemless*** avoided the knotty question of declaring the acts of its magistrate judge ultra vires by characterizing the magistrate judge's actions in the case as based upon the consent of the parties to simplify the procedures for adjudication of the dispute between the parties

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.              FOR EDUCATIONAL USE ONLY                                    Page 8
Not Reported in F.Supp., 1997 WL 342411 (S.D.N.Y.)
**(Cite as: 1997 WL 342411 (S.D.N.Y.))**

with a waiver of appeal. ***DDI Seemless* 14 F.3d at 1165-66**. The Seventh Circuit viewed the decision by the magistrate judge as a final judgment, entered pursuant to 636(c), subject to a waiver of appeal. *Id.*

The United States Supreme Court takes a very broad view of Congress's intent regarding § 636(b)(3). Unlike the Seventh Circuit, I do not necessarily view as "weird" the "spectacle" of a district court judge sitting in review of an "arbitration award" entered by a magistrate judge upon the consent of the parties. *DDI Seamless* 14 F.3d 1168. District Court judges frequently sit in review of the decisions of magistrate judges, which is the essence of the appeal process set forth in Section 636. Section 636 does not expressly foreclose arbitration by a magistrate judge as a possibility. The Act is silent as to the authority of a magistrate judge to conduct *voir dire* in a criminal trial but in *Peretz v. United States*, 501 U.S. 923 (1991), the Supreme Court held that magistrate judges do have the authority to conduct *voir dire* in a criminal trial, pursuant to the "additional duties" clause § 636(b)(3) of the Act. *Id.* at 934-35. The Supreme Court's decision followed the reasoning of the Second Circuit in *United States v. Musacchia*, 900 F.2d 493, 501 (2d Cir.1990) (in the absence of an objection by either party, it is not clear error for a magistrate judge to conduct the *voir dire* in a felony trial pursuant to § 636(b)(3)); *see also Denny v. Ford Motor Co.*, 146 F.R.D. 52, 56 (N.D.N.Y.1993) (Congress has encouraged federal judges in Section 636 to "experiment" and "innovate" in assignments to magistrate judges). By analogy, arbitration by a magistrate judge, upon the consent of the parties, may be equally permissible under the "additional duties" clause. As noted in *Denny*, magistrate judges are not Article III Judges and their jurisdiction is created by statute. *Denny*, 146 F.R.D. at 55. Accordingly, the broad reach of Section 636 might serve as a basis for a magistrate judge acting as an arbitrator. Nevertheless, as noted in ***DDI Seamless***, there is inherent difficulty in and serious potential problems with having judicial officers step out of their traditional adjudicatory functions. Arbitrations by magistrate judges should be avoided.

I like the Delaware District Court and the Seventh Circuit, however, do not need to address whether the magistrate judge in this case acted ultra vires. At Ovadiah's suggestion, the Magistrate Judge agreed to draft the compromise letter. The parties authorized the Magistrate Judge to do so in open court and gave their written consent by signing the Stipulation of Settlement. Further, Ovadiah had an opportunity to review the letter before it was sent to the Appeal Board, and to raise an objection then. Ovadiah did not timely object to the text of the letter and he accepted the benefits of the settlement agreement by accepting the letter. Accordingly, he waived any right he had to object to the magistrate judge's actions. Under the facts of this case, I, like the Seventh Circuit, prefer to view this case as an adjudication by the Magistrate Judge of the dispute between the parties concerning the letter to be sent to the Appeal Board and a waiver of appeal by Ovadiah by his commitment to dismiss the actions with prejudice.

*11 The case was properly under the jurisdiction of the magistrate judge, the Stipulation of Settlement and Stipulations of Discontinuance were approved by this Court, and the dismissals entered by this Court. A *de novo* review upon the record by this Court has affirmed the Magistrate Judge Katz's Report and has found that the Magistrate Judge's actions were not erroneous. In short, I hold that the Magistrate Judge acted within the scope of his authority and within the expectations and understandings of the parties. For the reasons previously discussed, I do not accept Ovadiah's current contentions that the Magistrate Judge failed to act as he promised or that Ovadiah had reasonable grounds to expect something different from the Magistrate Judge. I find that Ovadiah has merely had a change of heart about the settlement. This is not an extraordinary circumstance justifying vacatur of the dismissals of these actions.

CONCLUSION

For the reasons discussed above, the Magistrate Judge's October 22, 1996 Report is accepted and adopted in its entirety and Ovadiah's motion to vacate the judgments of dismissals entered in these actions is denied

Not Reported in F.Supp., 1997 WL 342411 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.