UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

– – – – – – – – – – – – – – – – – – – – – – – – – — – – – x
LEONARD BRANDT, :

    Plaintiff, : Civil Action No.:
                                      3:01-1889 (SRU)
    - against - :

HOME DIAGNOSTICS, INC., GEORGE H. HOLLEY, :
and JUDY CHENG SALEM, EXECUTRIX OF THE
ESTATE OF ROBERT J. SALEM, :

    Defendants. :
– – – – – – – – – – – – – – – – – – – – — – – – – – – – – – x

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION DATED MARCH 7, 2008 AND SUPPLEMENTAL
MEMORANDUM OF LAW, DATED MARCH 11, 2008**

Defendants Home Diagnostics, Inc. ("HDI") and George H. Holley ("Holley") (together, "Defendants"), by their attorneys Satterlee Stephens Burke & Burke LLP, respectfully submit this memorandum of law in opposition to plaintiff's newest spin on his January 25, 2008 motion for relief – his supplemental memorandum of law dated March 11, 2008 (Dkt. # 273, Pl.'s Suppl. Mem.").[1]

**PRELIMINARY STATEMENT**

Plaintiff's latest motion is yet another meritless and vexatious attempt to undo the settlement agreement entered into by the parties before this Court, on the record, over one year ago. In short, the Court should not countenance plaintiff's latest ploy of calling the entire March 8, 2007 settlement on the record a "private arbitration" or an "arbitration award" when: (i) it is

---

[1] Because this Court is intimately aware of the facts underlying this "nightmare" (as the Court called the post-settlement proceedings at the February 28, 2008 hearing), including all of plaintiff's attempts to derail the settlement reached in this action, defendants will not repeat them here.

729126_1

abundantly clear from the record that the March 8 settlement agreement was *not* the result of any arbitration, and (ii) it is abundantly clear under applicable case law (including the cases that plaintiff himself cites) that the Court has vast authority to aid the parties in settlement and to enforce the terms of a settlement agreement placed on the record during trial.

Simply because the Court chose to resolve a disputed settlement <u>detail</u> (through the powers the parties gave him on March 8) by conducting "a 'baseball style' arbitration" in which the parties were to submit their best positions on that issue (<u>see</u> Conference Memo, Rechen Decl., Ex. H) – and simply because plaintiff has now seized upon the word "arbitration" – does not magically (or legally) transform the parties' entire March 8 settlement into some sort of unenforceable arbitration award as plaintiff now disingenuously argues in his latest attempt to avoid his settlement obligations.

Moreover, plaintiff counsel's statement that, "[s]ince oral argument, it has come to the attention of the undersigned counsel for Brandt that the Court may have lacked the authority" to enforce the settlement agreement is incredible given that <u>plaintiff never raised these issues in numerous prior appearances, position papers or legal briefs over the last year</u>. Tellingly, one of the cases that plaintiff purports to rely on in support of his latest epiphany – <u>Ovadiah</u> – is a case that <u>defendants briefed on February 15, 2008</u> – two weeks before the Court heard argument on plaintiff's motion to re-open the trial and defendants' motion to enforce the settlement agreement. Irrespective of whether plaintiff's counsel's supposed inattention is truly to blame (rather than plaintiff's continued bad faith), it is clear that this motion is just another misguided effort by plaintiff to mischaracterize the record and renegotiate a settlement that the parties reached on March 8, 2007. Accordingly, plaintiff's motion should be summarily dismissed and, because it is clear that plaintiff and now his counsel continue to needlessly and vexatiously multiply these proceedings in evident bad faith, they should be sanctioned.

## ARGUMENT[2]

### I. Plaintiff has Attempted to Undo the Settlement Agreement through Disingenuous and Baseless Mischaracterizations Since it was Formally Settled Over One Year Ago

Just as plaintiff's counsel repeatedly appeared to misrepresent the record on February 28, 2008 (and continues to do so in the supplemental memorandum) by calling the parties' March 8 <u>settlement</u> <u>agreement</u> an "agreement in principle to settle," plaintiff's counsel now outrageously refers to the settlement agreement (and the parties' express stipulation that the Court could decide disputed details of the settlement) as an "<u>arbitration</u> <u>award</u>" that is void (due to Article III) and cannot be enforced (because, if valid, it is supposedly governed by the Federal Arbitration Act).  <u>See</u> Pl.'s Suppl. Mem. at 13-14.  Tellingly, the word "arbitration" never appears in the settlement agreement or in any discussion surrounding the settlement agreement entered on the record on March 8, 2007.

This is, of course, not the first time that plaintiff has mischaracterized the record. As set forth above, plaintiff previously moved to re-open the trial arguing, preposterously, that there was only an agreement to settle "in principle." This Court summarily dismissed plaintiff's argument and mischaracterization on February 28, 2008:

> At 11:00 o'clock [on March 8, 2007], it's reported to me formally on the record that the case has settled.  Everyone, including Mr. Brandt, expressly acknowledged that.  I discharged the jury in reliance upon the parties having informed me that they had settled the case, not that they had reached a settlement in principle.  <u>So I don't understand the continual use of the phrase "settlement in principle."</u>"  This is a settlement.

<u>See</u> Tr. (Feb. 28, 2008) at 6:3-12.

---

[2] Plaintiff's request for oral argument should be denied.  As set forth herein, plaintiff's arguments are so wildly misplaced, oral argument is unnecessary and would just further delay the settlement that should now be enforced.

Nonetheless, and in seeming disrespect for this Court and in intentional disregard of the record, plaintiff continues to call the settlement agreement a settlement "in principle" in this motion. See Pl.'s Suppl. Mem. at 3. Plaintiff's continued mischaracterization of the settlement agreement in the instant motion is but one of plaintiff's multiple misrepresentations and mischaracterizations. His latest charge is that the Court improperly conducted a "private arbitration" or a "private mediation" of "settlement terms." As the Court is well aware, however, plaintiff's mischaracterization gains no traction because the parties: (1) agreed to all of the terms of the settlement agreement on the record; (2) agreed that the Court would retain jurisdiction to enforce the terms of the settlement agreement; and (3) authorized the Court to assist the parties, if necessary, in helping them resolve and iron-out certain "details of the settlement," i.e. principally some of the details concerning the transfer of HDI stock. Tr. (Mar. 8, 2008) at 970-71. Notably, the Court did not have any role in deciding the terms of the settlement; all of which were agreed to by the parties on the record on March 8, 2007:

> There are various details to work out concerning the stock that's going to be transferred as part of the settlement amount. Those issues were not detailed just now in any great detail but they include issues such as the ability to sell the stock, what restrictions there may be on that stock, et cetera . . . Finally, if there are details of the settlement that cannot be resolved, for example, if the parties cannot agree on the terms of the general releases, if the parties cannot agree on the details concerning the transfer of stock, the parties will come here, I will attempt to resolve those disputes informally. If that informal process does not work, the parties are all authorizing me to act as an, in effect a binding mediator and to *impose a decision* on the areas of dispute concerning the *details* of the settlement.

See Tr. (March 8, 2007) at 970:17-971:7 (emphasis added).[3]

---

[3] It is, of course, important to note that the only reason that the parties could not resolve these details themselves is because plaintiff decided that, despite the term of the settlement agreement providing that plaintiff would receive a minimum of $150,000 in cash, he changed his mind and sought new terms, insisting that he wanted $3 million in cash, which was never part of the agreement. See Tr. (Feb. 28, 2008) at 22:5-12 ("And it's one thing to make, you know, an
(footnote cont'd)

4

Because the parties were unable to iron-out the details themselves, the Court has fairly resolved these details as it was empowered to do by the parties. Nonetheless, plaintiff has simply failed to come to grips with the fact that this action is settled and continues, baselessly, to try and renegotiate the deal:

> And to come back now and time and time and time again, I really have to tell you that what -- the part of the settlement agreement that has not been given effect is the peace that the defendants thought they were buying, because they have incurred, I am sure, substantial attorney's fees for what has amounted to, the best I can say is misguided efforts to renegotiate a deal that was already firmly and finally negotiated. And, you know, I really don't have a lot of patience at this point with the continued effort, and I think you need to be very careful and make sure that you've got some evidence to back up the arguments that you're making.

Tr. (Feb. 28, 2008) at 22:13-24.

That plaintiff and his counsel would continue to put forth baseless arguments and mischaracterize the record and the Court's role with respect to effectuating the settlement agreement is not surprising, but it is particularly troubling, given the Court's admonishments at the February 2008 hearing:

> You don't want to be taking a position in court that's not supported by the evidence. Period. And let me just tell you your position is not supported by the evidence. It seems to me I can find as facts things that happened in front of me whether or not the court reporter was taking it all down, and I can find as facts things that were said to me whether or not the court reporter was taking it down. Certainly in the context of the settlement, when I'm getting reports from the parties, it seems to me I can make findings of fact about that, and if you want to influence that in any way, I think you need an affidavit from Mr. Dunham and I think what you're going to find

---

argument about value, but everybody knew that the deal was $150,000 or more in cash and the balance of $3 million value in restricted HDI stock. Period. Everybody knew that. We didn't know if it was six months or a year or a year-and-a-half or two years, that may be true. But everybody knew it was restricted, Mr. Brandt included. Period.")

5

> is you're not going to be able to get one that says what you want it to say, because I was here, I know what was happening.

Tr. (Feb. 28, 2008) at 21:14-22:3.

## II. Plaintiff's Arguments are Belied by the Cases and Judicial Canon He Relies On

It is, of course, well settled that this Court is empowered and encouraged to take an active role in the settlement of civil cases. See Bilello v. Abbott Laboratories, 825 F.Supp. 475 (E.D.N.Y. 1993) (stating that judges are encouraged "to take an active role in the settlement of civil law suits"); see also Janus Films, Inc. v. Miller, 801 F.2d 578 (2nd Cir. 1986); LaSala v. Needham & Co., Inc., 399 F.Supp.2d 421 (S.D.N.Y. 2005). And that is precisely what happened here by express agreement of the parties. Notably, the cases that plaintiff purports to rely on in support of his misplaced argument do not alter this fundamental axiom and, in actuality, completely support what the Court did here.

Indeed, plaintiff's primary authority – the Seventh Circuit's decision in DDI Seamless Cylinder Int'l, Inc. v. General Fire Extinguisher Corp., 14 F.3d 1163, 1168 (7th Cir. 1994) – supports enforcement of the settlement and the Court's actions. In DDI, as here, plaintiff incorrectly characterized the settlement mechanism the parties chose as an "arbitration" rather than the dispute settlement mechanism the parties actually chose – i.e., "the parties stipulated to an abbreviated, informal procedure for [the magistrate's] deciding the case in his judicial capacity." DDI, 14 F.3d at 1166. The DDI court upheld the settlement, noting at most that:

> the parties should have avoided reference to "arbitration," a mode of dispute settlement distinct from adjudication. They should simply have said that this was the procedure they had agreed upon.

Id.

6

Similarly, Ovadiah v. New York Assoc., 1997 WL 342411, at *10 (S.D.N.Y. June 23, 1997), supports enforcement of the settlement agreement because there, as in DDI, the court found that the magistrate judge was not acting ultra vires since it was not an arbitration (instead, the judge had drafted a compromise letter at the parties' express authorization).

The remaining three cases plaintiff and his counsel cite are obviously inapposite. See Mistretta v. U.S., 488 U.S. 361, 404 (1989) (concluding that "the principle of separation of powers does not absolutely prohibit Article III judges from serving on [sentencing] commissions"); Hameli v. Nazario, 930 F.Supp. 171, 183-84 (D. Del. 1996) (magistrate judge had no authority to act as arbitrator by agreement of the parties because the court itself had no subject matter jurisdiction to hear termination hearing); Diagnostic Radiology Associates, P.C. v. Jeffrey M. Brown, Inc., 193 F.R.D. 193, 194-95 (S.D.N.Y. 2000) (the parties' contract naming a federal court judge as an arbitrator violated Canon 5E of Code of Judicial Conduct because the judge would be acting as a private arbitrator where no case or controversy before the court previously existed). Here, in sharp contrast, there was a pending trial before the Court, the Court had subject matter jurisdiction over the parties' dispute, and the parties placed a detailed settlement agreement on the record in which the parties expressly empowered the Court to informally decide "details of the settlement that cannot be resolved," and if necessary, "impose a decision on the areas of dispute" in the Court's judicial capacity. See Mar. 8, 2007 Settlement Tr. at 970:23- 971:7 (Brown Decl., Jan. 16, 2008, at Ex. A).

Similarly, plaintiff's reliance on the Canons of Judicial Conduct in support of his motion is equally misplaced. At the outset, plaintiff's attempt to categorize the settlement agreement and mechanism for resolving disputed details concerning the restricted stock as a full-blown arbitration is tellingly frivolous and unsupported. Notably, plaintiff cites no case that supports his argument here. Moreover, as is painfully obvious from the title of the Canon on

which plaintiff relies, the Canons are only concerned with judges limiting their "EXTRA-JUDICIAL ACTIVITIES TO MINIMIZE THE RISK OF CONFLICT WITH JUDICIAL DUTIES." See Canon 5 of the Code of Judicial Conduct.

Here, there is no conflict that the Court's enforcement and effectuation of the settlement agreement could even plausibly have with the Court's judicial duties, and plaintiff points to none. Moreover, as the Supreme Court made clear in Mistretta, "[t]he ultimate inquiry remains whether a particular extrajudicial assignment undermines the integrity of the Judicial Branch." 488 U.S. at 404. Plaintiff, of course, cannot offer any explanation for how the Court's role in enforcing the settlement agreement and/or assisting the parties in resolving details of the agreement "undermines the integrity of the Judicial Branch."

On the contrary, the Canons expressly condone exactly what the Court has done here with respect to resolving the details of the settlement. Specifically, Canon 3(A)(4) provides that "[a] judge may, with consent of the parties, confer separately with the parties and their counsel in an effort to mediate or settle pending matters." Moreover, the official comments to Canon 3(A)(5) provide that "[a] judge should monitor and supervise cases so as to reduce or eliminate dilatory practices, avoidable delays and unnecessary costs" and "[a] judge should encourage and seek to facilitate settlement." Accordingly, because the parties expressly empowered the Court to assist and resolve disputed details of the settlement agreement if necessary, including the terms of the releases and the transfer of HDI stock, this Court has acted in strict conformance with the Judicial Canons and the terms of the March 8 settlement agreement.

Finally, grasping at straws, plaintiff argues that the Court should recuse itself from exercising jurisdiction in enforcing the settlement agreement. Plaintiff's argument fails for two fundamental reasons. First, plaintiff's argument that the Federal Arbitration Act, 9 U.S.C. §

1 et seq., even applies is simply embarrassing. Indeed, as set forth above, the Court resolved certain details in effectuating the settlement as the parties requested. It is absurd even to suggest this was a full-blown arbitration under the FAA or Local Rule 16(h)(6) – irrespective of what label plaintiff now chooses to use. See DDI, supra. Second, and perhaps more importantly, under the settlement agreement the parties expressly empowered the Court to "retain jurisdiction to enforce the terms of the parties' settlement agreement, including those terms imposed by this ruling." See July 19, 2007 ruling (Rechen Decl., Ex. K). Retaining jurisdiction to enforce the terms of a settlement agreement is, of course, entirely appropriate. See e.g., Roberson v. Giuliani, 346 F.3d 75, 83 (2d Cir. 2003) (court's order "expressly provided that it would retain jurisdiction over the settlement agreement for enforcement purposes"); Collins v. Ford Motor Co., 2007 WL 911896, at *4 n.6 (D. Conn. Mar. 22, 2007) ("Because the Court retained jurisdiction over the settlement agreement, thus making the terms of the settlement agreement part of the order of dismissal, a breach of the settlement agreement is a violation of a court order"). Accordingly, because plaintiff's reliance on the FAA is clearly erroneous, the Court need not recuse itself from enforcing the settlement agreement.

### III. An Award of Further Sanctions and Attorney's Fees is Appropriate Here

As the Court is aware, defendants have requested sanctions for plaintiff's repeated, willful violations of Court Orders and vexatious tactics that have needlessly multiplied the proceedings in this action.[4] Because plaintiff has continued to do so with his latest eleventh-hour vexatious tactics, defendants are also respectfully requesting their attorney's fees and costs

---

[4] Defendants have incurred significant amounts of legal fees and costs over the last year in contesting plaintiff's seemingly endless litigation efforts to undo the settlement. There have been other harmful consequences as well for defendants. For example, plaintiff's tactics have prevented a winding up of the Salem estate, and it has forced HDI, a public company, to continue public reporting on this case.

for responding to this motion under the Court's inherent authority or statutory authority. Chambers v. NASCO, Inc., 501 U.S. 32, 62-63 (1991) ("a federal court may ignore these [statutory] provisions and exercise inherent power to sanction bad-faith misconduct "even if procedural rules exist which sanction the same conduct").

It is of course, well settled that this court has inherent authority to "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers, 501 U.S. at 50 (quoting Alyeska Pipeline Serv. Co. v. Wilderness Society, 421 U.S. 240, 258-59 (1975)).  Here, the fact that plaintiff waited over one year to raise these frivolous arguments, and even failed to raise them on February 28, despite knowing about the Ovadiah case since well before the hearing (and then only made them when faced with an impending Order enforcing the settlement agreement), demonstrates that plaintiff and his counsel have both acted in bad faith and vexatiously.  Specifically, plaintiff has: (1) yet again, blatantly mischaracterized the record; (2) made arguments that are devoid of merit and contemptuous (such as his argument that the FAA applies and that Your Honor should recuse himself); and (3) continued to take positions and make statements that are not supported by the evidence – as this Court recognized on February 28, 2008 – including statements contained in his latest declaration that are patently false.[5]  See Dkt. # 275 (Salem Estate's Reply Memorandum).

Alternatively, for these same reasons, plaintiff's counsel should be sanctioned pursuant to 28 U.S.C. § 1927.  Under § 1927, "a court may impose sanctions on an attorney who 'so multiplies the proceedings in any case unreasonably and vexatiously.'"  In re 60 East 80th

---

[5] To the extent that the Court expressed concern about whether it could procedurally impose sanctions for plaintiff's contempt of its prior Orders relating to the resolution of settlement details -- although it can as set forth in defendants papers on the issue -- the Court clearly faces no procedural bar whatsoever here.

Street Equities, Inc., 218 F.3d 109, 115 (2d Cir. 2000) (citing 28 U.S.C. § 1927). An award under "§ 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." In re 60 East, supra (citing U.S. v. Int'l Bd. of Teamsters, 948 F.2d 1338, 1345 (2d Cir.1991) and Keller v. Mobil Corp., 55 F.3d 94, 99 (2d Cir.1995)). Here, as set forth above, there can be no doubt that plaintiff's counsel is attempting, in bad faith, to avoid and delay the Court's Order enforcing the settlement agreement and his conduct, including the preposterous FAA argument, can only be described as vexatious. It appears that a finding of contempt and the imposition of sanctions may be the only way to end plaintiff's abusive litigation tactics.

## CONCLUSION

For the reasons set forth herein, defendants respectfully request that the Court summarily dismiss plaintiff's latest motion and enter an appropriate sanction awarding defendants their attorney's fees and disbursements in an amount to be determined by the Court upon a submission of appropriate evidence of such fees and disbursements.

Dated: New York, New York
March 31, 2008

SATTERLEE STEPHENS BURKE & BURKE LLP

By: _____/s/_____
  Paul M. Brown (CT 23232)
  Aaron M. Zeisler (admitted *pro hac vice*)
  Justin E. Klein (admitted *pro hac vice*)
*Attorneys for Defendants HDI and George Holley*
230 Park Avenue
New York, New York 10169
(212) 818-9200
(203) 818-9606 fax

## **CERTIFICATION**

   This is to certify that on March 31, 2008, a copy of the foregoing document was filed electronically through the Court's electronic filing system and a NEF was delivered to:

    Thomas J. Rechen, Esq.
    Pepe & Hazard LLP
    225 Asylum Street
    Goodwin Square
    Hartford, CT  06103-4302

    Richard A. Roberts, Esq.
    Nuzzo & Roberts, L.L.C.
    One Town Center
    P.O. Box 747
    Cheshire, CT  06410

           /s/
           Justin Klein